UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **In re:**<br><br>**Compass Coffee, LLC,**<br><br>   **Debtor.** | **Chapter 11**<br><br>**Case No. 26-00005 (ELG)** |

### INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING; (II) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL; AND (III) GRANTING ADEQUATE PROTECTION

Upon consideration of the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Post-Petition Financing; (II) Authorizing the Debtor to Use Cash Collateral; and (III) Granting Adequate Protection* [Docket No. __] (the "**Motion**")[1] filed by the above-captioned debtor and debtor in possession (the "**Debtor**"), pursuant to sections 105, 361,

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion.

**HUNTON ANDREWS KURTH LLP**
Tyler P. Brown (*pro hac vice* forthcoming)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (*pro hac vice* forthcoming)
951 E. Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200

*Proposed Counsel for Debtor and Debtor in Possession*

363, 364(c), 364(d), 506 and 507 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (as amended, the "**Bankruptcy Code**"), rules 4001, 6003, and 9014 Federal Rule of Bankruptcy Procedure (the "**Bankruptcy Rules**"), rules 4001-2 and 4001-3 of the Local Rules of the Bankruptcy Court for the District of Columbia (the "**Local Rules**"), seeking, entry of an order (this "**Interim Order**"), among other things, (i) authorizing the Debtor to obtain post-petition junior secured, superpriority financing in the principal amount of $450,000 (the "**DIP Facility**") from National Investment Group, Inc. (the "**DIP Lender**") pursuant to the Junior Secured Superpriority Financing Agreement (the "**DIP Credit Agreement**") by and between the Debtor and the DIP Lender substantially in the form attached hereto as <u>Exhibit 2</u>, (ii) authorizing the Debtor to use cash collateral pursuant to the Budget annexed hereto as <u>Exhibit 1</u>, (iii) approving the adequate protection for the Secured Creditors (as that term is defined below) in the form of replacement liens in the same extent, nature and priority as of the commencement of this Chapter 11 case and continued payment of debt service during the sale process, (iv) waiving any applicable stay (including under Bankruptcy Rule 6004), and (v) scheduling a final hearing to consider final approval of the DIP Facility.

The Court having held an interim hearing on the Motion, on January 7, 2026 (the "**Interim Hearing**"), and upon the record made by the Debtor at the Interim Hearing and after due deliberation and consideration and good and sufficient cause appearing therefor,

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    <u>Petition Date</u>.    On January 6, 2026, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with this Court.

2

B.      Jurisdiction and Venue. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b); and venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Notice. The Interim Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). Notice of the Interim Hearing on the Motion having been adequate and appropriate under the circumstances. The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending a final hearing on the Motion.

D.      Debtor in Possession. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or official committee of unsecured creditors has been appointed in this case.

E.      Prepetition Capital Structure. The Debtor has the following four creditors (collectively, the "*Secured Creditors*")[2] that have filed financing statements claiming liens on collateral belonging to the Debtor: (i) EagleBank, (ii) the Small Business Administration, (iii) Square Financial Services, Inc., and (iv) inKind Card, Inc. None of the Secured Creditors is an "insider" of the Debtor as defined in section 101(31) of the Bankruptcy Code.

F.      Cash Collateral. For purposes of this Interim Order, the term "*Cash Collateral*" shall have the meaning ascribed to it in section 363(a) of the Bankruptcy Code.

G.      Adequate Protection for Secured Creditors. The adequate protection provided under this Interim Order is sufficient to protect the Secured Creditors against any diminution in

---

[2] The listing of these parties as "secured creditors" is due to each of these parties having filed financing statements claiming liens on the Debtor's property, and this listing shall not constitute, nor is it intended to constitute, an implication or conclusion as to the validity or priority of any claim or lien against the Debtor or its property, a waiver of the Debtor's, or any party in interest's, rights to subsequently dispute such claim or lien, a promise or requirement to pay any prepetition claim, an implication or conclusion that any particular claim is of a type specified, or any waiver of the Debtor's, or any other party in interest's, rights under the Bankruptcy Code or any other applicable law.

the value of their interests, if any, in the Cash Collateral, and is fair, reasonable, and sufficient to satisfy the requirements of the Bankruptcy Code.

  H. <u>DIP Facility</u>.  The terms of the DIP Facility, pursuant to the DIP Credit Agreement and this Interim Order, are fair and reasonable, reflect the exercise of the Debtor's sound business judgment and satisfy the heightened scrutiny standard, and are supported by reasonably equivalent value and fair consideration

  I. <u>Interim Post-Petition Financing</u>.  The Debtor seeks interim authority to immediately borrow up to $100,000 of the DIP Facility (the "***Interim Financing***"), and proposes to provide five (5) days' notice to the U.S. Trustee and counsel for any official committee of unsecured creditors appointed in this case (the "***Committee***"), if any, before using any amount of the Interim Financing.

