**HUNTON ANDREWS KURTH LLP**
Tyler P. Brown (*pro hac vice* forthcoming)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (*pro hac vice* forthcoming)
951 E. Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200

*Proposed Counsel for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In re:**<br><br>**Compass Coffee, LLC,**<br><br>**Debtor.** | **Chapter 11**<br><br>**Case No. 26-00005 (ELG)** |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO (A) PAY CERTAIN PREPETITION WAGES, SALARIES, EMPLOYEE BENEFITS, EXPENSES, AND OTHER COMPENSATION, AND (B) PAY OR OTHERWISE HONOR SUCH POSTPETITION OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS; AND (II) DIRECTING FINANCIAL INSTITUTIONS TO HONOR RELATED CHECKS AND TRANSFERS**

The above-captioned debtor and debtor in possession (the "***Debtor***"), by and through its undersigned counsel, hereby moves (the "***Motion***") for entry of interim and final orders, substantially in the form attached hereto as Exhibit A (the "***Proposed Order***"), (i) authorizing, but not directing, the Debtor to pay the prepetition wages, salaries, employee benefits, expenses, and other compensation to its workforce, (ii) authorizing, but not directing, the Debtor to pay or otherwise honor such obligations in the ordinary course of business, and (iii) directing applicable financial institutions to honor and process related checks and transfers. In support thereof, the Debtor respectfully represents as follows:

## I.  Jurisdiction, Venue, and Predicates for Relief

1.      The United States Bankruptcy Court for the District of Columbia (the "***Court***") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core matter within the meaning of 28 U.S.C. § 157(b)(2).

2.      The predicates for the relief requested herein are sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of title 11 of the United States Code (the "***Bankruptcy Code***"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Columbia (the "***Local Rules***").

## II.  Background

### A.  Chapter 11 Case

3.      On January 6, 2026 (the "***Petition Date***"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court initiating the above-captioned case (the "***Case***").  The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107 and 1108(a) of the Bankruptcy Code.  As of the date hereof, no trustee, examiner, or statutory committee of creditors has been appointed in this Case.

4.      The Debtor owns and operates 25 cafés in premises it leases in Washington D.C., Maryland, and Northern Virginia.  The Debtor filed this Case with the intention of selling substantially all of its assets or otherwise effectuating a value maximizing transaction.  Additional information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this Case is set forth in the *Declaration of Michael Haft in Support of Debtor's Chapter 11 Petition and First Day Motions* (the "***M. Haft Declaration***") filed contemporaneously herewith, and incorporated herein by reference.  Additional facts in support of the relief requested herein are set forth below.

**B.      The Debtor's Employees**

5.      The Debtor's employees are critical to its ability to continue operating as a going concern.  As of the Petition Date, the Debtor employs 166 people, including 23 salaried employees and 143 hourly employees (collectively, the "*Employees*").

6.      As set forth in Section III below, the Debtor incurs obligations to its Employees in the ordinary course of business in the form of compensation and on account of certain benefit programs and policies (the "*Employee Obligations*").

### III.      Relief Requested

a.      Salaries and Wages

7.      The Debtor incurs and pays salaries and wages ("*Employee Wages*") to its Employees in the ordinary course of business.  On average, the Debtor pays approximately $115,000 per week on account of Employee Wages.

8.      Employees are paid every Friday in arrears for the previous week (e.g., on January 2, 2025, Employees were paid Employee Wages for the period from December 22 to December 28).  As of the Petition Date, the Debtor estimates that it owes approximately $115,000 on account of accrued but unpaid prepetition Employee Wages.  Such amount is comprised of the Employee Wages due for the period of December 29, 2025, through the Petition Date.

9.      One of the Employees to be paid prepetition Employee Wages is an insider, Micheal Haft, who is the 52% equity owner of Compass.  Three additional Employees to be paid prepetition Employee Wages have small equity interests in Compass:  Joel Shetterly (0.53%); Max Deem, (0.38%); and Chas Newman (0.18%) (together, the "*Investor Employees*").  Each is a salaried employee paid in the ordinary course of business, and the requested payments are on account of

3

wages owed for services provided.  The Debtor's request authority to pay Employee Wages to the Investor Employees in the approximate amount of $16,000 (in four equal payments to each).

