**HUNTON ANDREWS KURTH LLP**
Tyler P. Brown (*pro hac vice* forthcoming)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (*pro hac vice* forthcoming)
951 E. Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200

*Proposed Counsel for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re:<br><br>**Compass Coffee, LLC,**<br><br>Debtor. | Chapter 11<br><br>Case No. 26-00005 (ELG) |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTOR TO MAINTAIN ITS EXISTING CASH
MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS;
(II) WAIVING CERTAIN REQUIREMENTS OF THE U.S. TRUSTEE
OPERATING GUIDELINES; AND (III) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "***Debtor***"), by and through its undersigned counsel, hereby moves (the "***Motion***") for entry of interim and final orders, substantially in the form attached hereto as Exhibit A (the "***Proposed Order***"), (i) authorizing the Debtor to continue to maintain its existing Cash Management System (as defined below), Accounts (as defined below), and Business Forms (as defined below) in the ordinary course of business; (ii) waiving certain of the U.S. Trustee's Operating Guidelines; and (iii) granting certain related relief described herein.  In support thereof, the Debtor respectfully represents as follows:

**I.     Jurisdiction, Venue, and Predicates for Relief**

1.      The United States Bankruptcy Court for the District of Columbia (the "***Court***") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core matter within the meaning of 28 U.S.C. § 157(b)(2).

2. The predicates for the relief requested herein are sections 105 and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), rule 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rule 6004-1 of the Local Rules of the United States Bankruptcy Court for the District of Columbia (the "**Local Rules**").

## II. Background

### A. Chapter 11 Case

3. On January 6, 2026 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court initiating the above-captioned case (the "**Case**"). The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107 and 1108(a) of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or statutory committee of creditors has been appointed in this Case.

4. The Debtor owns and operates 25 cafés in premises it leases in Washington D.C., Maryland, and Northern Virginia. The Debtor filed this Case with the intention of selling substantially all of its assets or otherwise effectuating a value maximizing transaction. Additional information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this Case is set forth in the *Declaration of Michael Haft in Support of Debtor's Chapter 11 Petition and First Day Motions* (the "**M. Haft Declaration**") filed contemporaneously herewith, and incorporated herein by reference. Additional facts in support of the relief requested herein are set forth below.

### B. The Debtor's Cash Management System

5. The Debtor uses its existing cash management system and procedures (the "**Cash Management System**") to collect, manage, and disburse funds used in its operations in the ordinary course of business. To minimize the cost and disruption to the Debtor's business operations caused by this Case, and to maximize the value of its estate, it is vital that the Debtor maintain its existing

Cash Management System. The Cash Management System consists of nine (9) bank accounts (the "*Accounts*") across four (4) banks (the "*Banks*"):

| Bank | Account | Account Type/Purpose | Average Daily Balance |
|---|---|---|---|
| EagleBank | -4905 | Checking/Concentration Account | $400,000 |
| EagleBank | -9037 | Checking/Sales Tax | $100,000 |
| UBS | -1210 | Savings Accounts/Security Deposit | $10 |
| UBS | -5965 | Savings Accounts/Security Deposit | $19,000 |
| UBS | -5966 | Savings Accounts/Security Deposit | $17,000 |
| UBS | -5967 | Savings Accounts/Security Deposit | $0 |
| UBS | -0465 | Savings Accounts/Security Deposit | $2,100 |
| First Internet Bank of Indiana | -3424 | Deposit/Mobile Order Revenue Receipt | $300,000 |
| Capital One Bank, NA | -2872 | Deposit/Café Cash | $20,000 |

6. In the ordinary course, the Banks charge, and the Debtor pays, honors, or allows the deduction from the appropriate account, certain fees, costs, charges, and expenses (collectively, the "*Bank Fees*").

7. Additionally, the Debtor utilizes a credit card program (the "*Credit Card Program*") run by Rippling People Center, Inc. ("*Rippling*") in the ordinary course of business. Fourteen (14) of the Debtors employees are entitled to use credit cards issued pursuant to the Credit Card Program, primarily for certain recurring business expenses. The Credit Card Program has an

3

aggregate credit limit of $150,000. The average monthly balance of the Credit Card Program is $100,000. The balance as of the Petition Date is approximately $44,000.

