**HUNTON ANDREWS KURTH LLP**
Tyler P. Brown (*pro hac vice* forthcoming)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (*pro hac vice* forthcoming)
951 E. Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200

*Proposed Counsel for Debtor and Debtor in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | Chapter 11 |
| **Compass Coffee, LLC,** | |
| Debtor. | Case No. 26-00005 (ELG) |

### DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS, AND (B) GRANTING RELATED RELIEF

The above-captioned debtor and debtor in possession (the "***Debtor***"), by and through its undersigned counsel, hereby moves (the "***Motion***") for entry of interim and final orders, substantially in the form attached hereto as Exhibit A (the "***Proposed Order***"), (i) authorizing it to make payments to Critical Vendors on account of certain Critical Vendor Claims (each as defined below), and (ii) granting related relief. In support thereof, the Debtor respectfully represents as follows:

### I.    Jurisdiction, Venue, and Predicates for Relief

1. The United States Bankruptcy Court for the District of Columbia (the "***Court***") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2).

2. The predicates for the relief requested herein are sections 105(a), 363, 503(b)(9), and 507 of title 11 of the United States Code (the "***Bankruptcy Code***"), rules 6003 and 6004 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rule 6004-1 of the Local Rules of the United States Bankruptcy Court for the District of Columbia (the "**Local Rules**").

## II.    Background

### A.    The Chapter 11 Case

3.      On January 6, 2026 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court initiating the above-captioned case (the "**Case**").  The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107 and 1108(a) of the Bankruptcy Code.  As of the date hereof, no trustee, examiner, or statutory committee of creditors has been appointed in this Case.

4.      The Debtor owns and operates 25 cafés in premises it leases in Washington D.C., Maryland, and Northern Virginia.  The Debtor filed this Case with the intention of selling substantially all of its assets or otherwise effectuating a value maximizing transaction.  Additional information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this Case is set forth in the *Declaration of Michael Haft in Support of Debtor's Chapter 11 Petition and First Day Motions* (the "**M. Haft Declaration**") filed contemporaneously herewith, and incorporated herein by reference.  Additional facts in support of the relief requested herein are set forth below.

### B.    Critical Vendors

5.      The Debtor has carefully analyzed its trade vendors, service providers, and software programs and identified four (4) vendors and several service providers that are key to its continued business operations.  Specifically, the Debtor's business relies on the uninterrupted supply of (i) high-quality green coffee beans from its importers, Café Imports Fulfillment, Excelco Tracing L.P., and Sucafina NA (the "**Importers**"), and (ii) Compass-branded coffee cups and supplies and certain of its other disposable supplies from Odeka (together with the Importers, the "**Critical

2

*Suppliers*"). The Importers provide the essential raw materials uniquely suited to the Debtor's signature roasts, blends, and single-origin offerings that drive revenue across cafés and wholesale operations. Odeka provides the custom-branded materials that drive brand recognition. The Debtor pays the Critical Suppliers on net-30 terms. As of the Petition Date, the Debtor owes approximately $1,140,000 to the Critical Suppliers (the "*Critical Supplier Claims*").

6. Additionally, the Debtor has three (3) employees that regularly perform carpentry and other construction related services for the Debtor, including building coffee bars and other fixtures for the Debtor's cafés. When the Debtor experiences a lull in its need for these services, it contracts for these employees to perform such services for third parties in their capacity as the Debtor's employees. In connection Debtor's employees performing such carpentry and other construction related services for unaffiliated third parties, the Debtor subcontracted with the following subcontractors (the "*Subcontractors*," and together with the Critical Suppliers, the "*Critical Vendors*") to perform supplemental services:

- Velasco Remodeling Services
- Innova
- DND Garage Doors
- Affordable Plumber LLC
- Home Deco Plus
- MC Interiors
- Games Hardwood Flooring
- Germantown Tools

7. As of the Petition Date, the Subcontractors are owed an aggregate of approximately $112,000 (the "*Subcontractor Claims*, and together with the Critical Supplier Claims, the "*Critical Vendor Claims*"). Absent payment of that expense, the Subcontractors may assert and may be entitled to a mechanic's lien on the improvements constructed and/or the premises where the work was performed. Paying the Subcontractors will allow the Debtor to be paid for its work on the project in an amount in excess of the payment to the Subcontractors.

8. Subject to the Court's approval, the Debtor intends to continue to pay the Critical Suppliers Claims in the ordinary course of business on net-30 terms, and pay the Subcontractor claims in full during the interim period.

