**HUNTON ANDREWS KURTH LLP**
Tyler P. Brown (*pro hac vice* forthcoming)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (*pro hac vice* forthcoming)
951 E. Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200

*Proposed Counsel for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re:<br><br>**Compass Coffee, LLC,**<br><br>Debtor. | Chapter 11<br><br>Case No. 26-00005 (ELG) |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO CONTINUE ITS CUSTOMER PROGRAMS AND HONOR ALL OBLIGATIONS RELATED THERETO, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "***Debtor***"), by and through its undersigned counsel, hereby moves (the "***Motion***") for entry of interim and final orders, substantially in the form attached hereto as <u>Exhibit A</u> (the "***Proposed Order***"), authorizing, but not directing, the Debtor to continue Customer Programs and honor related Customer Program Obligations (each as defined below), whether such obligations arose before or after the Petition Date (as defined below), in the ordinary course of business. In support thereof, the Debtor respectfully represents as follows:

**I.     Jurisdiction, Venue, and Predicates for Relief**

1. The United States Bankruptcy Court for the District of Columbia (the "***Court***") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2).

2. The predicates for the relief requested herein are sections 105(a) and 363(b) and (c) of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rule 6004-1 of the Local Rules of the United States Bankruptcy Court for the District of Columbia (the "**Local Rules**").

## II. Background

### A. The Chapter 11 Case

3. On January 6, 2026 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court initiating the above-captioned case (the "**Case**"). The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107 and 1108(a) of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or statutory committee of creditors has been appointed in this Case.

4. The Debtor owns and operates 25 cafés in premises it leases in Washington D.C., Maryland, and Northern Virginia. The Debtor filed this Case with the intention of selling substantially all of its assets or otherwise effectuating a value maximizing transaction. Additional information regarding the Debtor's business, capital structure, and the circumstances leading to the commencement of this Case is set forth in the *Declaration of Michael Haft in Support of Debtor's Chapter 11 Petition and First Day Motions* (the "**M. Haft Declaration**") filed contemporaneously herewith, and incorporated herein by reference. Additional facts in support of the relief requested herein are set forth below.

### B. Customer Programs

5. Before the Petition Date and in the ordinary course of its business, the Debtor entered into certain contracts and established certain promotional programs for customers (the "**Customer Programs**") and incurred obligations as a result (the "**Customer Program Obligations**"). These programs include, but are not limited to, "Compass Rewards," gift cards,

and miscellaneous discounts, as well as other similar initiatives or arrangements that the Debtor has implemented to manage customer relationships and transactions effectively.

    a.    <u>Compass Rewards</u>

6.    The Debtor's rewards program, known as "Compass Rewards," is a tiered loyalty system for in-café purchases at Washington D.C. locations. Customers sign up in-store or through the Debtor's mobile device app and earn points on every dollar spent. Points earned are redeemable for free drinks, food, and other items. Customers earn points at different rates depending on their purchase history. Compass Rewards fosters repeat customer visits and loyalty through escalating benefits for frequent buyers.

    b.    <u>Gift Cards</u>

7.    The Debtor participates in a gift card program with inKind Card, Inc., inKind Credit Fund LP, and inKind Warehouse Facility, LLC (collectively, "***inKind***"). inKind purchases food and beverage credits from participating merchants at a discount. In return, inKind markets and sells those credits through its online platform, where customers buy credits that are redeemable at any inKind participating venue. Access to inKind's marketing channels and customer network increases the Debtor's market reach with little to no administrative burden on the Debtor.

8.    inKind purchased $240,000 worth of credits from the Debtor for $120,000 pursuant to that certain credit purchase agreement (the "***inKind Agreement***"), dated as of April 9, 2025.[1] Approximately $100,000 worth of credits (the "***Credits***") were outstanding as of the Petition Date.

