**HUNTON ANDREWS KURTH LLP**
Tyler P. Brown (admitted *pro hac vice*)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (admitted *pro hac vice*)
951 E. Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200

*Proposed Counsel for Debtor and Debtor in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| In re: | Chapter 11 |
| **Compass Coffee, LLC,** | |
| **Debtor.** | **Case No. 26-00005 (ELG)** |

### DEBTOR'S MOTION FOR (A) ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES; (II) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (III) APPROVING STALKING HORSE PROTECTIONS; (IV) SCHEDULING BID DEADLINE, AUCTION DATE, AND SALE HEARING DATE; (V) APPROVING FORM OF NOTICE THEREOF; (B) ENTRY OF AN ORDER AFTER THE SALE HEARING (I) AUTHORIZING THE DEBTOR TO SELL ITS ASSETS; AND (II) AUTHORIZING THE DEBTOR TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS <u>AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF</u>

The above-captioned debtor and debtor in possession (the "***Debtor***"), by and through its undersigned counsel, hereby moves (the "***Sale Motion***"), for (1) entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "***Bidding Procedures Order***") (i) approving the bidding procedures (the "***Bidding Procedures***"),[1] substantially in the form attached to the Bidding Procedures Order, in connection with the sale of the Assets (as defined below); (ii) approving procedures for the assumption and assignment of executory contracts and unexpired leases and proposed cure costs related thereto, (iii) approving the Stalking Horse Protections provided to a

---

[1] Capitalized terms used herein and not otherwise defined shall be given the meaning ascribed to them in the Bidding Procedures.

Stalking Horse Purchaser (each as defined below); (iv) scheduling the bid deadline, auction date, and Sale Hearing date as set forth below; and (v) approving the form of notice thereof, and (2) entry of one or more order(s) (each, a "*Sale Order*"), at a later date, approving one or more sale(s) of the Debtor's Assets.  In support of the Sale Motion, the Debtor respectfully represents as follows:

## I. Preliminary Statement

1.      The primary goal of this Case is to consummate a value-maximizing transaction for the benefit of the Estate and all stakeholders.  Indeed, as set forth in the M. Haft Declaration (as defined below) and on the record at the first day hearings in this proceeding, the Debtor began its efforts to pursue a sale of its assets long prior to the Petition Date.  The Debtor has expended considerable effort to date to attract a potential Stalking Horse Purchaser (as defined below) and to prepare for and develop a sale process that will result in the highest and best offer for the Debtor's assets.

2.      Since filing this Case, with the assistance of its professionals, the Debtor has secured use of cash collateral to continue operating in the ordinary course of business while pursuing a potential sale.  The Debtor has also secured debtor-in-possession financing to support and back stop the sale process.  As a result, the Debtor can provide assurances to potential bidders that is has the financial wherewithal to conduct a sale process and to ultimately consummate a value-maximizing transaction.

3.      By this Sale Motion, the Debtor seeks entry of a Bidding Procedures Order as well as one or more Sale Orders.  Specifically, following an initial hearing (the "*Bidding Procedures Hearing*"), the Debtor seeks entry of the Bidding Procedures Order: (i) approving bidding procedures, substantially in the form attached thereto, (ii) approving procedures for the assumption and assignment of executory contracts and unexpired leases and the resolution of proposed cure

2

costs related thereto, (iii) approving the bid protections payable to a Stalking Horse Purchaser (as defined below), if any, (iv) scheduling a bid deadline, auction date, and sale hearing date; (v) approving the form and manner of notice thereof, and (vi) granting related relief.

4. Following a final hearing (the "**Sale Hearing**") to be scheduled by the Court as set forth in the Bidding Procedures Order, the Debtor seeks entry of one or more Sale Orders: (i) authorizing the Debtor to sell substantially all of its assets (the "**Assets**" or the "**Purchased Assets**"), as an enterprise, or in any combination, to the Stalking Horse Purchaser (if any) or other Successful Bidder (as defined below) free and clear of liens, claims and encumbrances; (ii) authorizing the Debtor to assume and assign certain executory contracts and unexpired leases to the Stalking Horse Purchaser or other Successful Bidder; and (iii) granting related relief.

## II.  Jurisdiction, Venue and Predicates for Relief

5. The United States Bankruptcy Court for the District of Columbia (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core matter within the meaning of 28 U.S.C. § 157(b)(2).

6. The predicates for the relief requested herein are sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended and modified, the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1 and 6004-1 of the Local Rules of the United States Bankruptcy Court for the District of Columbia (the "**Local Rules**").

## III.  BACKGROUND

### A.  The Chapter 11 Case

7. On January 6, 2026 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court initiating the above-captioned case

3

(the "*Case*").  The Debtor continues to operate its business and manage its properties as a debtor

in possession pursuant to sections 1107 and 1108(a) of the Bankruptcy Code.  As of the date hereof,

no trustee, examiner, or statutory committee of creditors has been appointed in this Case.

8.      The Debtor owns and operates 25 cafés in premises it leases in Washington D.C.,

Maryland, and Northern Virginia.  The Debtor filed this Case with the intention of selling

substantially all of its assets or otherwise effectuating a value-maximizing transaction.  Additional

information regarding the Debtor's business, capital structure, and the circumstances leading to

the commencement of this Case is set forth in the *Declaration of Michael Haft in Support of*

*Debtor's Chapter 11 Petition and First Day Motions* [Docket No. 16] (the "*M. Haft Declaration*"),

and incorporated herein.  Additional facts in support of the Sale Motion are set forth below.

9.      The Debtor is party to numerous executory contracts and unexpired leases in

connection with its cafe operations, including, *inter alia*, leases for its café locations and service

and vendor supply agreements needed to support ongoing business operations.  Collectively, these

contracts and leases are integral parts of the Assets to be marketed for sale in accordance with the

Bidding Procedures, and add substantial value to the Debtor's business.

**B.      Proposed Sale Process and Stalking Horse Protections**

10.      Prior to the Petition Date, the Debtor has engaged in negotiations with numerous

parties interested in considering a transaction with the Debtor through a sale of all of or

substantially of all its assets related to what it believes are the most desirable café locations (the

"*Assets*"), including all of the operating assets associated with such café locations.  For the last

two months, both before and after the Petition Date, the Debtor has engaged in advance discussions

with one such prospective purchaser that has been performing final due diligence on the Assets to

be included in such a sale transaction.  In addition, since the Petition Date, the Debtor has continued

to provide data room access to other potential purchasers, and provide new suitors with data room access, to conduct diligence into a potential bid for some or all of the Assets.  The Debtor is desirous of the Court approving of a sale process that would allow the Debtor to pursue either a sale of substantially all of the Assets to one buyer, or sales of any combination of the Assets, including individual or subsets of the Debtor's cafes, to multiple buyers.

