The order below is hereby signed.

Signed: January 23 2026



Elizabeth L. Gunn
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

**In re:**

**Compass Coffee, LLC,**

      **Debtor.**

**Chapter 11**

**Case No. 26-00005 (ELG)**

### ORDER (I) APPROVING BIDDING PROCEDURES; (II) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (III) APPROVING STALKING HORSE PROTECTIONS; (IV) SCHEDULING BID DEADLINE, AUCTION DATE, AND SALE HEARING DATE; AND (V) APPROVING FORM OF NOTICE THEREOF

Upon consideration of the *Debtor's Motion for (A) Entry of an Order (I) Approving Bidding Procedures; (II) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; (III) Approving Stalking Horse Protections; (IV) Scheduling Bid Deadline, Auction Date, and Sale Hearing Date; (V) Approving Form of Notice Thereof; (B) Entry of and Order after the Sale Hearing (I) Authorizing the Debtor to Sell its Assets; and*

**HUNTON ANDREWS KURTH LLP**
Tyler P. Brown (admitted *pro hac vice*)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (admitted *pro hac vice*)
951 E. Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200

*Proposed Counsel for Debtor and Debtor in Possession*

*(II) Authorizing the Debtor to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Docket No. 76] (the "***Sale Motion***")[1] filed by the above-captioned debtor and debtor in possession (the "***Debtor***") pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rules 2002-1 and 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Columbia (the "***Local Rules***"), seeking entry of an order (this "***Order***") (i)(a) approving procedures in connection with the sale of the Purchased Assets; (b) approving the Stalking Horse Protections; (c) approving procedures related to the assumption and assignment of certain of the Debtor's executory contracts and unexpired leases; (d) scheduling an Auction and Sale Hearing and approving the form and manner of notice thereof; and (e) granting related relief; and (ii) entry of one or more order(s) (each, a "***Sale Order***") after the Sale Hearing (a) authorizing the sale of the Purchased Assets to the Successful Bidder (which may be a Stalking Horse Purchaser), free and clear of Encumbrances, except as provided by the relevant Asset Purchase Agreement (or Stalking Horse Agreement); (b) approving the assumption and assignment of the Assigned Contracts; and (c) granting related relief; the Court finding that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; this matter being a core proceeding within the meaning of  28 U.S.C. § 157(b); venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Sale Motion having been adequate and appropriate under the circumstances; the Court having convened a hearing on the Sale Motion on January 21, 2026 (the "***Hearing***"); all objections, if any, to the Sale Motion having been resolved, withdrawn or overruled; upon the record of the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion or the Bidding Procedures attached as Exhibit 1 to this Order, as applicable.

Hearing; and after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein;

**IT IS FOUND AND DETERMINED THAT:**

A.      At the Bidding Procedures Hearing and in the Sale Motion, the Debtor articulated good and sufficient reasons for, and the best interests of its estate will be served by, this Court granting the relief set forth in this Order relating to the bidding process, including approval of (1) the bidding procedures attached hereto as Exhibit 1 (the "***Bidding Procedures***"), (2) the Stalking Horse Protections, (3) the procedures described below for the determination of the amounts necessary to cure defaults under certain executory contracts and unexpired leases that the Debtor may desire to assume and assign (the "***Cure Amounts***") so as to permit their assumption under section 365 of the Bankruptcy Code and their assignment to a Stalking Horse Purchaser or Successful Bidder, as applicable, and (4) the forms of the Sale Notice and Cure Notice.

B.      The Debtor has articulated good and sufficient reasons for, and the best interests of its estate will be served by, this Court scheduling one or more Sale Hearings to consider granting the other relief requested in the Sale Motion, including approval of one or more Sales and the transfer of the Purchased Assets and assignment of the Assigned Contracts to the Stalking Horse Purchaser or Successful Bidder, as applicable, free and clear of all Encumbrances and other interests pursuant to sections 363(f) and 365 of the Bankruptcy Code.

C.      The Stalking Horse Protections to be paid to a Stalking Horse Purchaser are: (1) actual and necessary costs and expenses of preserving the Debtor's estate within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code; (2) commensurate to the real and substantial benefits conferred or that will be conferred upon the Debtor's estate by any Stalking Horse Purchaser; (3) fair, reasonable and appropriate in light of the size and nature of the proposed

transaction, the commitments and accommodations of a Stalking Horse Purchaser that will be made for the benefit of the Debtor's estate, the condition of the Purchased Assets, and the efforts that have been and will be expended by the Stalking Horse Purchaser; and (4) necessary to induce a Stalking Horse Purchaser to pursue the Sale and to continue to be bound by any Stalking Horse Agreement.  Accordingly, the Stalking Horse Protections are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtor's estate.

D.      The Bidding Procedures attached hereto as <u>Exhibit 1</u> are fair, reasonable, and appropriate and are designed to maximize value for the benefit of the Debtor and its estate.

E.      The Debtor's proposed Sale Notice is appropriate.  Service of the Sale Notice as provided for in the Sale Motion and this Order is reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Auction (if necessary), and the Sale Hearing, and no other or further notice is required.

F.      The Debtor's proposed Cure Notice is adequate and reasonably designed to provide notice to contract counterparties of the Debtor's executory contracts and unexpired leases that may be assumed and assigned, as well as to determine and resolve any Cure Amounts.

G.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Further, to the extent any of the preceding findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the preceding conclusions of law constitute findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED:**

1.      All objections to the relief requested in the Sale Motion relating to the Bidding Procedures, including the form of Cure Notice and Supplemental Cure Notice and the Sale Notice

- 4 -

(and all reservations of rights included in any such objections) that have not been withdrawn, waived, or settled are overruled except as specifically set forth herein.

**<u>Stalking Horse Provisions</u>**

2.      The Debtor is authorized, but not directed, to enter into a Stalking Horse Agreement with a Stalking Horse Purchaser, *provided, that* the Debtor timely selects a Stalking Horse Purchaser and files the Stalking Horse Selection Notice, and *provided further, that* no timely objections to the Stalking Horse Selection Notice are filed, or if filed, are resolved by agreement.

3.      If a timely Stalking Horse Objection is filed and served with respect to a Stalking Horse Selection Notice, the proposed designation of the Stalking Horse Purchaser and the Stalking Horse Protections under the Stalking Horse Agreement will not be deemed approved until either the Stalking Horse Objection is resolved by agreement or by order of the Court.

4.      Subject to the preceding paragraphs, the Stalking Horse Protections are hereby APPROVED, and shall be paid in cash when and as set forth in any Stalking Horse Agreement. The Debtor's obligation to pay the Stalking Horse Protections shall constitute, pursuant to sections 503 and 507 of the Bankruptcy Code, an administrative expense claim against the Debtor's bankruptcy estate.  The Stalking Horse Protections payable pursuant to the terms of a Stalking Horse Agreement shall be payable without any further order of the Court.

5.      The Debtor shall provide counterparties to contracts and leases identified on the Assigned Contract List any adequate assurance information provided by the Stalking Horse Purchaser within two (2) business days of the later of (i) filing the Stalking Horse Selection Notice and (ii) the date the Debtor receives such information from the Stalking Horse Purchaser, by serving such information on the applicable counterparty and its counsel, if known, by first class mail or email, where available.  For the avoidance of doubt, the Debtor shall have no obligation to

create or produce any additional adequate assurance information to satisfy the preceding sentence, other than the information it receives from the Stalking Horse Purchaser.  Notwithstanding the foregoing, a counterparty may request additional adequate assurance information concerning the Stalking Horse Purchaser and/or timely object to the adequacy of such information pursuant to Section 365 of the Bankruptcy Code.

**Bidding Procedures**

6.    The Bidding Procedures attached hereto as Exhibit l are APPROVED and fully incorporated into this Order by reference.  The failure to specifically include or reference any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such procedures, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

7.    The Bidding Procedures shall govern all Bids and bidding procedures relating to the Sale of the Purchased Assets.  Any party desiring to submit a Bid shall do so strictly in accordance with the terms of the Bidding Procedures and this Order.  The Debtor is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures, including incurring and paying costs and expenses, in accordance with the Budget.

8.    Any deposits made by the Stalking Horse Purchaser or other Qualified Bidder shall be held by the Debtor in a reserve in a Debtor account, and shall not become property of the Debtor's bankruptcy estate unless and until released from such account to the Debtor in accordance with the Bidding Procedures.

9.    The Bid Deadline shall be **February 12, 2026 at 4:00pm (ET)**.

10.    The Debtor, in consultation with the Consultation Parties, shall have the right to determine whether a bid is a Qualified Bid and shall notify all Potential Bidders whether they have

been designated as a Qualified Bidder, as promptly as practicable after a Potential Bidder delivers the materials required by the Bidding Procedures; *provided*, *however*, that the deadline for the Debtor to qualify Bids shall be February 16, 2026.  A Stalking Horse Purchaser shall be deemed a Qualified Bidder for all purposes, and a Stalking Horse Bid shall be deemed a Qualified Bid for all purposes in connection with the Bidding Procedures, the Auction, and the Sale.

11.    The Auction, if an auction is necessary, shall be held at **10:00 a.m. (ET) on February 17, 2026**, at such place to be designated in advance by the Debtor with notice to the Qualified Bidders and the Consultation Parties.  If no Qualified Bid other than a Stalking Horse Bid is received before the Bid Deadline, no Auction shall be conducted, such Stalking Horse Purchaser shall be deemed the Successful Bidder, and the Debtor may proceed to request at the Sale Hearing that the Court approve the Sale in accordance with such Stalking Horse Agreement. If the Debtor decides that it will not conduct an Auction, then the Debtor shall file a notice of cancellation of the Auction in advance of the date and time set for the Auction.

