**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re: | Chapter 11 |
| COMPASS COFFEE, LLC, | Case No. 26-00005 (ELG) |
| Debtor. | |

## OBJECTION OF KBSIII 3003 WASHINGTON, LLC TO CURE AMOUNTS AND ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASE IN CONNECTION WITH SALE

KBSIII 3003 Washington, LLC ("KBS" or the "Landlord"), hereby files this objection (the "Objection") in response to the *Notice of Debtor's Intent to Assume and Assign Executory Contracts and Unexpired Leases and Setting Forth Proposed Cure Amounts* (the "Cure Notice") served upon KBS by Compass Coffee, LLC, the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), in relation to the potential sale of all or certain of the Debtor's assets pursuant to the *Debtor's Motion for (A) Entry of an Order (I) Approving Bidding Procedures, (II) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (III) Approving Stalking Horse Protections, (IV) Scheduling Bid Deadline, Auction Date, and Sale Hearing Date, and (V) Approving Form of Notice Thereof; (B) Entry of an Order After the Sale Hearing (I) Authorizing the Debtor to Sell Its Assets, and (II) Authorizing the Debtor to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Docket No. 76] (the "Sale Motion"), and the potential assumption and assignment of the unexpired lease (the "Lease") in effect between Debtor and Landlord with respect to real property located at 3003 Washington Boulevard, Suite #950, Arlington, Virgina 22201 (the "Premises"). As described below, Landlord objects (i) to the cure amount ascribed in the Cure Notice (the "Proposed Cure

Amount") as representing the outstanding payment arrears arising under Lease, and more broadly, (ii) to the assumption and assignment of Lease to the successful bidder in connection with any sale(s) of the Debtor's assets, in particular, without an adequate demonstration of "adequate assurance of future performance" by the prospective assignee. In support of this Objection, Landlord respectfully states as follows:

## BACKGROUND

**A.    The Lease and the Debtor's Prepetition Breach of its Obligations.**

1.    The Debtor and Landlord entered into the Lease for the Premises as of January 7, 2025. Under the Lease, the Debtor agreed to pay Base Rent in monthly installments, as well as Additional Rent, comprising costs, expense, charges, as set forth in the Lease.[1]

2.    The Lease has a ten-year term, subject to certain extension options, and is set to expire on January 31, 2035. *Lease*, § 3(b).

3.    Under the Lease, the base rent ("Base Rent") is currently $96,788.04 per annum, due in monthly installments of $8,065.67 payable in advance on the first day of each calendar month. Base Rent is subject to certain annual increases described in the Lease. *Lease*, § 4(a)(i).

4.    The Lease also obligated the Debtor to pay additional rent ("Additional Rent" and together with Base Rent, "Rent") which includes the Debtor's pro rata share of operating expenses with respect to the Premises, as well as the Debtor's pro rata share of real estate taxes for the Premises. *Lease*, § 4(b).

5.    Pursuant to the terms of the Lease, the Debtor was required to commence Rent payments in September 2025, but has, to date, failed to make any Rent payments as required under the Lease.

---

[1] Copies of the Lease are available upon request.

6.      On October 15, 2025, Landlord sent the Debtor a Notice of Default (the "October Default Notice"), informing the Debtor that it was in default of its obligations for failure to pay Rent in accordance with the Lease, and providing a Debtor an accounts receivable report detailing the amounts due.

7.      On November 12, 2025, Landlord sent a second Notice of Default (the "November Default Notice"), again informing the Debtor that it was in default of its obligations under the Lease for failure to pay Rent, and providing a Debtor an accounts receivable report detailing the amounts due.

8.      The Debtor did not respond to either the October Default Notice or the November Default Notice, but continued to occupy the Premises. On November 20, 2025, Landlord sent the Debtor a Notice of Event of Default (the "Final Default Notice", and together with the October Default Notice and November Default Notice, the "Default Notices"), notifying the Debtor that an Event of Default had occurred under the Lease and was ongoing due to the Debtor's failure to timely pay Rent, demanding payment of all past due amounts within 5 days, and asserting that if the Debtor did not comply with this demand, Landlord would exercise its remedies under the Lease.

9.      On December 9, 2025, Landlord sent the Debtor a Notice of Termination of Lease and to Quit Premises based on the Debtor's failure to cure the defaults outlined in the Default Notices.

