| | |
|---|---|
| **BALLARD SPAHR LLP** | **BALLARD SPAHR LLP** |
| John D. Sadler (#483301) | Laurel D. Roglen (admitted *pro hac vice*) |
| 1909 K Street, 12th Floor | 919 N. Market Street, 11th Floor |
| Washington D.C. 20006-1157 | Wilmington, DE 19801 |
| Telephone: (202) 661-2218 | Telephone: (302) 252-4465 |
| Facsimile: (202) 661-2299 | Facsimile: (302) 252-4466 |
| Email: sadlerj@ballardspahr.com | Email: roglenl@ballardspahr.com |

*Attorneys for CoStar Central Place HQ, LLC*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re:<br><br>**COMPASS COFFEE, LLC,**<br><br>Debtor. | Chapter 11<br><br>Case No. 26-00005 (ELG)<br><br>**Related to Docket Nos. 76, 90, 93, 94** |

**LIMITED OBJECTION OF COSTAR CENTRAL PLACE HQ, LLC TO (1) NOTICE OF DEBTOR'S INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND SETTING FORTH PROPOSED CURE AMOUNTS; AND (2) DEBTOR'S MOTION FOR (A) ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES; (II) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (III) APPROVING STALKING HORSE PROTECTIONS; (IV) SCHEDULING BID DEADLINE, AUCTION DATE, AND SALE HEARING DATE; (V) APPROVING FORM OF NOTICE THEREOF; (B) ENTRY OF AN ORDER AFTER THE SALE HEARING (I) AUTHORIZING THE DEBTOR TO SELL ITS ASSETS; AND (II) AUTHORIZING THE DEBTOR TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF**

CoStar Central Place HQ, LLC (the "Landlord"), by and through their undersigned counsel, hereby file this objection (the "Objection") to the Debtor's (i) *Notice of Debtor's Intent to Assume and Assign Certain Executory Contracts and Unexpired Leases and Setting Forth Proposed Cure Amounts* (the "Cure Notice"); and (ii) motion (the "Sale Motion")[1] [Docket No. 76] for entry of an order, *inter alia*, authorizing the Sale of the Assets and the assumption and assignment of certain

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Sale Motion and accompanying transaction documents, the Cure Notice, and the Bidding Procedures Order (defined below), as applicable.

Assigned Contracts, including the Lease (as defined below), to the Stalking Horse Purchaser or such other Successful Bidder, and respectfully represents as follows:

**I.    BACKGROUND**

1. On January 6, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), with the United States Bankruptcy Court for the District of Columbia (the "Court"), initiating the above captioned case (the "Chapter 11 Case"). The Debtor continues to operate its businesses and manage its properties as debtor and debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in the Chapter 11 Case.

2. The Debtor leases retail space (the "Premises") from the Landlord pursuant to an unexpired lease of nonresidential real property (as may have been amended, supplemented, or modified from time to time, the "Lease") for the operation of its café located at 1201 Wilson Boulevard in Arlington, Virginia.[2]

3. On January 14, 2026, the Debtor filed the Sale Motion, seeking to establish procedures (the "Bidding Procedures") to govern (i) the potential Sale of the Assets and (ii) the potential assumption and assignment of certain Assigned Contracts, including the Lease, to the Stalking Horse Purchaser or such other Successful Bidder(s).

4. On January 23, 2026, the Court entered an order approving the Bidding Procedures to govern the proposed Sale of the Assets (the "Bidding Procedures Order") [Docket No. 90]. Pursuant to the Bidding Procedures Order, an Auction is scheduled for February 17, 2026, if additional Qualified Bids other than the Stalking Horse Bid are received. The Bidding Procedures

---

[2] A copy of the Lease will be made available to the Debtor upon request.

