| | |
|---|---|
| **KELLEY DRYE & WARREN LLP** <br> Melissa Byroade <br> 670 Maine Avenue SW, Suite 600 <br> Washington, DC 20024 <br> Tel: (202) 342-8400 <br> Email: mbyroade@kelleydrye.com | **KELLEY DRYE & WARREN LLP** <br> Robert L. LeHane (*pro hac vice* forthcoming) <br> Jennifer D. Raviele (*pro hac vice* forthcoming) <br> 3 World Trade Center <br> 175 Greenwich Street <br> New York, New York 10007 <br> Tel: (212) 808-7800 <br> Email: rlehane@kelleydrye.com <br> jraviele@kelleydrye.com |

*Counsel to GGP Retail LLC and Regency Centers, L.P*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re: <br><br> Compass Coffee, LLC, <br><br> Debtor. | Chapter 11 <br><br> 26-00005 (ELG) |

**OBJECTION OF GGP RETAIL LLC AND REGENCY**
**CENTERS, L.P TO NOTICE OF DEBTOR'S INTENT TO**
**ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND**
**UNEXPIRED LEASES AND SETTING FORTH PROPOSED CURE AMOUNTS**

GGP Retail LLC and Regency Centers, L.P. (collectively, the "Landlords"), by and through their undersigned counsel, Kelley Drye & Warren LLP, file this objection (the "Objection") to the *Debtor's Notice of Intent to Assume and Assign Certain Executory Contracts and Unexpired Leases and Setting Forth Proposed Cure Amounts* (the "Notice"). In support of this Objection, the Landlords respectfully state as follows:

**PRELIMINARY STATEMENT**

1.  The Landlords are generally supportive of the potential assumption and assignment of their Leases (as defined herein) by the Debtor; however, the Debtor must first provide adequate assurance of future performance under the Leases, cure all defaults under the

1

Leases, and confirm that any assignee (the "Proposed Assignee") will comply with all provisions of the Leases on a go-forward basis. Accordingly, the Landlords object to the potential assumption and assignment of the Leases unless and until: (a) the Debtor agrees to pay the Landlord's Cure Amount both in full and contemporaneously upon the occurrence of the applicable assumption and assignment effective date; (b) the Debtor meets its burden to provide adequate assurance of future performance for the Proposed Assignee; and (c) the Proposed Assignee agrees to satisfy all of the Debtor's obligations under the Leases, including, but not limited to, accrued-but-unbilled amounts, year-end reconciliations and adjustments, and indemnification obligations.

2. First, in connection with the potential assumption of each Lease, the Debtor must be required to pay the cure amount set forth in the column "Landlord Cure Amount" on **Exhibit A**, attached hereto, plus any additional pecuniary losses suffered by each Landlord, including reasonable attorneys' fees. The Debtor must also cure or provide adequate assurance that it will cure all non-monetary defaults under each Lease. The Landlord's Cure Amount must be paid to each Landlord contemporaneously upon the effective date of the lease assumption and assignment.

3. Second, to satisfy the Debtor's burden under section 365 of the Bankruptcy Code, the Debtor must furnish each Landlord with sufficient adequate assurance information to determine that the Proposed Assignee will be a creditworthy and viable operator of the business, specifically in the context of heightened requirements afforded to counterparties to shopping center leases under section 365(b)(3) of the Bankruptcy Code.

4. Third, as part of adequate assurance of future performance, the Proposed Assignee must satisfy any Adjustment Amounts (as defined below) which have not yet been billed or have not yet become due under the terms of the Leases, regardless of when such amounts

accrued.  The Proposed Assignee must also (i) be required to comply with all contractual obligations to indemnify and hold the Landlords harmless with regard to events which occurred before assumption and assignment, and (ii) continue to timely pay all rent, additional rent, and percentage rent due under the Leases until the Leases are assumed, assumed and assigned, or rejected pursuant to section 365(d)(3) of the Bankruptcy Code.

5. While the Landlords hope to resolve some, if not all, of the issues raised herein consensually with the Debtor and Proposed Assignee, all such discussions are expressly subject to the Landlords' review of any proposed order without waiver of any rights. The Landlords, therefore, reserve all rights with respect to any proposed assumption and/or assignment of the Leases, including the right to raise any objections, arguments, or defenses in response to the Notice or at any related hearing.

