IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re:<br><br>COMPASS COFFEE, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 26-00005 (ELG) |

**KBSIII 3003 WASHINGTON, LLC'S MOTION FOR ENTRY OF AN ORDER COMPELLING DEBTOR'S PAYMENT OF POST-PETITION RENT DUE UNDER UNEXPIRED NON-RESIDENTIAL REAL PROPERTY LEASE PURSUANT TO 11 U.S.C. §§ 365(D)(3) AND 503(B)(1)**

KBSIII 3003 Washington, LLC ("KBS" or the "Landlord"), hereby moves (the "Motion") for entry of an order pursuant to 11 U.S.C. §§ 365(d)(3) and 503(b)(1) compelling Compass Coffee, LLC, the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case") to pay post-petition rent obligations due and payable under the unexpired non-residential lease (the "Lease") in effect between Debtor and Landlord with respect to real property located at 3003 Washington Boulevard, Suite #950, Arlington, Virginia 22201 (the "Premises"). In support of the Motion, Landlord respectfully states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1334. This action constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicate for the relief sought in this Motion is 11 U.S.C. §§ 365(d)(3) and 503(b)(1), and Rule 9014 of the Federal Rules of Bankruptcy Procedure.

2. Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

**A.  The Lease and the Debtor's Prepetition Breach of its Obligations.**

3. The Debtor and Landlord entered into the Lease for the Premises as of January 7,

2025. Under the Lease, the Debtor agreed to pay Base Rent in monthly installments, as well as Additional Rent, comprising costs, expense, charges, as set forth in the Lease.[1]

4. The Lease has a ten-year term, subject to certain extension options, and is set to expire on January 31, 2035. *Lease*, § 3(b).

5. Under the Lease, the base rent ("Base Rent") is currently $93,969.00 per annum, due in monthly installments of $7,830.75, subject to certain annual increases described in the Lease. *Lease*, § 4(a)(i).

6. The Lease also obligates the Debtor to pay additional rent ("Additional Rent" and together with Base Rent, "Rent") which includes the Debtor's pro rata share of operating expenses, insurance, and real estate taxes with respect to the Premises. *Lease*, § 4(b).

7. Rent is payable in advance on the first day of each calendar month, and is late and subject to interest and certain late charges if not received by Landlord within five days of when it is due. *Lease*, § 4(c).

8. Pursuant to the terms of the Lease, the Debtor was required to commence Rent payments in September 2025, but has, to date, failed to make any Rent payments as required under the Lease.

9. On October 15, 2025, Landlord sent the Debtor a Notice of Default (the "October Default Notice"), informing the Debtor that it was in default of its obligations for failure to pay Rent in accordance with the Lease, and providing a Debtor an accounts receivable report detailing the amounts due.

10. On November 12, 2025, Landlord sent a second Notice of Default (the "November Default Notice"), again informing the Debtor that it was in default of its obligations under the

---

[1] Copies of the Lease are available upon request.

Lease for failure to pay Rent, and providing a Debtor an accounts receivable report detailing the amounts due.

11. The Debtor did not respond to either the October Default Notice or the November Default Notice, but continued to occupy the Premises. On November 20, 2025, Landlord sent the Debtor a Notice of Event of Default (the "Final Default Notice", and together with the October Default Notice and November Default Notice, the "Default Notices"), notifying the Debtor that an Event of Default had occurred under the Lease and was ongoing due to the Debtor's failure to timely pay Rent, demanding payment of all past due amounts within 5 days, and asserting that if the Debtor did not comply with this demand, Landlord would exercise its remedies under the Lease.

12. On December 9, 2025, Landlord sent the Debtor a Notice of Termination of Lease and to Quit Premises based on the Debtor's failure to cure the defaults outlined in the Default Notices.

B. **The Chapter 11 Case and Debtor's Failure to Pay February Rent**

13. Shortly thereafter, on January 6, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Columbia (the "Court"), commencing the Chapter 11 Case.

14. On the Petition Date, the Debtor filed a motion seeking to reject various unexpired leases (not including the Lease), which was granted on January 29, 2026. *See* ECF Nos. 14, 134.

15. Also on the Petition Date, the Debtor filed the *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Post-Petition Financing; (II) Authorizing the Debtor to Use Cash Collateral; and (III) Granting Adequate Protection,* ECF No. 5 (the "Cash Collateral

Motion"). The Cash Collateral Motion included a budget, listing its obligations for rent due on February 1, 2026 as $150,000. *See* ECF No. 5-1.

