**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re:<br><br>COMPASS COFFEE, LLC,<br><br>Debtor. | Chapter 11<br>Case No. 26-00005 (ELG) |

**OBJECTION OF KBSIII 3003 WASHINGTON, LLC TO ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASE TO BACK-UP BIDDER IN CONNECTION WITH SALE**

KBSIII 3003 Washington, LLC ("KBS" or the "Landlord"), hereby files this objection (the "Objection") in response to the *Notice of Successful Bidder and Back-Up Bidder* served upon KBS by Compass Coffee, LLC, the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), in relation to the potential sale of all or certain of the Debtor's assets pursuant to the *Debtor's Motion for (A) Entry of an Order (I) Approving Bidding Procedures, (II) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (III) Approving Stalking Horse Protections, (IV) Scheduling Bid Deadline, Auction Date, and Sale Hearing Date, and (V) Approving Form of Notice Thereof; (B) Entry of an Order After the Sale Hearing (I) Authorizing the Debtor to Sell Its Assets, and (II) Authorizing the Debtor to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Docket No. 76] (the "Sale Motion"), and the potential assumption and assignment of the unexpired lease (the "Lease") in effect between Debtor and Landlord with respect to real property located at 3003 Washington Boulevard, Suite #950, Arlington, Virgina 22201 (the "Premises"). Landlord objects to the potential assumption and assignment of the Lease to the Back-Up Bidder (defined below) because the Back-Up Bidder has

failed to provide the required adequate assurance of future performance. In support of this Objection, Landlord respectfully states as follows:

## BACKGROUND

A. **The Lease and the Debtor's Prepetition Breach of its Obligations.**

1. The Debtor and Landlord entered into the Lease for the Premises as of January 7, 2025. Under the Lease, the Debtor agreed to pay Base Rent in monthly installments, as well as Additional Rent, comprising costs, expense, charges, as set forth in the Lease.[1]

2. The Lease has a ten-year term, subject to certain extension options, and is set to expire on January 31, 2035. *Lease*, § 3(b).

3. Under the Lease, the base rent ("Base Rent") is currently $96,788.04 per annum, due in monthly installments of $8,065.67 payable in advance on the first day of each calendar month. Base Rent is subject to certain annual increases described in the Lease. *Lease*, § 4(a)(i).

4. The Lease also obligated the Debtor to pay additional rent ("Additional Rent" and together with Base Rent, "Rent") which includes the Debtor's pro rata share of operating expenses with respect to the Premises, as well as the Debtor's pro rata share of real estate taxes for the Premises. *Lease*, § 4(b).

5. Pursuant to the terms of the Lease, the Debtor was required to commence Rent payments in September 2025, but has, to date, failed to make any Rent payments as required under the Lease.

6. On October 15, 2025, Landlord sent the Debtor a Notice of Default (the "October Default Notice"), informing the Debtor that it was in default of its obligations for failure to pay

---

[1] Copies of the Lease are available upon request.

Rent in accordance with the Lease, and providing a Debtor an accounts receivable report detailing the amounts due.

7. On November 12, 2025, Landlord sent a second Notice of Default (the "November Default Notice"), again informing the Debtor that it was in default of its obligations under the Lease for failure to pay Rent, and providing a Debtor an accounts receivable report detailing the amounts due.

8. The Debtor did not respond to either the October Default Notice or the November Default Notice, but continued to occupy the Premises. On November 20, 2025, Landlord sent the Debtor a Notice of Event of Default (the "Final Default Notice", and together with the October Default Notice and November Default Notice, the "Default Notices"), notifying the Debtor that an Event of Default had occurred under the Lease and was ongoing due to the Debtor's failure to timely pay Rent, demanding payment of all past due amounts within 5 days, and asserting that if the Debtor did not comply with this demand, Landlord would exercise its remedies under the Lease.

9. On December 9, 2025, Landlord sent the Debtor a Notice of Termination of Lease and to Quit Premises based on the Debtor's failure to cure the defaults outlined in the Default Notices.