  J. <u>Alternative Sources of Financing</u>.  The Debtor represents that, after reasonable inquiry, the Debtor does not believe that alternative sources of financing are available on better terms, and that the Debtor was not able to obtain post-petition financing for the sale process with unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.

  K. <u>Immediate Need for Cash Collateral and Interim Financing</u>.  The Debtor requires immediate access to Cash Collateral and Interim Financing to address working capital needs, preserve the value of its estate, and complete the process of selling all of its assets or otherwise effectuating a value maximizing transaction in this Chapter 11 case.

  L. <u>Final Hearing</u>.  At a final hearing on the Motion (the "***Final Hearing***"), the Debtor will seek approval of the relief requested in the Motion on a final basis.  Notice of the Final Hearing will be provided in accordance with the requirements of this Interim Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED that:**

1. The Motion is GRANTED on an interim basis as provided herein.

2. The Debtor is authorized to borrow money from the DIP Lender pursuant to the DIP Facility and this Interim Order up to the maximum amount of the Interim Financing; provided, however, the Debtor shall provide five (5) days' notice to the U.S. Trustee and counsel for any official committee of unsecured creditors appointed in this case (the "***Committee***"), if any, before using any amount of the Interim Financing.

3. The Debtor is authorized and directed to perform all acts, and execute and comply with the terms of the DIP Credit Agreement or such other documents, instruments and agreements that the DIP Lender may reasonably require to effectuate the terms and conditions of this Interim Order.

4. All sums advanced by the DIP Lender pursuant to the DIP Facility and this Interim Order shall, pursuant to section 364(c)(1), constitute superpriority senior administrative expense claims, as provided for and to the full extent allowed by sections 503(b) or 507(b) of the Bankruptcy Code, against the Debtor with priority over any and all administrative expense claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever, subject only to the payment of the Carve-Out (as defined below).

5. For purposes hereof, the "***Carve-Out***" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under 28 U.S.C. § 1930(a), together with any interest thereon pursuant to 31 U.S.C. § 3717; (ii) Court-allowed fees and expenses of a trustee appointed under section 726(b) of the Bankruptcy Code in an amount not to exceed $10,000, and (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses, including transaction fees or similar fees (the "***Allowed Professional***

5

*Fees*"), actually incurred by persons or firms retained by the Debtor pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "***Debtor Professionals***") and persons or firms retained by the Committee, if any, pursuant to sections 328 or 1103 of the Bankruptcy Code (the "***Committee Professionals***" and, together with the Debtor Professionals, the "***Professional Persons***"), at any time before or on the first calendar day following delivery by the DIP Lender of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $150,000 incurred after the first calendar day following delivery by the DIP Lender of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "***Post-Carve-Out Trigger Notice Cap***"). The Term "***Carve-Out Trigger Notice***" shall mean a written notice delivered by email by the DIP Lender to counsel to the Debtor, the U.S. Trustee, and counsel to the Committee, if any, which notice may be delivered following the occurrence of and during the continuance of an Event of Default (as defined in the DIP Credit Agreement) expressly stating that the Post-Carve-Out Trigger Notice Cap is triggered.

6. Pursuant to section 364(c)(3) of the Bankruptcy Code, as security for the DIP Facility and as set forth in the DIP Credit Agreement, effective and perfected upon the date of this Interim Order and without the necessity of the execution, recordation of filings by the Debtor of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, the DIP Lender hereby is granted liens junior to any liens held by the Secured Creditors, if any, on all property of the Debtor in the principal outstanding amount borrowed by the Debtor from the DIP Lender pursuant to the DIP Facility and this Interim Order. Notwithstanding the foregoing, the DIP Lender may take any action (and is, to the extent necessary

6

in connection therewith, hereby granted relief from the automatic stay), to evidence, confirm, validate or perfect, or to ensure the contemplated priority of, such liens.

7. The Debtor is authorized to use the Cash Collateral in accordance with the Budget (subject to a 10% variance for each line item).

8. As adequate protection, and solely to the extent the Court determines that the value of the Secured Creditors' prepetition interest in Cash Collateral, if any, has diminished, (i) the Secured Creditors are granted valid and fully perfected security interests in the Debtor's postpetition Cash Collateral, if any, to the same extent, validity, and priority as held by the Secured Creditors as of the Petition Date (the "***Replacement Liens***"), and (ii) the Debtor shall continue to pay debt service obligations to the Secured Creditors during the sale process in this bankruptcy case.