10.     As of the Petition Date, the Debtor does not believe that any Employee, including any Investor Employee, is owed Employee Wages in excess of the $17,150 priority cap under section 507(a)(4) of the Bankruptcy Code.

11.     In the ordinary course of business, Employees accrue paid time off ("*PTO*") based on the number of hours each Employee works at a rate determined by the length of such Employee's employment.  All PTO is subject to an accrual maximum, also determined by the length of each Employee's employment.  As of the Petition Date, the Employees have an aggregate of approximately 4,400 hours of accrued but unused PTO (the "*Accrued PTO*").  Accrued PTO is forfeited when an Employee leaves employment with the Debtor.

12.     Hourly Employees, upon written authorization from the Debtor, may also work and earn overtime for all work in excess of 40 hours a week at one and one half (1.5) times their regular hourly rate (the "*Overtime Obligations*").

13.     Accordingly, the Debtor seeks authority, but not direction, to pay any accrued and unpaid prepetition Employee Wages, up to the statutory cap, and to continue honoring Employee Wages on a postpetition basis, including by honoring any Accrued PTO and paying any Overtime Obligations, in the ordinary course of business postpetition.

           b.     Payroll Service Provider

14.     The Debtor uses Rippling People Center, Inc. ("*Rippling*") as their third-party payroll processor to support payroll processing, time keeping, scheduling, PTO management, benefits management, and other payroll-related services.  The Debtor pays fees to Rippling for the payroll-related services that it provides and other administrative costs (the "*Payroll Fees*").  On

average, the Debtor pays approximately $7,000 in Payroll Fees per month.  The Debtor pays the

Payroll Fees at the time it funds payroll.  The Debtor does not owe any prepetition Payroll Fees.

15.     Accordingly, the Debtor seeks authority, but not direction, to continue paying the

Payroll Fees in the ordinary course of business, consistent with past practices, postpetition.

      c.     Employee Benefits

16.     In addition to Employee Wages, certain eligible Employees may elect to participate

in benefits programs.  The Debtor offers a variety of health, dental, and vision insurance programs

(collectively, the "***Employee Benefits***").  Approximately 24 Employees, including three (3) of the

Investor Employees, participate in the Employee Benefits programs.  On average, the Debtor pays

approximately $5,500 per month on account of such Employee Benefits.  These forms of benefits

and compensation are usual, customary, and necessary for the Debtor to retain its qualified

Employees and preserve the value of its estate.

17.     The Debtor owes approximately $1,300 attributable to prepetition Employee

Benefits obligations.

18.     As of the Petition Date, the Debtor does not believe that any individual Employee

is owed an amount in excess of the priority cap under sections 507(a)(4)-(5) of the Bankruptcy

Code.  For the avoidance of doubt, the Debtor does not request authority by this Motion to pay any

accrued amounts in excess of the statutory cap.

19.     Accordingly, the Debtor seeks authority, but not direction, to pay any accrued and

unpaid prepetition Employee Benefits obligations, up to the statutory cap, and to continue honoring

Employee Benefits in the ordinary course of business postpetition.

C.      **Direction to Banks**

20.     The Debtor funds payroll using bank account ending -4905 at EagleBank.  The

Debtor requests that all applicable banks and other financial institutions be authorized and directed

to receive, process, honor, and pay all checks and transfers drawn on the Debtor's payroll and

general disbursement accounts related to the Employee Obligations described herein, whether

presented before or after the Petition Date, provided that sufficient funds are on deposit in the

applicable accounts to cover such payments, and subject to the Budget.

## IV.     Basis for Relief

A.      **Cause Exists to Authorize the Debtor to Pay Prepetition Employee Obligations and Continue Honoring Employee Obligations in the Ordinary Course of Business**

21.     The Court may grant the relief requested herein pursuant to section 363 of the

Bankruptcy Code, which provides, in relevant part, that "[t]he [debtor], after notice and a hearing,

may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11

U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code further provides, in relevant part,

"[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out

the provisions of this title."