8. The Debtor receives, transfers, and pays funds into, out of, and from the Accounts as follows:

  a. <u>Receipt of Revenue</u>:

     i. <u>In-Store Purchases</u>. In store purchases paid by credit card are processed using a system provided by Block, Inc. d/b/a Square. Funds processed through Square are deposited next day to EagleBank -4905. Cafés deposit cash from instore purchases to to Capital One -2872 and swept to EagleBank -4905 on a monthly basis

     ii. <u>Mobile App Purchases</u>. Mobile orders through the Debtor's mobile app are processed through ANSA Bank and deposited into First Internet Bank of Indiana -3424. First Internet Bank of Indiana -3424 is swept to EagleBank -4905 on a weekly basis.

     iii. <u>Third-Party App Purchases</u>. DoorDash, UberEats, and GrubHub platform orders are processed through their respective platforms and deposited next day to EagleBank -4905.

     iv. <u>Business Purchases</u>. Business to Business orders placed by distributors and restaurants are processed through Netsuite, the debtor's invoice management software, and paid on net-30 terms via an automatic clearinghouse transfer ("*ACH*") or check deposited to EagleBank -4905.

     v. <u>Website Purchases</u>. Ecommerce sales through the Debtor's website are processed through Shopify and funds are deposited next day to EagleBank -4905.

  b. <u>Payment of Expenses</u>:

     i. <u>Payroll</u>. Rippling, the Debtor's Credit Card Program administrator and payroll provider, as more fully described in the Debtor's motion seeking authority to pay prepetition wages, initiates weekly ACH transfers from Eagle Bank -4905 to fund payroll.

     ii. <u>Vendor Payments</u>. Vendors are typically paid on net-30 or cash on delivery terms via ACH transfer from EagleBank -4905.

    iii. <u>Utilities</u>.  Utilities are paid monthly from EagleBank -4905.

    iv. <u>Recurring Expenses</u>.  Recurring business expenses are typically paid using the Debtor's Credit Cards.  The Credit Card Program balance is paid monthly from EagleBank -4905.

  c. <u>Security Deposits</u>:

    i. The UBS Accounts were established in connection with certain of the Debtor's leases to hold security deposits.

9. In the ordinary course, the Debtor maintains current and accurate accounting records of its cash transactions.  The Cash Management System is integrated and depends on the electronic transfer of funds from numerous sources, including store fronts and online ordering platforms, into the Accounts, between the Accounts to support operations, and from the Accounts externally to pay operating expenses.

  **C.**  **U.S. Trustee Operating Guidelines**

10. The Chapter 11 Guidelines promulgated by the U.S. Department of Justice, Office of the United States Trustee, Eastern District of Virginia and District of Columbia, available at https://www.justice.gov/ust/ust-regions-r04/file/1533351/dl?inline (the "***U.S. Trustee Guidelines***")[1] generally require chapter 11 debtors to, among other things, deposit all estate funds into an account at a depository institution on a pre-approved list (any such institution, an "***Authorized Depository***") issued by the Office of the United States Trustee for the District of Columbia (the "***U.S. Trustee***") and create certain segregated accounts for payment of taxes.

11. Capital One Bank N.A. is the only Bank that is an Authorized Depository.  Each Bank is, however, insured by the Federal Deposit Insurance Corporation ("***FDIC***") up to the $250,000 limit.  The Debtor will have the Accounts designated as debtor in possession accounts

---

[1] The U.S. Trustee is authorized to issue the U.S. Trustee Guidelines pursuant to 28 U.S.C. § 586(a)(3).

5

as soon as possible after the Petition Date, but otherwise seeks to maintain its existing Cash Management System, notwithstanding its use of Banks that are not Authorized Depositories.

12. Additionally, in the ordinary course of business, the Debtor uses numerous business forms, including, without limitation, checks, business cards, letterhead, purchase orders, and invoices (the "*Business Forms*"). The U.S. Trustee Guidelines require that the Cash Management Banks print "Debtor in Possession" and the bankruptcy case number on checks issued after the Petition Date. To minimize expense and avoid both confusion and reputational damage on the part of employees, customers, and suppliers, the Debtor respectfully requests that the Court authorize it to continue to use all correspondence and Business Forms, as such forms were in existence immediately prior to the Petition Date without reference to the Debtor's status as a debtor in possession; provided, however, that upon depletion of the Debtor's Business Forms stock, the Debtor will obtain new Business Forms reflecting its status as a debtor in possession, the Debtor's bankruptcy case name and number, and the type of account. Such authorization will enable the Debtor to avoid the expense and delay of ordering new Business Forms.

### III.    Relief Requested

13. By this Motion, the Debtor seeks entry of interim and final orders: (i) authorizing the Debtor to continue to maintain its existing Cash Management System, Accounts, and Business Forms in the ordinary course of business; (ii) waiving certain of the U.S. Trustee's Operating Guidelines; and (iii) granting certain related relief described herein.