### III.    Relief Requested

9. By this Motion, the Debtor requests entry of an order authorizing it to make payments to Critical Vendors on account of certain Critical Vendor Claims. Specifically, the Debtor requests authority to pay Critical Vendor Claims up to the amount of and not exceeding $1,260,000 (the "**Final Critical Vendor Cap**"), of which $275,000 (the "**Interim Critical Vendor Cap**") is being requested on an interim basis.

10. In addition, the Debtor requests that, if a Critical Supplier accepts payment for a Critical Supplier Claim and thereafter does not continue to provide goods on net-30 and other terms at least as favorable as those practices and programs in place in the 12-months prior to the Petition Date, or such other terms that are acceptable to the Debtor in its discretion, then (a) the Debtor may take any and all appropriate steps to cause such Critical Suppliers to repay payments made to it on account of its prepetition claim to the extent that such payments exceed the postpetition amounts then owing to such Critical Suppliers; (b) upon recovery by the Debtor, any prepetition claim of such Critical Supplier shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtor to such party, the Debtor may elect to re-characterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding postpetition balance and such Critical Supplier will be required to repay to the Debtor such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

### IV.    Basis for Relief

**A.    The Debtor Should be Authorized to Pay Selected Critical Vendor Claims Pursuant to Section 363(b)(1)**

11.    The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code, which provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides, in relevant part, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

12.    Further, section 503(b)(9) of the Bankruptcy Code provides administrative priority for the "value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which goods have been sold to the debtors in the ordinary course of such debtors business." 11 U.S.C. § 503(b)(9). These claims must be paid in full for the Debtors to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(A). The Debtor believes that much of the Critical Supplier Claims will qualify as 503(b)(9) claims as they relate to the recent delivery of goods to the Debtor. Payment of such claims now only provides such Critical Suppliers with what they would be entitled to receive under a chapter 11 plan. All creditors will benefit from the seamless transition of the Debtor's operations into bankruptcy. Allowing the relief requested herein with respect to the Critical Supplier Claims which may also qualify as section 503(b)(9) claims will not materially prejudice any parties in interest.

13.    The Debtor further submits that payment of the prepetition Critical Vendor Claims is necessary and appropriate and is authorized under section 105(a) of the Bankruptcy Code pursuant to the "necessity of payment" doctrine, which "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment

5

is essential to the continued operation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).

14. Specifically, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175. "Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177). Furthermore, Bankruptcy Rule 6003 permits the payment of prepetition obligations within the first 21 days of a case where doing so is "necessary to avoid immediate and irreparable harm."

15. Courts have consistently permitted postpetition payment of certain prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See*, *e.g., Miltenberger v. Logansport Ry.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of . . . [crucial] business relations"); *In re Chateaugay Corp.*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987), *appeal dismissed* 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing payment of prepetition wages, salaries, expenses and benefits). Indeed, "a *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *In re Structurlite Plastics Corp.*, 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988).

16. The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition

claims not explicitly authorized by the Bankruptcy Code. *See In re United Am., Inc.*, 327 B.R. 776, 782 (Bankr. E.D. Va. 2005) (acknowledging the doctrine of necessity "because otherwise there will be no reorganization and no creditor will have an opportunity to recoup any part of its pre-petition claim"); *In re Boston & Me. Corp.,* 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation). Several courts apply the doctrine of necessity where payment of a prepetition claim (1) is "necessary for the successful reorganization of the debtor," (2) falls within "the sound business judgment of the debtor," and (3) will not "prejudice other unsecured creditors." *United Am.*, 327 B.R. at 782; *see also In re Universal Fin., Inc.*, 493 B.R. 735, 739–40 (Bankr. M.D. N.C. 2013) (applying the *United American* three-part test); *In re Corner Home Care, Inc.*, 438 B.R. 122, 126 (Bankr. W.D. Ky. 2010) (same). The doctrine is frequently invoked early in a chapter 11 case, particularly in connection with those chapter 11 sections that relate to payment of prepetition claims.

17. Indeed, courts have consistently and appropriately been loath to interfere with corporate decisions unless "that judgment is the product of bad faith, whim, or caprice." *See Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985) (applying the business judgment rule to a debtor's decision to reject an executory contract) ("unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion"); *see also In re Integrated Res., Inc.,* 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed,* 3 F.3d 49 (2d Cir. 1993) (internal quotations omitted).