---

[1] inKind filed a UCC-1 financing statement against the Debtor on September 17, 2025, purporting to hold a security interest in substantially all of the Debtor's assets. The Debtor has reviewed the inKind Agreement and the associated terms and conditions located on inKind's website and is unable to determine the grounds on which inKind asserts such a security interest. The Debtor expressly reserves all rights to contest the validity, priority, and/or perfection of any purported security interest held by inKind.

      c.      <u>Miscellaneous Customer Benefits</u>

9. The Debtor additionally offers discounts and various other miscellaneous perks to its customers. For example, the Debtor offers limited discounts for online ordering and free drinks for Compass Rewards members on their birthdays. From time to time, the Debtor also runs short-term promotions in connection with holidays, significant events, and the like.

10. The Debtor designed its Customer Programs, individually and as a whole, to increase customer engagement and loyalty, and therefore revenue.

### III.    Relief Requested

11. By this Motion, the Debtor requests entry of interim and final orders authorizing, but not directing, the Debtor to continue Customer Programs and honor all related Customer Program Obligations, whether such obligations arose before or after the Petition Date, in the ordinary course of business.

### IV.    Basis for Relief

**A.    The Debtor Should be Permitted to Continue the Customer Programs and Honor All Customer Program Obligations Pursuant to Section 363**

12. Section 363(c)(1) of the Bankruptcy Code provides that a chapter 11 debtor in possession "may enter into transactions . . . [or] may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The Bankruptcy Code does not define "ordinary course of business." *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992). Honoring the Customer Program Obligations on a postpetition basis is consistent with the Debtor's prepetition practices. Indeed, maintaining promotional Customer Programs is standard practice in most industries, particularly in service industries.

13. The Debtor believes it is permitted to continue to maintain the Customer Programs and honor the Customer Program Obligations because such actions are in the ordinary course of the Debtor's business.

14. Alternatively, to the extent that the Debtor's continuing to maintain the Customer Programs and honor the Customer Programs Obligations is outside of the ordinary course of business, section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1); *see In re Lionel Corp.*, 722 F.2d 1063, 1072 (2d Cir. 1983) ("The rule we adopt requires a judge determining a § 363(b) application expressly find from evidence presented before him at the hearing a good business reason to grant such application.")). To the extent the Customer Programs fall outside of the ordinary course of business, the Court should authorize the Debtor to continue the Customer Programs and honor Customer Program Obligations as a sound exercise of the Debtor's business judgment.

15. Honoring the Customer Program Obligations is necessary and appropriate and is authorized under section 105(a) of the Bankruptcy Code pursuant to the "necessity of payment" doctrine, which "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989).

16. Specifically, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175. "Under 11 U.S.C.

§ 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177). Furthermore, Bankruptcy Rule 6003 permits the payment of prepetition obligations within the first 21 days of a case where doing so is "necessary to avoid immediate and irreparable harm."

17.    Courts have consistently permitted postpetition payment of certain prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See*, *e.g., Miltenberger v. Logansport Ry.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of . . . [crucial] business relations"); *In re Chateaugay Corp.*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987), *appeal dismissed* 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing payment of prepetition wages, salaries, expenses and benefits). Indeed, "a *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *In re Structurlite Plastics Corp.*, 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988).

18.    The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See In re United Am., Inc.*, 327 B.R. 776, 782 (Bankr. E.D. Va. 2005) (acknowledging the doctrine of necessity "because otherwise there will be no reorganization and no creditor will have an opportunity to recoup any part of its pre-petition claim"); *In re Boston & Me. Corp.,* 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation). Several courts apply the doctrine of necessity where payment of a prepetition claim (1) is "necessary for the successful reorganization

6

of the debtor," (2) falls within "the sound business judgment of the debtor," and (3) will not "prejudice other unsecured creditors." *United Am.*, 327 B.R. at 782; *see also In re Universal Fin., Inc.*, 493 B.R. 735, 739–40 (Bankr. M.D. N.C. 2013) (applying the *United American* three-part test); *In re Corner Home Care, Inc.*, 438 B.R. 122, 126 (Bankr. W.D. Ky. 2010) (same). The doctrine is frequently invoked early in a chapter 11 case, particularly in connection with those chapter 11 sections that relate to payment of prepetition claims.