11.    The Debtor has not yet selected a Stalking Horse Purchaser for the Assets, or any combination of the Assets, despite lengthy negotiations with one potential purchaser.  Nonetheless, the Debtor wishes to proceed with a sale process irrespective of whether a Stalking Horse Purchaser is selected, with the option of selecting a Stalking Horse Purchaser, if appropriate.

12.    As more fully set forth in the proposed Bidding Procedures and Bidding Procedures Order, the Debtor requests that it be authorized, but not directed, to select a bidder to act as a stalking horse (a "***Stalking Horse Purchaser***"), and to enter into an asset purchase agreement with any such Stalking Horse Purchaser (a "***Stalking Horse Agreement***") for the sale of the Assets. The Debtor requests authority to designate a Stalking Horse Purchaser for the Assets, or any combination of the Assets, by January 22, 2026 (the "***Stalking Horse Selection Deadline***").

13.    If the Debtor designates a Stalking Horse Purchaser, the Debtor will file and serve a notice (the "***Stalking Horse Selection Notice***") as soon as reasonably practicable after selecting the Stalking Horse Purchaser *provided*, *however*, that such notification shall be filed not  later than January 23, 2026.  The Stalking Horse Selection Notice shall: (i) contain information regarding (a) the identity of the Stalking Horse Purchaser, (b) its bid for the Assets (a "***Stalking Horse Bid***"), and (c) any bid protections payable to the Stalking Horse Purchaser (the "***Stalking Horse Protections***"); and (ii) attach the proposed Stalking Horse Agreement.

14.     In accordance with the Bidding Procedures, the Stalking Horse Protections may (a) provide a breakup fee (the "***Breakup Fee***") and agree to reimburse reasonable and documented out-of-pocket fees and expenses of the Stalking Horse Purchaser (the "***Expense Reimbursement***") in an aggregate amount not to exceed four percent (4%) of the Stalking Horse Purchaser's proposed cash purchase price and (b) provide minimum overbid protections in an amount not to exceed $50,000, all as reasonably acceptable to the Debtor, after consultation with the Consultation Parties.  Except as set forth below, no other Qualified Bidder or party submitting a Bid shall be entitled to any termination or "break up" fee, expense reimbursement, or any other bidding protections in connection with the submission of a Bid, unless otherwise granted by the Debtor, with the consent of the Consultation Parties, and approved by an order of the Court.

15.     All parties in interest will have until **4:00 p.m. ET on January 30, 2026** (the "***Stalking Horse Objection Deadline***") to file objections with the Court (each, a "***Stalking Horse Objection***") to the designation of the Stalking Horse Purchaser or any of the terms of the Stalking Horse Agreement, including to any of the proposed Stalking Horse Protections.

16.     If a timely Stalking Horse Objection is filed and served in accordance with the Bidding Procedures Order, the proposed designation of the Stalking Horse Purchaser, and the proposed Stalking Horse Protections, will not be deemed approved until either the Stalking Horse Objection is resolved by agreement of the objecting party and the Debtor or by order of the Court.

17.     If no timely Stalking Horse Objection is filed and served in accordance with the Bidding Procedures Order, the Stalking Horse Purchaser shall be deemed approved and the proposed Stalking Horse Protections shall be deemed approved without further order of the Court immediately upon the expiration of the Stalking Horse Objection Deadline.

18.     In order to ensure that the Debtor's estate realizes the maximum value for the Assets, the Debtor intends to "test" the marketplace in accordance with the Bidding Procedures. Thus, any Stalking Horse Bid provided for in a Stalking Horse Agreement will be subject to higher or better bids in accordance with the Bidding Procedures.  Likewise, if and to the extent any party wishes to bid on and/or purchase any combination of the Assets, such party shall be required to include a separate allocation of funds attributable to each respective café or other asset category, so that the Debtor is able to compare such bid(s) on an 'apples-to-apples' basis with any other bids.

## IV.  Relief Requested

19.     By this Sale Motion, the Debtor seeks entry of the Bidding Procedures Order: (i) approving the Bidding Procedures in connection with the sale of the Assets; (ii) approving procedures for the assumption and assignment of executory contracts and unexpired leases and proposed cure costs related thereto, (iii) approving the Stalking Horse Protections payable to the Stalking Horse Purchaser, if any; (iv) scheduling bid deadline(s), auction date(s), and Sale Hearing date(s) as set forth below; and (v) approving the form of notice thereof.  The Bidding Procedures contemplate the following schedule, subject to Court approval, in connection with the sale process:

| Date | Event |
|---|---|
| January 22, 2026 | Deadline for Debtor to Designate a Stalking Horse Purchaser |
| January 23, 2026 | Deadline for Debtor to file Stalking Horse Selection Notice |
| January 23, 2026 | Deadline for Debtor to serve Contract Notice |
| January 30, 2026 at 4:00 p.m. ET | Stalking Horse Objection Deadline |
| February 6, 2026 at 4:00 p.m. ET | Contract Objection Deadline |
| February 12, 2026 at 4:00 p.m. ET | Deadline to Submit Bids |

7

| Date | Event |
|------|-------|
| February 16, 2026 at 4:00 p.m. ET | Deadline for Debtor to Qualify Bids |
| February 17, 2026 at 10:00 a.m. ET | Auction (if any) |
| February 18, 2026 | Deadline for Debtor to file Notice of Auction Results |
| February 19, 2026 at 4:00 p.m. ET | Sale Objection Deadline and Post-Auction Objection Deadline |
| February 26, 2026 at 11:00 a.m. ET | Sale Hearing |

20.    In addition, if the Debtor selects a Successful Bidder(s), the Debtor seeks, at the conclusion of the Sale Hearing(s), entry of one or more Sale Order(s): (a) authorizing the sale of the applicable Assets to the Stalking Horse Purchaser or other Successful Bidder, as applicable, with such sale being free and clear of all liens, claims, and encumbrances, and with such Stalking Horse Purchaser or Successful Bidder being deemed a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code; (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases which may be designated as Assigned Contracts to the Stalking Horse Purchaser or other Successful Bidder; and (c) granting certain related relief.