12.    As soon as reasonably practicable after the conclusion of the Auction, but no later than **4:00 p.m. (ET) on February 18, 2026**, the Debtor shall (1) file notice of the identity of the Successful Bidder, the Back-Up Bidder, if any, and the respective amounts of such Bids, and shall serve such notice by first class U.S. Mail or email (where available) on: (i) all known secured creditors of the Debtor; (ii) counsel to the DIP Lender; (iii) counsel to the Committee, if one has been appointed, and if one has not been appointed, the creditors holding the 20 largest unsecured claims; (iv) the U.S. Trustee; (v) all of the counterparties of Assigned Contracts that may be assumed and assigned; and (vi) and any party requesting notice pursuant to Bankruptcy Rule 2002; and (2) provide counterparties to contracts and leases identified on the Assigned Contract List with any adequate assurance information provided by the Successful Bidder, and any Back-Up Bidder,

to the extent the Successful Bidder is not the Stalking Horse Purchaser, by serving such information on the applicable counterparty and its counsel, if known, by first class mail or email, where available. For the avoidance of doubt, the Debtor shall have no obligation to create or produce any additional adequate assurance information to satisfy the preceding sentence, other than the information it receives from the Successful Bidder. Notwithstanding the foregoing, a counterparty may request additional adequate assurance information concerning the Successful Bidder and/or timely object to the adequacy of such information pursuant to Section 365 of the Bankruptcy Code.

13.     The Debtor shall file a proposed form of Sale Order by no later than February 20, 2026 at 4:00 p.m. (ET), subject in all respects to the Debtor's right to modify such form of order. Parties shall be permitted to object to the form of Sale Order in advance of or at the Sale Hearing.

14.     Objections, if any, to the manner in which the Auction was conducted and selection of the Successful Bidder, must (a) be filed with the Clerk of the Court and served no later than **4:00 p.m. ET on February 19, 2026** (the "*Post-Auction Objection Deadline*"); (b) set forth in writing and describe with specificity the factual and legal basis for the objection; and (c) comply with the Bankruptcy Rules and Local Rules. Failure to timely file an objection by the Post-Auction Objection Deadline shall be deemed consent to the manner in which the Auction was conducted.

15.     Objections, to (i) if a Stalking Horse Purchaser is not the Successful Bidder, solely with respect to non-debtor counterparties to Assigned Contracts, to the specific identity of, and adequate assurance of future performance provided by, the Successful Bidder, (an "*Adequate Assurance Objection*") must (a) be filed with the Clerk of the Court and served no later than **4:00 p.m. ET on February 24, 2026** (the "*Adequate Assurance Objection Deadline*"); (b) set forth in writing and describe with specificity the factual and legal basis for the objection; and (c) comply

with the Bankruptcy Rules and Local Rules. Failure to timely file an objection by the Adequate

Assurance Objection Deadline shall be deemed consent to the Successful Bidder.

16.     If an Auction is conducted, each Qualified Bidder attending shall be required to

confirm that it has not engaged in any collusion, within the meaning of section 363(n) of the

Bankruptcy Code, with respect to the sale process, the bidding, and the Sale.

17.     The Auction shall be recorded and/or transcribed.  Parties may request to attend the

recorded and/or transcribed portions of the Auction, solely for the purpose of observing the

Auction proceedings, by making a written request to counsel for the Debtor, with email being

sufficient.

18.     Subject to the terms of the Bidding Procedures, in the event of a competing

Qualified Bid, any Stalking Horse Purchaser will be entitled, but not obligated, to submit overbids

and will be entitled in any such overbids to credit bid all of its claims for Stalking Horse Protections

pursuant to section 363(k) of the Bankruptcy Code.

19.     Subject to the terms of the Bidding Procedures, the Debtor shall determine which

Qualified Bid is the highest or otherwise best offer for the Purchased Assets, giving effect to the

Stalking Horse Protections payable to the Stalking Horse Purchaser (if any), as well as any

additional liabilities to be assumed by the relevant Qualified Bidder or Stalking Horse Purchaser,

and any additional costs which may be imposed on the Debtor.  For purposes of valuing Qualified

Bids and determining the Successful Bid, the full face amount of a credit bid shall be deemed to

have the same value as the equivalent amount of cash.  The Debtor shall notify any Stalking Horse

Purchaser and the Consultation Parties promptly upon the selection of the Successful Bid.

20.     The Sale Hearing shall be held on **February 26, 2026 at 11:00 a.m. ET.**  The Sale

Hearing may be adjourned by the Debtor, in consultation with the Consultation Parties, without

further notice to creditors or parties in interest other than by announcement in open Court on the date scheduled for the Sale Hearing or by filing a notice on the docket.

21.    Any Successful Bidder for the Purchased Assets shall appear at the Sale Hearing and be prepared to testify, if necessary, in support of its Successful Bid and its ability to close in a timely manner and provide adequate assurance of its future performance under any and all contract(s) and lease(s) to be assumed and assigned as part of the proposed Sale.

### Sale Notice Procedures

22.    The Sale Notice, substantially in the form attached hereto as <u>Exhibit 2</u>, is hereby APPROVED.  The Sale Notice is reasonably calculated to provide sufficient notice to all parties in interest of the Debtor's intent to consummate one or more sales with a Stalking Horse Purchaser or other Successful Bidder and constitutes adequate notice of such Sale(s).   Additionally, the following Sale Notice procedures are hereby approved:

(i)     The Debtor shall file with the Court and serve the Sale Notice, together with the Bidding Procedures, within three (3) business days after the entry of this Order, upon the following parties or their respective counsel, if known: (a) the secured parties; (b) the DIP Lender; (c) counsel to the Committee, if one has been appointed, and if one has not been appointed, the creditors holding the 20 largest unsecured claims; (d) the U.S. Trustee; (e) all other parties known to the Debtor who have asserted liens, claims, or interests in or against any of the Assets; (f) all Potential Bidders known to have expressed an interest in a sale of all or any combination of the Assets; (g) federal, state, and local taxing authorities where the Assets are located; (h) all of the counterparties to the Assigned Contracts that may be assumed and assigned as part of a Sale; and (i) all parties that have requested notice pursuant to Bankruptcy Rule 2002.

(ii)    Any objections to the relief requested in the Sale Motion as relates to the sale of the Purchased Assets to the Stalking Horse Purchaser or Successful Bidder (except for any Adequate Assurance Objection), as applicable (each, a "***Sale Objection***") must: (a) set forth in writing and describe with specificity the factual and legal basis for the Sale Objection; (b) comply with the Bankruptcy Rules and Local Rules; (c) be filed with the Clerk of the Court by no later than **4:00 p.m. ET on February 19, 2026** (the "***Sale Objection Deadline***"); and (d) be served, so as to be actually received on or before the Sale Objection Deadline by the service parties (the "***Service Parties***") consisting of: (i) counsel for the Debtor, Hunton Andrews Kurth

LLP, Attn: Tyler P. Brown, Esq., Riverfront Plaza, East Tower, 951 E. Byrd Street, Richmond, Virginia 23219, email: tpbrown@hunton.com, (ii) counsel for the DIP Lender, Redmon Peyton & Braswell, LLP, Attn: Robert M. Marino, Esq. 510 King Street, Suite 301, Alexandria, Virginia 23214, email: rmmarino@rpb-law.com, (iii) counsel for the Committee, if one is appointed in this case; and (iv) the U.S. Trustee.

(iii)   Any person or entity that fails to file a Sale Objection by the Sale Objection Deadline shall be deemed to consent to the sale of the Purchased Assets to the Stalking Horse Purchaser or other Successful Bidder, as applicable, and the other relief requested in the Sale Motion for purposes of Bankruptcy Code section 363(f). Further, the failure to file a Sale Objection by the Sale Objection Deadline shall be a bar to the assertion, at the Sale Hearing or thereafter, of (i) any objection to the Sale Motion; (ii) the sale of the Purchased Assets free and clear of an liens, claims, and encumbrances; and (iii) the Debtor's consummation and performance of the Stalking Horse Agreement or other Asset Purchase Agreement, as applicable; *provided, however*, that this shall not apply to Adequate Assurance Objections.

(iv)   If a Sale Objection is timely filed by the Sale Objection Deadline and the relevant parties are unable to resolve the Sale Objection prior to the commencement of the Sale Hearing, such Sale Objection will be adjudicated at the Sale Hearing, or at such other date and time as may be fixed by the Court.

(v)   Any objections to the manner in which the Auction was conducted and the selection of the Successful Bidder (any such objection, an "***Auction Objection***") must (a) set forth in writing and describe with specificity the factual and legal basis for the Auction Objection; (b) comply with the Bankruptcy Rules and Local Rules; (c) be filed with the Clerk of the Court by no later than **4:00 p.m. ET on February 19, 2026** (the "***Auction Objection Deadline***"); and (d) be served so as to be actually received on or before the Auction Objection Deadline by the Service Parties.

(vi)   Any objections to, if a Stalking Horse Purchaser is not the Successful Bidder, solely with respect to non-debtor counterparties to proposed Assigned Contracts, the specific identity of and adequate assurance of future performance provided by the Successful Bidder (any such objection, an "***Adequate Assurance Objection***") must (a) set forth in writing and describe with specificity the factual and legal basis for the Adequate Assurance Objection; (b) comply with the Bankruptcy Rules and Local Rules; (c) be filed with the Clerk of the Court by no later than **4:00 p.m. ET on February 24, 2026** (the "***Adequate Assurance Objection Deadline***"); and (d) be served so as to be actually received on or before the Adequate Assurance Objection Deadline by the Service Parties.

(vii)   The failure of any person or entity to file an Auction Objection by the Auction Objection Deadline shall be deemed to be consent to the manner in which the Auction was conducted.  The failure of any person or entity to file an Adequate

Assurance Objection by the Adequate Assurance Objection Deadline shall be deemed to be consent to the Successful Bidder.