**B.      Commencement of the Chapter 11 Case and the Sale Motion**

10.      Shortly thereafter, on January 6, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United

States Bankruptcy Court for the District of Columbia (the "Court"), commencing the Chapter 11

Case.

11.    On the Petition Date, the Debtor filed a motion seeking to reject various unexpired

leases (not including the Lease), which was granted on January 29, 2026. *See* ECF Nos. 14, 134.

12.    Also on the Petition Date, the Debtor filed the *Motion for Entry of Interim and Final*

*Orders (I) Authorizing the Debtor to Obtain Post-Petition Financing; (II) Authorizing the Debtor*

*to Use Cash Collateral; and (III) Granting Adequate Protection,* ECF No. 5 (the "Cash Collateral

Motion"). The Cash Collateral Motion included a budget, listing its obligations for rent due on

February 1, 2026 as $150,000. *See* ECF No. 5-1.

13.    Pursuant to the Sale Motion, the Debtor (a) sought entry of an order approving

bidding procedures, as well as the procedure for the assumption and assignment of the Debtor's

executory contracts and unexpired leases in connection with the sale of all or substantially all of

the Debtor's assets; and (b) further seeks entry of one or more separate orders authorizing and

approving one or more transactions to sell or otherwise transfer all or substantially all of the

Debtor's assets to the highest and best bidder (the "Sale").

14.    On January 23, 2026, the Court entered the *Order (I) Approving Bidding*

*Procedures, (II) Approving Procedures for the Assumption and Assignment of Executory*

*Contracts and Unexpired Leases, (III) Approving Stalking Horse Protections, (IV) Scheduling Bid*

*Deadline, Auction Date, and Sale Hearing Date, and (V) Approving Form of Notice Thereof* [ECF

No. 90] (the "Bid Procedures Order"). On the same date, in accordance with the Bid Procedures

Order, the Debtor filed (i) a *Stalking Horse Selection Notice* [ECF No. 93] (the "Stalking Horse

Notice") designating Caffe Nero North America, Inc. as the stalking horse bidder (the "Stalking

Horse Bidder") pursuant to an Asset Purchase Agreement (the "APA") under which the Stalking

Horse Bidder agreed to purchase substantially all of the Debtor's assets for a cash price of $2.9 million and (ii) a *Notice of Filing Assigned Contract List* (the "Notice of Proposed Assumption and Assignment") [ECF No. 94], listing the Lease among the fifteen unexpired real property leases (as well as various other executory contracts) to be assumed and assigned in connection with the Sale. As referenced above, the Cash Collateral Motion indicates that the Debtor's (or ultimately, the assignee's) monthly rent obligations under the leases to be assumed is $150,000.

**B.      The Cure Notice and Adequate Assurance Proffer.**

15.      Following entry of the Bid Procedures Order, the Debtor served the Cure Notice on Landlord identifying the Lease as a lease to be assumed and assigned through the Sale, and asserting a Proposed Cure Amount of $36,255.07. As set forth below, the Proposed Cure Amount is insufficient, as Landlord's accounts receivable aging report reflects that $53,198.67 is outstanding with respect to the Lease. This amount includes Base Rent and Additional Rent, as those terms are defined in the Lease, due under the Lease.

16.      On January 29, 2026, the Debtor provided a letter (the "Adequate Protection Proffer") to Landlord purportedly providing adequate assurance of the Stalking Horse Bidder's ability to perform under the Lease. The Adequate Protection Proffer noted that the Stalking Horse Bidder is an acquisition vehicle established for purposes of the Sale, and noted that the Stalking Horse Bidder's obligations under the APA are guaranteed by its sister company, Caffe Nero Americas, Inc. ("Caffe Nero Americas"). Notably, the Adequate Protection Proffer did not contain any financial information regarding the Stalking Horse Bidder or Caffe Nero Americas.[2]

---

[2] The Stalking Horse Bidder has provided certain additional information that may impact the adequate assurances analysis; the parties' discussions are ongoing.

17.     The Adequate Protection Proffer included bank account information for the ultimate parent of the Stalking Horse Bidder and Caffe Nero Americas' ultimate parent, Nero Group Holdings Ltd (the "Parent"), but contained no indication that the Parent would be guaranteeing the Stalking Horse Bidder's obligations in connection with the Sale.