2

Order also established February 6, 2026, at 4:00 p.m. (ET) (the "Cure Objection Deadline") as the deadline for Landlord to object to the assumption and assignment of the Lease on any grounds, including, without limitation, (a) the proposed Cure Amount, and (b) the provision of adequate assurance of future performance by the Stalking Horse Purchaser.[3]

5. Also on January 23, 2026, the Debtor filed the *Stalking Horse Selection Notice* (the "Stalking Horse Notice") [Docket No. 93] notifying interested parties that Caffé Nero North America has been selected as the Stalking Horse Purchaser pursuant to the terms of the asset purchase agreement attached to the Stalking Horse Notice as Exhibit 1 (the "Stalking Horse APA").

6. Also on January 23, 2026, the Debtor filed the *Notice of Filing Assigned Contract List* (the "Assigned Contract List") [Docket No. 94], which identifies those executory contracts and unexpired leases, including the Lease, that potentially may be assumed and assigned to the Stalking Horse Purchaser or such other Successful Bidder(s) in connection with the Sale.[4]

7. On January 28, 2026, pursuant to the Bidding Procedures, the Debtor served the Cure Notice on Landlord's counsel of record which sets forth the Debtor's proposed Cure Amount to be paid in connection with any assumption and assignment of the Lease. Simultaneously, the Debtor provided certain high-level information with respect to the Stalking Horse Purchaser's ability to provide adequate assurance of future performance under the Lease, which Landlord continues to review. Landlord plans to discuss its concerns regarding adequate assurance with the Stalking Horse Purchaser and the Debtor in advance of the Sale Hearing and Landlord reserves all

---

[3] The Bidding Procedures Order provides the Cure Objection Deadline is not the deadline for Landlord to object to adequate assurance of future performance of such other Successful Bidder if the Stalking Horse Purchaser is not the Successful Bidder, and Landlord reserves all rights to later object to the Sale on such grounds.

[4] The Assigned Contract List incorrectly lists Cushman & Wakefield U.S. Inc. as the contract counterparty to the Lease.

rights to raise other and further objections once Landlord receives complete adequate assurance information.

8. Landlord files this Objection in order to preserve all of its rights with respect to any defaults under the Lease to be cured at the time of any assumption and assignment of the Lease to the Stalking Horse Purchaser (or such other Successful Bidder), and reserves its rights to raise further and other objections to the assumption and assignment of the Lease, including as to the ability to provide adequate assurance of future performance under the Lease by a Successful Bidder other than the Stalking Horse Purchaser. More specifically, the proposed Cure Amount with respect to the Lease, as set forth in the Cure Notice, does not reflect the outstanding balance due and owing to the Landlord under the Lease, and does not account for accruing but unbilled charges which may come due in the future. The proposed Cure Amount set forth by the Debtor must be modified to reflect additional charges owing, as well as recognize the Debtor's and/or the Stalking Horse Purchaser's (or such other Successful Bidder's) liability for accruing charges due under the Lease when billed, as set forth herein. Further, Landlord should have the ability to supplement the Cure Amount at the time the Lease is ultimately assumed and assigned, as cure is determined at the time the Lease are assumed and assigned and not before, and the figures set forth in this Objection are likely to be stale by the time any assumption of the Lease occurs. Finally, the Debtor and/or the Stalking Horse Purchaser (or such other Successful Bidder) shall be liable and responsible for the timely performance of all obligations arising under the Lease prior to Closing, and nothing in the Stalking Horse APA or such other Asset Purchase Agreement shall override Section 365(d)(3) and the Debtor's obligation to timely perform in accordance with the Lease and Section 365(d)(3).

**II.     OBJECTION**

9. While Landlord does not generally object to the Sale of the Debtor's assets to the Stalking Horse Purchaser (or such other Successful Bidder), Landlord does object to any assumption and assignment of the Lease unless Debtor and/or the Stalking Horse Purchaser (or such other Successful Bidder) comply with all of the requirements of Sections 365 of the Bankruptcy Code. Absent the ability, or willingness, of the Debtor and any proposed assignee, to satisfy said requirements, including to modify the proposed Cure Amount to reflect the outstanding balance due and owing to the Landlord under the Lease, or account for accruing or accrued, but unbilled or not yet due charges or other obligations under the Lease which may come due in the future, the Court should deny any proposed assumption and assignment of the Lease.