## BACKGROUND

6. The Landlords are the owners of or affiliates or managing agents for the owners of numerous properties located throughout the United States.  The Debtor leases retail space from the Landlords pursuant to written leases (each, a "Lease" and, collectively, the "Leases") for the stores listed on **Exhibit A**, attached hereto (collectively, the "Leased Premises"). Most or all of the Leased Premises are located in shopping centers as that term is used in section 365(b)(3) of the Bankruptcy Code.  *See In re Joshua Slocum, Ltd.*, 922 F.2d. 1081 (3d Cir. 1990).

7. On January 6, 2026, (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") with this Court.[1]  The Debtor remains in possession of its properties

---

[1] Docket No. 1.

and continue to manage its businesses as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

8. On January 14, 2026, the Debtor filed its *Motion for (A) Entry of an Order (I) Approving Bidding Procedures; (II) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; (III) Approving Stalking Horse Protections; (IV) Scheduling Bid Deadline, Auction Date, and Sale Hearing Date; (V) Approving Form of Notice Thereof; (B) Entry of an Order After the Sale Hearing (I) Authorizing the Debtor to Sell Its Assets; and (II) Authorizing the Debtor to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* (the "Bidding and Sale Procedures Motion"), by which the Debtor sought the Court's approval of an order approving its bidding procedures (the "Bidding Procedures"), and an order approving procedures for the assumption and assignment of executory contracts and unexpired leases (the "Assumption and Assignment Procedures") and the resolution of proposed cure related thereto.[2] The Debtor additionally sought authority to proceed with a sale process either to a stalking horse purchaser (a "Stalking Horse Purchaser") or the successful bidder at the auction (the "Successful Bidder").

9. On January 23, 2026, the Court entered an order (the "Bidding Procedures Order") granting the relief requested in the Bidding and Sale Procedures Motion.[3] Pursuant to the Bidding Procedures Order, an auction is scheduled for February 17, 2026, with a final hearing to consider approval of the sale on February 26, 2026.

10. Also on January 23, 2026, the Debtor selected Caffe Nero North America, Inc. as the Stalking Horse Purchaser[4] and filed a *Notice of Assigned Contract List*, which specified

---

[2] Docket No. 76.
[3] Docket No. 90.
[4] Docket No. 93.

4

the leases that the Stalking Horse Purchaser may take assignment of, including the Leases. The Debtor later served the Notice on the Landlords, which asserted the Debtor's proposed cure amount ("Debtor's Proposed Cure Amount") for each Lease, which is included on **Exhibit A**, attached hereto, in the column "Debtor Proposed Cure Amount."

## ARGUMENT

I. **THE PROPOSED CURE AMOUNTS ARE INCORRECT**

11. The Landlords dispute the Debtor's Proposed Cure Amounts listed on **Exhibit A**, attached hereto, in the column titled "Debtor Proposed Cure Amount." The correct cure amounts for the Leases are set forth on the attached **Exhibit A** in the column titled "Landlord Cure Amount," which includes an estimate of attorneys' fees incurred to date. The Landlords reserve the right to amend the cure amounts to include additional fees and expenses which continue to accrue and any other obligations that arise and/or become known to the Landlords prior to assumption of the Leases, or to account for any agreement reached between the parties with respect to the cure amounts.

12. Pursuant to the Leases, the Debtor is obligated to pay regular installments of fixed monthly rent, percentage rent, and/or gross rent, as well as a share of common area maintenance costs, real estate taxes, and insurance. In addition, prior to assumption or assumption and assignment of the Leases, the Debtor is required by section 365(b)(1) of the Bankruptcy Code to cure all outstanding defaults under each respective Lease and compensate Landlords for any actual pecuniary loss, including the payment of related attorneys' fees. *See* 11 U.S.C. § 365(b)(1)(B).

13. Attorneys' fees due under the Leases are compensable. *See LJC Corp. v. Boyle*, 768 F.2d 1489, 1494-96 (D.C. Cir. 1985); *In re Bullock*, 17 B.R. 438, 439 (B.A.P. 9th Cir. 1982); *In re Crown Books Corp.*, 269 B.R. 12, 14-15 (Bankr. D. Del. 2001); *In re BAB*

*Enterprises, Inc.*, 100 B.R. 982, 984 (Bankr. W.D. Tenn. 1989); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986); *In re Ribs of Greenwich Vill., Inc.*, 57 B.R. 319, 322 (Bankr. S.D.N.Y. 1986). Accordingly, as part of their pecuniary losses, the Landlords are entitled to attorneys' fees in connection with the Debtor's obligation to cure all monetary defaults under the Leases.