16. Pursuant to the Sale Motion, the Debtor (a) sought entry of an order approving bidding procedures, as well as the procedure for the assumption and assignment of the Debtor's executory contracts and unexpired leases in connection with the sale of all or substantially all of the Debtor's assets; and (b) further seeks entry of one or more separate orders authorizing and approving one or more transactions to sell or otherwise transfer all or substantially all of the Debtor's assets to the highest and best bidder (the "Sale").

17. On January 23, 2026, the Court entered the *Order (I) Approving Bidding Procedures, (II) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (III) Approving Stalking Horse Protections, (IV) Scheduling Bid Deadline, Auction Date, and Sale Hearing Date, and (V) Approving Form of Notice Thereof* [ECF No. 90] (the "Bid Procedures Order"). On the same date, in accordance with the Bid Procedures Order, the Debtor filed (i) a *Stalking Horse Selection Notice* [ECF No. 93] (the "Stalking Horse Notice") designating Caffe Nero North America, Inc. as the stalking horse bidder (the "Stalking Horse Bidder") pursuant to an Asset Purchase Agreement (the "APA") under which the Stalking Horse Bidder agreed to purchase substantially all of the Debtor's assets for a cash price of $2.9 million and (ii) a *Notice of Filing Assigned Contract List* (the "Notice of Proposed Assumption and Assignment") [ECF No. 94], listing the Lease among the fifteen unexpired real property leases (as well as various other executory contracts) to be assumed and assigned in connection with the Sale. As referenced above, the Cash Collateral Motion indicates that the Debtor's (or ultimately, the assignee's) monthly rent obligations under the leases to be assumed is $150,000.

18. The *Notice of Debtor's Intent to Assume and Assign Executory Contracts and Unexpired Leases and Setting Forth Proposed Cure Amounts* (the "Cure Notice") identified the Lease as a lease to be assumed and assigned through the Sale, and asserted a cure amount of $36,255.07 (the "Proposed Cure Amount"), while Landlord's books and records reflect that $53,198.67 is outstanding with respect to the Lease. Landlord notified the Debtor of the discrepancy, and Debtor informed Landlord while it does not dispute its obligation to cure all non-monetary defaults (whether arising pre- or postpetition) prior to assumption and assignment, the Cure Notice contemplated payment of prepetition amounts due, and post-petition amounts to be cured would be reconciled at a later date.

19. In accordance with the objection deadline set forth in the Cure Notice, on February 6, 2026, Landlord filed the *Objection of KBSIII 3003 Washington, LLC to Cure Amounts and Assumption and Assignment of Unexpired Lease in Connection with Sale* [ECF No. 159] (the "Cure Objection") outlining its objection to (i) the Proposed Cure Amount, and (ii) the assumption and assignment of the Lease unless and until the Debtor carries its burden under section 365(b)(1)(C) of providing adequate assurance of future performance. The Cure Objection made clear that Landlord's adequate protection concerns were heightened under the circumstances due to the Debtor's pattern of non-performance under the Lease (indeed, the Debtor has failed to make a single timely Rent payment under the Lease), and the aggregate monthly lease obligations the Debtor proposed to assume and assign through the Sale. The Cure Objection remains pending.

20. The Debtor continues to occupy the Premises, but failed to pay Rent for February 2026 when it came due February 1, 2026.

21. Notwithstanding the inclusion of February rent obligations in the Budget appended to the Cash Collateral Motion for the fifteen leases the Debtor proposes to assume and assign,

several of the Debtor's other lessors have indicated that they too are still awaiting past due payment of February rent. *See, e.g.,* ECF Nos. 163 at ¶ 8; 164 at ¶ 8.

22.  On February 10, 2026, Landlord issued a demand to the Debtor for amounts due for February Rent under the Lease.

23.  As of the date of this Motion, the rent for February 2026 due and payable by the Debtor under the Lease totals $10,459.75 (the "February Rent")[2] consisting of the following amounts:

| Base Rent | $7,830.75 |
|---|---|
| Additional Rent[3] | $2,629.00 |
| **TOTAL** | **$10,459.75** |

## RELIEF REQUESTED

24.  Landlord respectfully requests that the Court enter the proposed order attached hereto as Exhibit A compelling the Debtor's (i) prompt payment of February Rent as required by section 365(d)(3) of the Bankruptcy Code and (ii) performance of all post-petition obligations under the Lease going forward unless and until the Lease is either rejected and the Premises surrendered, or (after the cure of outstanding defaults) assumed, or assumed and assigned pursuant to Court approval.