**B.    Commencement of the Chapter 11 Case and the Sale Motion**

10. Shortly thereafter, on January 6, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Columbia (the "Court"), commencing the Chapter 11 Case.

11. On the Petition Date, the Debtor filed the *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Post-Petition Financing; (II) Authorizing the Debtor to Use Cash Collateral; and (III) Granting Adequate Protection,* ECF No. 5 (the "Cash Collateral Motion"). The Cash Collateral Motion included a budget, listing its obligations for rent due on February 1, 2026 as $150,000. *See* ECF No. 5-1.

12. Pursuant to the Sale Motion, the Debtor (a) sought entry of an order approving bidding procedures, as well as the procedure for the assumption and assignment of the Debtor's executory contracts and unexpired leases in connection with the sale of all or substantially all of the Debtor's assets; and (b) further seeks entry of one or more separate orders authorizing and approving one or more transactions to sell or otherwise transfer all or substantially all of the Debtor's assets to the highest and best bidder (the "Sale").

13. On January 23, 2026, the Court entered the *Order (I) Approving Bidding Procedures, (II) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (III) Approving Stalking Horse Protections, (IV) Scheduling Bid Deadline, Auction Date, and Sale Hearing Date, and (V) Approving Form of Notice Thereof* [ECF No. 90] (the "Bid Procedures Order"). On the same date, in accordance with the Bid Procedures Order, the Debtor filed (i) a *Stalking Horse Selection Notice* [ECF No. 93] (the "Stalking Horse Notice") designating Caffe Nero North America, Inc. as the stalking horse bidder (the "Stalking Horse Bidder") pursuant to an Asset Purchase Agreement (the "APA") under which the Stalking Horse Bidder agreed to purchase substantially all of the Debtor's assets for a cash price of $2.9 million and (ii) a *Notice of Filing Assigned Contract List* (the "Notice of Proposed Assumption and Assignment") [ECF No. 94], listing the Lease among the fifteen unexpired real property leases (as well as various other executory contracts) to be assumed and assigned in connection with the

Sale. As referenced above, the Cash Collateral Motion indicates that the Debtor's (or ultimately, the assignee's) monthly rent obligations under the leases to be assumed is $150,000.

C. **The Auction and Adequate Assurance Proffers.**

14. On January 29, 2026, the Debtor provided a letter (the "Stalking Horse Adequate Assurance Proffer") to Landlord purportedly providing adequate assurance of the Stalking Horse Bidder's ability to perform under the Lease. The Adequate Protection Proffer noted that the Stalking Horse Bidder is an acquisition vehicle established for purposes of the Sale, and noted that the Stalking Horse Bidder's obligations under the APA are guaranteed by its sister company, Caffe Nero Americas, Inc. ("Caffe Nero Americas").

15. As described in the previously filed *Objection of KBSIII 3003 Washington, LLC to Cure Amounts and Assumption and Assignment of Unexpired Lease in Connection with Sale* [ECF No. 159] (the "Stalking Horse Adequate Assurance Objection"), the Stalking Horse Adequate Assurance Proffer did not contain any financial information regarding the Stalking Horse Bidder or Caffe Nero Americas.[2] Instead, it included bank account information for their ultimate parent, Nero Group Holdings Ltd ("Nero Parent"), but contained no indication that Nero Parent would be guaranteeing the Stalking Horse Bidder's obligations in connection with the Sale.

16. In accordance with the Bid Procedures Order, the Debtor conducted an auction (the "Auction") for the sale of substantially all of its assets from February 17, 2026 through February 19, 2026. At the conclusion of the Auction, the Debtor identified the Stalking Horse Bidder as the Successful Bidder, and Next Gen Coffee Enterprises, LLC as the Back-Up Bidder (the "Back-Up Bidder"). As set forth in the Bid Procedures Order, the Back-Up Bidder has agreed to purchase the

---

[2] The Stalking Horse Bidder has provided certain additional information that may impact the adequate assurances analysis; the parties' discussions are ongoing.