9. The Replacement Liens shall be valid, perfected, enforceable, and effective upon entry of this Interim Order to the same extent, validity, and priority as held by the Secured Creditors as of the Petition Date without the necessity of execution, filing, or recordation of any financing statements or security agreements. Notwithstanding the foregoing, the Secured Creditors may take any action (and are, to the extent necessary in connection therewith, hereby granted relief from the automatic stay), to evidence, confirm, validate or perfect, or to ensure the contemplated priority of, such liens.

10. The Final Hearing on the Motion is scheduled for _____, 2026, at \_:\_\_ (prevailing Eastern Time) before this Court. This Interim Order shall constitute good and sufficient notice of the Final Hearing such that no other or further notice need be given.

11. Any objection to the relief requested in the Motion on a final basis must, by 4:00 p.m. (prevailing Eastern Time) on _____, 2026 (the "***Objection Deadline***"), be: (a) filed

7

with the Court, and (b) actually received by (i) the Office of the U.S. Trustee; (ii) proposed counsel to the Debtor, Hunton Andrews Kurth LLP, Attn: Tyler P. Brown, Riverfront Plaza, East Tower, 951 E. Byrd Street, Richmond, Virginia 23219, email: tpbrown@hunton.com, (iii) counsel to the DIP Lender, Redmon Peyton & Braswell, LLP, Attn: Robert M. Marino, Esq., 510 King Street, Suite 301, Alexandria, VA 22314, email: rmmarino@rpb-law.com and (iii) counsel for any official committee of unsecured creditors, if then appointed in this Case.

12. A reply to an Objection may be filed with the Court and served on or before 12:00 p.m. (prevailing Eastern Time) on the day that is two (2) business days before the Final Hearing.

13. This Interim Order shall be effective immediately upon its entry, regardless of any stay imposed by the Bankruptcy Code or Bankruptcy Rules.

14. The Debtor is authorized to take all actions necessary to implement the relief granted herein.

15. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

16. The Debtor is directed to serve a copy this Interim Order on the same parties that were provided notice of the Motion and file a proof of service within three (3) days of entry of this Interim Order.

[*Endorsements Follow*]

WE ASK FOR THIS:

/s/
_____
Tyler P. Brown (*pro hac vice* forthcoming)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (*pro hac vice* forthcoming)
**HUNTON ANDREWS KURTH LLP**
951 E. Byrd Street
Richmond, Virginia 23219
Telephone:     (804) 788-8200
Facsimile:     (804) 788-8218
Email:         tpbrown@hunton.com
               jwuebker@hunton.com
               nmonico@hunton.com

*Proposed Counsel for the Debtor and Debtor in Possession*

**Compass Coffee, LLC**
**5 Week Cash Flow Analysis***

|  | WE 1/11/26 | WE 1/18/26 | WE 1/25/26 | WE 2/1/26 | WE 2/8/26 |
|---|---:|---:|---:|---:|---:|
| **Revenue** | **470,000** | **475,000** | **625,000** | **540,000** | **550,000** |
| Operating Disbursements | | | | | |
| Payroll & Benefits | 120,000 | 115,000 | 130,000 | 135,000 | 140,000 |
| Rent | | | | 150,000 | |
| Bank Loan (Eagle and SBA) | | | 2,437 | 83,440 | |
| Operating Expenses & Services | 250,000 | 270,000 | 250,000 | 225,000 | 250,000 |
| Prepetition to critical suppliers | 50,000 | 50,000 | 75,000 | 50,000 | 50,000 |
| Taxes | - | - | 110,000 | - | - |
| **Total Operating Disbursements** | **420,000** | **435,000** | **567,437** | **643,440** | **440,000** |
| | | | | | |
| **Total Cash Disbursements**** | **420,000** | **435,000** | **567,437** | **643,440** | **440,000** |
| **Net Cash Flow Activity** | **50,000** | **40,000** | **57,563** | **-103,440** | **110,000** |
| | | | | | |
| Unrestricted Beginning Cash Balance | 407,592 | 457,592 | 497,592 | 555,155 | 451,714 |
| Net Cash Flow Activity | 50,000 | 40,000 | 57,563 | -103,440 | 110,000 |
| Ending Cash Balance | 457,592 | 497,592 | 555,155 | 451,714 | 561,714 |

* Subject to a 10% variance for each line item
** Budgeted restructuring costs will be deposited into a reserve acccount and shall only be disbursed pursuant to an order of this Court.