22.     Under section 507(a)(4)(A) of the Bankruptcy Code, claims of employees against

a debtor for "wages, salaries, or commissions, including vacation, severance, and sick leave pay,"

that are "earned within 180 days before" the date on which a debtor's chapter 11 case is

commenced are afforded priority unsecured status up to $17,150 per individual. 11 U.S.C.

§ 507(a)(4)(A).  Similarly, under section 507(a)(5) of the Bankruptcy Code, employees' claims for

contributions to certain employee benefits plans are also afforded priority unsecured status to the

extent of $17,150 per employee covered by such plans, less any amount paid pursuant to section 507(a)(4) of the Bankruptcy Code. *Id.* at § 507(a)(5).

23.     The Debtor believes that all of its Employee Obligations constitute priority claims under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.  To the extent such Employee Obligations constitute priority claims, the Debtor is required to pay such claims in full to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(B).  Thus, granting the relief sought herein only affects the timing of such payments, such that Employee claims are paid in the initial stages of these chapter 11 cases, rather than at the plan confirmation stage.

24.     The Debtor further submits that payment of the prepetition Employee Obligations is necessary and appropriate and is authorized under section 105(a) of the Bankruptcy Code pursuant to the "necessity of payment" doctrine.  This doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).

25.     Specifically, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175.  "Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177).  Furthermore, Bankruptcy Rule 6003 permits the

7

payment of prepetition obligations within the first 21 days of a case where doing so is "necessary to avoid immediate and irreparable harm."

26.     Courts have consistently permitted postpetition payment of certain prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See*, *e.g., Miltenberger v. Logansport Ry.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of . . . [crucial] business relations"); *In re Chateaugay Corp.*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987), *appeal dismissed* 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing payment of prepetition wages, salaries, expenses and benefits).  Indeed, "a *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *In re Structurlite Plastics Corp.*, 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988).

27.     The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  *See In re United Am., Inc.*, 327 B.R. 776, 782 (Bankr. E.D. Va. 2005) (acknowledging the doctrine of necessity "because otherwise there will be no reorganization and no creditor will have an opportunity to recoup any part of its pre-petition claim"); *In re Boston & Me. Corp.,* 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation).  Several courts apply the doctrine of necessity where payment of a prepetition claim (1) is "necessary for the successful reorganization of the debtor," (2) falls within "the sound business judgment of the debtor," and (3) will not "prejudice other unsecured creditors." *United Am.*, 327 B.R. at 782; *see also In re Universal Fin., Inc.*, 493 B.R. 735, 739–40 (Bankr. M.D. N.C. 2013) (applying the *United American* three-part

8

test); *In re Corner Home Care, Inc.*, 438 B.R. 122, 126 (Bankr. W.D. Ky. 2010) (same).  The

doctrine is frequently invoked early in a chapter 11 case, particularly in connection with those

chapter 11 sections that relate to payment of prepetition claims.

28.    Indeed, courts have consistently and appropriately been loath to interfere with

corporate decisions unless "that judgment is the product of bad faith, whim, or caprice." *See*

*Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985)

(applying the business judgment rule to a debtor's decision to reject an executory contract) ("unless

it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the

bankrupt's retained business discretion"); *see also In re Integrated Res., Inc.,* 147 B.R. 650, 656

(S.D.N.Y. 1992), *appeal dismissed,* 3 F.3d 49 (2d Cir. 1993) (internal quotations omitted).

29.    The Debtor submits that the requested relief represents a sound exercise of the

Debtor's business judgment, is necessary to avoid immediate and irreparable harm, and is justified

under sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 6003.

30.    This is because any delay in paying the Employee Obligations and related

administrative obligations will adversely impact the Debtor's relationships with its Employees and

could irreparably impair employee morale, dedication, confidence, and cooperation.  The Debtor's

business hinges on its store front operations, requiring in-person staffing by its Employees.  The

Employees' support for the Debtor's efforts in this Case is critical to success.  At this early stage,

the Debtor simply cannot risk the substantial damage to its business that would inevitably result if

the Debtor fails to honor the prepetition Employee Obligations.