### IV.    Basis for Relief

**A.    The Debtor Should Be Granted Authority to Continue to Use Its Cash Management System and Maintain the Bank Accounts in the Ordinary Course**

14. The continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the

6

estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Bankruptcy courts routinely treat requests for authority to continue utilizing existing bank accounts and cash management systems as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). In addition, in granting such relief, courts recognize that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in relevant part*, 997 F.2d 1039, 1061 (3d Cir. 1993); *see also In re US Airways, Inc.*, No. 04-13819 (SMM) (Bankr. E.D. Va. Sept. 14, 2004); *In re NTELOS, Inc.*, No. 03-32094 (DOT) (Bankr. E.D. Va. March 4, 2003).

15. Here, requiring the Debtor to close the Accounts and to adopt a new cash management system during this Case would be time-consuming, administratively burdensome, and unnecessarily disruptive to the Debtor's operations, thus needlessly reducing the value of the Debtor's estate to the detriment of its creditors. The Debtor's Cash Management System collects revenue through numerous processes and platforms. Any disruption to these payment channels could result in the interruption of the Debtor's cash flow at a critical time and cause irreparable harm to the Debtor's estate. Further, the requirement under the U.S. Trustee Guidelines to open a new account and segregate funds for tax payments is unnecessary because the Debtor (i) already segregates funds for sales tax obligations in EagleBank -9037, (ii) is current on all tax obligations, and (iii) has appropriately budgeted for its future tax obligations.

16. Importantly, the Cash Management System provides the Debtor with the ability to track and report the location and amount of funds, which, in turn, allows the Debtor's management to track and control such funds, ensure cash availability, and reduce administrative costs.

Maintaining the current Cash Management System will also facilitate the Debtor's transition into chapter 11 by, among other things, minimizing delays in paying postpetition debts and eliminating administrative inefficiencies. Finally, maintaining the current Cash Management System will allow the Debtor's accounting employees to focus on their daily responsibilities and thereby maximize the value of the Debtor's estate. Any change to the Cash Management System could result in mis-directed receivables, overdrawn accounts or shortages, and liquidity issues if funds are trapped or new accounts are delayed in being established.

17. Finally, although certain of the Banks are not Authorized Depositories, all of the Banks are FDIC insured. Moreover, the average daily balances of the Accounts do not substantially exceed the FDIC insured limit such that creditors are bearing unreasonable risk. Indeed, the potential risk of a bank failure that would jeopardize funds on account in excess of the FDIC limit is minimal compared to the damage that would result from requiring the Debtor to close all of its Accounts and open new Accounts at Authorized Depositories, particularly given the number of payors and platforms already integrated into the Debtor's Cash Management System.

18. The Debtor also requests that the Court authorize the continued use of its Credit Cards in the ordinary course of business, including by paying the balance on the Credit Card Program when due, regardless of whether such charges were incurred before or after the Petition Date. In order to avoid disruption to the Debtor's ordinary business operations and Cash Management System, the Debtor believes that it is in the best interest of its estate and creditors for it to be permitted to continue using its Credit Card Program.

19. This Court and others routinely authorize debtors in chapter 11 cases to maintain their existing cash management systems. *See, e.g., In re Allied Telecom Group, LLC*, 25-00599 (ELG) [Docket No. 40] (Bankr. D. D.C. Dec. 31, 2025) (authorizing the Debtor to continue using

its existing cash management system on an interim basis); *In re Pier 1 Imports, Inc.,* Case No. 20-30805 (KRH), [Docket No. 344] (Bankr. E.D. Va. March 13, 2020) (authorizing the debtors to continue using the cash management system maintained by the debtors prepetition); *In re Gymboree Grp., Inc.*, No 19-30258 (KLP), [Docket No. 368] (Bankr. E.D. Va. Feb. 19, 2019) (same); *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP), [Docket No. 704] (Bankr. E.D. Va. Oct. 24, 2017) (same). The Debtor respectfully submits that similar authorization is appropriate this Case.

### B. Banks Should Be Authorized to Maintain, Service, and Administer the Accounts in the Ordinary Course of Business

20. The Debtor respectfully requests that the Court authorize the Banks to continue to maintain, service, and administer the Accounts as accounts of the Debtor as a debtor-in-possession, without interruption and in the ordinary course of business. Specifically, the Banks should be authorized to receive, process, honor, and pay any and all checks, ACH transfers and other instructions, and drafts payable through, drawn, or directed on such Accounts after the Petition Date. Notwithstanding the foregoing, any check, draft, or other notification that the Debtor advises the Banks to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Banks only to the extent authorized by order of the Court.