18. The Debtor submits that the requested relief represents a sound exercise of the Debtor's business judgment, is necessary to avoid immediate and irreparable harm, and is justified under sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 6003.

7

19. The Debtor depends on the goods provided by the Critical Suppliers. The Critical Suppliers are longstanding partners familiar with the Debtor's specific quality requirements and volume needs, and provide net-30 payment terms. Replacing the Critical Suppliers on short notice would be extraordinarily difficult, if not impossible, without severe disruption, including potential inability to roast and produce coffee products, leading to immediate loss of sales and customer goodwill. The harm that would be incurred from having to replace the Critical Suppliers would likely far outweigh the cost of payment of the their prepetition claims. Moreover, the Critical Suppliers represent only four (4) out of the numerous of vendors and suppliers that support the Debtor's operations. While each of these vendors and supplies is important to the Debtor's ongoing business operations, the Debtor has been judicious with its determination of which vendors and suppliers should receive "critical vendor" status, ensuring that it is appropriately balancing the cost with benefits to the estate.

20. Further, under appliable non-bankruptcy law, the Subcontractors may be able to assert mechanic's liens on the property they improved to secure payment of the charges or expenses incurred in connection with the work performed. In the event the Subcontract Claims are not paid, the Debtor likely will not be able to fulfill its obligations to the owner and may also not receive, or will be delayed in receiving, payment for the Subcontractor's respective work, including amounts in excess of what is owed to the Subcontractor. This could create additional liabilities for the Debtor and prevent the Debtor from realizing the potential revenue from subcontracting out these employees. Accordingly, paying the Subcontractor Claims is in the best interest of the estate.

21. Given the importance of the goods and services provided by the Critical Vendors, it is imperative that the Debtors be granted the flexibility and authority to satisfy the prepetition claims of the Critical Vendors up to the Interim Critical Vendor Cap and, if approved on a final

basis, the Final Critical Vendor Cap. Further, authorizing the payment of Critical Supplier Claims on the terms described above ensures that no Critical Supplier will receive a double recovery or an unfair trade advantage on account of its prepetition claim.

22. Accordingly, the Debtor respectfully requests the Court authorize, but not direct, the Debtor to pay Critical Vendor Claims up to the Interim Critical Vendor Cap, and if approved on a final basis, the Final Critical Vendor Cap.

### B. Banks Should be Authorized and Directed to Honor and Pay Checks Issued and Make Other Transfers to Pay the Prepetition Critical Vendor Claims

23. The Debtor further requests that the Court authorize and direct the Debtor's banks to receive, process, honor and pay all prepetition and postpetition checks issued or to be issued, and fund transfers requested or to be requested, by the Debtor for the prepetition Critical Vendor Claims. The Debtor also seeks authority to issue new postpetition checks, or effect new fund transfers, for the prepetition Critical Vendor Claims or to replace any prepetition checks or fund transfer requests that may be dishonored or rejected and to reimburse the Critical Vendors or the applicable payee, as the case may be, for any fees or costs incurred by them in connection with a dishonored or voided check or funds transfer.

### V. Request for Waiver of Stay and Necessity for Immediate Relief

24. To implement the foregoing successfully, the Debtor requests a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).

25. Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before

the filing of the petition . . . . " If the Debtor is not permitted to continue pay the Critical Vendor Claims, immediate and irreparable harm will result. Accordingly, the relief requested herein is consistent with Bankruptcy Rule 6003.

### VI.    Notice

26.    The Debtor will serve notice of this Motion on: (i) the U.S. Trustee; (ii) all known secured creditors of the Debtor; (iii) those creditors holding the 20 largest unsecured claims against the Debtor; (iv) the Critical Vendors; and (v) those parties who receive NextGen CM/ECF notifications.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtor respectfully requests the Court grant the relief requested herein and such other and further relief as is just and proper.

Dated: January 6, 2026
Richmond, Virginia

Respectfully submitted,

/s/ *Jennifer E. Wuebker*
Tyler P. Brown (*pro hac vice* forthcoming)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (*pro hac vice* forthcoming)
**HUNTON ANDREWS KURTH LLP**
951 E. Byrd Street
Richmond, Virginia 23219
Telephone:    (804) 788-8200
Facsimile:    (804) 788-8218
Email:    tpbrown@hunton.com
          jwuebker@hunton.com
          nmonico@hunton.com

*Proposed Counsel for the Debtor and Debtor in Possession*