19. Indeed, courts have consistently and appropriately been loath to interfere with corporate decisions unless "that judgment is the product of bad faith, whim, or caprice." *See Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985) (applying the business judgment rule to a debtor's decision to reject an executory contract) ("unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion"); *see also In re Integrated Res., Inc.,* 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed,* 3 F.3d 49 (2d Cir. 1993) (internal quotations omitted).

20. The Debtor submits that the requested relief represents a sound exercise of the Debtor's business judgment, is necessary to avoid immediate and irreparable harm, and is justified under sections 363(b) and 363(c) of the Bankruptcy Code. If the Debtor is prohibited from honoring and maintaining its Customer Programs, consistent with past business practices, customers will likely lose confidence in and loyalty to the Debtor. The damage from refusing to honor these commitments far exceeds the costs associated with honoring prepetition commitments and continuing these practices. Further, the inKind credits the Debtor seeks authority to honor broaden the Debtor's market reach, bringing in customers that may not otherwise know of or frequent the Debtor's café and driving revenue long term. The relief requested herein will protect

the Debtor's goodwill during this critical time and enhance the Debtor's ability to generate revenue. Consequently, all of the Debtor's creditors will benefit if the requested relief is granted.

21. Any delay in the relief sought—indeed, even being forced to advise customers that further judicial relief is necessary—could result in the Debtor losing a portion of its customer base and severe harm to its estate. The requested relief is necessary to avoid immediate and irreparable harm to the Debtor and to its estate, which would far outweigh the cost of the Customer Programs.

22. Where retaining the loyalty and patronage of customers is critical to successful chapter 11 cases, courts routinely grant relief similar to that requested herein. *See, e.g.*, *In re Chinos Holdings, Inc.*, No. 20-32181 (KLP) (Bankr. E.D. Va. May 28, 2020) (granting debtors authority to continue to maintain and administer prepetition customer programs in the ordinary course of business and honor prepetition obligations related to same); *In re Pier 1 Imports, Inc.*, No. 20-30805 (KRH) (Bankr. E.D. Va. Mar. 17, 2020) (same); *In re Gemstone Solutions Group, Inc.*, No. 19-30258 (KLP) (Bankr. E.D. Va. Jan. 17, 2019) (same).

23. Accordingly, the Debtor requests authorization, but not direction, to maintain its Customer Programs and honor Customer Program Obligations, whether such obligations arose before or after the Petition Date, in the ordinary course of business.

### V.    **Request for Waiver of Stay and Necessity for Immediate Relief**

24. To implement the foregoing successfully, the Debtor requests a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).

25. Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . (b) a motion to use, sell, lease, or otherwise incur an obligation

regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . . " If the Debtor is not permitted to continue its ordinary business operations by continuing Customer Programs and honoring Customer Program Obligations, immediate and irreparable harm will result. Accordingly, the relief requested herein is consistent with Bankruptcy Rule 6003.

## VI.     Notice

26.     The Debtor will serve notice of this Motion on: (i) the U.S. Trustee; (ii) all known secured creditors of the Debtor; (iii) those creditors holding the 20 largest unsecured claims against the Debtor; (iv) inKind; and (iv) those parties who receive NextGen CM/ECF notifications

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtor respectfully requests the Court grant the relief requested herein and such other and further relief as is just and proper.

Dated: January 6, 2026
Richmond, Virginia

Respectfully submitted,

/s/ *Jennifer E. Wuebker*

Tyler P. Brown (*pro hac vice* forthcoming)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (*pro hac vice* forthcoming)
**HUNTON ANDREWS KURTH LLP**
951 E. Byrd Street
Richmond, Virginia 23219
Telephone:    (804) 788-8200
Facsimile:    (804) 788-8218
Email:    tpbrown@hunton.com
    jwuebker@hunton.com
    nmonico@hunton.com

*Proposed Counsel for the Debtor and Debtor in Possession*