**A.    Proposed Bidding Procedures**

21.    Pursuant to this Sale Motion, the Debtor seeks to sell substantially all of its Assets, as well as assume and assign certain executory contracts and unexpired leases.  Pursuant to Bankruptcy Rule 6004(f), sales of property outside the ordinary course of business may be by private sale or auction.  The Debtor believes that good cause exists to sell the Assets to a Stalking Horse Purchaser, or if necessary, to another Successful Bidder, after conducting an Auction.  An Auction conducted substantially in accordance with the proposed Bidding Procedures will enable

the Debtor to obtain the highest and best offer(s) for the Assets and thereby maximize the value of the Assets for the benefit of the Debtor's estate and creditors.

22.     Based on the progress achieved thus far in the Debtor's marketing negotiations with one potential purchaser and the continued interest of other parties in investigating a potential bid for the Debtor's Assets, the Debtor has determined, in its reasonable business judgment, that having the flexibility to select a Stalking Horse Purchaser for the Assets, or any combination of the Assets, will enhance the Debtor's ability to maximize value.  In particular, the Debtor believes that such flexibility, in connection with the Bidding Procedures, could incentivize a party to serve as the Stalking Horse Purchaser, thereby creating a "floor" price.

23.     The Debtor also submits that the Bidding Procedures attached to the proposed Bidding Procedures Order will afford interested parties a reasonable opportunity to evaluate whether to submit a bid for the Assets.  The Bidding Procedures ensure that all interested parties will have access to information and an opportunity to bid on the Assets at the Auction.  This, in turn, will ensure that the Debtor achieves the highest and best offer for the Assets at the Auction. Accordingly, the Debtor requests that the Court enter the proposed Bidding Procedures Order submitted herewith and approve the Bidding Procedures attached thereto as <u>Exhibit 1</u>.

**B.     <u>Approval of Sale Notice Procedures</u>**

24.     Under Bankruptcy Rule 2002(a) and (c), the Debtor is required to notify its creditors of the proposed sale of the Assets, including a disclosure of the time and place of the Auction, the terms and conditions of the sale, and the deadline for filing any objections thereto. The proposed sale notice attached hereto as <u>Exhibit B</u> (the "***Sale Notice***") contains the type of information required under Bankruptcy Rule 2002(c), and also includes information on the Bidding Procedures.  The Debtor's proposed Sale Notice procedures are as follows:

(i)     The Debtor shall serve the Sale Notice, together with the Bidding Procedures, within three (3) business days after the entry of the Bidding Procedures Order, upon the following parties or their respective counsel, if known: (a) all secured creditors; (b) the DIP Lender; (c) the Committee, if one is appointed; (d) the U.S. Trustee; (e) all other parties known to the Debtor who have asserted liens, claims, or interests in or against any of the Assets; (f) all Potential Bidders known to have expressed an interest in a sale of all or any combination of the Assets; (g) federal, state, and local taxing authorities where the Assets are located; (h) all of the counterparties to the Assigned Contracts that may be assumed and assigned as part of a Sale; and (i) all parties that have requested notice pursuant to Bankruptcy Rule 2002.

(ii)    Any objections to the relief requested in the Sale Motion as relates to the sale of the Purchased Assets to the Stalking Horse Purchaser or Successful Bidder, as applicable (each, a "*Sale Objection*") must: (a) set forth in writing and describe with specificity the factual and legal basis for the Sale Objection; (b) comply with the Bankruptcy Rules and Local Rules; (c) be filed with the Clerk of the Court by no later than **4:00 p.m. ET on February 19, 2026** (the "*Sale Objection Deadline*"); and (d) be served, so as to be actually received on or before the Sale Objection Deadline by the service parties (the "*Service Parties*") consisting of: (i) counsel for the Debtor, Hunton Andrews Kurth LLP, Attn: Tyler P. Brown, Esq., Riverfront Plaza, East Tower, 951 E. Byrd Street, Richmond, Virginia 23219, email: tpbrown@hunton.com, (ii) counsel for the DIP Lender, Redmon Peyton & Braswell, LLP, Attn: Robert M. Marino, Esq. 510 King Street, Suite 301, Alexandria, Virginia 23214, email: rmmarino@rpb-law.com, (iii) counsel for the Committee, if one is appointed in this case; and (iv) the U.S. Trustee.

(iii)   Any person or entity that fails to file a Sale Objection by the Sale Objection Deadline shall be deemed to consent to the sale of the Purchased Assets to the Stalking Horse Purchaser or other Successful Bidder, as applicable, and the other relief requested in the Sale Motion for purposes of Bankruptcy Code section 363(f). Further, the failure to file a Sale Objection by the Sale Objection Deadline shall be a bar to the assertion, at the Sale Hearing or thereafter, of (i) any objection to the Sale Motion; (ii) the sale of the Purchased Assets free and clear of any liens, claims, and encumbrances; and (iii) the Debtor's consummation and performance of the Stalking Horse Agreement or other Asset Purchase Agreement, as applicable.

(iv)    If a Sale Objection is timely filed by the Sale Objection Deadline and the relevant parties are unable to resolve the Sale Objection prior to the commencement of the Sale Hearing, such Sale Objection will be adjudicated at the Sale Hearing, or at such other date and time as may be fixed by the Court.

(v)     Any objections to (i) the manner in which the Auction was conducted and the selection of the Successful Bidder, or (ii) if a Stalking Horse Purchaser is not the Successful Bidder, solely with respect to non-debtor counterparties to proposed Assigned Contracts, the specific identity of and adequate assurance of future performance provided by the Successful Bidder (any such objection, an "*Auction*

10

*Objection*") must (a) set forth in writing and describe with specificity the factual and legal basis for the Auction Objection; (b) comply with the Bankruptcy Rules and Local Rules; (c) be filed with the Clerk of the Court by no later than **4:00 p.m. ET on February 19, 2026** (the "*Auction Objection Deadline*"); and (d) be served so as to be actually received on or before the Auction Objection Deadline by the Service Parties.

(vi)     The failure of any person or entity to file an Auction Objection by the Auction Objection Deadline shall be deemed to be consent to the Successful Bidder and the manner in which the Auction was conducted.

(vii)    If an Auction Objection is timely filed by the Auction Objection Deadline and the relevant parties are unable to resolve the Auction Objection prior to the commencement of the Sale Hearing, such Auction Objection will be adjudicated at the Sale Hearing, or at such other date and time as may be fixed by the Court.

25.     The Debtor submits that the Sale Notice and the method of service proposed herein constitute good, proper, and adequate notice of the sale of the Assets and the proceedings to be conducted with respect thereto.  This information will enable interested parties to participate in the Auction and Sale Hearing, if they choose.  Accordingly, the Debtor requests that the Court approve the form and content of, and procedures related to, the Debtor's proposed Sale Notice.