(viii)   If an Auction Objection is timely filed by the Auction Objection Deadline and the relevant parties are unable to resolve the Auction Objection prior to the commencement of the Sale Hearing, such Auction Objection will be adjudicated at the Sale Hearing, or at such other date and time as may be fixed by the Court. Similarly, if an Adequate Assurance Objection is timely filed by the Adequate Assurance Objection Deadline and the relevant parties are unable to resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, such Adequate Assurance Objection will be adjudicated at the Sale Hearing, or at such other date and time as may be fixed by the Court or agreed to by the parties.

## Cure Notice Procedures

23.    The Cure Notice, substantially in the form attached hereto as Exhibit 3, is hereby APPROVED.  The Cure Notice to be provided and the method of service constitutes good, proper, and adequate notice, and is reasonably calculated to provide sufficient notice to any counterparties to the proposed Assigned Contracts of: (i) the Debtor's intent to assume and assign certain executory contracts and unexpired leases to a Stalking Horse Purchaser or other Successful Bidder, and (ii) the proposed Cure Amount associated with such assumption and assignment. Additionally, the following Cure Notice procedures are hereby approved:

(i)    The Debtor shall file a list of the proposed Assigned Contracts (the "***Assigned Contract List***"), and cause the Cure Notice to be served on any counterparties to the proposed Assigned Contracts and their counsel, if known, as set forth in Schedule 1 attached to the Cure Notice, not later than January 23, 2026.  The Cure Notice shall identify the applicable contract(s) and/or lease(s) and provide such counterparties with notice of the amount that the Debtor proposes to cure any defaults upon assumption and assignment as required under Bankruptcy Code section 365 (the "***Cure Amount***").

(ii)    Any objections to (1) the assumption and assignment of any executory contract or unexpired lease identified in the Cure Notice, (2) the adequate assurance provided by the Stalking Horse Purchaser (except in the context of an Adequate Assurance Objection for a Successful Bidder that is not the Stalking Horse Purchaser), or (3) to the proposed Cure Amounts set forth in the Cure Notice(a "***Contract Objection***"), must: (a) set forth in writing and describe with specificity the factual and legal basis for the Contract Objection; (b) comply with the Bankruptcy Rules and Local Rules; (c) be filed with the Clerk of the Court no later than **4:00 p.m.**

**(ET) on February 6, 2026** (the "***Contract Objection Deadline***"); and (d) be served, so as to be actually received on or before the Contract Objection Deadline by the Service Parties.

(iii)    If a counterparty to an executory contract or unexpired lease set forth on Schedule 1 of the Cure Notice fails to file a Contract Objection by the Contract Objection Deadline, then the Cure Amount set forth in the Cure Notice will be binding upon such contract counterparty, and all parties in interest, for all purposes in the Case and otherwise.    All such counterparties to the those executory contracts and unexpired leases on Schedule 1 of the Cure Notice will: (a) be forever barred from objecting to the Cure Amounts with respect to such executory contracts and unexpired leases and the Cure Amounts identified in the Cure Notice with respect to such executory contracts and unexpired leases shall be the only amounts necessary under section 365(b) of the Bankruptcy Code to cure all pre-petition monetary defaults thereunder if the applicable Stalking Horse Purchaser or Successful Bidder ultimately decides to have such executory contracts and unexpired leases assumed by the Debtor and assigned to it as Assigned Contracts; (b) be deemed to have consented to the assumption and assignment, if the applicable Stalking Horse Purchaser or other Successful Bidder designates such contract or lease as an Assigned Contract; and (c) be forever barred and estopped from asserting or claiming against the Debtor or the Stalking Horse Purchaser or Successful Bidder, as applicable, that any additional pre-petition amounts are due, other pre-petition defaults exist, other conditions to assignment must be satisfied under such executory contracts or unexpired leases, or that there is any objection or defense to the assumption and assignment of the applicable Assigned Contract; provided that, with respect to (b) and (c) above, if a Stalking Horse Purchaser is not the Successful Bidder, solely with respect to non-debtor counterparties to Assigned Contracts, a counterparty may object to the specific identity of, and adequate assurance of future performance provided by, the Successful Bidder by filing an Adequate Assurance Objection by the Adequate Assurance Objection Deadline.

(iv)    If a counterparty to an executory contract or unexpired lease set forth on Schedule 1 of the Cure Notice timely files a Contract Objection, whether based on the proposed Cure Amount or any other alleged cause or claim, then, to the extent the relevant parties are unable to resolve the Contract Objection prior to the commencement of the Sale Hearing, such Contract Objection will be adjudicated at the Sale Hearing, or at such other date and time as may be fixed by the Court.

(v)    If at any time after the Cure Notice is served (but prior to the sale pursuant to a Stalking Horse Agreement or other Asset Purchase Agreement) the Debtor: (a) amends the Assigned Contract List to include additional executory contracts or unexpired leases; or (b) receives notice from the Stalking Horse Purchaser, if any, or Successful Bidder that additional prepetition executory contracts and or unexpired leases are to be designated as Assigned Contracts under the Stalking Horse Agreement or Asset Purchase Agreement, then the Debtor shall file an amended Assigned Contract List and serve a supplemental cure notice (each, a

"*Supplemental Cure Notice*") on the counterparty to each such contract or lease (each, a "*Previously Omitted Contract*") within two (2) business days of the amendment to the Assigned Contract List, or the receipt of notice of designation as an Assigned Contract. Each such Supplemental Cure Notice shall set forth the same information as required in the Cure Notice. A Stalking Horse Purchaser or Successful Bidder may designate additional contracts or leases to be assumed and assigned, or remove contracts and leases from the list of Assigned Contracts, up to two (2) business days prior to the Closing of the related Sale, in accordance with any Successful Bid.

(vi)     If a counterparty to a Previously Omitted Contract fails to file a Contract Objection within fourteen (14) days of the Supplemental Cure Notice, then the Cure Amount set forth in the Supplemental Cure Notice will be binding upon such contract counterparty, and all parties in interest, for all purposes in the Case and otherwise, to the extent set forth in subsection (iii) above.

(vii)    If a counterparty to Previously Omitted Contract timely files a Contract Objection, whether based on the proposed Cure Amount or any other alleged cause or claim, then, to the extent the relevant parties are unable to resolve the Contract Objection prior to the commencement of the Sale Hearing, such Contract Objection will be adjudicated at the Sale Hearing, or at such other date and time as may be fixed by the Court or agreed to by the parties.

(viii)   For the avoidance of doubt, the inclusion of an executory contract or unexpired lease on Schedule 1 of the Cure Notice shall not obligate the Debtor to assume and assign any executory contract or unexpired lease listed thereon, and the rights of the Debtor, the Stalking Horse Purchaser, or Successful Bidder to modify the list of Assigned Contracts, including to remove any contracts or leases from such list, are expressly reserved. Only those executory contracts and unexpired leases designated at closing will be assumed and assigned to the Stalking Horse Purchaser or Successful Bidder, as applicable.

24.     A Stalking Horse Purchaser or other Successful Bidder may designate additional contracts and leases for assumption and assignment, or remove contracts from the initial list of potential contracts, at any time up until two (2) business days prior to the Closing of the related Sale, in accordance with any Successful Bid. The Debtor shall file a final Assigned Contract List within five (5) business days of the Closing.

25.     If an executory contract or unexpired lease is assumed and assigned pursuant to the Sale Order, unless otherwise agreed by the Debtor, the Stalking Horse Purchaser or other

Successful Bidder, and the counterparty to such contract or lease, such counterparty shall receive the applicable Cure Amount, if any, no later than five (5) business days following the closing of the Sale, with payment to be made pursuant to the terms of the Stalking Horse Agreement or Asset Purchase Agreement, as applicable.  Except to the extent otherwise provided in the Stalking Horse Agreement or Asset Purchase Agreement, as applicable, the Debtor and the Debtor's estate shall be relieved of all liability accruing or arising under or in connection with any Assigned Contract after the assumption and assignment thereof pursuant to section 365(k) of the Bankruptcy Code.

26.     Notwithstanding any provision in this Order or the Bidding Procedures to the contrary, this Order does not satisfy, and the Court has not yet determined if the Debtor has satisfied, the requirements of section 365 of the Bankruptcy Code for any particular executory contract or unexpired lease, including those relating to the Cure Amounts or the provision of adequate assurance of future performance.  No contract or lease shall be deemed assumed and assigned until the later of (a) the date the Court has entered an order authorizing the assumption and assignment of such executory contract or unexpired lease, (b) the date the Sale is closed, or (c) the date the Cure Amount is paid.

27.     The Stalking Horse Purchaser, or Successful Bidder, as applicable, shall have no rights in and to any particular Assigned Contract until such time as the particular Assigned Contract is assumed and assigned to such Stalking Horse Purchaser or Successful Bidder.

28.     The inclusion of a contract or lease and related Cure Amount on a Cure Notice or Supplemental Cure Notice shall not constitute or be deemed to be a determination or admission by the Debtor, a Stalking Horse Purchaser, any other Successful Bidder, or any other party in interest that such contract or lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code, that the stated Cure Amount constitutes a claim against the Debtor in such

amount, or that the contract or lease will be assumed and assigned.  The Debtor expressly reserves all of its rights, claims, defenses, and causes of action with respect to each contract or lease listed on the Cure Notice or any Supplemental Cure Notice.

### **Fiduciary Out**

29.     Notwithstanding anything to the contrary, nothing in the Bidding Procedures, this Order, or otherwise, shall require the Debtor or its board of managers to take any action, including but not limited to pursuing or consummating a transaction with a Stalking Horse Purchaser or any Qualified Bidder, or to refrain from taking any action related to any sale transaction or with respect to the Bidding Procedures to the extent the Debtor reasonably determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law; *provided, however*, the Debtor shall promptly provide the Consultation Parties with notice of such action or inaction.  For the avoidance of doubt, nothing in the Bidding Procedures, this Order, or otherwise, shall prohibit the Debtor from pursuing a plan of reorganization if the Debtor, in consultation with the Consultation Parties, determines that such course of action is in the best interest of creditors and the estates.