## OBJECTION

**A.     The Proposed Cure Amount is Insufficient to Cure the Debtor's Defaults of the Lease, and the Lease is Therefore Not Assumable under 11 U.S.C. § 365(b)(1).**

18.     Pursuant to Bankruptcy Code section 365(b)(1), "[i]f there has been a default in an executory contract or unexpired lease of the debtor, the [debtor in possession] may not assume such contract or lease unless, at the time of assumption of such contract or lease, the [debtor in possession] . . . (A) cures or provides adequate assurance that the [debtor in possession] will promptly cure, such default . . ." 11 U.S.C. § 365(b)(1). It is well-settled and statutorily required, therefore, that if a debtor elects to assume a contract pursuant to section 365, the non-debtor party must be "made whole" at the time of assumption. *See In re Nat'l Gypsum Co.*, 208 F.3d 498, 506 (5th Cir. 2000) (quoting *In re Eagle Bus Mfg., Inc.*, 148 B.R. 481, 483 (Bankr. S.D. Tex. 1992)); *In re Tex. Health Enters. Inc.*, 72 Fed. Appx. 122, 126 (5th Cir. 2003); *In re Network Access Solutions, Corp.*, 330 B.R. 67, 76 (Bankr. D. Del. 2005).

19.     Landlord does not dispute that Debtor may, in principle, assume and assign the Lease if all requirements of section 365 are met. However, the Proposed Cure Amount fails to fully cure existing defaults and to compensate Landlord for its actual pecuniary losses as required by section 365(b)(1)(A)–(B).

20.     As set forth above and as detailed in the Default Notices, the Debtor defaulted on its obligations under the Lease prepetition, which defaults have not been cured. As of the date hereof, the correct cure amount (exclusive of amounts accruing thereafter) is **$53,198.67.**

21.     Unless the Proposed Cure Amount is increased to not less than $53,198.67 (as updated to the actual cure date), the Lease may not be assumed or assigned in accordance with section 365(b)(1).

**B.      The Debtor Has Not Provided Adequate Assurance of Future Performance**

22.     Relatedly, the Debtor is required to provide sufficiently concrete adequate assurance of future performance under section 365(b)(1)(C). Section 365(b)(1)(C) seeks to "balance the debtor's interest in maximizing the value of its estate through the assumption and assignment of its executory leases against the landlord's interest in receiving the benefit of its bargain and being protected against default by the debtor after assumption has occurred." *In re Embers 86th St., Inc.*, 184 B.R. 892, 896 (Bankr. S.D.N.Y. 1995). "Adequate assurance of future performance" in this context generally requires evidence of the assignee's financial wherewithal and ability to perform all obligations under the lease going forward, not merely conclusory assertions. *See Matter of World Skating Ctr., Inc.*, 100 B.R. 147, 148–49 (Bankr. D. Conn. 1989) ("Adequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure the landlord" that it will receive the benefit of its bargain). While "adequate assurance" does not require an absolute guarantee of future performance, the debtor must provide sufficient evidence that the assignee's future performance is reasonably assured based on the facts and circumstances attendant to the proposed assignment. *See, e.g., In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009).

23.     Here, the Debtor has failed to carry its burden of providing "adequate assurance of future performance" under section 365(b)(1)(C). First, because the Stalking Horse Bidder is a newly formed acquisition vehicle formed for the sole purpose of the Sale, it has no operating history to rely upon as a basis for assuming success and none of the generally relied upon financial

information that would suggest a sound financial condition that can provide a backstop should the

Stalking Horse Bidder suffer the same lack of operational success that landed the Debtor before

this Court. While there may be a temptation to marginalize the Landlord's stated concerns were

the only issue the Stalking Horse Bidder's ability to pay the Base Rent and Additional Rent at only

the Premises—roughly $10,000 per month—where, as here, this newly formed acquisition vehicle

seeks to have assigned to it fifteen leases that the Cash Collateral Motion suggests give rise to an

aggregate monthly lease obligation of approximately $150,000, the need for fulsome adequate

assurances is mathematically amplified by fifteen times over the single location assignment

scenario.

24.     Second, although the Adequate Assurance Proffer notes that Caffe Nero Americas

would be guaranteeing the Stalking Horse Bidder's obligations under the APA, the terms of that

guarantee are not disclosed, and the Landlord cannot ascertain whether that guarantee extends to

all post-closing financial obligations of the Stalking Horse Bidder, including those arising under

the Lease. Even if a fulsome guarantee of the Stalking Horse Bidder's post-closing obligations is

in place, there is no evidence on which to assess the likelihood of performance, as the Adequate

Assurance proffer does not contain any financial information regarding Caffe Nero Americas.