    **A.     The Debtor's Proposed Cure Amount Does Not Provide for Payment of All Obligations Due and Owing Under the Lease.**

10. Although the Debtor seeks to assume and assign the Lease, in order to do so, the Debtor must comply with Section 365(b)(1) of the Bankruptcy Code which provides that:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A)   cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;. . .

11 U.S.C. § 365(b)(1).

11. The Landlord's cure, as compared to the Debtor's cure, is summarized below, and those charges comprising the Landlord's cure are more fully detailed in Exhibit 1, which is attached hereto and incorporated into this Objection by this reference.[5]

| Landlord | Property Address | Debtor's Cure | Landlord's Cure | Exhibit No. |
|---|---|---|---|---|
| CoStar Central Place HQ, LLC | 1201 Wilson Boulevard, Arlington, Virginia | $2,976.23 | $225,787.10 | 1 |

    **i.   Accruing Lease Obligations**

12. In addition to rent and related monthly charges, attorneys' fees, costs and interest, some charges for which the Debtor bears responsibility under the Lease have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. By way of example, the Debtor occupies retail space at the Premises pursuant a triple-net lease, where they typically pay rent and related lease charges in advance for each month. The Debtor pays fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, operating expenses, annual percentage rent, and the like. Certain charges, such as operating expenses and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred at the respective shopping center. To the extent the estimated payments exceed actual charges, the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred under the Lease, the result is an additional amount (or debit) for which the

---

[5] Unless otherwise indicated, Landlord's cure does not include any charges that have been billed or come due after the filing of this Objection or charges that are billed directly to the Debtor, including in some cases, real estate taxes. To the extent Landlord is later billed for any amount due to the Debtor's failure to pay, Landlord reserves the right to amend the Objection to include such amounts. The Debtor must timely pay all rent and other lease charges as they come due under the Lease, and the Landlord reserves the right to payment (and amend this Objection to the extent necessary) for any amounts that come due under the Lease through the later of the date of any cure payment or effective date of assumption and assignment. In addition, unless otherwise indicated, Landlord's cure is exclusive of attorneys' fees, interest and costs that form the basis of the Landlord's actual pecuniary losses. Presently, Landlord estimates that its attorneys' fees incurred to date are in an amount not less than $10,000.

tenant is liable. In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e., year-end reconciliations and adjustments that accrued through 2025 may not yet have been billed under the Lease, and such charges that are accruing for 2026 will not be billed until 2027). In other instances, certain charges may be paid in arrears and cannot be calculated (in some cases) until a year or more after year-end. Since these accrued, but unbilled, charges are not yet due under the Lease, they do not create a current default that gives rise to a requirement of cure by the Debtor at this time. In addition, in other instances, the Debtor may be the direct tax-payer under the Lease, and responsible to pay such tax bills in full when due. Accordingly, the Sale and any assumption and assignment of the Lease is not free and clear of these continuing and accruing obligations under the Lease.

13. Section 365(b) only requires debtors to cure defaults under their leases at the time of an assumption and assignment. The obligation to pay the year-end adjustments and/or the tax bills, is, however, certainly a part of the obligation to provide adequate assurance of future performance. As a result, the Court should deny any attempt to assign the Lease "free and clear" of these obligations.

14. The Debtor assumes and assigns the Lease to the Stalking Horse Purchaser (or such other Successful Bidder) subject to its terms and must assume and assign all obligations owing under the Lease, including obligations that have accrued but may not yet have been billed or come due under the Lease. Any proposed Sale Order should clearly state that the Debtor (or the Stalking Horse Purchaser or such other Successful Bidder) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the Closing of the Sale. In addition, any provision in the proposed Sale Order that purports to release the Debtor (or the Stalking Horse Purchaser or such other Successful Bidder) of further liability based upon a

payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Lease, or any nonmonetary defaults where performance is required as cure at or after the assignment of the Lease.