## II. THE DEBTOR MUST PROVIDE EVIDENCE OF ADEQUATE ASSURANCE OF FUTURE PERFORMANCE UNDER THE LEASES

14. In connection with the proposed assumption and assignment of the Leases, the Debtor must provide the Landlords with adequate assurance of future performance under the Leases. Section 365(f)(2) of the Bankruptcy Code provides:

> The trustee may assign an executory contract or unexpired lease of the debtor only if–
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

15. Section 365(b)(1) of the Bankruptcy Code provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee–
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default…;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease for any actual pecuniary loss to such party resulting from such default; and

>   (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

16. Shopping center landlords receive heightened statutory protections under the Bankruptcy Code in connection with the assumption of leases in the form of adequate assurance of future performance. *In re Joshua Slocum*, 922 F.2d at 1086; *In re Trak Auto Corp.*, 277 B.R. 655 (Bankr. E.D. Va. 2002). In connection with a lease, adequate assurance of future performance includes adequate assurance

>   (A) of the source of rent and other consideration due under such lease…;
>
>   (B) that any percentage rent due under such lease will not decline substantially;
>
>   (C) that assumption… of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center, and
>
>   (D) that assumption… of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

17. The Debtor bears the burden of proving adequate assurance of future performance in connection with the potential assumption and assignment of the Lease. *In re F.W. Restaurant Assoc., Inc.*, 190 B.R. 143 (Bankr. D. Conn. 1995); *In re Rachels Indus. Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

18. To determine whether the requirements of adequate assurance of future performance will be satisfied, at a minimum, Landlords and their attorneys must receive the

following information from the Proposed Assignee (collectively, the "Adequate Assurance Information"):

    a.    The exact name of the entity that will be designated as the proposed assignee of the Lease and any guarantor;

    b.    Audited (or un-audited, if audited is not available) financial statements and any supplemental schedules for the calendar or fiscal years ended 2024, 2025, and 2026 for the Proposed Assignee and any other proposed assignee and any guarantors;

    c.    Any and all documents regarding the proposed assignee's and any guarantor's experience operating restaurants, particularly coffee shops;

    d.    The proposed assignee's and any guarantor's 2026 and 2027 business plans, including sales and cash flow projections;

    e.    Any financial projections, calculations, and/or financial *pro-formas* prepared in contemplation of purchasing the Leases;

    f.    A statement setting forth the proposed assignee's intended use of the premises; and

    g.    The number of restaurants the proposed assignee and any guarantor operates and all trade names used.

The Landlords may also need similar information for the Debtor in the years when the Debtor entered into the Leases to appropriately evaluate the ability of the Proposed Assignee to provide adequate assurance of future performance.

19. Unless and until Landlord receives all of this information, the Debtor has not satisfied its burden pursuant to 11 U.S.C. § 365(b)(3).

20. Furthermore, section 365(b)(3)(C) of the Bankruptcy Code provides that the assumption of a shopping center lease "is subject to all the provisions thereof…." 11 U.S.C. § 365(b)(3)(C). Bankruptcy courts have described the assumption of an unexpired lease as "an all-

8

or-nothing proposition — either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected." *See, e.g.*, *In re CellNet Data Sys., Inc.*, 327 F.3d 242, 249 (3d Cir. 2003).

21. To the extent that rent, attorneys' fees, interest, and/or other charges continue to accrue, and/or the Landlords suffer other pecuniary losses with respect to the Leases, the Landlords hereby reserve the right to amend the Landlord Cure Amounts to reflect such additional amounts or to account for year-end adjustments, including, without limitation, adjustments for 2025 and 2026, which have not yet been billed or have not yet become due under the terms of the Leases (the "Adjustment Amounts"). The Proposed Assignee must be responsible to satisfy all accrued but unbilled obligations under the Leases, including the Adjustment Amounts, if any, when due in accordance with the terms of the Leases, regardless of when such Adjustment Amounts were incurred.

22. Furthermore, the Proposed Assignee must be required to comply with all contractual obligations to indemnify and hold the Landlords harmless for events which occurred before assumption, but which were not known to the Landlords as of the date of the assumption. This includes, but is not limited to: (i) claims for personal injury that occurred at the Leased Premises; (ii) damage and destruction to the Leased Premises or property by the Debtor or its agents; and (iii) environmental damage or clean-up.