## ARGUMENT

**A.  Section 365(d)(3) of the Bankruptcy Code Mandates that the Debtor Timely Pay All Post-Petition Rent and Obligation Arising Under the Lease.**

---

[2] Landlord seeks relief through this Motion with respect to the unpaid February Rent (and other rent and charges that may come due prior to the hearing on the Motion). The Landlord's claim and remedies with respect to any other amounts owing post-petition and that have accrued under the Lease are expressly reserved.

[3] Specifically, Additional Rent due for February 2026 includes the following amounts in accordance with the Lease: $1,465.00 in Operating Expenses, $1,104.00 in Taxes, and $60.00 for Insurance.

25. The statutory mandate of section 365(d)(3) is unambiguous: debtors in possession "shall timely perform all of the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3); *see In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 209 (3d Cir. 2001) ("The clear and express intent of § 365(d)(3) is to require the trustee to perform the lease in accordance with its terms."); *In re Pac-W. Telecomm, Inc.*, 377 B.R. 119, 124 (Bankr. D. Del. 2007) (same); *In re Dutch Inns of America, Inc.*, 124 B.R. 1 (Bankr. D.D.C. 1991) (same).

26. The Debtor's obligations under section 365(d)(3) of the Bankruptcy Code are independent of, and not subject to, the requirements for the allowance of administrative expenses pursuant to section 503(b)(1) of the Bankruptcy Code. *See In re Goody's Family Clothing Inc.*, 610 F.3d 812, 817 (3d Cir. 2010) ("[Section] 365(d)(3) is best understood as an exception to the general procedures of § 503(b)(1) that ordinarily apply."). Accordingly, courts construe this language to require performance of all obligations that come due under the lease at their contract rate during the post-petition, pre-assumption/rejection period, without a § 503(b)(1) "benefit" analysis. *See In re Dutch Inns of America, Inc.*, 124 B.R. at 1 (landlord's entitlement to post-petition rent "measured by the terms of the lease" under § 365(d)(3)); *In re P.J. Clarke's Restaurant Corp.*, 265 B.R. 392, 399 (Bankr. S.D.N.Y. 2001) (same); *In re Pudgie's Dev. of N.Y., Inc.*, 202 B.R. 832, 836–38 (Bankr. S.D.N.Y. 1996) (collecting cases and adopting the majority view that § 365(d)(3) requires payment of full contract rent "regardless of any benefit to the estate").

27. Congress intended section 365(d)(3) to strike "a balance of equities." *In re Goody's Fam. Clothing, Inc.*, 401 B.R. 656, 663 (D. Del. 2009), *aff'd sub nom. In re Goody's Fam. Clothing*

*Inc.*, 610 F.3d 812 (3d Cir. 2010). While the landlord's ability to evict its debtor tenant is restricted during the time proscribed for the debtor to determine whether to assume or reject, "[o]n the other hand, a debtor-tenant must pay rent during this interim period; the landlord need not pursue a burdensome administrative expense claim to recover what [it] is owed under the lease." *Id.*

28.  The structure of section 365(d) as a whole reflects clear legislative intent that during the "breathing spell" provided after the petition date while the debtor decides whether to assume or reject, the landlord is not to be forced into involuntary, interest-free financing of the reorganization. *See In re Circuit City Stores, Inc.*, 447 B.R. 475, 508 (Bankr. E.D. Va. 2009) ("The intent behind the enactment of § 365(d)(3) was to prevent landlords from becoming involuntary creditors of the debtor's estate . . . .") (internal quotation omitted).

29.  Based on the clear Congressional intent of section 365(d)(3), a debtor is not permitted to unilaterally defer post-petition lease obligations. Rather, section 365(d)(3) means what it says: a debtor's timely performance of lease obligations arising post-petition is compulsory. As such, courts enforce section 365(d)(3)'s mandate of timely performance by compelling prompt payment of unpaid post-petition rent (or conditioning continued use of the premises on such payment). *See In re McCabe*, 212 B.R. 21, 22 (Bankr. D. Mass. 1996) (explaining that "immediate payment" is required under section 365(d)(3) because "[w]here the statute expressly obligates the trustee to 'timely perform,' the remedy is implicit: performance of the obligation. Absent this remedy, the requirement of timely performance is, for the most part, eviscerated.").