Debtor's assets pursuant to an asset purchase agreement (the "Back-Up Bidder APA") if the Stalking Horse Bidder fails to close the Sale. *See* ECF No. 90.

17.     On February 19, 2026, the Debtor provided Landlord an adequate assurance letter from the Back-Up Bidder (the "Back-Up Bidder Adequate Assurance Proffer"). The Back-Up Bidder is an acquisition vehicle formed one week prior to the Auction with no financial performance history. It asserts that the "positive changes" it intends to make to the Debtor's business, the experience of the Back-Up Bidder's shareholders, and a strong management team collectively provide adequate assurance of its ability to perform.

18.     The Back-Up Bidder Adequate Assurance Proffer states that the Back-Up Bidder's obligations in connection with the Sale will be guaranteed by Grey Fence Guaranty LLC ("Grey Fence"), an entity with $20,126,661 in assets under management. The amount of Grey Fence's assets under management is the only financial disclosure provided in the Back-Up Bidder Adequate Assurance Proffer, and no further information was provided regarding the composition of Grey Fence's portfolio.

19.     Not only is the Back-Up Bidder Adequate Assurance Proffer deficient in that it provides no information related to the financial capacity of the Back-Up Bidder itself, but, without more, the disclosure of only the amount of assets under management by a guarantor (with no detail as to what those assets actually are) provides little, if any, assurances regarding the Back-Up Bidder's ability to perform under the Lease. The amount of "assets under management" without more, is not sufficient indicia of Grey Fence's own financial strength or liquidity. For example, on one end of the liquidity spectrum, "assets under management" could mean unrestricted cash, or, at the other extreme, the cost basis of illiquid stock in privately held mid-market companies. Without more information regarding the assets under management of the guarantor being offered as

adequate assurance of the Back-Up Bidder's ability to perform under the Lease, the Back-Up Bidder Adequate Assurance Proffer does not satisfy the obligation to demonstrate adequate assurance of future performance.

## OBJECTION

### A.  The Debtor Has Not Provided Adequate Assurance of Future Performance

20.     The Debtor is required to provide sufficiently concrete adequate assurance of future performance under section 365(b)(1)(C). Section 365(b)(1)(C) seeks to "balance the debtor's interest in maximizing the value of its estate through the assumption and assignment of its executory leases against the landlord's interest in receiving the benefit of its bargain and being protected against default by the debtor after assumption has occurred." *In re Embers 86th St., Inc.*, 184 B.R. 892, 896 (Bankr. S.D.N.Y. 1995). "Adequate assurance of future performance" in this context generally requires evidence of the assignee's financial wherewithal and ability to perform all obligations under the lease going forward, not merely conclusory assertions. *See Matter of World Skating Ctr., Inc.*, 100 B.R. 147, 148–49 (Bankr. D. Conn. 1989) ("Adequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure the landlord" that it will receive the benefit of its bargain). While "adequate assurance" does not require an absolute guarantee of future performance, the debtor must provide sufficient evidence that the assignee's future performance is reasonably assured based on the facts and circumstances attendant to the proposed assignment. *See, e.g., In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009).

21.     Here, the Debtor has failed to carry its burden of providing "adequate assurance of future performance" under section 365(b)(1)(C). First, because the Back-Up Bidder is a newly formed acquisition vehicle formed for the sole purpose of the Sale, it has no operating history to

rely upon as a basis for assuming success and none of the generally relied upon financial information that would suggest a sound financial condition that can provide a backstop should the Back-Up Bidder suffer the same lack of operational success that landed the Debtor before this Court. As stated in the Stalking Horse Adequate Assurance Objection, this concern is heightened considering that this newly formed acquisition vehicle seeks to have assigned to it sixteen leases that the Cash Collateral Motion suggests give rise to an aggregate monthly lease obligation of approximately $150,000.