31.    Absent an order granting the relief requested, many Employees will undoubtedly

suffer hardship and, in many instances, serious financial difficulties, as the amounts in question

are needed to enable certain Employees to meet their own personal financial obligations.  Without

the requested relief, the stability of the Debtor's business will be undermined, perhaps irreparably, by the possibility that otherwise loyal Employees will seek other employment alternatives. Consequently, all of the Debtor's creditors will benefit if the requested relief is granted.

32.     This Court and others routinely approve payment of employee prepetition claims for compensation, benefits and expense reimbursements similar to those described herein.  *See*, *e.g.*, *In re Allied Telecom Group, LLC*, Case No. 25-00599- (ELG) (Bankr. D. D.C. Dec. 31, 2025); *In re IBCS Mining, Inc.*, Case No. 14-61215 (KRH) (Bankr. W.D. Va. July 8, 2014); *In re James River Coal Co.*, No. 14-31848 (KRH) (Bankr. E.D. Va. Apr. 10, 2014); *In re AMF Bowling Worldwide, Inc.*, Case No. 12-36495 (KRH) (Bankr. E.D. Va. Nov. 14, 2012).

33.     Accordingly, the Debtor respectfully requests the Court authorize the Debtor to pay and honor certain pre-petition claims and obligations related to its Employee Obligations and to continue to honor such claims and obligations postpetition.

**B.     Banks Should be Authorized and Directed to Honor and Pay Checks Issued and Make Other Transfers to Pay the Prepetition Employee Obligations**

34.     The Debtor further requests that the Court authorize and direct the Debtor's banks to receive, process, honor and pay all prepetition and postpetition checks issued or to be issued, and fund transfers requested or to be requested, by the Debtor for the prepetition Employee Obligations.  The Debtor also seeks authority to issue new postpetition checks, or effect new fund transfers, for the prepetition Employee Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected and to reimburse its Employees or the applicable payee, as the case may be, for any fees or costs incurred by them in connection with a dishonored or voided check or funds transfer.

35.     As a result of the commencement of this Case, and in the absence of an order of the Court providing otherwise, the Debtor's checks, wire transfers and direct deposit transfers for the prepetition Employee Obligations may be dishonored or rejected by the Debtor's banks.

36.     The Debtor represents that each of these checks or transfers is or will be drawn on the Debtor's payroll and general disbursement accounts and can be readily identified as relating directly to payment of the prepetition Employee Obligations.  Accordingly, the Debtor requests that this Court authorize and direct the Debtor's banks to honor all checks and believes that prepetition checks and transfers other than those for the prepetition Employee Obligations will not be honored inadvertently.

### V.     Request for Waiver of Stay and Necessity for Immediate Relief

37.     To implement the foregoing successfully, the Debtor requests a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).

38.     Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . . "  If the Debtor is not permitted to continue its ordinary business operations by continuing to pay and provide benefits to Employees, and to assure its Employees that authority has been granted to honor all such claims, immediate and irreparable harm will result.  Accordingly, the relief requested herein is consistent with Bankruptcy Rule 6003.

## VI.    Notice

39.    The Debtor will serve notice of this Motion on: (i) the Office of the United States Trustee; (ii) all known secured creditors of the Debtor; (iii) Rippling; (iv) those creditors holding the 20 largest unsecured claims against the Debtor; and (v) those parties who receive NextGen CM/ECF notifications.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtor respectfully requests the Court grant the relief requested herein

and such other and further relief as is just and proper.

Dated: January 6, 2026
Richmond, Virginia

Respectfully submitted,

/s/ *Jennifer E. Wuebker*
Tyler P. Brown (*pro hac vice* forthcoming)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (*pro hac vice* forthcoming)
**HUNTON ANDREWS KURTH LLP**
951 E. Byrd Street
Richmond, Virginia 23219
Telephone:    (804) 788-8200
Facsimile:    (804) 788-8218
Email:        tpbrown@hunton.com
              jwuebker@hunton.com
              nmonico@hunton.com

*Proposed Counsel for the Debtor and Debtor in
Possession*