21. The Court should also authorize the Banks to accept and honor all representations from the Debtor as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the Petition Date. The Debtor also requests that, to the extent a Bank honors a prepetition check or other item drawn on any account either: (a) at the direction of the Debtor; (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) as a result of a mistake made despite implementation of customary item handling procedures, such Bank will not be deemed to be liable

to the Debtor, its estate, or any other party on account of such prepetition check or other item honored postpetition. The Debtor respectfully submits that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

22. The Debtor also respectfully requests that the Court authorize the Debtor to continue to pay the Bank Fees, including any prepetition Bank Fees. In light of the material benefit of maintaining the Cash Management System in order to avoid unnecessary disruption and costly delay, especially as compared to the modest cost of the Bank Fees, the Debtor respectfully submits that such relief is warranted under the circumstances. The Debtor further notes that the Banks will likely have setoff rights with respect to the Bank Fees. Thus, payment of prepetition Bank Fees will not alter any rights of unsecured creditors.

**C.    The Debtors Should Be Authorized to Use Their Existing Business Forms**

23. As described above, in the ordinary course of business, the Debtor uses numerous Business Forms. To avoid disruption of their Cash Management System and unnecessary expense, the Debtor requests that it be authorized to continue to use its Business Forms in the forms existing immediately before the Petition Date, without reference to its status as a debtor-in-possession.

24. In the absence of such relief, the estate will be required to bear unnecessary additional costs to re-order Business Forms, and with little benefit to the estate. The Debtor respectfully submits that those creditors with which it regularly conducts business will be aware of the Debtor's ongoing bankruptcy proceeding as a result of the notice procedures in this Case and the relatively small creditor body. Any perceived benefit of requiring the Debtor to replace its Business Forms is therefore outweighed by the burden and cost.

25. As soon as practicable after the Petition Date, the Debtor will include "debtor in possession" on the checks it prints electronically. Upon depletion of the Debtor's Business Forms, the Debtor will obtain new Business Forms stock reflecting its status as a debtor in possession.

26. This Court and others have permitted debtors to use their prepetition business forms without the "debtor in possession" label. *See, e.g., In re Allied Telecom Group, LLC*, 25-00599 (ELG) [Docket No. 40] (Bankr. D. D.C. Dec. 31, 2025) (authorizing the Debtor to continue using its existing business forms on an interim basis); *In re Pier 1 Imports, Inc*., Case No. 20-30805 (KRH), [Docket No. 344] (Bankr. E.D. Va. March 13, 2020) (authorizing debtors' continued use of preprinted check stock without a "Debtor in Possession" marking until the supply is exhausted); *In re Gymboree Grp., Inc*., No 19-30258 (KLP), [Docket No. 368] (Bankr. E.D. Va. Feb. 19, 2019) (same); *In re Toys "R" Us, Inc*., Case No. 17-34665 (KLP), [Docket No. 704] (Bankr. E.D. Va. Oct. 24, 2017) (same).

### V.    Request for Waiver of Stay and Necessity for Immediate Relief

27. To implement the foregoing successfully, the Debtor requests a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).

28. Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . . " If the Debtor is not permitted to continue its ordinary business operations through use of its existing Cash Management System and Business Forms, immediate

and irreparable harm will result, including the possible loss or misdirection of funds. Accordingly, the relief requested herein is consistent with Bankruptcy Rule 6003.

## VI. Notice

29. The Debtor will serve notice of this Motion on: (i) the U.S. Trustee; (ii) all known secured creditors of the Debtor; (iii) those creditors holding the 20 largest unsecured claims against the Debtor (iv) the Banks; (v) Rippling; and (vi) those parties who receive NextGen CM/ECF notifications.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtor respectfully requests the Court grant the relief requested herein and such other and further relief as is just and proper.

Dated: January 6, 2026
Richmond, Virginia

        Respectfully submitted,

        /s/ *Jennifer E. Wuebker*
        Tyler P. Brown (*pro hac vice* forthcoming)
        Jennifer E. Wuebker (D.C. Bar No. 1035039)
        Nicholas S. Monico (*pro hac vice* forthcoming)
        **HUNTON ANDREWS KURTH LLP**
        951 E. Byrd Street
        Richmond, Virginia 23219
        Telephone:   (804) 788-8200
        Facsimile:    (804) 788-8218
        Email:         tpbrown@hunton.com
                       jwuebker@hunton.com
                       nmonico@hunton.com

        *Proposed Counsel for the Debtor and Debtor in Possession*