**C.     Approval of Cure Notice Procedures**

26.     To facilitate and effectuate the sale of its Assets, the Debtor may be required to assume and assign to a Stalking Horse Purchaser or other Successful Bidder certain executory contracts and unexpired leases (the "*Assigned Contracts*").  The proposed cure notice attached hereto as <u>Exhibit C</u> (the "*Cure Notice*") contains detailed information regarding the procedures with respect to the potential Assigned Contracts and affords counterparties to such executory contracts and unexpired leases reasonable notice and opportunity to object.  The Debtor's proposed Cure Notice procedures are as follows:

(i)      The Debtor shall cause the Cure Notice to be served on any counterparties to the proposed Assigned Contracts, as set forth in Schedule 1 attached to the Cure Notice, not later than January 23, 2026.  The Cure Notice shall identify the applicable contract(s) and/or lease(s) and provide such counterparties with notice of the

11

amount that the Debtor proposes to cure any defaults upon assumption and assignment as required under Bankruptcy Code section 365 (the "***Cure Amount***").

(ii)    Any objections to the assumption and assignment of any executory contract or unexpired lease identified in the Cure Notice or to the proposed Cure Amounts set forth in the Cure Notice (a "***Contract Objection***"), must: (a) set forth in writing and describe with specificity the factual and legal basis for the Contract Objection; (b) comply with the Bankruptcy Rules and Local Rules; (c) be filed with the Clerk of the Court no later than **4:00 p.m. (ET) on February 6, 2026** (the "***Contract Objection Deadline***"); and (d) be served, so as to be actually received on or before the Contract Objection Deadline by the Service Parties.

(iii)    If a counterparty to an executory contract or unexpired lease set forth on Schedule 1 of the Cure Notice fails to file a Contract Objection by the Contract Objection Deadline, then the Cure Amount set forth in the Cure Notice will be binding upon such contract counterparty, and all parties in interest, for all purposes in the Case and otherwise. All such counterparties to the executory contracts and unexpired leases on Schedule 1 of the Cure Notice will: (a) be forever barred from objecting to the Cure Amounts with respect to such executory contracts and unexpired leases and the Cure Amounts identified in the Cure Notice with respect to such executory contracts and unexpired leases shall be the only amounts necessary under section 365(b) of the Bankruptcy Code to cure all pre-petition monetary defaults thereunder if the applicable Stalking Horse Purchaser or Successful Bidder ultimately decides to have such executory contracts and unexpired leases assumed by the Debtor and assigned to it as Assigned Contracts; (b) be deemed to have consented to the assumption and assignment, as applicable, if the applicable Stalking Horse Purchaser or other Successful Bidder designates such contract or lease as an Assigned Contract; and (c) be forever barred and estopped from asserting or claiming against the Debtor or the Stalking Horse Purchaser or Successful Bidder, as applicable, that any additional pre-petition amounts are due, other pre-petition defaults exist, other conditions to assignment must be satisfied under such executory contracts or unexpired leases, or that there is any objection or defense to the assumption and assignment of the applicable Assigned Contract.

(iv)    If a counterparty to an executory contract or unexpired lease set forth on Schedule 1 of the Cure Notice timely files a Contract Objection, whether based on the proposed Cure Amount or any other alleged cause or claim, then, to the extent the relevant parties are unable to resolve the Contract Objection prior to the commencement of the Sale Hearing, such Contract Objection will be adjudicated at the Sale Hearing, or at such other date and time as may be fixed by the Court.

(v)    If at any time after the Cure Notice is served (but prior to the sale pursuant to a Stalking Horse Agreement or other Asset Purchase Agreement) the Debtor: (a) amends Schedule 1 to the Cure Notice to include additional executory contracts or unexpired leases; or (b) receives notice from the Stalking Horse Purchaser, if any, or Successful Bidder that additional prepetition executory contracts and or

unexpired leases are to be designated as Assigned Contracts under the Stalking Horse Agreement or Asset Purchase Agreement, then the Debtor shall serve a supplemental cure notice (each, a "***Supplemental Cure Notice***") on the counterparty  to each such contract or lease (each, a "***Previously Omitted Contract***") within two (2) business days of the amendment to the Cure Notice, or the receipt of notice of designation as an Assigned Contract.  Each such Supplemental Cure Notice shall set forth the same information as required in the Cure Notice.  A Stalking Horse Purchase or Successful Bidder may designate additional contracts or leases to be assumed and assigned, or remove contracts and leases from the list of Assigned Contracts, up to two (2) business days prior to the Closing of the related Sale, in accordance with any Successful Bid.

(vi)     If a counterparty to a Previously Omitted Contract fails to file a Contract Objection within fourteen (14) days of the Supplemental Cure Notice, then the Cure Amount set forth in the Supplemental Cure Notice will be binding upon such contract counterparty, and all parties in interest, for all purposes in the Case and otherwise, to the extent set forth in subsection (iii) above.

(vii)    If a counterparty to a Previously Omitted Contract timely files a Contract Objection, whether based on the proposed Cure Amount or any other alleged cause or claim, then, to the extent the relevant parties are unable to resolve the Contract Objection prior to the commencement of the Sale Hearing, such Contract Objection will be adjudicated at the Sale Hearing, or at such other date and time as may be fixed by the Court.

(viii)   For the avoidance of doubt, the inclusion of an executory contract or unexpired lease on Schedule 1 of the Cure Notice to assume shall not obligate the Debtor to assume and assign any executory contract or unexpired lease listed thereon, and the rights of the Debtor, the Stalking Horse Purchaser, or Successful Bidder to modify the list of Assigned Contracts, including to remove any contracts or leases from such list, are expressly reserved.  Only those executory contracts and unexpired leases designated at closing will be assumed and assigned to the Stalking Horse Purchaser or Successful Bidder, as applicable.

27.     The Debtor submits that the Cure Notice (and Supplemental Cure Notice, if applicable) and the method of service proposed herein constitute good, proper and adequate notice of the potential assumption and assignment of executory contracts and unexpired leases and any corresponding Cure Amount. This information will provide contract and lease counterparties with ample notice and opportunity to object pursuant to section 365 of the Bankruptcy Code.

Accordingly, the Debtor requests that the Court approve the form and content of, and procedures related to, the Debtor's proposed Cure Notice (and Supplemental Cure Notice, if applicable).