### **Miscellaneous Provisions**

30.     Prior to service, the Debtor may make final, non-substantive edits to the Bidding Procedures, Sale Notice, and Cure Notice, consisting solely of correcting typographical and grammatical errors, making stylistic and formatting improvements, adding relevant dates and deadlines, and adding revisions announced on the record at the Hearing, each of which shall be deemed approved by this Order without further notice.

31.     The Debtor is authorized to conduct the Sale(s) without the necessity of complying with any state or local bulk transfer laws or requirements.

32.     In the event that there is a conflict between this Order or the Bidding Procedures, on the one hand, and a Stalking Horse Agreement or Asset Purchase Agreement on the other hand, this Order and the Bidding Procedures shall govern.  In the event that there is a conflict between this Order and the Bidding Procedures, this Order shall govern.

33.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

34.     The notice procedures set forth in the Sale Motion are good and sufficient notice and satisfy Bankruptcy Rules 4001, 9014 and 6004(a) by providing parties with notice and an opportunity to object and be heard at a hearing.

35.     Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon the Court's ruling at the Hearing.

36.     The Debtor is authorized to take all action necessary to carry out this Order.

37.     The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Interim Order.

38.     The Debtor is directed to serve a copy this Order on the same parties that were provided notice of the Sale Motion and file a proof of service within three (3) days of entry of this Order.

*[Endorsement Page Follows]*

WE ASK FOR THIS:

/s/ *Jennifer E. Wuebker*

Tyler P. Brown (admitted *pro hac vice*)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (admitted *pro hac vice*)
**HUNTON ANDREWS KURTH LLP**
951 E. Byrd Street
Richmond, Virginia 23219
Telephone:    (804) 788-8200
Facsimile:    (804) 788-8218
Email:        tpbrown@hunton.com
              jwuebker@hunton.com
              nmonico@hunton.com

*Proposed Counsel for the Debtor and Debtor in
Possession*

SEEN AND AGREED:

/s/ *Jennifer D. Raviele* (with express permission)

Jennifer D. Raviele
Kelley Drye & Warren LLP
333 West Wacker Dr, Ste 2600
Chicago, IL 60606
Phone:  (212) 808-7684
Email:  jraviele@kelleydrye.com

*Counsel to Brookfield Properties Retail, Inc.*

/s/ *James D. Sadowksi* (with express permission)

James D. Sadowksi, D.C. Bar No. 446635
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400
Fax: (202) 452-1410
Email: jds@gdllaw.com

*Counsel for Terrell Place Property, LLC*

/s/ *Laurel D. Roglen* (with express permission)
Laurel D. Roglen
Ballard Spahr LLP
919 N. Market St., 11th Floor
Wilmington, DE 19801
Phone: (302) 252 4462
Email: roglenl@ballardspahr.com

*Counsel to CoStar Central Place HQ LLC*

SEEN:

/s/ *Kristen S. Eustis* (with express written permission)
Kristen S. Eustis
Trial Attorney, Office of the United States Trustee
1725 Duke Street, Suite 650
Alexandria, VA 23314
Telephone:      (703) 557-7227
Email:               Kristen.S.Eustis@usdoj.gov

**<u>Exhibit 1</u>**

**(Bidding Procedures)**

## Exhibit 2

**(Sale Notice)**

**<u>Exhibit 3</u>**

**(Cure Notice)**

expressly set forth in the Stalking Horse Agreement or Asset Purchase Agreement of the Successful Bidder (as defined herein), and as approved by the Court through the Sale Order.

7.    The Stalking Horse Purchaser or Successful Bidder, as applicable, shall acquire the Purchased Assets free and clear of any and all Encumbrances, subject to certain other conditions and except as otherwise provided in the Stalking Horse Agreement or Asset Purchase Agreement, as applicable, with such Encumbrances to attach solely to the net proceeds of the Sale with the same validity and priority as such Encumbrances applied against the Purchased Assets prior to consummation of the Sale.

### THE BIDDING PROCEDURES

**A.    Provisions Governing Qualifications of Bidders**

8.    Unless otherwise ordered by the Court, in order to participate in the bidding process, prior to the Bid Deadline (defined below), each person, other than the Stalking Horse Purchaser (which shall be deemed a Qualified Bidder without the need to comply with the qualification process below), who wishes to participate in the bidding process (each, a "*Potential Bidder*") must deliver the following to the Debtor:

> (i)  a written disclosure of the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such Bid; and

> (ii) an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information) in form and substance satisfactory to the Debtor.

9.    As promptly as practicable after a person delivers the materials required above, the Debtor will notify such Potential Bidder if it qualifies as a bidder (each a "*Qualified Bidder*").

**B.    Due Diligence**

10.   The Debtor will provide any Qualified Bidder such due diligence access or additional information as the Debtor, in its reasonable discretion, deems appropriate.  The due diligence period will extend through and include the Bid Deadline.  Unless otherwise deemed reasonably appropriate by the Debtor, after consultation with the Consultation Parties, the Debtor and its representatives and advisors shall not be obligated to furnish any due diligence information after the Bid Deadline.  Diligence inquiries should be made to the Debtor's management team using the contact information below:

**Compass Coffee, LLC**
Attn: Michael Haft (michael@compasscoffee.com)

**C.    Bid Deadline**

11.   A Qualified Bidder that desires to make a Bid must deliver written copies of its Bid via email to counsel for the Debtor: Hunton Andrews Kurth LLP, 951 E. Byrd Street, Richmond, VA 23219 (Attn: Tyler P. Brown, tpbrown@hunton.com).

12.   Bids must be actually received by counsel for the Debtor by no later than **4:00 p.m. ET on February 12, 2026** (the "*Bid Deadline*").  The Bid Deadline may be extended by the Debtor, in consultation with the Consultation Parties, without further notice or order of the Court.

**D.**    **Credit Bid Notification**

13.    To the extent that a secured lender desires to submit a competing credit bid for the Purchased Assets, such secured lender shall notify the Debtor in writing of its intention to potentially credit bid no later than the Bid Deadline (the "***Credit Bid Notification***").  If a secured lender indicates in a Credit Bid Notification that it intends to credit bid at the Auction, then it shall not receive the consent/consultation rights with respect to determination of Qualified Bids, Qualified Bidders, the Auction, or the selection of the Successful Bidder(s) or Back-Up Bidder(s), each as defined and more fully set forth below.

14.    In the event that a secured lender revokes a Credit Bid Notification in writing and notifies the Debtor that it no longer intends to credit bid at the Auction, then it shall again be afforded the consent rights and consultation rights described in these Bidding Procedures.

15.    Notwithstanding the foregoing or anything herein to the contrary, unless otherwise ordered by the Court for cause, secured lenders may submit credit bid(s) of all or a portion of their respective secured claims any time after the Bid Deadline or during the Auction, so long as (i) such credit bid shall only serve as a "back-up" bid to the Stalking Horse Bid or such other Successful Bid, if applicable; (ii) such secured lender shall provide an Asset Purchase Agreement, along with a redline against the Form Asset Purchase Agreement, or any Stalking Horse Agreement, if applicable, to the Debtor no later than one (1) business day after making its credit bid; and (iii) such credit bid shall remain irrevocable until the closing of the Sale to the Successful Bidder, including any Stalking Horse Purchaser, if applicable (any such credit bid, a "***Credit Bid Back-up Bid***").  Other than with respect to the Asset Purchase Agreement, the Credit Bid Back-up Bid shall not be subject to the requirements herein for a Qualified Bid or a Back-up Bid.

**E.**    **Provisions Governing Qualification of Bids**

16.    To be eligible to participate in the Auction, a Qualified Bidder must deliver a Bid, so that it is received by counsel for the Debtor on or before the Bid Deadline, that meets the following requirements, as may be modified by the Debtor in its reasonable discretion (collectively, the "***Bid Conditions***" and any such Bid that meets such Bid Conditions, as determined by the Debtor, a "***Qualified Bid***"):

i.    Purpose.  Each Qualified Bidder must state that the Bid includes an offer by such Qualified Bidder to effectuate a Sale of the Purchased Assets.

ii.    Identification of Purchased Assets.  Each Bid for Purchased Assets must identify with specificity which Assets are included in the Bid as Purchased Assets.

iii.    Assigned Contracts.  Each Bid must identify with specificity which executory contracts and unexpired leases the Qualified Bidder expects the Debtor to assume and assign to such Qualified Bidder (the "***Assigned Contracts***").

iv.    Good Faith Deposit.  Each Bid must be accompanied by a cash deposit equal to 10% of the Qualified Bidder's proposed Cash Consideration (as defined herein) (the "***Good Faith Deposit***") in the form of a wire transfer, certified check, or cash, pursuant to instructions to be provided by the Debtor, and which will be deposited into an account held by the Debtor and reserved for either return, application to the Purchase Price, or retention in accordance with these Bidding Procedures.  For the avoidance of doubt, (i) any Qualified Bidder submitting a Bid with a credit bid component pursuant to section 363(k) of the Bankruptcy Code shall only be required to provide a Good Faith Deposit equal to 10% of any Cash Consideration to be paid, after giving credit to the credit bid component and (ii)