25.     Rather, Debtor has provided Landlord with only information on a bank account

held by the Parent. The Parent is not a guarantor of the Stalking Horse Bidder's obligations in

connection with the Sale, and by extension, the Lease that is proposed to be assigned thereunder.

26.     While adequate assurance does not require an iron clad guarantee of an assignee's

success, at minimum, a debtor must provide *some* evidence on which the counterparty can assess

the assignee's likelihood of performance of its financial obligations. *See In re Martin Paint Stores*,

199 B.R. 258, 263 (Bankr. S.D.N.Y. 1996), *aff'd sub nom. S. Blvd., Inc. v. Martin Paint Stores*,

207 B.R. 57 (S.D.N.Y. 1997) ("At a minimum, the primary focus of adequate assurance concerns the assignee's ability to fulfill the financial obligations under the lease.").

27.     As referenced above, the Debtor has not made a single timely Rent payment under the Lease, and the Lease term extends through 2035. The Stalking Horse Bidder is an acquisition vehicle with no pre-closing assets or pre-closing operations, and the Debtor has provided no evidence regarding its ability to perform after the Sale.

28.     Without such information, Landlord and the Court cannot meaningfully assess whether the Stalking Horse Bidder has the financial wherewithal to perform its obligations over the remaining Lease term, including payment of Base Rent and Additional Rent, and the cost of required maintenance and repairs. The generalized assurances offered by the Debtor and the Stalking Horse Bidder, and limited information on the Parent's financial condition without any guarantee by the Parent of the Stalking Horse Bidder's obligations, are insufficient to satisfy section 365(b)(1)(C). *See, e.g., In re Washington Capital Aviation & Leasing*, 156 B.R. 167, 175 (Bankr. E.D. Va. 1993) (rejecting assignment where debtor attempted to rely on principal of assignee's financial condition as adequate assurance of future performance, finding principal's assets irrelevant because no guarantee was offered, and emphasizing that adequate assurance must come from enforceable obligations).

29.     As referenced above, Landlord does not oppose a properly supported assumption and assignment that fully cures all monetary defaults and provides genuine adequate assurance of future performance. Landlord's objection is to proceeding in the absence of (a) a correct cure amount, and (b) a sufficient evidentiary record concerning the Stalking Horse Bidder's financial capacity.

## RESERVATION OF RIGHTS

Landlord reserves the right to amend, supplement or modify this Objection and to assert any amounts, cures, rights, objections, and remedies under and relating to the Lease, the Bankruptcy Code, or other applicable law, including, without limitation, the right to raise additional arguments or objections concerning the proposed assumption and assignment of the Lease, and the right to interpose amended or further objections at a later date as may be warranted by the attendant facts and circumstances.

**WHEREFORE**, Landlord respectfully requests that the Court: (i) sustain this Objection; (ii) deny, or alternatively continue, approval of the proposed assumption and assignment of the Lease unless and until Debtor and the Stalking Horse Bidder satisfy all requirements of 11 U.S.C. § 365(b), including full cure and adequate assurance of future performance; (iii) require the financial disclosures and conditions described above; and (iv) grant such other and further relief as the Court deems just and proper.

Dated: February 6, 2026

Respectfully submitted,

KBSIII 3003 WASHINGTON, LLC,

By its attorneys,

HOLLAND & KNIGHT LLP

By: */s/ Philip T. Evans_____ _____*

Philip T. Evans (Bar No. 441735)
Holland & Knight LLP
800 17th Street, NW
Suite 1100
Washington, DC  20006
Tel.: 202-457-7043
Philip.evans@hklaw.com
and

John J. Monaghan, Esq. (*pro hac vice application
pending*)
Bos-bankruptcy@hklaw.com
HOLLAND & KNIGHT LLP
10 Saint James Avenue, 11th Floor
Boston, Massachusetts 02116
Tel: (617) 523-2700

## <u>CERTIFICATE OF SERVICE</u>

I, Philip T. Evans, counsel to KBSIII 3003 Washington, LLC, do hereby certify that on or about February 6, 2026, a copy of the foregoing Objection was served upon parties-in-interest through the Court's ECF system.

/s/ *Philip T. Evans*_____