15. Similarly, any potential assignee of the Leases cannot escape liability for accrued, but not yet due, non-monetary obligations such as maintenance and repairs relating to the conditions the Premises that may exist at the time of assumption and assignment. *See, e.g.*, *In re Number Holdings, Inc.*, Case No. 24-10719 (JKS), *Twenty-Seventh Order Assumption and Assignment of Certain Unexpired Leases, etc.* [D.I. 1145] at ¶ 3 (Bankr. D. Del. Aug. 9, 2024).

16. Finally, the Lease requires the Debtor (or the Stalking Horse Purchaser or such other Successful Bidder) to indemnify and hold the Landlord harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Lease, examples of which may include such claims as personal injuries at the Premises and damage to the Premises by the Debtor, the Stalking Horse Purchaser (or such other Successful Bidder) or their agents. Any use and occupancy of the Premises, or the assumption and assignment of the Lease, must be subject to the terms of the Lease, including the continuation of all indemnification obligations, regardless of when they arose.[6] In the alternative, the Debtor and/or the Stalking Horse Purchaser (or such other Successful Bidder) must provide (by tail insurance or otherwise) that they can satisfy the indemnification obligations under the Lease for any claims that relate to the period prior to any assumption or assumption and assignment of the Lease. Nothing in any proposed Sale Order should preclude the Landlord from pursuing the Debtor, the Stalking Horse Purchaser (or such other Successful Bidder), their insurance, or any other party that may be liable

---

[6] Any use and occupancy and/or the ability to assume and assign the Lease is subject to the protections provided by Section 365(b) and (f). Therefore, any use or assumption (or assumption and assignment) must be in accordance with all provisions of the Lease.

8

under the Lease, and the Landlord requests that any proposed Sale Order specifically preserve their right to pursue such rights irrespective of any resolution of the Objections raised herein.[7]

17. Landlord, therefore, requests that in the event the assumption and assignment of the Lease is approved by the Court, language must be inserted into any proposed Sale Order to provide that the Stalking Horse Purchaser (or such other Successful Bidder) shall be responsible for all unpaid year-end adjustments, whether accruing prior to or after the effective date of assumption of the Lease, when such charges become due in accordance with the terms of the Lease, including with respect to indemnification and insurance obligations. Alternatively, a suitable escrow for the Lease equal to 150% of the average year-end adjustments for the prior three (3) years must be established to assure that any amounts due will be available to Landlord when the year-end adjustments are actually billed and due pursuant to the terms of the Lease.

### ii. Attorneys' Fees, Costs, and Interest

18. The Lease contains provisions for recovery of attorneys' fees, costs, and interest in the event the Landlord are required to take legal action to protect their interests. The Debtor is obligated to cure all defaults under the Lease and compensate the Landlord for its actual pecuniary losses as a result of defaults under the Lease. See 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. In re LCO Enters., 12 F.3d 938, 941 (9th Cir. 1993); Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured *all pre-petition defaults*).

19. The Debtor (or any assignee) take the Lease *cum onere*—subject to existing burdens. The Debtor cannot assume the favorable portions, and reject the unfavorable provisions,

---

[7] If Debtor is covered under an "occurrence basis" insurance policy, rather than a "claims made" policy, this objection may be satisfied by proof of such insurance by the Debtor and/or the Stalking Horse Purchaser (or such other Successful Bidder) for Landlord's location.