23. To cure possible pre-assumption, non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Leases, the Proposed Assignee must be required to satisfy any and all such claims, notwithstanding anything to the contrary contained in a plan or any court order. The Landlords request the assumption and assignment of the Leases to be conditioned upon the Debtor providing adequate

assurance of future performance of any party intending to assume the Leases, whether the Stalking Horse Purchaser or the Successful Bidder.

### III. THE DEBTOR MUST TIMELY PAY ALL POST-PETITION RENT AND ADDITIONAL RENT DUE UNDER THE LEASES UNTIL THEY ARE ASSUMED, ASSUMED AND ASSIGNED, OR REJECTED

24. Section 365(d)(3) of the Bankruptcy provides, in pertinent part:

> The [debtor] shall timely perform all the obligations of the debtor…arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of [the Bankruptcy Code].

11 .S.C. § 365(d)(3).

25. The Landlords request that any assumption and assignment of the Leases be conditioned upon the Debtor's timely performance of all obligations arising under the Leases before the Leases are assumed, assumed and assigned, or rejected pursuant to section 365(d)(3) of the Bankruptcy Code, including, without limitation, the payment in full of rent on the first day of each month.

### IV. DEMAND FOR SECURITY

26. Section 365(l) of the Bankruptcy Code provides, in pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

27. In the ordinary course of business, the Landlords require security deposits, letters of credit, and/or guaranties when leasing (or assessing an assignment of a lease) to certain companies based on their financial information and history. In connection with the proposed assumption and assignment of the Leases, the Landlords hereby demand such security in one of

those forms as required by section 365(l) of the Bankruptcy Code.  Until the complete financials of the Proposed Assignee are known to the Landlords, the Landlords reserve their right to specify the exact form and amount of such security; however, the Landlords would typically require a parent or personal guaranty in connection with leasing to a new tenant and a security deposit equal to six months of rent and related charges.

## JOINDER IN OBJECTIONS OF OTHER LANDLORDS

28.     To the extent not inconsistent with this Objection, the Landlords join in any objections to the Motion asserted by other landlords and contract counterparties.

## RESERVATION OF RIGHTS

29.     Landlords reserve the right to amend and/or supplement this Objection on any basis, including, without limitation, by revising, adding, or supplementing objections to the Debtor's proposed cure amount and by adding or supplementing objections to the adequate assurance of future performance information provided by the Debtor.

**CONCLUSION**

WHEREFORE, the Landlords request that the Court enter an order: (i) conditioning the assumption of the Leases on (a) the Debtor promptly paying the cure amounts set forth in the column titled "Landlord Cure Amount" on **Exhibit A** plus any additional pecuniary losses suffered by the Landlords, including reasonable attorneys' fees, and (b) the Debtor providing adequate assurance of future performance in accordance with section 365(b) of the Bankruptcy Code; (ii) requiring the Proposed Assignee to continue to comply with all obligations under the Leases, including payment of the Adjustment Amounts and satisfaction of any indemnification obligations in the regular course of business; and (iv) granting such other and further relief as the Court deems just and proper.

Dated:  February 6, 2026

**KELLEY DRYE & WARREN LLP**

*/s/ Melissa Byroade*
Melissa Byroade
670 Maine Avenue SW, Suite 600
Washington, DC 20024
Tel:  (202) 342-8400
Email:  mbyroade@kelleydrye.com

and

Robert L. LeHane (*pro hac vice* forthcoming)
Jennifer D. Raviele (*pro hac vice* forthcoming)
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Tel: (212) 808-7800
Email: rlehane@kelleydrye.com
           jraviele@kelleydrye.com

*Counsel to GGP Retail LLC and Regency Centers, L.P*

## **EXHIBIT A**

### *GGP Retail LLC*

| Landlord | Debtor | Property Name | Location | Debtor Proposed Cure Amount | Landlord Cure Amount |
|---|---|---|---|---|---|
| FC-QIC Ballston Common Retail JV, LLC | Compass Coffee, LLC | Ballston Quarter | 4100 Wilson Blvd., Arlington, VA 22203 | $53,319.27 | $109,331.50 |

### *Regency Centers, L.P.*

| Landlord | Debtor | Property Name | Location | Debtor Proposed Cure Amount | Landlord Cure Amount |
|---|---|---|---|---|---|
| Regency Centers, L.P. | Compass Coffee, LLC | Point 50 | 10400 Fairfax Blvd., Fairfax, VA 22030 | $16,270.44 | $50,914.16 |