30.  The Debtor has remained in possession of the Premises post-petition, is actively marketing a going-concern sale that contemplates assumption and assignment of the Lease, and itself projected payment of February rent obligations in its cash collateral budget, yet has not paid the February Rent due under the Lease. While section 365(d)(3)(A) affords a debtor faced with an

early case cash availability timing issue to move for an extension of its obligation to meet all post-petition lease-imposed obligations until 60 days following the petition date, the Debtor here has made no such motion. Instead, the Debtor affirmatively sought, and received, the right to use case collateral to meet its lease obligations. *See* ECF No. 130.

31. The Debtor cannot be permitted to disrupt the balance struck by section 365(d)(3) by retaining the protections of the automatic stay and the value of continued use of the Premises, while simultaneously disregarding its obligation of timely performance under the Lease. The Debtor's failure to pay post-petition rent as it comes due under the Lease is therefore precisely the kind of noncompliance section 365(d)(3) was designed to remedy through an order compelling performance.

32. Accordingly, Landlord is entitled to an order (i) compelling prompt payment of the February Rent and related post-petition charges, and (ii) directing the Debtor to remain current on all Lease obligations going forward unless and until the Lease is rejected (with surrender of the Premises) or, after cure, assumed or assumed and assigned with Court approval.

**B.    The Debtor's Post-Petition Obligations under the Lease Are Also Entitled to Administrative Expense Priority.**

33. As detailed above, the Debtor is required to promptly pay February Rent pursuant to section 365(d)(3) without having to satisfy the requirements of section 503(b)(1). Nevertheless, February Rent further also qualifies as an administrative expense claim under section 503(b)(1), underscoring Landlord's entitlement to prompt payment of the same. Section 503(b)(1) provides that "the actual, necessary costs and expenses of preserving the estate" shall be allowed as administrative expenses. 11 U.S.C. § 503(b)(1).

34. To the extent that a debtor uses and occupies the leased premises post-petition, its post-petition rent obligations qualify as administrative expenses. *In re Dutch Inns of America, Inc.*,

124 B.R. at 1 (finding landlord entitled to administrative claim for post-petition, pre-rejection rent); *In re Cornwall Paper Mills Co.,* 169 B.R. 844, 851 (Bankr. D.N.J. 1994) ("In general, a debtor's post-petition rental expense will constitute actual and reasonable expenses of the estate as required by section 503(b)(1)(A)").

35.     As set forth above, the Debtor continues to use and occupy the Premises post-petition to operate its business and for purposes of maximizing value in a going concern sale. Accordingly, the post-petition Rents under the Lease qualify as administrative expenses under section 503(b)(1) of the Bankruptcy Code. The administrative expense status is further reason to compel prompt payment of all outstanding post-petition Rent and grant the relief requested herein.

**WHEREFORE**, Landlord respectfully requests that the Court enter an order: (i) compelling prompt payment of the February Rent and related post-petition charges as an allowed administrative expense; (ii) directing the Debtor to remain current on all Lease obligations going forward unless and until the Lease is rejected (with surrender of the Premises) or, after cure, assumed or assumed and assigned with Court approval; and (iii) granting such other and further relief as the Court deems just and proper.

[*Remainder of this page intentionally left blank.*]

| | |
|---|---|
| Dated: February 17, 2026 | Respectfully submitted, |
| | KBSIII 3003 WASHINGTON, LLC, |
| | By its attorneys, |
| | HOLLAND & KNIGHT LLP |
| | By: */s/ Philip T. Evans* |
| | Philip T. Evans (Bar No. 441735)<br>Holland & Knight LLP<br>800 17th Street, NW<br>Suite 1100<br>Washington, DC  20006<br>Tel.: 202-457-7043<br>Philip.evans@hklaw.com |
| | and |
| | John J. Monaghan, Esq. (*pro hac vice application pending*)<br>Bos-bankruptcy@hklaw.com<br>HOLLAND & KNIGHT LLP<br>10 Saint James Avenue, 11th Floor<br>Boston, Massachusetts 02116<br>Tel: (617) 523-2700 |
| | *Counsel for KBSIII 3003 Washington, LLC* |

# CERTIFICATE OF SERVICE

    I, Philip T. Evans, counsel to KBSIII 3003 Washington, LLC, do hereby certify that on or about February 17, 2026, a copy of the foregoing *Motion for Entry of an Order Compelling Debtor's Payment of Post-Petition Rent Due Under Unexpired Non-Residential Real Property Lease Pursuant to 11 U.S.C. §§ 365(d)(3) and 503(b)(1)* was served upon parties-in-interest through the Court's ECF system.

                                                /s/ *Philip T. Evans*