22. Second, although the Back-Up Bidder Adequate Assurance Proffer notes that Grey Fence would be guaranteeing the Back-Up Bidder's obligations under the Back-Up Bidder APA, the terms of that guarantee are not disclosed, and the Landlord cannot ascertain whether that guarantee extends to all post-closing financial obligations of the Back-Up Bidder, including those arising under the Lease.

23. Even if a fulsome guarantee of the Back-Up Bidder's post-closing obligations is in place, there is no evidence on which to assess the likelihood of performance, as the Back-Up Bidder Adequate Assurance Proffer does not contain sufficiently concrete financial information regarding Grey Fence's financial capacity.

24. While adequate assurance does not require an iron clad guarantee of an assignee's success, at minimum, a debtor must provide *some* evidence on which the counterparty can assess the assignee's likelihood of performance of its financial obligations. *See In re Martin Paint Stores*, 199 B.R. 258, 263 (Bankr. S.D.N.Y. 1996), *aff'd sub nom. S. Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57 (S.D.N.Y. 1997) ("At a minimum, the primary focus of adequate assurance concerns the assignee's ability to fulfill the financial obligations under the lease.").

25. As referenced above, the Debtor has not made a single timely Rent payment under

the Lease, and the Lease term extends through 2035. The Back-Up Bidder is an acquisition vehicle with no pre-closing assets or pre-closing operations, and the Debtor has provided no evidence regarding its ability to perform after the Sale.

26. Without such information, Landlord and the Court cannot meaningfully assess whether the Back-Up Bidder has the financial wherewithal to perform its obligations over the remaining Lease term, including payment of Base Rent and Additional Rent, and the cost of required maintenance and repairs. The generalized assurances offered by the Debtor and the Back-Up Bidder and the limited information on the Grey Fence's financial condition are insufficient to satisfy section 365(b)(1)(C).

27. As referenced above, Landlord does not oppose a properly supported assumption and assignment that provides genuine adequate assurance of future performance. Landlord's objection is to proceeding in the absence of a sufficient evidentiary record concerning the Back-Up Bidder's financial capacity.

## RESERVATION OF RIGHTS

Landlord reserves the right to amend, supplement or modify this Objection and to assert any amounts, cures, rights, objections, and remedies under and relating to the Lease, the Bankruptcy Code, or other applicable law, including, without limitation, the right to raise additional arguments or objections concerning the proposed assumption and assignment of the Lease, and the right to interpose amended or further objections at a later date as may be warranted by the attendant facts and circumstances.

**WHEREFORE**, Landlord respectfully requests that the Court: (i) sustain this Objection; (ii) deny, or alternatively continue, approval of the proposed assumption and assignment of the Lease unless and until Debtor and the Back-Up Bidder satisfy all requirements of 11 U.S.C. §

365(b), including adequate assurance of future performance; (iii) require the financial disclosures and conditions described above; and (iv) grant such other and further relief as the Court deems just and proper.

Dated: February 24, 2026

Respectfully submitted,

KBSIII 3003 WASHINGTON, LLC,

By its attorneys,

HOLLAND & KNIGHT LLP

By: */s/ Philip T. Evans*_____

Philip T. Evans (Bar No. 441735)
Holland & Knight LLP
800 17th Street, NW
Suite 1100
Washington, DC  20006
Tel.: 202-457-7043
Philip.evans@hklaw.com

and

John J. Monaghan, Esq. (*admitted pro hac vice*)
Bos-bankruptcy@hklaw.com
HOLLAND & KNIGHT LLP
10 Saint James Avenue, 11th Floor
Boston, Massachusetts 02116
Tel: (617) 523-2700

## CERTIFICATE OF SERVICE

I, Philip T. Evans, counsel to KBSIII 3003 Washington, LLC, do hereby certify that on or about February 24, 2026, a copy of the foregoing Objection was served upon parties-in-interest through the Court's ECF system.

/s/ _Philip T. Evans_____