## V.  Basis for Relief

### A.  The Bidding Procedures are Fair and are Designed to Maximize the Value Received for the Purchased Assets Given the Financial Exigencies Facing the Debtor

28.     The Bidding Procedures proposed herein are designed to maximize the value received for the Assets by facilitating a competitive bidding process in which all Potential Bidders are encouraged to participate and expend the time, energy, and resources necessary to submit competing bids, taking into account the financial exigencies facing the Debtor.  The Debtor believes that the Bidding Procedures, as set forth herein, provide Potential Bidders with sufficient notice and opportunity to complete due diligence and to acquire the information necessary to submit a timely and informed bid.  The Debtor believes that the proposed timeline, including the period between the filing of this Sale Motion and the Bid Deadline, provides a fair and reasonable means for maximizing the return from a sale of the Assets, especially given the Debtor's current liquidity and the continued cost of administration of this Case during the sale process.

29.     At the same time, the Bidding Procedures provide the Debtor with the opportunity to consider all competing offers and to select the highest or best offer for the completion of one or more sale(s) of each of its Assets.  The Bidding Procedures and Auction will ensure that the consideration ultimately paid for the Purchased Assets will be fair and reasonable, and that the sale(s) consummated will be in the best interest of the Debtor's estate and creditors.  As a result, there are sound business reasons to approve the Bidding Procedures.

**B.**  **The Stalking Horse Protections are Appropriate and in the Best Interests of Creditors**

30.    If the Debtor identifies a Stalking Horse Purchaser for its Assets, the Debtor respectfully submits that the Stalking Horse Protections set forth in the Stalking Horse Agreement will be fair and reasonable and designed to maximize value in a competitive bidding process.

31.    All parties in interest will be sufficiently apprised of any Stalking Horse Protections if and when a Stalking Horse Selection Notice is filed.  By establishing a deadline to designate a Stalking Horse Purchaser and permitting all parties in interest to file objections, if needed, the rights of all parties to object to approval of the Stalking Horse Protections are preserved. Moreover, by requiring the Debtor to file notice of any Stalking Horse Purchaser, the Debtor commits to providing parties in interest with sufficient information to evaluate the proposed Stalking Horse Purchaser, Stalking Horse Agreement, and Stalking Horse Protections.

32.    Additionally, the Bidding Procedures limit the Stalking Horse Protections that the Debtor may provide.  Specifically, the Debtor agrees that any Breakup Fee and Expense Reimbursement shall not exceed an aggregate amount of four percent (4%) of the Stalking Horse Purchaser's proposed cash purchase price, and any overbid protections cannot exceed $50,000.  In this way, parties in interest already know the maximum amount of any Stalking Horse Protections and can further ensure that such protections do not overcome the value of any Sale.  Accordingly, as set forth herein, the Debtor submits that the Stalking Horse Protections described in the Bidding Procedures are reasonable and appropriate and should be approved by the Court.

33.    Historically, bankruptcy courts have approved bidding incentives, including breakup fees awarded to an initial bidder, or "stalking horse," in the event of a successful overbid based on the business judgment of the debtor.  *See, e.g. In re Le Tote, Inc.*, Case No. 20-33332-KLP, Docket No. 473 (Bankr. E.D. Va. Oct. 22, 2020) (approving a 363 motion which contained

a break-up fee under the business judgment standard); *In re Ascena Retail Group, Inc.*, Case No. 20-33113-KRH, Docket No. 986 (Bankr. E.D. Va. Oct. 21, 2020) (finding stalking horse protections to be a prudent exercise of the debtors' sound business judgment); *In re Bear Island Paper Co., LLC*, 2010 Bankr. LEXIS 6046 (Bankr. E.D. Va. Sept. 1, 2010) (approving bid protections that were (1) negotiated in good-faith and at arm's-length between the debtor and the purchaser; (2) that were reasonable and appropriate given the circumstances; and (3) were a material inducement for the purchaser's entry into the sale agreement); *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (applying the business judgment standard to approve breakup fee); *Asarco, Inc. v. Elliot Mgmt. (In re Asarco, LLC)*, 650 F.3d 593, 597-98, 601-03 n. 9 (5th Cir. 2011).

34.     The Third Circuit Court of Appeals has also addressed the appropriate standard for determining whether proposed bidding incentives in the bankruptcy context are appropriate.  In *Calpine Corp. v. O'Brien Envtl. Energy, Inc.*, the Third Circuit held that even though bidding incentives are measured against a business judgment standard in non-bankruptcy transactions, the administrative expense provisions of section 503(b) of the Bankruptcy Code govern bidding incentives in the bankruptcy context.  181 F.3d 527, 534–35 (3d Cir. 1999).  Finding no "compelling justification" for treating an application for breakup fees and expenses under section 503(b) any differently from other application for administrative expenses, the Third Circuit concluded that "the determination whether break-up fees or expenses are allowable under § 503(b) must be made in reference to general administrative expense jurisprudence.  In other words, the allowance and payment of breakup fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *Id*. at 535.

35.     In *O'Brien*, the Third Circuit identified at least two circumstances in which bidding incentives may provide actual benefit to the estate, thereby justifying administrative expense status.  First, there exists an actual benefit to the estate where "assurance of a break-up fee promoted more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited."  *Id*. at 537.  Second, where the availability of bidding incentives induces a prospective buyer to research the value of the debtor and submit a bid that serves as a minimum bid on which other bidders can rely, the initial "bidder may have provided a benefit to the estate by increasing the likelihood that the price at which the debtor is sold will reflect its true worth."  *Id*.

36.     Both of those circumstances exist here.  The Stalking Horse Protections consisting of a Breakup Fee, Expense Reimbursement, and a Minimum Overbid requirement will be critical in persuading the Stalking Horse Purchaser to: (i) expend the time and resources associated with conducting due diligence regarding the Debtor's business and the Assets, (ii) make an initial offer (which will serve as a "floor" for other competing bidders in connection with the Bidding Procedures), and (iii) negotiate and enter into a Stalking Horse Agreement.

37.     Under both the "administrative expense" standard and the "sound business judgment" standard, the Bidding Procedures proposed by the Debtor, including the Stalking Horse Protections, should be approved as fair and reasonable.  Here, the Stalking Horse Protections, which remain subject to negotiation by the Debtor in any applicable Stalking Horse Agreement, will consist of a reasonable Breakup Fee, Expense Reimbursement, and/or Minimum Overbid requirement based on the market value of the Assets and limited by the Bidding Procedures.