- 4 -

the Debtor, in consultation with the Consultation Parties, may alter the Good Faith Deposit requirement for any party;

v.    Purchase Price.  Each Bid must clearly set forth the cash purchase price (the "**Cash Consideration**") and identify any non-cash consideration included in such Bid (together with the Cash Consideration, the "**Purchase Price**") and which liabilities, if any, of the Debtor such Qualified Bidder is agreeing to assume (the "**Assumed Liabilities**").  A Bid must provide that all Cure Amounts related to the Assigned Contracts will be paid by the Qualified Bidder as part of the consideration for the Bid.  The Purchase Price associated with each Bid may include only cash and/or other consideration acceptable to the Debtor, after consultation with the Consultation Parties.  The Cash Consideration of the Bid must be no less than an amount necessary to satisfy any Stalking Hose Protections.

vi.    Binding and Irrevocable.  Each Bid must include a signed statement that the Bid is binding and irrevocable until the selection of the Successful Bidder, provided that if such Qualified Bidder is selected as the Successful Bidder or the Back-Up Bidder, the Bid shall remain binding and irrevocable until the later of (i) closing of the Sale with such Successful Bidder, or the Back-Up Bidder, as applicable (the "**Closing**") and (ii) the date that is thirty (30) days after the Sale Hearing.

vii.    Asset Purchase Agreement.  Each Bid must include an executed asset purchase agreement (each an "**Asset Purchase Agreement**") pursuant to which the Qualified Bidder proposes to effectuate the contemplated Sale, as well as  a redlined copy of the Asset Purchase Agreement marked against the Form Asset Purchase Agreement to show all changes requested by the Qualified Bidder against the Form Asset Purchase Agreement, or, in the event a Stalking Horse Purchaser is selected, a redlined copy of the Asset Purchase Agreement marked against the Stalking Horse Agreement to show all changes requested by the Qualified Bidder against the Stalking Horse Agreement.

The terms and conditions of the Asset Purchase Agreement must be, in the aggregate, not materially more burdensome to the Debtor than the provisions of any Stalking Horse Agreement with any Stalking Horse Purchaser selected by the Debtor.

viii.    Current Employees.  A Bid shall contain a detailed description of how the Qualified Bidder intends to treat current employees of the Debtor.

ix.    Contingencies.  A Bid must identify with particularity each and every condition to the Closing.  A Bid may not be conditioned on obtaining financing or any internal approval or on the outcome or completion of due diligence, but may be subject to (i) the accuracy in all material respects at the Closing of representations and warranties at or before the Closing or (ii) the satisfaction in all material respects of customary representations and warranties for transactions of similar size and nature at or before the Closing or (iii) the satisfaction in all material respects of customary conditions for transactions of similar size and nature at or before the Closing.  A Bid must disclose any governmental approvals identified by the Qualified Bidder other than as set forth in the Asset Purchase Agreement that may impact the evaluation of such Bid or the consummation of the Sale.

x.    No Collusion.  Each Bid must include a representation that the Qualified Bidder has not engaged in any collusion with respect to its Bid submission (though Qualified Bidders may be permitted to make joint bids with the prior written consent of the Debtor) and that the

Qualified Bidder will not engage in any collusion with respect to any Bids and the Bidding Procedures, including the sale process, the Auction, or the Sale.

xi.      <u>Authorization to Bid and Identity of Bidder</u>.  Each Bid must include evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body, or a statement as to why such approval is unnecessary) with respect to the submission, execution, delivery, and closing of the Asset Purchase Agreement.  A Bid must also fully disclose the identity of the entity that is submitting the Bid, including the identity of the ultimate beneficial owners of the Qualified Bidder and the identity of any person or entity providing debt or equity financing to support the Bid.

xii.     <u>Financing Sources</u>.  Each Bid must include written evidence that demonstrates the Qualified Bidder has the necessary financial ability to close the contemplated Sale and provide adequate assurance of future performance under all Assigned Contracts.  Such information may include, *inter alia*, the following:

     a.      the Qualified Bidder's current financial statements (audited, if they exist);

     b.      contact names, telephone numbers, and e-mail addresses for verification of financing sources;

     c.      evidence of the Qualified Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated Sale (including confirmation that the funding of such commitments is not subject to any contingency);

     d.      written representations of the Qualified Bidder's financial wherewithal or financial statements of, or verified financial commitments obtained by, the Qualified Bidder (or, if the Qualified Bidder is an entity formed for the purpose of acquiring all or any portion of the Assets, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtor; and

     e.      any other form of financial disclosure of credit-quality support information acceptable to the Debtor demonstrating that such Qualified Bidder has the ability to close the contemplated Sale.

xiii.    <u>Adequate Assurance of Future Performance</u>.  Each Bid must demonstrate, in the Debtor's reasonable business judgment, after consultation with the Consultation Parties, that the Qualified Bidder can provide adequate assurance of future performance under all Assigned Contracts as required by section 365 of the Bankruptcy Code, if applicable.  The determination of adequate assurance by the Debtor and the Consultation Parties is without prejudice to a landlord's right to object to whether adequate assurance of future performance has been provided.

xiv.     <u>No Fees Payable to Qualified Bidder</u>.  A Qualified Bidder (other than any Stalking Horse Purchaser) may not request any break-up fee, termination fee, expense reimbursement, or any similar type of payment or credit against the Purchase Price.  Moreover, by submitting a Bid, a Qualified Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code relating in any way to the submission of its Bid, compliance with the Bidding Procedures, or participation in the Sale.

xv.     <u>Payment of Stalking Horse Protections</u>.  A Bid must allow for the payment of any Stalking Horse Protections to any Stalking Horse Purchaser from the first proceeds of the Cash Consideration of the Purchase Price of such Bid upon the Closing.

xvi.     <u>Non-Reliance</u>.  A Bid must include an acknowledgement and representation of the Qualified Bidder that it has had an opportunity to conduct any and all due diligence regarding the Assets (as applicable to its Bid) and Assumed Liabilities prior to making its Bid, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid, and that it did not rely upon any written or oral statements, representations, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or, as applicable, the physical condition of the Assets, the Assumed Liabilities, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Asset Purchase Agreement.

xvii.     <u>As Is, Where Is</u>.  A Bid must include an acknowledgement and representation of the Qualified Bidder that it understands that any Sale shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents, or its estate except to the extent set forth in the Stalking Horse Agreement or the purchase agreement of the Successful Bidder, as applicable.

17.     The Debtor, in consultation with the Consultation Parties, shall have the discretion to determine whether a Bid meets the above requirements and is therefore a Qualified Bid.  Promptly upon determining that a Bid constitutes a Qualified Bid, the Debtor shall notify the Qualified Bidder that its Bid constitutes a Qualified Bid; *provided*, *however*, that such notification shall not be given later than 4:00pm ET on February 10, 2026.  Only those Qualified Bidders who have submitted Qualified Bids, as determined by the Debtor, in consultation with the Consultation Parties, shall be permitted to participate in the Auction.

18.     Notwithstanding the foregoing, the Stalking Horse Purchaser shall be deemed a Qualified Bidder, and the Stalking Horse Bid shall be deemed a Qualified Bid, for all purposes in connection with the Sale (including any Auction) without compliance with the above enumerated requirements except the Good Faith Deposit requirement.

## F.    <u>No Qualified Bids</u>

19.     If the Debtor does not receive any Qualified Bids, the Debtor will not hold the Auction.

## G.    <u>Auction Process</u>

20.     If the Debtor receives one or more Qualified Bids, the Debtor will conduct an auction of the Assets (the "***Auction***"), which shall be on **February 17, 2026 at 10:00 a.m. ET** .

21.     At the start of the Auction, the Debtor shall describe the material terms of the Starting Bid (as defined below) for the Purchased Assets on the record.  The Debtor shall maintain a video recording or written transcript of the Auction and all Bids made and announced at the Auction, if any, including the Starting Bid, any and all Subsequent Bids, and the Successful Bid and Back-Up Bid.  The Auction shall be held in accordance with the following procedures:

a.    only the Stalking Horse Purchaser (if any) and any other Qualified Bidders who have timely submitted Qualified Bids (and their counsel) will be entitled to attend and submit competing Bids (*i.e.*, bids other than Credit Bid Back-up Bids) at the Auction;

*provided that*, the Consultation Parties may attend the Auction regardless of whether they intend to submit a Bid or Credit Bid Back-up Bid for any of the Purchased Assets; and *provided further, that*, parties may request to attend the recorded and/or transcribed portions of the Auction, solely for the purpose of observing the Auction proceedings, by making a written request to counsel for the Debtor, with email being sufficient;

b.   any Stalking Horse Purchaser will, notwithstanding the elements of the Purchase Price set forth in the Stalking Horse Agreement, be entitled to make subsequent Bids for the Purchased Assets comprised of further credit bids, cash, additional consideration of any type acceptable to the Debtor, or any combination thereof;

c.   each Qualified Bidder participating in the Auction shall be required to confirm on the record at the Auction (a) it has not engaged in any collusion with respect to the bidding and the Auction, (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder or Back-up Bidder, and (c) the Qualified Bidder agrees to serve as the Back-up Bidder if its Qualified Bid is the next highest or otherwise best Bid;

d.   at least one (1) business day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtor whether it intends to attend the Auction and all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder in attendance at the Auction; *provided* that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the selection of the Successful Bidder and Back-Up Bidder at the conclusion of the Auction;

e.   prior to the Auction, the Debtor will provide copies of the Qualified Bid, or combination of Qualified Bids, which the Debtor believes, after consultation with the Consultation Parties, is the highest or otherwise best offer for the Purchased Assets (the "***Starting Bid***") to all Qualified Bidders who submitted Qualified Bids;

f.   the identity of each participating Qualified Bidder will be disclosed on the record at the Auction;

g.   bidding at the Auction will begin with the Starting Bid and continue in bidding increments (each, a "***Subsequent Bid***") providing a net value to the Debtor's estate of at least $50,000 above the prior Bid.  After the first round of bidding and between each subsequent round of bidding, the Debtor, after consultation with the Consultation Parties, shall announce the Bid (and the value of such Bid) that it believes to be the highest or otherwise best Bid at that time (each, the "***Leading Bid***");

h.   a round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid;

i.   except as specifically set forth herein, for the purpose of evaluating the value of the Purchase Price provided by each Subsequent Bid (including any Subsequent Bid by any Stalking Horse Purchaser), the Debtor shall give effect to the Stalking Horse Protections (if any) as well as any additional liabilities to be assumed by a Qualified Bidder, and any additional costs which may be imposed on the Debtor; and

- 8 -

j. the Debtor explicitly reserves the right, in its business judgment and after consultation with the Consultation Parties, to exercise its discretion in conducting the Auction (in a manner that is not inconsistent with the Bidding Procedures, the Bankruptcy Code, or any Order of the Court), including (x) modifying bidding increments as necessary to achieve the highest and best Bids for the Purchased Assets, and (y) determining whether to adjourn the Auction to facilitate separate discussions between any Qualified Bidders, the Debtor, and the Consultation Parties, as applicable.