9

of its Lease.  In re Washington Capital Aviation & Leasing, 156 B.R. 167,172 (Banks. E.D. Va. 1993).  If forced to continue in the performance of the Lease, the Landlord is entitled to the full benefit of the bargain under its Lease with the Debtor.  See Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996).  The "full benefit of the bargain" principle has been held to require payment of interest.  "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy.  One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract."  In re Entm't, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%).  Interest on pre-petition lease charges continues to run from the filing of the Debtor's petition and must be paid as a condition of the assumption of the Lease.  See In re Skylark Travel, Inc., 120 B.R. 352-55 (Bankr. S.D.N.Y. 1990).  Interest calculations are therefore not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlord for the Debtor's default under the Lease, and thus to properly assume the Lease.  Finally, post-petition interest is allowable where such interest is provided for under the terms of the Lease.  Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

20. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtor (or any successor) must satisfy these lease charges as part of the assumption or assumption and assignment of the Lease.  In re Entm't, Inc., 223 B.R. at 152 (citation omitted).  There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults.  Id. at 154.  The fact that a landlord uses

10

bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay).  Id., see also In re Crown Books Corporation, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail Properties v. Loews Cineplex Entm't Corp., et al., 01 Civ. 8946 (RWS), 2002 U.S. Dist. LEXIS 6186 at *25 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . ."); Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Inc.), 167 F.3d 843, 850 (4th Cir. 1999).  The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law.  Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Electric, 127 S. Ct. 1199, 1206 (2007).

21. Accordingly, unless otherwise agreed as between the Stalking Horse Purchaser (or such other Successful Bidder) and the Landlord, Landlord further requests that it be reimbursed for all of their actual pecuniary losses including, but not limited to, attorney's fees and costs expended with regard to Debtor's defaults under the Lease.  To date, the Landlord estimates its attorney's fees and costs to be approximately $10,000.

### iii. The Cure Amounts Serve Only as Estimates.

22. Landlord can only provide the information presently available regarding amounts that the Debtor owes, while reserving the right to amend this Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorneys' fees, costs, interest, and year-end adjustments and reconciliations.  There is no basis to

11

impose upon the Landlord the equivalent of an administrative bar date, limiting its recourse to recover charges to which it is entitled under the Lease.

### iv. The Debtor or the Stalking Horse Purchaser (or Such Other Successful Bidder) Must Pay Undisputed Cure Amounts Immediately.

23. Section 365(b)(1)(A) requires that the Debtor promptly cure outstanding balances due under the Lease upon assumption or assumption and assignment. To the extent there is a dispute over the total cure obligation for the Lease, the undisputed portion of the cure amount should be paid immediately. Debtor should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption or assumption and assignment of the Lease to deal with any disputes that remain unresolved after such period.

### B. Additional Security

24. While the Stalking Horse Purchaser may be backed by entities with industry experience and/or adequate capitalization, here, the Stalking Horse Purchaser is a "Newco," so the assignee entity itself does not possess such experience or capitalization and, therefore, should provide some type of credit enhancement as adequate assurance of future performance, such as: (i) a guaranty to secure the Newco's obligations under the Lease from a financially capable parent entity, like Caffé Nero Group; (ii) a letter of credit; or (iii) a cash security. Where the proposed assignee is a newly formed entity with no financial or operating history, an existing entity with acceptable financing should guarantee the performance of any newly-formed company that seeks an assignment of the Lease consistent with Section 365(l) of the Bankruptcy Code. Pursuant to Section 365(l), a landlord may require a security deposit or letter of credit as security for the performance of the assignee's obligations under the Lease in the event that the assignee fails to perform on a going-forward basis. Unless Landlord agrees otherwise, this is a reasonable

condition of demonstrating adequate assurance of future performance where the Debtor is seeking approval of an assignee with no operating history.

### C. Assumption and Amendment Agreement

25. Landlord also requests that, as a condition to any order approving assumption and assignment of the Lease, the Stalking Horse Purchaser (or such other Successful Bidder) shall be required to enter into a short form Assumption and Amendment Agreement whereby the Stalking Horse Purchaser (or such other Successful Bidder) shall become directly obligated to Landlord and the notice provisions of the Lease will be modified. A form of Assumption and Amendment Agreement can be provided upon request of the Stalking Horse Purchaser (or such other Successful Bidder).