38.     The Debtor respectfully submits that the limitations on Stalking Horse Protections provided under any Stalking Horse Agreement are reasonable under the exigent circumstances of

the Case and comport with the general range of bidding protections approved by bankruptcy courts in the District of Columbia and other jurisdictions. *See* 3 Collier on Bankruptcy ¶ 363.02[7] (16th ed. 2025) ("Courts have adopted as a rule of thumb a limitation on a breakup or topping fee of about 3 percent of the consideration the buyer will pay for the assets . . . although courts have approved higher amounts, up to about 5 percent of the consideration.") *See, e.g. Savesolar Corp., Inc.*, Case No. 23-00045-ELG, Docket No. 139 (Bankr. D.C. May, 25, 2023) (approving a breakup fee of 4% of the stalking horse purchase price); *Cardinal Homes, Inc.*, Case No. 19-36275-KRH (Bankr. E.D. Va. Jan. 15, 2020) (approving a break-up fee of 4.3% of the stalking horse purchase price) *Le Tote, Inc.*, Case No. 20-33332-KLP, Docket No. 473 (Bankr. E.D. Va. Oct. 22, 2020) (conditionally approving a breakup fee not to exceed 3% of any cash amount of any proposed purchase price); *Toys "R" Us, Inc.*, Case No. 17-34665-KLP, Docket No. 2428 (Bankr. E.D. Va. Mar. 27, 2018) (approving bid protections not to exceed 3% of any proposed stalking horse bidder initial purchase price); *In re Patriot Coal Corporation*, Case No. 15-32450-KLP, Docket No. 406 (June 25, 2015) (authorizing a breakup fee of up to 3% of the cash portion of a purchase price); *In re Ignite Restaurant Group, Inc., et al.* No. 17-33550 (DRJ) (Bankr. S.D. Tex. June 22, 2017) (3% breakup fee). Specifically, the Debtor submits that the Stalking Horse Protections: (i) are reasonable in light of the Debtor's potential value of the Purchased Assets and the size of a transaction contemplated by any Stalking Horse Agreement; and (ii) are reasonably related to the fees and expenses incurred by any Stalking Horse Purchaser in relation to its efforts to enter into a Stalking Horse Agreement.

39.    The Debtor further believes the proposed Stalking Horse Protections confer actual benefits upon its bankruptcy estate because they are reasonably calculated to incentivize a Stalking Horse Purchaser to set the bidding "floor" and induce competitive bidding that may produce higher

and better offers for the Purchased Assets.  Accordingly, the Debtor respectfully requests that the Court approve the Stalking Horse Protections in the Bidding Procedures Order.

### C.    The Stalking Horse Purchaser or Successful Bidder Should be Entitled to the Protections of Bankruptcy Code Section 363(m) as a Good Faith Purchaser

40.    Section 363(m) of the Bankruptcy Code provides that "the reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith …." 11 U.S.C. § 363(m).  Under this section, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.  *See In re Magwood*, 785 F.2d 1077, 1081 (D.C. Cir. 1986); *Miami Ctr. Ltd. P'ship v. Bank of New York*, 838 F.2d 1547, 1554 (11th Cir. 1988); *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, Case No. 03-51524, 2007 WL 1428477 (Bankr. D.N.J. May 11, 2007).

41.    As discussed above, the sale process and the Bidding Procedures have been designed to create a fair, open, and robust sale process focused on maximizing the value of the Debtor's Assets.  In furtherance of this effort, any transaction reflected in a Stalking Horse Agreement, or in the case of a Successful Bidder, an Asset Purchase Agreement, will be negotiated by the parties at arm's length and in good faith, and the Stalking Horse Purchaser or Successful Bidder, as applicable, will not have any relationship to the Debtor that has not been disclosed.

42.    Accordingly, the Debtor requests that the Stalking Horse Purchaser or other Successful Bidder submitting the Successful Bid be determined to have acted in good faith and be entitled to the protections of a good faith purchaser under section 363(m) of the Bankruptcy Code.  *See, e.g., In re United Press Int'l, Inc.*, No. 91 B 13955 (FGC), 1992 U.S. Bankr. LEXIS 842, at *3 (Bankr. S.D.N.Y.  May 18, 1992).  The Debtor maintains that providing the Stalking Horse

19

Purchaser or other Successful Bidder with such protection will encourage bidding and ensure that the maximum price will be received by the Debtor for the Purchased Assets.

**D.**     **The Debtor Has Exercised Sound Business Judgment and Provided Adequate Notice and Opportunity to Object With Respect to Assigned Contracts**

43.     Bankruptcy Code section 365(a) provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection. *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992); *In re Gardinier, Inc.*, 831 F.2d 974, 976 n.2 (11th Cir. 1987).

44.     Under the business judgment test, a court should approve a debtor's proposed assumption if such assumption will benefit the estate. *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 53-54 (Bankr. D. Del. 2001); *see also, In re Chi-Feng, Huang*, 23 B.R. 798, 801 (B.A.P. 9th Cir. 1982); *In re Gunter Hotel Assocs.*, 96 B.R. 696, 698 (Bankr. W.D. Tex. 1988); *In re Food City, Inc.* 94 B.R. 91, 93-94 (Bankr. W.D. Tex. 1988). Moreover, the business judgment standard requires that the court approve the debtor's business decision unless that judgment is the product of bad faith, whim, or caprice. *See Lubrizol Enter. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985); *In re Prime Motor Inns*, 124 B.R. 378, 383 (S.D. Fla. 1991). "More exacting scrutiny would slow the administration of the debtors' estates and increase its cost, interfere with the Court's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing*, 762 F.2d at 1311.

45.     Two conditions are imposed upon a debtor's ability to assume and assign an executory contract. First, in order to assume an agreement, pursuant to Bankruptcy Code

section 365(b)(1), a debtor must "cure, or provide adequate assurance that the debtor will promptly

cure" any default, including compensation for any "actual pecuniary loss" relating to such default.

11 U.S.C. § 365(b)(1).  Once an executory contract is assumed, the trustee or debtor in possession

may elect to assign such contract.  Bankruptcy Code section 365(f) specifically provides that

contract provisions seeking to prohibit or limit assignment are unenforceable.  *See* 11 U.S.C.

§ 365(f)(1); *see also, e.g.*, *In re Office Prods. of Am., Inc.*, 140 B.R. 407, 409-410 (Bankr. W.D.

Tex. 1992) (provisions that work as a restriction on assignment of leases should be struck down);

*In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) ("[t]he code generally favors

free assignability as a means to maximize the value of the debtor's estate").