22.     In the event the Debtor determines not to hold an Auction, the Debtor will file with the Court, in advance of the date and time set for the Auction, a notice containing (i) a statement that the Auction has been canceled, (ii) the identity of the Successful Bidder (defined below), if any (iii) a summary of the material terms of the Successful Bid (defined below), if one is selected, and (iv) notice of the date and time of any Sale Hearing.

## H.     Selection of Successful Bid

23.     Prior to the conclusion of the Auction, the Debtor, in consultation with the Consultation Parties, will review and evaluate each Qualified Bid submitted at the Auction (including any Stalking Horse Bid) in accordance with the procedures set forth herein and determine which offer is the highest or otherwise best offer (one or more such bids, collectively the "*Successful Bid*" and the bidder(s) making such bid(s), collectively, the "*Successful Bidder*"), and communicate to the Auction participants the identity of the Successful Bidder and the details of the Successful Bid. The determination of the Successful Bid and the Successful Bidder by the Debtor, in consultation with the Consultation Parties, at the conclusion of the Auction shall be final, subject only to approval by the Court at the Sale Hearing.

24.     Other than the Stalking Horse Purchaser, the Qualified Bidder(s) with the next highest or otherwise best Qualified Bid, as determined by the Debtor, in consultation with the Consultation Parties, will be required to serve as a back-up bidder (the "*Back-Up Bidder*") and keep its Bid open and irrevocable until the later to occur of (i) thirty (30) days after the Sale Hearing, and (ii) closing on the Successful Bid with the Successful Bidder. If the Successful Bidder fails to consummate the Sale, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtor will be authorized and directed to consummate the Sale with the Back-Up Bidder without further order of the Court.

25.     Within one (1) business day after conclusion of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents necessary to consummate the Successful Bid. On or before **February 18, 2026 at 4:00 p.m. ET**, the Debtor shall file a notice with the Court identifying the Successful Bidder and the Back-Up Bidder, if any.

## I.     Return of Good Faith Deposits

26.     The Good Faith Deposit of any Successful Bidder (or any Backup Bidder that becomes a Successful Bidder) shall be applied to the Purchase Price of such Sale at Closing. The Good Faith Deposits of all Qualified Bidders other than the Successful Bidder and Backup Bidder shall be returned to the respective Qualified Bidder within five (5) business days of the conclusion of the Auction.

27.     If a Successful Bidder (including any Backup Bidder that becomes a Successful Bidder) fails to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtor shall be entitled to retain such Successful Bidder's Good Faith Deposit as part of the Debtor's damages resulting from such Successful Bidder's breach or failure to perform, without prejudice to the Debtor's rights to seek additional damages from the Court, as appropriate.

**SALE HEARING**

- 9 -

28.      The Debtor will seek entry of one or more Sale Order(s) from the Court at a hearing (the "*Sale Hearing*") to begin on **February 26, 2026 at 11:00 a.m. ET**, subject to the availability of the Court, to approve and authorize the Sale to the Successful Bidder on the terms and conditions in the applicable Asset Purchase Agreement or Stalking Horse Agreement.

29.      The Successful Bid (including any Backup Bid that is subsequently deemed the Successful Bid) will be subject to approval by the Court at the Sale Hearing.

30.      Any objection to a sale of the Assets, including (i) any objection to a sale of the Assets free and clear of all liens, claims, interests, and encumbrances pursuant to Section 363(f) of the Bankruptcy Code and (ii) any objection to entry of any Sale Order, shall be filed with the Court and served on the parties below by **no later than 4:00 p.m. ET on February 19, 2026 (the "*Sale Objection Deadline*")**:

- the Debtor
- counsel for the Debtor
- counsel for the Committee, if one is appointed
- counsel for the Office of the United States Trustee
- counsel for each secured creditor
- counsel for the DIP Lender
- counsel for any relevant Successful Bidder; and
- counsel for any relevant Backup Bidder

## RESERVATION OF RIGHTS

31.      Notwithstanding the foregoing, the Debtor reserves the right, after consultation with the Consultation Parties, to adjourn the Auction, if any, one or more times to, among other things: (i) facilitate discussions between and amongst the Debtor, the Qualified Bidders, and the Consultation Parties, as appropriate; (ii) allow Qualified Bidders to consider how they wish to proceed; and (iii) provide Qualified Bidders the opportunity to provide the Debtor and the Consultation Parties with such additional evidence as the Debtor, in its reasonable business judgment, after consultation with the Consultation Parties, may require to evidence that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction.

32.      The Debtor and the Consultation Parties agree that, in the event of any dispute regarding the Sale process outlined or Bidding Procedures: (i) a party may seek an emergency hearing requesting that the Court resolve such dispute; and (ii) the other parties shall consent to a request for emergency hearing.

## FIDUCIARY OUT

33.      Notwithstanding anything to the contrary, nothing in these Bidding Procedures, the Bidding Procedures Order, or otherwise, shall require the Debtor, or the board of managers of the Debtor, to take any action, including but not limited to pursuing or consummating a transaction with a Stalking Horse Purchaser or any Qualified Bidder, or to refrain from taking any action related to any sale transaction or with respect to these Bidding Procedures to the extent the Debtor reasonably determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law; *provided, however*, the Debtor shall promptly provide the Consultation Parties with notice of such action or inaction. For the avoidance of doubt, nothing in these Bidding Procedures, the Bidding Procedures Order, or otherwise, shall prohibit the Debtor from pursuing a plan of reorganization if the Debtor, in consultation with the Consultation Parties, determines that such course of action is in the best interest of creditors and the estates.

**<u>Exhibit 2</u>**

**(Sale Notice)**

**HUNTON ANDREWS KURTH LLP**
Tyler P. Brown (admitted *pro hac vice*)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (admitted *pro hac vice*)
951 E. Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200

*Proposed Counsel for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **Compass Coffee, LLC,** | |
| **Debtor.** | **Case No. 26-00005 (ELG)** |

**NOTICE OF PROPOSED SALE OF ASSETS, AUCTION, AND SALE HEARING**

**PLEASE TAKE NOTICE** that on January 14, 2026, Compass Coffee, LLC, the above-captioned debtor and debtor in possession (the "**Debtor**") filed with the Court the *Debtor's Motion for (A) Entry of an Order (I) Approving Bidding Procedures, (II) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (III) Approving Stalking Horse Protections, (IV) Scheduling Bid Deadline, Auction Date, and Sale Hearing Date, and (V) Approving Form of Notice Thereof; (B) Entry of an Order After the Sale Hearing (I) Authorizing the Debtor to Sell Its Assets, and (II) Authorizing the Debtor to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Docket No. 76] (the "**Sale Motion**").[1]

**PLEASE TAKE FURTHER NOTICE** that:

1.      After the Bidding Procedures Hearing held on January 21, 2026, the Court entered an order [Docket No. ___] (the "**Bidding Procedures Order**"), which, among other things, establishes bidding procedures (the "**Bidding Procedures**") that govern the manner in which the Assets of the Debtor are to be marketed and sold. A copy of the Bidding Procedures approved by the Court pursuant to the Bidding Procedures Order is attached hereto as <u>Exhibit 1</u>.

2.      Any party wishing to participate in the Auction or to otherwise submit a Bid for the Assets being sold must first qualify as a Qualified Bidder pursuant to the Bidding Procedures.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion or the Bidding Procedures Order, as applicable.

3.      Bids are due on **February 12, 2026 at 4:00 p.m. ET** (the "*Bid Deadline*").  The Debtor will notify each Qualified Bidder no later than February 16, 2025 whether their respective Bid is determined to be a Qualified Bid such that they are permitted to participate in any Auction.

4.      In accordance with the terms of the Bidding Procedures Order, if the Debtor receives one or more Qualified Bids within the requirements and timeframe established in the Bidding Procedures Order, the Debtor will conduct an auction for the Assets (the "*Auction*") starting at **10:00 a.m. ET on February 17, 2026** (the "*Auction Date*"), at such place to be designated in advance by the Debtor with notice to the Qualified Bidders, the Consultation Parties, and certain other parties in interest.  Only the Consultation Parties and Qualified Bidders, as determined by the Debtor, in consultation with the Consultation Parties, will be permitted to participate in and/or make any statements on the record at the Auction.

5.      No later than 4:00 pm ET on February 18, 2026, the Debtor shall file a notice with the Bankruptcy Court identifying the Successful Bidder and the Back-Up Bidder.

6.      In the event the Debtor, in consultation with the Consultation Parties, selects a Successful Bidder to purchase the Purchased Assets, a hearing (the "*Sale Hearing*") shall be held before the Honorable Judge Elizabeth L. Gunn, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Columbia, on **February 26, 2026 at 11:00 a.m. ET**, or as soon thereafter as counsel may be heard.  The Debtor shall appear before the Court at the Sale Hearing and seek entry of an order: (a) authorizing the Sale(s) of the designated Purchased Assets by the Debtor to the Stalking Horse Purchaser or other Successful Bidder; (b) authorizing the assumption and assignment of the Assigned Contracts; and (c) granting certain related relief.