### D. Adequate Assurance of Future Performance

26. Pursuant to Section 365(f)(2)(B) of the Bankruptcy Code, Debtor may only assume and assign the Landlord's Lease if "adequate assurance of future performance by the assignee of such . . . lease is provided, . . . ."

27. The burden of proof on adequate assurance issues is with the Debtor. See In re Lafayette Radio Elecs. Corp., 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991).

28. As discussed above, the Landlord has received certain high-level adequate assurance information from the Stalking Horse Purchaser, including a letter from the Caffé Nero Group proposing to guarantee the Stalking Horse Purchaser's obligations under the Stalking Horse APA, and a bank statement from that same entity. However, this does not satisfy the Debtor's burden to provide adequate assurance information for the Stalking Horse Purchaser itself, including, but not limited to, its business plan or capital structure or any evidence of a financial commitment or adequate capitalization to perform under the Lease into the future. Strict proof is demanded, and all rights are reserved on these issues.

29. Moreover, unless and until a Lease is assumed and assigned to an assignee demonstrating adequate assurance of future performance—the Debtor as tenant under the Lease must remain liable to the Landlord under the Lease in all respects pursuant to Section 365(d)(3) of the Bankruptcy Code through any designation period, and only if the Lease is assumed and assigned and the cure amount paid, may the Debtor be released from liability pursuant to Section 365(k) of the Bankruptcy Code. To that end, any proposed Sale Order must ensure that no Section 365(k) release occurs until such time as the Lease is assumed and assigned pursuant to an order of the Court.

**E.  Any Assignment of Leased Real Property Must Be Subject to All Applicable Restrictive Covenants**

30. The *cum onere* principle and requirements of Section 365 (including section 365(b)(3)) of the Bankruptcy Code also mandate that restrictive covenants be respected in connection with any lease assignment. See 11 U.S.C. § 365(b)(3)(C) (requiring that "assumption or assignment of such lease is subject to all the provisions thereof"); N.L.R.B. v. Bildisco and Bildisco, 465 U.S. 513, 531 (1984); In re MF Glob. Holdings Ltd., 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012). Accordingly, assumption of any assignment of any leases in accordance with section 365 of the Bankruptcy Code and applicable law requires compliance with, and is subject to, any agreements containing restrictive covenants or other obligations related to the properties.

31. Accordingly, Landlord objects to the assumption and assignment of the Lease to the extent such transfer is not subject to all applicable reciprocal easement agreements, other similar agreements, and other restrictive covenants or obligations set forth therein.

**III.  JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS**

32. To the extent consistent with the objections expressed herein, Landlord joins in the objections of other landlords.

## IV. RESERVATION OF RIGHTS

33. The Landlord reserve its rights to (i) raise further or other objections as may be necessary, including as to adequate assurance of future performance provided by such other Successful Bidder if the Stalking Horse Purchaser is not declared the Successful Bidder; (ii) raise any objections to additional adequate assurance information provided by the Stalking Horse Purchaser, (iii) require payment of all Lease charges and compliance with all Lease terms; and (iv) to require any assignment on a form acceptable to the Landlord.

## V. CONCLUSION

WHEREFORE, the Landlord respectfully requests that the Court enter an order consistent with the foregoing Objection and for such other and further relief as may be just and proper under all of the circumstances.

[*Signature page follows*]

| | |
|---|---|
| Dated: February 6, 2026<br>Wilmington, Delaware | */s/ John D. Sadler*<br>John D. Sadler (#483301)<br>**BALLARD SPAHR LLP**<br>1909 K Street, 12th Floor<br>Washington D.C. 20006-1157<br>Telephone: (202) 661-2218<br>Facsimile: (202) 661-2299<br>Email: sadlerj@ballardspahr.com<br><br>-and-<br><br>Laurel D. Roglen<br>**BALLARD SPAHR LLP**<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4465<br>Facsimile: (302) 252-4466<br>E-mail: roglenl@ballardspahr.com<br><br>*Attorneys for CoStar Central Place HQ, LLC* |