46.     Pursuant to Bankruptcy Code section 365(a), assignment is conditioned upon

"adequate assurance of future performance [being] provided."  11 U.S.C. § 365(f)(2).  The

meaning of "adequate assurance of future performance" depends on the facts and circumstances

of each case, but should be given "practical, pragmatic construction."  *See Carlisle Homes. Inc. v.*

*Arrari (In re Carlisle Homes,* Inc.*)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco*

*Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance

does not mean absolute assurance that the debtor will thrive).  Among other things, adequate

assurance may be given by demonstrating the assignee's financial health and experience in

managing the type of enterprise or property assigned.  *In re Bygaph, Inc.,* 56 B.R. 596, 605-06

(Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective

assignee of lease from the debtor has financial resources and has expressed willingness to devote

sufficient funding to business in order to give it strong likelihood of succeeding).

47.     Here, the Assigned Contracts (as may be finally determined in a Stalking Horse

Agreement or Asset Purchase Agreement) are integral assets of the Debtor's business, and the

21

Debtor has determined, in the exercise of its reasonable business judgment, that the assumption and assignment of such executory contracts and unexpired leases in connection with a sale of the Assets is necessary to yield significant value and benefit to the Debtor and its estate.

48.     Further, a Stalking Horse Purchaser, and any other Potential Bidder, must be an entity with financial resources adequate to perform under the respective executory contracts and unexpired leases.  Additionally, the Debtor respectfully submits that the proposed cure procedures for the identification and payment of Cure Amounts are appropriate and reasonably tailored to provide counterparties to Assigned Contracts (and Previously Omitted Contracts) with adequate notice of the proposed assumption and assignment of their applicable contract, as well as the proposed Cure Amounts related thereto, if any.  Such parties are given reasonable notice and opportunity to object to the proposed assumption and assignment and, in the event an objection is not resolved, this Court will adjudicate the dispute, including issues pertaining to adequate assurance of future performance or cure, at the related Sale Hearing(s).  In light of the foregoing, the Debtor respectfully requests that the Court approve the assumption and assignment of the executory contracts and unexpired leases in a Sale Order entered after a Sale Hearing.

E.     **The Sale Is Authorized Under Bankruptcy Code Section 363(b)**

49.     At the conclusion of the Sale Hearing, the Debtor requests that the Court enter the Sale Order(s) approving the sale of the Purchased Assets to the Stalking Horse Purchaser or Successful Bidder, as applicable.[2]  The Debtor submits that the sale of the Purchased Assets is in the best interest of the Debtor's estate and its creditors and key stakeholders.

---

[2] This portion of the relief is requested to be entered after the Sale Hearing in the form of the Sale Order.  The Debtor hereby reserves the right to file supplemental pleadings in support of its request for entry of the Sale Order.

50.      Bankruptcy Code section 363(b)(1) provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  To approve the use, sale or lease of property outside the ordinary course of business, this Court need only determine that the Debtor's decision is supported by "some articulated business justification," as established by the Second Circuit in *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070 (2nd Cir. 1983), a standard that has been similarly adopted by this Court and other courts. *See e.g. In re 2626 Penn LLC*, Case No. 24-00345-ELG, Docket No. 112 (Bankr. D.C. Mar. 27, 2025) (finding that the debtor "ha[d] presented good and sufficient business justification" to support a 363 sale); *In re On-Site Sourcing*, 412 B.R. 817 (Bankr. E.D. Va. June 22, 2009); *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc., et al. (In re Continental Air Lines, Inc.),* 780 F.2d 1223, 1226 (5th Cir. 1986); *Fulton State Bank* v. *Schipper,* 933 F.2d 513, 515 (7th Cir. 1991).

51.      The business judgment rule shields a debtor's management from judicial second-guessing.  *See In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions").  Once a debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of Bankruptcy Code.

52.     When applying the business judgment standard, courts show great deference to a debtor's business decisions.  *See GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (N.D. Tex. 2005); *In re First Wellington Canyon Assocs.*, 1989 U.S. Dist. LEXIS 10687, at *8-9 (N.D. Ill. Sep. 8, 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion."); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval of a § 363 sale requires a showing that the proposed sale is fair and equitable, a good business reason exists for completing the sale and that the transaction is in good faith).

53.     The Debtor respectfully submits that the proposed sale of the Assets outside the ordinary course of business fits squarely within the parameters of the sound business judgment test.  The Debtor has a sound business justification for selling its Assets pursuant to a competitive-bidding process consistent with the Bidding Procedures.  Based upon an analysis of the Debtor's ongoing business, the Debtor concluded that commencing a process for the sale of its Assets pursuant to the Bidding Procedures, and Auction, if applicable, is a potential way to maximize recoveries for creditors and to otherwise maximize value for key stakeholders.

54.     The Debtor believes that any purchase price obtained pursuant to a Stalking Horse Agreement or Asset Purchase Agreement during the marketing process will be fair and reasonable.  Thus, if a Stalking Horse Purchaser is selected, the Debtor will be prepared to close a transaction with the Stalking Horse Purchaser even if no other qualified/legitimate bid is submitted by a competing bidder.  However, the fairness and reasonableness of the consideration ultimately paid for the Assets by the applicable Stalking Horse Purchaser, or other Successful Bidder, will be conclusively demonstrated by the exposure of the opportunity to the marketplace in connection

with the Bidding Procedures and potential for an Auction.  Accordingly, the Debtor submits that

any sale presented in connection with the Sale Motion is warranted and appropriate under section

363(b) of the Bankruptcy Code, and the Sale Order should be entered by the Court.

**F.    The Sale of the Purchased Assets Free and Clear of Liens, Claims, and Interests Is Authorized Under Bankruptcy Code Section 363(f)**

55.    The Debtor respectfully requests that the sale(s) and transfer(s) of the Assets be

approved free and clear of all liens, claims, encumbrances and other interests (other than those

specifically assumed by a Stalking Horse Purchaser or Successful Bidder), with all such interests

attaching to the net sale proceeds of the Assets, to the extent applicable.  Such relief is consistent

with the provisions of section 363(f) of the Bankruptcy Code in these types of cases.

56.    Bankruptcy Code section 363(f) authorizes a debtor to sell assets free and clear of

liens, claims, interests and encumbrances if:

(1)    applicable non-bankruptcy law permits sale of such property free and clear of such interests;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  This provision is supplemented by Bankruptcy Code section 105(a), which

provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate

to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

57.    Because Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction

of any one of its five requirements will suffice to permit the sale of the Purchased Assets free and

clear of the interests. *In re Nature Leisure Times, LLC*, 2007 WL 4554276, *3 (Bankr. E.D. Tex.