7.      Any objections to the relief requested in the Sale Motion as relates to the sale of the Purchased Assets to the Stalking Horse Purchaser or Successful Bidder (except for any Adequate Assurance Objection), as applicable (each, a "*Sale Objection*") must: (a) set forth in writing and describe with specificity the factual and legal basis for the Sale Objection; (b) comply with the Bankruptcy Rules and Local Rules; (c) be filed with the Clerk of the Court by no later than **4:00 p.m. ET on February 19, 2026** (the "*Sale Objection Deadline*"); and (d) be served, so as to be actually received on or before the Sale Objection Deadline by the service parties (the "*Service Parties*") consisting of: (i) counsel for the Debtor, Hunton Andrews Kurth LLP, Attn: Tyler P. Brown, Esq., Riverfront Plaza, East Tower, 951 E. Byrd Street, Richmond, Virginia 23219, email: tpbrown@hunton.com, (ii) counsel for the DIP Lender, Redmon Peyton & Braswell, LLP, Attn: Robert M. Marino, Esq. 510 King Street, Suite 301, Alexandria, Virginia 23214, email: rmmarino@rpb-law.com, (iii) counsel for the Committee, if one is appointed in this case; and (iv) the U.S. Trustee.

8.      Objections, if any, to the manner in which the Auction was conducted and selection of the Successful Bidder (any such objection, an "*Auction Objection*") must (a) set forth in writing and describe with specificity the factual and legal basis for the Auction Objection; (b) comply with the Bankruptcy Rules and Local Rules; (c) be filed with the Clerk of the Court by no later than **4:00 p.m. ET on February 19, 2026** (the "*Auction Objection Deadline*"); and (d) be served so as to be actually received on or before the Auction Objection Deadline by the Service Parties.

9.      Objections, if any, to the specific identity of and adequate assurance of future performance provided by the Successful Bidder, solely if a Stalking Horse Purchaser is not the Successful Bidder and solely with respect to non-debtor counterparties to proposed Assigned Contracts, (any such objection, an "***Adequate Assurance Objection***") must (a) set forth in writing and describe with specificity the factual and legal basis for the Adequate Assurance Objection; (b) comply with the Bankruptcy Rules and Local Rules; (c) be filed with the Clerk of the Court by no later than **4:00 p.m. ET on February 24, 2026**   (the "***Adequate Assurance Objection Deadline***"); and (d) be served so as to be actually received on or before the Adequate Assurance Objection Deadline by the Service Parties.

10.     This Sale Notice is subject to the full terms and conditions of the Bidding Procedures Order, including the Bidding Procedures, which shall control in the event of any conflict, and the Debtor encourages all parties in interest to review such documents in their entirety.

11.     Additional information regarding the Sale, including copies of the Sale Motion, the Bidding Procedures Order and the Bidding Procedures, is available by contacting Debtor's counsel using the contact information below, or by accessing the documents via PACER.

*[Remainder of page intentionally left blank]*

3

Dated: January [], 2026
Richmond, Virginia

Respectfully submitted,

/s/
Tyler P. Brown (admitted *pro hac vice*)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (admitted *pro hac vice*)
**HUNTON ANDREWS KURTH LLP**
951 E. Byrd Street
Richmond, Virginia 23219
Telephone:    (804) 788-8200
Facsimile:    (804) 788-8218
Email:    tpbrown@hunton.com
jwuebker@hunton.com
nmonico@hunton.com

*Proposed Counsel for the Debtor and Debtor in Possession*

**<u>Exhibit 1</u>**

Bidding Procedures

## Exhibit 3

**(Cure Notice)**

**HUNTON ANDREWS KURTH LLP**
Tyler P. Brown (admitted *pro hac vice*)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (admitted *pro hac vice*)
951 E. Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200

*Proposed Counsel for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **In re:** | **Chapter 11** |
| **Compass Coffee, LLC,** | |
| **Debtor.** | **Case No. 26-00005 (ELG)** |

**NOTICE OF DEBTOR'S INTENT TO
ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES AND SETTING FORTH PROPOSED CURE AMOUNTS**

**PLEASE TAKE NOTICE** that on January 14, 2026, Compass Coffee, LLC, the above-captioned debtor and debtor in possession (the "***Debtor***") filed with the Court the *Debtor's Motion for (A) Entry of an Order (I) Approving Bidding Procedures, (II) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (III) Approving Stalking Horse Protections, (IV) Scheduling Bid Deadline, Auction Date, and Sale Hearing Date, and (V) Approving Form of Notice Thereof; (B) Entry of an Order After the Sale Hearing (I) Authorizing the Debtor to Sell Its Assets, and (II) Authorizing the Debtor to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Docket No. 76] (the "***Sale Motion***").[1]

**PLEASE TAKE FURTHER NOTICE** that:

1.      After the Bidding Procedures Hearing held on January 21, 2026, the Court entered the order [Docket No. ___] (the "***Bidding Procedures Order***"), which, among other things, (a) establishes bidding procedures (the "***Bidding Procedures***") that govern the manner in which the Assets of the Debtor are to be marketed and sold; and (b) establishes procedures for the assumption by the Debtor and assignment to a Successful Bidder (or Stalking Horse Purchaser) of certain of the Debtor's executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code (the "***Assigned Contracts***").

2.      In the event the Debtor, in consultation with the Consultation Parties, selects a Successful Bidder to purchase the Purchased Assets, a hearing (the "***Sale Hearing***") shall be held

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion or the Bidding Procedures Order, as applicable.

before the Honorable Judge Elizabeth L. Gunn, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Columbia, on **February 26, 2026 at 11:00 a.m. ET**, or as soon thereafter as counsel may be heard.  The Debtor shall appear before the Court at the Sale Hearing and seek entry of an order: (a) authorizing the Sale(s) of the designated Purchased Assets by the Debtor to the Stalking Horse Purchaser or other Successful Bidder; (b) authorizing the assumption and assignment of the Assigned Contracts; and (c) granting certain related relief.

3.    The Debtor is party to various executory contracts and unexpired leases which may be designated by the Stalking Horse Purchaser or Successful Bidder, as applicable, as Assigned Contracts in connection with the Sale(s).  Pursuant to the Bidding Procedures Order, the Debtor intends to assume and assign the Assigned Contracts to the Stalking Horse Purchaser or Successful Bidder(s), as applicable, upon the closing of the Sale(s).

4.    You have been identified as a counterparty to an executory contract or unexpired lease that may potentially be designated as an Assigned Contract.  The executory contract(s) or unexpired lease(s) with respect to which you have been identified as a counterparty, and the corresponding proposed cure amount (the "***Cure Amount***"), which the Debtor, the Stalking Horse Bidder or Successful Purchaser intends to pay to cure defaults arising prior to the Petition Date, are set forth on Schedule 1 annexed hereto.

5.    The Debtor proposes to cure any and all defaults (other than the filing of this chapter 11 case) and actual pecuniary losses under the Assigned Contracts by the payment of the Cure Amount, or such other amount as the parties may agree.

6.    If designated as an Assigned Contract, the assumption and assignment of any Assigned Contract and payment of any Cure Amount shall result in the full release and satisfaction of any pre-petition claims or defaults, whether monetary or non-monetary, upon the consummation of the Sale.

7.    Pursuant to the Bidding Procedures Order, any objections to (1) the assumption and assignment of any executory contract or unexpired lease identified in the Cure Notice, (2) the adequate assurance provided by the Stalking Horse Purchaser (except in the context of an Adequate Assurance Objection for a Successful Bidder that is not the Stalking Horse Purchaser), or (3) the proposed Cure Amounts set forth in the Cure Notice (a "***Contract Objection***"), must: (a) set forth in writing and describe with specificity the factual and legal basis for the Contract Objection; (b) comply with the Bankruptcy Rules and Local Rules; (c) be filed with the Clerk of the Court no later than **4:00 p.m. (ET) on February 6, 2026** (the "***Contract Objection Deadline***"); and (d) be served, so as to be actually received on or before the Contract Objection Deadline by the Service Parties (as defined in the Bidding Procedures Order).

8.    **If a counterparty to an executory contract or unexpired lease set forth on Schedule 1 hereto fails to file a Contract Objection by the Contract Objection Deadline, then the Cure Amount set forth in this Cure Notice will be binding upon such contract counterparty, and all parties in interest, for all purposes in this chapter 11 case and otherwise.  All such counterparties to the those executory contracts and unexpired leases on Schedule 1 hereto will: (a) be forever barred from objecting to the Cure Amounts with respect to such executory contracts and unexpired leases and the Cure Amounts identified in this Cure Notice with respect to such executory contracts and unexpired leases shall be**

2

the only amounts necessary under section 365(b) of the Bankruptcy Code to cure all pre-petition monetary defaults thereunder if the applicable Stalking Horse Purchaser or Successful Bidder ultimately decides to have such executory contracts and unexpired leases assumed by the Debtor and assigned to it as Assigned Contracts; (b) be deemed to have consented to the assumption and assignment if the applicable Stalking Horse Purchaser or other Successful Bidder designates such contract or lease as an Assigned Contract; and (c) be forever barred and estopped from asserting or claiming against the Debtor or the Stalking Horse Purchaser or Successful Bidder, as applicable, that any additional pre-petition amounts are due, other pre-petition defaults exist, other conditions to assignment must be satisfied under such executory contracts or unexpired leases, or that there is any objection or defense to the assumption and assignment of the applicable Assigned Contract; *provided that*, with respect to (b) and (c) above, if a Stalking Horse Purchaser is not the Successful Bidder, solely with respect to non-debtor counterparties to Assigned Contracts, a counterparty may object to the specific identity of, and adequate assurance of future performance provided by, the Successful Bidder by filing an Adequate Assurance Objection by the Adequate Assurance Objection Deadline.