Dec. 19, 2007) ("The language of § 363(f) is in the disjunctive such that a sale free and clear of an

interest can be approved if any one of the aforementioned conditions contained in § 363(f) are

satisfied."); *In re Wolverine Radio Co.*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that

Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court may approve

the sale 'free and clear' provided at least one of the subsections of section 363(f) is met).

58.     The Debtor believes that one or more of the tests under section 363(f) will be

satisfied with respect to the sale and transfer(s) of the Purchased Assets pursuant to a Sale Order.

In particular, the Debtor believes that sections 363(f)(2), (3), and (5) are likely to be satisfied.

Based on the above, the sale of the Purchased Assets free and clear of all liens, claims,

encumbrances and other interests is appropriate and should be approved.

**G.     The Form, Manner and Extent of Notice of the Sale Motion and the Proposed Sale
are Appropriate and Adequate Under the Circumstances**

59.     The Debtor will serve the Bidding Procedures, Sale Notice, and Cure Notice in

accordance with the Bidding Procedures Order, and will serve this Sale Motion as set forth below.

The notice of the proposed sale to be provided by the Debtor as set forth herein and in the Bidding

Procedures Order sufficiently describes the terms and conditions of the proposed sale.

60.     Several sections of the Bankruptcy Code and Bankruptcy Rules dictate the

sufficiency of notice and adequacy of service.  As discussed below, the content and manner of

service of this Sale Motion and the related notices satisfy all such requirements:

a.     <u>Bankruptcy Code Section 363</u> – Bankruptcy Code section 363 provides that a
trustee may sell property "after notice and hearing."  Under Section 102(1) of the
Bankruptcy Code, the phrase "after notice and hearing" means "notice as is
appropriate in the particular circumstances, and such opportunity for a hearing as
is appropriate in the particular circumstances."  11 U.S.C. § 102(1)(A). As set forth
above, creditors have been, and will be, provided notice of the Sale Motion and

Sale Hearing, with such notice to include sufficient detail regarding the proposed sale.  Accordingly, notice is sufficient under Bankruptcy Code section 363.

b.  <u>Bankruptcy Rule 2002</u> – Bankruptcy Rule 2002 requires twenty-one (21) days' notice of the proposed sale of property other than in the ordinary course of business. In addition, Bankruptcy Rule 2002 provides that notice of a sale shall "include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections."  As set forth above, notice of the Sale Motion as set forth herein satisfies each of these requirements.

c.  <u>Bankruptcy Rules 6004 and 6006</u> – Bankruptcy Rule 6004 requires that notice of any proposed sale of the debtor's property out of the ordinary course of business comply with Bankruptcy Rule 2002.  As set forth above, the Debtor has complied with Bankruptcy Rule 2002.  Bankruptcy Rule 6006 requires notice of a motion to assume and assign an executory contract or unexpired lease to be served on the counterparty to such contract or lease, as well as on other parties in interest as the Court may direct.  The Cure Notice will be served on counterparties to the Debtor's executory contracts and unexpired leases, thereby satisfying this requirement. Bankruptcy Rule 6004(c) requires service of a motion for authority to sell property free and clear of liens and other interests on parties who have liens or other interests in the property to be sold.  A copy of this Sale Motion will be served on all known parties claiming liens or interests in the Debtor's Assets.

d.  <u>Procedural Due Process</u> – The notices of this Sale Motion that are being provided as described herein are "reasonably calculated" to apprise interested parties of the pendency of the matter and to afford them an opportunity to object.  See *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).  Parties in interest have been and should be found to have been afforded adequate notice of this Sale Motion, the sale, the Bidding Procedures and the other relief requested herein.

61.   The Debtor submits that the notice it has provided and intends to provide as outlined above with respect to the proposed sale, the Bidding Procedures, and Cure Amounts, as applicable, is reasonable and appropriate and constitutes good and adequate notice of the proposed sale of the Assets as Purchased Assets and the procedures and proceedings related thereto.

**H.   <u>The Stay of the Sale Order Should be Waived</u>**

62.   Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale or lease of property … is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the

trustee to assign an executory contract or unexpired lease … is stayed until the expiration of the 14 days after the entry of the order, unless the court orders otherwise."

63.     The Debtor requests that any Sale Order be effective immediately by providing that the 14-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived, including with respect to any executory contracts and unexpired leases that are designated as Assigned Contracts.  To require the Debtor to effectively be liable under the applicable executory contracts and/or unexpired leases for an extra fourteen (14) days, and to delay the closing and the resulting reductions of the Debtor's secured obligations and related adequate protection obligations, will burden the estate and require unnecessary expenditures of the Debtor's limited resources.

## VI.  **Notice**

64.     The Debtor will serve notice of this Sale Motion on (a) the DIP Lender; (b) the U.S. Trustee; (c) the Internal Revenue Service; (d) all known secured creditors of the Debtor; (e) the Committee, if one is appointed; (f) those creditors holding the 20 largest unsecured claims against the Debtor; and (g) those parties who receive NextGen CM/ECF notifications.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtor respectfully requests that the Court (i) enter the Bidding Procedures Order after the Bidding Procedures Hearing (a) authorizing the Debtor to implement the Bidding Procedures and for purposes of conducting the sale process under section 363 of the Bankruptcy Code, and (b) approving the Stalking Horse Protections payable to a Stalking Horse Purchaser, if any; (ii) enter the Sale Order(s) (to be filed as a proposed order at a later date) after the Sale Hearing (a) authorizing the Debtor to sell substantially all of the Assets as Purchased Assets to a Stalking Horse Purchaser or other Successful Bidder, free and clear of all liens, claims, encumbrances and other interests, and (b) authorizing the Debtor to assume and assign the Assigned Contracts to the respective Stalking Horse Purchaser or Successful Bidder; and (iii) grant such other and further relief as is just and proper.

Dated: January 14, 2026
Richmond, Virginia

Respectfully submitted,

/s/ *Jennifer E. Wuebker*

Tyler P. Brown (admitted *pro hac vice*)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (admitted *pro hac vice*)
**HUNTON ANDREWS KURTH LLP**
951 E. Byrd Street
Richmond, Virginia 23219
Telephone:     (804) 788-8200
Facsimile:     (804) 788-8218
Email:          tpbrown@hunton.com
                jwuebker@hunton.com
                nmonico@hunton.com

*Proposed Counsel for the Debtor and Debtor in Possession*