9.      If a counterparty to an executory contract or unexpired lease set forth on Schedule 1 of this Cure Notice timely files a Contract Objection, whether based on the proposed Cure Amount or any other alleged cause or claim, then, to the extent the relevant parties are unable to resolve the Contract Objection prior to the commencement of the Sale Hearing, such Contract Objection will be adjudicated at the Sale Hearing, or at such other date and time as may be fixed by the Court.

10.     The Stalking Horse Purchaser or Successful Bidder, as applicable, shall be responsible for satisfying any requirements regarding adequate assurance of future performance that may be imposed under sections 365(b) and (f) of the Bankruptcy Code in connection with the proposed assumption and assignment of your Assigned Contract. The Court shall make its determinations concerning such adequate assurance of future performance pursuant to sections 365(b) and (f) of the Bankruptcy Code at the Sale Hearing, or such other date as may be fixed by the Court. Any counterparty failing to timely object shall be forever barred from objecting to assumption by the Debtor and assignment to the Stalking Horse Purchaser or Successful Bidder, of the relevant Assigned Contract on grounds of adequate assurance of future performance.

11.     If at any time after the Cure Notice is served (but prior to the sale pursuant to a Stalking Horse Agreement or other Asset Purchase Agreement) the Debtor: (a) amends the Assigned Contract List to include additional executory contracts or unexpired leases; or (b) receives notice from the Stalking Horse Purchaser, if any, or Successful Bidder that additional prepetition executory contracts and or unexpired leases are to be designated as Assigned Contracts under the Stalking Horse Agreement or other Asset Purchase Agreement, then the Debtor shall file an amended Assigned Contract List and serve a supplemental cure notice (each, a "*Supplemental Cure Notice*") on the counterparty to each such contract or lease (each, a "*Previously Omitted Contract*") within two (2) business days of the amendment to the Assigned Contract List, or the receipt of notice of designation as an Assigned Contract. Each such Supplemental Cure Notice shall set forth the same information as required in the Cure Notice. A Stalking Horse Purchaser or Successful Bidder may designate additional contracts or leases to be assumed and assigned, or remove contracts and leases from the list of Assigned Contracts, up to two (2) business days prior to the Closing of the related Sale, in accordance with any Successful Bid.

3

12.     If a counterparty to a Previously Omitted Contract fails to file a Contract Objection within fourteen (14) days of the Supplemental Cure Notice, then the Cure Amount set forth in the Supplemental Cure Notice will be binding upon such contract counterparty, and all parties in interest, for all purposes in this chapter 11 case and otherwise, to the extent set forth in paragraph 8 above.

13.     If a counterparty to a Previously Omitted Contract timely files a Contract Objection, whether based on the proposed Cure Amount or any other alleged cause or claim, then, to the extent the relevant parties are unable to resolve the Contract Objection prior to the commencement of the Sale Hearing, such Contract Objection will be adjudicated at the Sale Hearing, or at such other date and time as may be fixed by the Court or agreed by the parties.

14.     For the avoidance of doubt, the inclusion of an executory contract or unexpired lease on Schedule 1 hereto shall not obligate the Debtor to assume and assign any executory contract or unexpired lease listed thereon, and the rights of the Debtor, the Stalking Horse Purchaser, or Successful Bidder to modify the list of Assigned Contracts, including to remove any contracts or leases from such list, are expressly reserved.  Only those executory contracts and unexpired leases designated at closing will be assumed and assigned to the Stalking Horse Purchaser or Successful Bidder, as applicable.

15.     If no Cure Amount is due under the executory contract or unexpired lease, and the contract counterparty does not otherwise object to the assumption and assignment, then no further action needs to be taken on the part of that counterparty.

16.     The Debtor's decision to assume and assign the Assigned Contracts is subject to Court approval and consummation of the Sale.  Absent consummation of the Sale, each Assigned Contract shall not be deemed assumed or assigned, and shall be subject to further administration under the Bankruptcy Code in all respects.  The designation of any agreement as an Assigned Contract shall not constitute or be deemed to be a determination or admission by the Debtor that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

17.     This Cure Notice is subject to the full terms and conditions of the Bidding Procedures Order, including the Bidding Procedures, which shall control in the event of any conflict, and the Debtor encourages all parties in interest to review such documents in their entirety.

18.     Additional information regarding the Sale, including copies of the Sale Motion, the Bidding Procedures Order and the Bidding Procedures, is available by contacting Debtor's counsel using the contact information below, or by accessing the documents via PACER.

*[Remainder of page intentionally left blank]*

Dated: January [], 2026
Richmond, Virginia

Respectfully submitted,

/s/
_____
Tyler P. Brown (admitted *pro hac vice*)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (admitted *pro hac vice*)
**HUNTON ANDREWS KURTH LLP**
951 E. Byrd Street
Richmond, Virginia 23219
Telephone:    (804) 788-8200
Facsimile:    (804) 788-8218
Email:        tpbrown@hunton.com
              jwuebker@hunton.com
              nmonico@hunton.com

*Proposed Counsel for the Debtor and Debtor in
Possession*

5

**Schedule 1**

| Counterparty | Contract | Effective Date | Debtor | Cure Amount |
|---|---|---|---|---|
|  |  |  |  |  |

United States Bankruptcy Court

District of Columbia

In re:                                                          Case No. 26-00005-ELG

Compass Coffee, LLC                                            Chapter 11

    Debtor

# CERTIFICATE OF NOTICE

District/off: 0090-1                   User: admin                              Page 1 of 2

Date Rcvd: Jan 23, 2026               Form ID: pdf001                       Total Noticed: 1

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |
| ## | Addresses marked '##' were identified by the USPS National Change of Address system as undeliverable. Notices will no longer be delivered by the USPS to these addresses; therefore, they have been bypassed. The debtor's attorney or pro se debtor was advised that the specified notice was undeliverable. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jan 25, 2026:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| cr | + | James Wilson Constitutional Society, LLC, c/o BEAN, KINNEY & KORMAN, P.C., Attn: Andrea C Davison, 2311 Wilson Blvd., 5th Floor, Arlington, VA 22201-5422 |

TOTAL: 1

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| dbpos | ##+ | Compass Coffee, LLC, 1535 7th Street NW, Washington, DC 20001-3201 |

TOTAL: 0 Undeliverable, 0 Duplicate, 1 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jan 25, 2026                    Signature:     /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on January 23, 2026 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Addison J. Chappell | on behalf of Creditor Falls Church (E&A) LLC achappell@milesstockbridge.com |
| Addison J. Chappell | on behalf of Creditor SV Village Operating  LLC achappell@milesstockbridge.com |
| Addison J. Chappell | on behalf of Creditor MDP 1351 Wisconsin LLC achappell@milesstockbridge.com |

District/off: 0090-1                              User: admin                                    Page 2 of 2

Date Rcvd: Jan 23, 2026                         Form ID: pdf001                            Total Noticed: 1

Alexandria Jean Smith
    on behalf of Creditor West Half Residential II  LLC ajs@gdllaw.com, rwl@gdllaw.com

Andrea Campbell Davison
    on behalf of Creditor James Wilson Constitutional Society  LLC ADavison@beankinney.com, ksmith@beankinney.com

Catherine Brady DiFazio Harrington
    on behalf of Creditor MDP 1351 Wisconsin LLC charrington@milesstockbridge.com

Catherine Brady DiFazio Harrington
    on behalf of Creditor Falls Church (E&A) LLC charrington@milesstockbridge.com

Catherine Brady DiFazio Harrington
    on behalf of Creditor SV Village Operating  LLC charrington@milesstockbridge.com

Eric Waldman
    on behalf of Creditor AP DC Tomato's LLC ewaldman@cirlaw.com
    rbashaw@cirlaw.com;ecameron@cirlaw.com;bloveless@cirlaw.com

James D. Sadowski
    on behalf of Creditor West Half Residential II  LLC jds@gdllaw.com, mer@gdllaw.com

James D. Sadowski
    on behalf of Creditor Terrell Place Property LLC jds@gdllaw.com  mer@gdllaw.com

Jennifer Ellen Wuebker
    on behalf of Debtor In Possession Compass Coffee  LLC jwuebker@hunton.com, tcanada@hunton.com;jwuebker@hunton.com

John D. Sadler
    on behalf of Creditor CoStar Central Place HQ  LLC Sadlerj@ballardspahr.com, andersonn@ballardspahr.com

Katie Lane Chaverri
    on behalf of Creditor Harrison Suarez kchaverri@tlclawfirm.com  dtayman@tlclawfirm.com

Kristen S. Eustis
    on behalf of U.S. Trustee U. S. Trustee for Region Four Kristen.S.Eustis@usdoj.gov  Robert.W.Ours@usdoj.gov

Leonidas Koutsouftikis
    on behalf of Creditor Perseus 1827 Adams Mill Investments LLC lkouts@mckplaw.com  mcook@magruderpc.com

Nicholas S. Monico
    on behalf of Debtor In Possession Compass Coffee  LLC nmonico@huntonak.com

Philip T. Evans
    on behalf of Creditor KBSIII 3003 Washington  LLC philip.evans@hklaw.com,
    kimi.odonnell@hklaw.com;HAPI@HKLAW.COM

Richard A DuBose, III
    on behalf of Creditor EagleBank rdubo@gebsmith.com

Robert M. Marino
    on behalf of Interested Party National Investment Group  Inc. rmmarino@rpb-law.com, rmmarino1@aol.com

U. S. Trustee for Region Four
    USTPRegion04.DC.ECF@USDOJ.GOV


TOTAL: 21