**HUNTON ANDREWS KURTH LLP**
Tyler P. Brown (admitted *pro hac vice*)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (admitted *pro hac vice*)
951 E. Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200

*Counsel for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| In re: | **Chapter 11** |
| **Compass Coffee, LLC,** | |
| **Debtor.** | **Case No. 26-00005 (ELG)** |

**NOTICE OF FILING REVISED PROPOSED SALE ORDER**

    **PLEASE TAKE NOTICE** that on January 14, 2026, the above-captioned debtor and debtor-in-possession (the "***Debtor***") filed the *Debtor's Motion for (A) Entry of an Order (I) Approving Bidding Procedures; (II) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; (III) Approving Stalking Horse Protections; (IV) Scheduling Bid Deadline, Auction Date, and Sale Hearing Date; (V) Approving Form of Notice Thereof; (B) Entry of an Order After the Sale Hearing (I) Authorizing the Debtor to Sell Its Assets; and (II) Authorizing the Debtor to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Docket No. 76] with the United States Bankruptcy Court for the District of Columbia (the "***Court***") seeking entry of an order approving the Bidding Procedures,[1] scheduling an auction (the "***Auction***"), approving one or more sales, as applicable, and granting related relief.

    **PLEASE TAKE FURTHER NOTICE** that on February 19, 2026 the Debtor filed the *Notice of Successful Bidder and Backup Bidder* [Docket No. 190], identifying those entities that were declared to be the Successful Bidder and Back-Up Bidder at the close of the Auction.

    **PLEASE TAKE FURTHER NOTICE** that on February 23, 2026, the Debtor filed the proposed *Order (I) Approving the Asset Purchase Agreement; (II) Authorizing the Sale of the Purchased Assets; (III) Authorizing the Debtor to Assume and Assign Certain Executory Contracts*

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the *Order (I) Approving Bidding Procedures; (II) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (III) Approving Stalking Horse Protections, (IV) Scheduling Bid Deadline, Auction Date, and Sale Hearing Date, and (V) Approving Form of Notice Thereof* [Docket No. 90] or the Bidding Procedures attached thereto as Exhibit 1.

*and Unexpired Leases; and (IV) Granting Related Relief* (the "***Original Proposed Sale Order***"), approving the sale of the Purchased Assets to the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as <u>Exhibit A</u> is a revised proposed sale order (the "***Revised Proposed Sale Order***").

**PLEASE TAKE FURTHER NOTICE** that attached hereto as <u>Exhibit B</u> is a redline of the Revised Proposed Sale Order to the Original Proposed Sale Order.

**PLEASE TAKE FURTHER NOTICE** that the Debtor intends to seek entry of the Revised Proposed Sale Order at the Sale Hearing scheduled for February 26, 2026, at 11:00 a.m. (ET).

*[Remainder of Page Intentionally Left Blank]*

Dated: February 26, 2026
Richmond, Virginia

Respectfully submitted,

/s/ *Jennifer E. Wuebker*

Tyler P. Brown (admitted *pro hac vice*)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (admitted *pro hac vice*)
**HUNTON ANDREWS KURTH LLP**
951 E. Byrd Street
Richmond, Virginia 23219
Telephone:      (804) 788-8200
Facsimile:      (804) 788-8218
Email:          tpbrown@hunton.com
                jwuebker@hunton.com
                nmonico@hunton.com

*Counsel for the Debtor and Debtor in Possession*

## Exhibit A

**Revised Proposed Sale Order**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **Compass Coffee, LLC,** | |
| **Debtor.** | **Case No. 26-00005 (ELG)** |

## ORDER (I) APPROVING THE ASSET PURCHASE AGREEMENT; (II) AUTHORIZING THE SALE OF THE PURCHASED ASSETS; (III) AUTHORIZING THE DEBTOR TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF

THIS CASE came on for consideration upon the motion [Docket No. 76] (the "***Sale Motion***") of the Debtor for entry of an Order (this "***Sale Order***"), pursuant to sections 105, 363, and 365 of the Bankruptcy Code,[1] rules 2002, 6004, and 6006 of the Bankruptcy Rules, and rules

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Sale Motion, *Order (I) Approving Bidding Procedures; (II) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, (III) Approving Stalking Horse Protections, (IV) Scheduling Bid Deadline, Auction*

**HUNTON ANDREWS KURTH LLP**
Tyler P. Brown (admitted *pro hac vice*)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (admitted *pro hac vice*)
951 E. Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200

*Counsel for Debtor and Debtor in Possession*

2002-1, 6004-1, and 6006-1 of the Local Rules, (i) authorizing the sale of the Debtor's Assets to a Successful Bidder, free and clear of all liens, claims, and encumbrances, (ii) approving the assumption and assignment of the Assigned Contracts (as defined in the asset purchase agreement (the "*APA*") for the Purchased Assets[2] attached hereto as <u>Exhibit 1</u>), and (iii) granting related relief; this Court, in furtherance of the Sale Motion, having entered the Bidding Procedures Order approving, among other things, (i) the Bidding Procedures attached thereto as Exhibit 1, (ii) the form of Sale Notice attached thereto as Exhibit 2, (iii) the form of Cure Notice attached thereto as Exhibit 3, and (iv) the procedures for assumption and assignment of Assigned Contracts, including determining, fixing, and providing notice and an opportunity to object to Cure Amounts to be paid in respect of the Assigned Contracts; the Debtor having received Qualified Bids by the Bid Deadline other than the Qualified Bid of the Stalking Horse Purchaser; the Auction having been held beginning on February 17, 2026, and concluding on February 19, 2026, pursuant to the Bidding Procedures, and at the conclusion of which the Debtor, in consultation with the Consultation Parties, selected Caffe Nero North America, Inc.("*Caffe Nero*") as the Successful Bidder, and its Bid as the Successful Bid, with respect to the Purchased Assets; the *Notice of Successful Bidder and Backup Bidder* [Docket No. 190] having been filed on February 19, 2026; adequate and sufficient notice of the Bidding Procedures, the Auction, the proposed Sale of the Purchased Assets, the Sale Hearing (defined below), the APA, and all transactions contemplated thereunder and in this Sale Order having been given in the manner directed by this Court in the Bidding Procedures Order; all interested parties having been afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto; this Court having (i) reviewed and

---

*Date, and Sale Hearing Date, and (V) Approving Form of Notice Thereof* [Docket No. 90] (the "***Bidding Procedures Order***"), or the Bidding Procedures attached thereto as <u>Exhibit 1</u>.

[2] For purposes of this Sale Order, the Purchased Assets means the Acquired Assets as defined in the APA.

considered (a) the Sale Motion and all relief related thereto, and (b) any objections thereto, and (ii) heard arguments of counsel and evidence presented in support of the relief requested by the Debtor in the Sale Motion at a hearing convened on February 26, 2026 (the "***Sale Hearing***"); this Court having jurisdiction over this matter; and the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establishing just cause for the relief granted herein; and after due deliberation thereon; good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

A.     The Court has jurisdiction to hear and determine the Sale Motion and to grant the relief requested therein pursuant to 28 U.S.C. § 157 and 1334.  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

B.     The statutory and legal predicates for the relief requested in the Sale Motion are sections 105, 363, and 365 of the Bankruptcy Code, rules 2002, 6004, and 6006 of the Bankruptcy Rules, and rules 2002-1, 6004-1, and 6006-1 of the Local Rules.

C.     The Debtor is selling the Purchased Assets, as more fully described in the APA (the "***Asset Sale***").  As demonstrated by the Sale Motion, the Bidding Procedures Order, the testimony and other evidence proffered or adduced in support of the Sale Motion, and the representations of counsel made on the record, the Debtor and its advisors sufficiently marketed the Assets, including the Purchased Assets, and conducted the marketing and sale process, including the Auction, as set forth in and in accordance with the Sale Motion, the Bidding Procedures, and the Bidding Procedures Order.  Based upon the record of these proceedings, all lien holders, creditors and other parties in interest and all prospective purchasers have been afforded appropriate notice and a reasonable and fair opportunity to bid for the Purchased Assets and to object to the Asset Sale.

D.      The Debtor is the sole and lawful owner of the Purchased Assets and holds good, sufficient, and marketable title to the Purchased Assets, subject to any and all claims, interests, liens, and encumbrances as may otherwise exist.  Pursuant to applicable bankruptcy and non-bankruptcy law, the Debtor has the ability to transfer title to the Purchased Assets to Caffe Nero, as the Successful Bidder.

E.      Pursuant to the terms of the APA, the Debtor will receive $4,550,000 cash (the "***Cash Consideration***") paid by Caffe Nero on the Closing Date.[3]  Additionally, Caffe Nero obtained the agreement of the landlord for the Debtor's leased premises at 1401 Okie Street, N.E., Washington, DC 20002 (the "**Roastery Location**"), to waive the payment of any rent for the post-petition period of January 6, 2026, through February 28, 2026, provided that Caffe Nero was the Successful Bidder and consummates the Asset Sale as contemplated by the APA.  The landlord for the Roastery Location has confirmed the post-petition rent waiver amounts to $214,988, which when combined with the Cash Consideration, results in value to the Debtor's estate of $4,764,988 (together with the Cash Consideration, the "***Consideration***").

F.      The Consideration is reasonable, fair, and constitutes adequate consideration for the Purchased Assets.  The Asset Sale is a fully negotiated arms' length transaction.

G.      The Debtor, with its professionals and in consultation with the Consultation Parties, has exercised sound and appropriate business judgment in negotiating the Asset Sale.

H.      Approval of the Asset Sale in accordance with the APA is in the best interests of the Debtor's estate and should be approved as set forth herein.

I.      Due, sufficient, adequate, and appropriate notice of the Sale Motion and the terms of the Asset Sale has been provided to all necessary lien holders, creditors and parties-in-interest.

---

[3] The Cash Consideration paid by Purchaser on the Closing Date will be less the Good Faith Deposit previously paid.

J.      Neither the Debtor nor Caffe Nero has engaged in any conduct that would cause or permit the APA to be avoided or costs or damages to be imposed under section 363(m) of the Bankruptcy Code, and Caffe Nero is entitled to the protections of section 363(m).

K.      The Debtor has demonstrated good, sufficient, and sound business purposes and justifications for consummation of the Asset Sale and all other agreements, instruments, certificates, and other documents to be entered into or delivered by any party in connection with the transactions, outside of the ordinary course of business and in accordance with the requirements of section 363(b) of the Bankruptcy Code.  Consummation of the Asset Sale pursuant to the APA (i) is justified under the circumstances, (ii) is an appropriate exercise of the Debtor's business judgment, (iii) maximizes value for the benefit of the Debtor's estate, creditors, and other parties in interest, and (iv) is in the best interests of the Debtor, its estate, and creditors.

L.      The Consideration provided by Caffe Nero pursuant to the APA (i) is fair and adequate, (ii) will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative, including liquidation, and (iii) constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) and otherwise constitutes fair consideration under the Bankruptcy Code and under applicable state law. The APA was not entered into, and the Asset Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtor under the Bankruptcy Code or under applicable state law.   Neither the Debtor nor Caffe Nero has entered into the APA or are consummating the Asset Sale with any fraudulent or otherwise improper purpose or intent.

M.      Caffe Nero is a Delaware corporation.  The Debtor has no affiliation or common ownership with Caffe Nero.  Caffe Nero is not a continuation of the Debtor or its estate, and there

is no continuity of enterprise between Caffe Nero and the Debtor. Caffe Nero is not a successor to the Debtor or its estate and the Asset Sale does not amount to a consolidation, merger, or de facto merger of Caffe Nero and the Debtor. Caffe Nero will not have any successor or transferee liability or liabilities, whether known or unknown and whether asserted or unasserted as of the closing, of the Debtor or any affiliates of the Debtor (whether under federal or state law or otherwise) as a result of the Asset Sale, except as expressly set forth in the APA.

N. The Debtor did not have a policy in effect on the Petition Date that prohibits the transfer of personally identifiable information and, as a result, consummation of the Sale does not implicate or violate section 363(b) of the Bankruptcy Code.

O. Good and sufficient reasons for approval of the APA and the transactions to be consummated in connection therewith have been articulated, and the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest. The Debtor has demonstrated compelling circumstances and good, sufficient, and sound business purposes and justifications for the Sale outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, before, and outside of a plan of reorganization, in that, among other things, the immediate consummation of the Sale with Caffe Nero is necessary and appropriate to maximize the value of the Debtor's estate, and the Sale will provide the means for the Debtor to maximize distributions to creditors.

P. The Sale does not constitute a sub rosa or de facto plan of reorganization or liquidation as it does not propose to (i) impair or restructure existing debt of, or equity interests in, the Debtor, (ii) impair or circumvent voting rights with respect to any plan that may be proposed by the Debtor, (iii) circumvent Chapter 11 safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code, or (iv) classify claims or equity interests or extend debt maturities.

Accordingly, the Sale neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating Chapter 11 plan for the Debtor.

Q.      The assumption and assignment of the Assigned Contracts, as set forth in the APA, is integral to the Asset Sale and in the best interest of the Debtor, its estate, creditors, and other parties in interest, and represents the Debtor's reasonable exercise of sound business judgment. The Cure Amounts set forth in the Cure Notices, or as otherwise ordered by this Court or agreed to by the Debtor and the relevant counterparty, in addition to amounts due for the period from the Petition Date to the Closing Date, are the amounts necessary to cure all monetary defaults and to pay all actual pecuniary losses under the Assigned Contracts under sections 365(b)(1)(A), (B) and 365(f)(2)(A) of the Bankruptcy Code.  No other or further amounts are due or required to be paid in connection with the assumption and assignment of the Assigned Contracts.

R.      Each provision of the Assigned Contracts to be assigned to Caffe Nero that purports to prohibit, restrict or condition, or could be construed as prohibiting, restricting or conditioning, assignment of any Assigned Contracts to be assigned to Caffe Nero or its assignee, or any applicable non-bankruptcy law that purports to prohibit, restrict or condition, or could be construed as prohibiting, restricting or conditioning, assignment of any Assigned Contracts to be assigned to Caffe Nero or its assignee, has been satisfied or is otherwise unenforceable under Bankruptcy Code section 365 solely as it relates to the assignment of the Assigned Contracts to Caffe Nero.

S.      Caffe Nero has demonstrated adequate assurance of future performance with respect to the Assigned Contracts pursuant to section 365(b)(1)(C) of the Bankruptcy Code.

T.      The consummation of the Asset Sale and the assumption and assignment of the Assigned Contracts is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b),

and 363(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Asset Sale.  In particular, the Debtor may sell the Purchased Assets free and clear of all liens, claims, encumbrances, interests and defenses (including rights of setoff and recoupment) of any kind or nature whatsoever (except as otherwise expressly provided herein or in the APA) in, on, or related to the Purchased Assets or the Debtor, including, but not limited to, in respect of the following: (i) all Claims as such term is defined in section 101(5) of the Bankruptcy Code; (ii) all mortgages, deeds of trust, and security interests of whatever kind or nature, conditional sales or title retention agreements, security agreements, pledges, hypothecations, mechanics', attorneys', construction and materialman's liens, assignments, contractual restriction, reclamation demands or claims, preferences, debts, easements, charges, suits, licenses, options in favor of third parties, guaranties, warranties, rights of recovery, rights and claims to refunds, redemption claims for non-assigned gift cards and branded loyalty promotional programs, contract claims for reimbursement, judgments, orders and decrees of any court or foreign or domestic governmental entity, tax claims (including, without limitation, claims on account of income taxes, sales and use taxes, property taxes, excise taxes, payroll taxes, consumption taxes, Medicare taxes, employment taxes, or any other tax or impost of any kind, including foreign, state, and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, subleases, rights of way, easements, servitudes, conditional sale or installment contracts, finance leases, off-sets, options, causes of action, collective bargaining agreements, escheat obligations, contract rights and claims, claims for contribution, indemnity, exoneration, infringement, products liability, derivative and vicarious liability, alter-ego, environmental rights and claims, labor rights and claims, employment rights and claims, pension rights and claims, regulatory violations by any governmental entity, or any other claims of any kind or nature against

the Debtor or the Purchased Assets, whether arising prior to or subsequent to the commencement

of the Chapter 11 Case through Closing, and whether imposed by agreement, understanding, law,

equity, or otherwise, known or unknown, contingent or matured, liquidated or unliquidated; (iii)

all rights and remedies with respect thereto, including those that purport to give to any party a right

of setoff or recoupment against, or a right or option to effect any forfeiture, modification, any

restriction of use, charges of interests of any kind or nature, profit sharing interest, right of first

refusal, purchase or repurchase right or option, or termination of any of the Debtor's or Caffe

Nero's interests in the Purchased Assets; (iv) any similar rights of any kind or nature in, on, or

related to the Debtor or the Purchased Assets, known or unknown, whether prepetition or post-

petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled,

perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded,

contingent or non-contingent, material or non-material, statutory or non-statutory, matured or

unmatured, legal or equitable, including any and all such liabilities, causes of action, contract

rights, and claims arising out of the Debtor's continued operations through the Closing Date; (v)

any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and

programs, including, without limitation, any pension plan of the Debtor; (vi) any other employee,

worker's compensation, occupational disease, unemployment, or temporary disability related

claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the

Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act,

(c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the

National Labor Relations Act, (f) the WARN Act, (g) the Age Discrimination and Employee Act

of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with

Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state

9

discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (1) any other state or federal benefits or claims relating to any employment with the Debtor or any of their predecessors; (vii) any bulk sales or similar law to the maximum extent permitted by Law; (viii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (ix) any environmental laws, including any Environmental, Health and Safety Requirement(s); and (x) any theories of successor or transferee liability (collectively (i)-(x) the "*Interests*") because in each case, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Any party in interest who did not object, or who withdrew its objection, to the Asset Sale or the Sale Motion is deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Any party with an Interest in the Purchased Assets who did object falls within one or more of the other subsections of section 363(f) of the Bankruptcy Code and is adequately protected by having its Interests, if any, attach to the net cash proceeds of the Asset Sale ultimately attributable to the property with the same validity, enforceability, priority, and force and effect as it had against the Purchased Assets or applicable Purchased Asset, or proceeds therefrom, as of the Petition Date.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Sale Motion is GRANTED as set forth herein.

2.      The Sale contemplated by the APA is hereby approved as set forth herein.

3.      All Post-Auction Objections, Sale Objections, Adequate Assurance Objections, and Contract Objections, and all other objections to the Sale Motion, that have not been withdrawn, waived, or settled are hereby OVERRULED on the merits, with prejudice, subject to the conditions and protections to certain creditors as expressly provided herein or in the APA.

4.      Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Debtor is immediately authorized and empowered to sell and transfer all of the Debtor's right, title and interest in and to the Purchased Assets to Caffe Nero in accordance with the APA (including any ancillary documents), and such sale and transfer shall (i) constitute a legal, valid, binding, and effective transfer of the Purchased Assets, (ii) subject to any terms of the APA, including any applicable conditions precedent, upon the Debtor's receipt of the Cash Consideration, vest Caffe Nero (or any permitted assignee) with all right, title and interest of the Debtor to the Purchased Assets free and clear of all Interests in, on and related to the Purchased Assets pursuant to section 363(f) of the Bankruptcy Code (except as otherwise provided herein or in the APA), and (iii) constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and applicable state law.

5.      The Debtor is authorized and empowered to execute the APA and any documents contemplated thereby and to effectuate the transactions and transfers contemplated thereunder subject to the terms thereof (as modified by this Sale Order).

6.      The consummation of Asset Sale in accordance with the APA (the "*Closing*") shall occur subject to, and following, the entry of this Sale Order and the satisfaction of any conditions precedent as set forth in the APA.  Upon Closing, Caffe Nero shall hold title to the Purchased Assets free and clear of all Interests existing immediately prior thereto (except as otherwise provided herein or in the APA) without the need for any release of lien or termination of any UCC financing statement, and this Sale Order alone shall be sufficient to evidence the same.  A copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder of any state, county, or local authority to act to cancel any of the Interests of record.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and

11

all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

7.        Except as expressly set forth herein or in the APA, on and after the Closing, all persons or entities, including but not limited to, all debt security holders, equity security holders, lien holders, governmental agencies, taxing entities, regulatory authorities, lenders, tort claimants, litigants, trade creditors, warehousemen, laborers, construction claimants, attorneys, materialmen, municipalities, and other creditors holding Interests of any kind and nature whatsoever against the Debtor or the Purchased Assets shall be and hereby are forever barred, estopped, and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing in any manner any action, claim, or other proceeding of any kind, directly or indirectly, against Caffe Nero, its permitted successors or assigns, or the Purchased Assets, including any action, claim, or other proceeding seeking to prevent or interfere with the consummation of the Asset Sale, with the retrieval by Caffe Nero or the delivery to Caffe Nero of possession of the Purchased Assets, or with any access to or any use, benefit, or enjoyment of the Purchased Assets by Caffe Nero (or any permitted assignee).

8.        Except as expressly set forth herein or in the APA, following the Closing, no holder of an Interest in or against the Debtor or the Purchased Assets shall interfere with Caffe Nero's title to or use and enjoyment of the Purchased Assets based on or related to such Interest.

9.        Except as expressly set forth herein or in the APA, Caffe Nero shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Purchased Assets, and in no event shall Caffe Nero have any liability or responsibility for any liabilities of the Debtor.  Without limiting the effect or scope of the foregoing, the transfer of the Purchased Assets from the Debtor to Caffe Nero does not and will not subject either Caffe Nero

12

or its affiliates, successors or assigns to any liability for Interests in or claims (as that term is

defined in section 101(5) of the Bankruptcy Code) against the Debtor or the Purchased Assets by

reason of such transfer under the laws of the United States or any state, territory or possession

thereof applicable to such transactions.  Neither Caffe Nero nor its affiliates, successors, or assigns

shall be deemed, as a result of actions taken in connection with the purchase of the Purchased

Assets: (a) to be a successor to the Debtor or (b) to be a continuation or substantial continuation

of the Debtor or any enterprise of the Debtor under any theory of successor liability or similar

liability theory.  By virtue of the consummation of the transactions contemplated under the APA,

(i) Caffe Nero is not a continuation of the Debtor or its estate, there is not substantial continuity

between Caffe Nero and the Debtor, and there is no continuity of enterprise between the Debtor

and Caffe Nero; (ii) Caffe Nero is not holding itself out to the public as a continuation of the Debtor

or its estate; (iii) the transactions do not amount to a consolidation, merger, or de facto merger of

Caffe Nero and the Debtor and/or the Debtor's estate; and (iv) Caffe Nero is not a successor or

assignee of the Debtor or its estate for any purpose, including, without limitation, under any

federal, state, or local statute or common law, or revenue, pension, ERISA, tax, labor, employment,

environmental, escheat, or unclaimed property laws, or other law, rule, or regulation (including,

without limitation, filing requirements under any such law, rule, or regulation), or under any

products liability law or doctrine with respect to the Debtor's liability under such law, rule,

regulation, doctrine, or common law, or under any product warranty liability law or doctrine with

respect to the Debtor's liability under such law, rule, regulation, or doctrine, and Caffe Nero shall

have no liability or obligation under the Workers Adjustment and Retraining Act (the "WARN

Act"), 929 U.S.C. §§ 210 et seq., or the Comprehensive Environmental Response Compensation

and Liability Act and shall not be deemed to be a "successor employer" for purposes of the Internal

13

Revenue Code of 1986, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disability Act, the Family Medical Leave Act, the National Labor Relations Act, the Labor Management Relations Act, the Older Workers Benefit Protection Act, the Equal Pay Act, the Civil Rights Act of 1866 (42 U.S.C. 1981), the Employee Retirement Income Security Act, the Multiemployer Pension Protection Act, the Pension Protection Act, and/or the Fair Labor Standards Act. Accordingly, Caffe Nero is not and shall not be deemed a successor to the Debtor or its estate as a result of the consummation of the Sale pursuant to the APA and this Sale Order. Except for the Assumed Liabilities, (i) the transfer of the Purchased Assets to Caffe Nero and (ii) the assumption and assignment to Caffe Nero of the Assigned Contracts does not and will not subject Caffe Nero to any liability whatsoever with respect to the operation of the Debtor's business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, any theory of law or equity, including, without limitation, any theory of antitrust or successor or transferee liability.

10.    Upon Closing, any and all Interests in the Purchased Assets existing immediately prior to the transfer thereof, shall attach to the proceeds of the Sale with the same validity, extent, enforceability, priority, and force and effect as they had against the Purchased Assets or their proceeds as of the Petition Date, subject to any rights, claims and defenses the Debtor or any other party in interest may possess with respect thereto.  All holders of Interests in or on the Purchased Assets are adequately protected by having their Interests attach to the proceeds of the Sale.

11.    The reversal or modification of the authorization provided herein to consummate the Asset Sale shall not affect the validity of the Asset Sale.  Caffe Nero has entered into the APA in good faith and is a purchaser in good faith of the Purchased Assets as that term is used in section

14

363(m) of the Bankruptcy Code, and, upon the occurrence of the Closing, Caffe Nero shall have

all of the protections afforded by section 363(m) of the Bankruptcy Code, provided that all Interests

in the Purchased Assets existing immediately prior to the transfer thereof, shall attach to the

proceeds of the Sale as stated in the preceding paragraph.

12.    The Debtor and its officers, directors, employees, managers, members, and agents

are authorized to execute and deliver and are empowered to perform under, consummate, and

implement the transactions contemplated by the APA, together with all additional instruments and

documents that may be reasonably necessary or desirable to implement the transactions

contemplated by the APA, and to take all further actions as may be reasonably requested by Caffe

Nero or otherwise required under the APA without further order of this Court.

13.    The terms of this Sale Order shall be binding in all respects upon the Debtor, its

estate, all creditors of, and holders of equity interests in the Debtor, any holders of encumbrances

or other Interests in, against, or on any portion of the Purchased Assets or the Debtor (whether

known or unknown), Caffe Nero, and any trustees, receivers or examiners, if any, that are

subsequently appointed in this Chapter 11 case or upon a conversion of this Chapter 11 case to

Chapter 7 under the Bankruptcy Code and any successors and assigns of such parties.  This Sale

Order and the APA shall inure to the benefit of the Debtor and its estate, Caffe Nero, and, all

creditors, the Committee, and all other parties in interest, and any successors and assigns of such

parties including, but not limited to, any trustee or examiner appointed in this Chapter 11 case or

upon the conversion of this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.

Subject in all respects to the Debtor's rights under the APA, neither the APA nor its affiliated

documents shall be subject to rejection, avoidance or unwinding by the Debtor, its estate, its

creditors, equity holders, or any trustees, examiners, or receivers.

15

14.     Prior to or in connection with Closing, the Debtor shall timely pay all Lease obligations in full to the applicable landlord pursuant to section 365(d)(3) of the Bankruptcy Code.

15.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing and payment of the Cure Amounts to the applicable counterparty to an Assigned Contract, the Debtor's assumption and assignment to Caffe Nero (or any permitted assignee), and Caffe Nero's assumption on the terms set forth in the APA, of the Assigned Contracts is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  Upon the Closing and the assignment of the Assigned Contracts, the Debtor shall be fully and finally released from (i) any claim, cause of action, or other liability under the Assigned Contracts, and (ii) all obligations arising under the Assigned Contracts.

16.     The Debtor is hereby authorized and empowered in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to Caffe Nero (or any permitted assignee), effective upon the Closing, the Assigned Contracts, and (b) execute and deliver to Caffe Nero (or any permitted assignee) such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts.

17.     The Assigned Contracts shall be assigned and transferred to, and remain in full force and effect for the benefit of, Caffe Nero (or any permitted assignee) in accordance with their respective terms, notwithstanding any provision in any such contract that prohibits, restricts, or conditions such assignment or transfer pursuant to section 365 of the Bankruptcy Code.

18.     For the avoidance of doubt and notwithstanding anything to the contrary in this Sale Order or the APA, (i) the Debtor shall remain bound by applicable indemnification provisions in the Assigned Contracts for claims arising prior to the Closing Date, and (ii) Caffe Nero shall be

16

bound by such applicable indemnification provisions in the Assigned Contracts from the Closing Date forward.  In addition, for the avoidance of doubt, all post-petition obligations (monetary and nonmonetary) arising under each Assigned Contract that is a nonresidential real property lease shall be performed timely and in full by Caffe Nero.

19.     Notwithstanding anything to the contrary contained herein, with respect to the non-residential real property lease (the "***Wilson Blvd. Lease***") between the Debtor and CoStar Central Place HQ, LLC (the "***Wilson Blvd. Landlord***") for the premises located at 1201 Wilson Blvd., Arlington, VA (the "***Wilson Blvd. Location***"), the hearing with respect to the Wilson Blvd. Landlord's objection to the Debtor's proposed Cure Amount [Docket No. 161] (the "***Wilson Blvd. Cure Objection***") has been adjourned to March 5, 2026, at 9:00 a.m. (ET).  The findings of fact and conclusions of law contained herein with respect to cure of the Assigned Contracts shall not be applicable to the Wilson Blvd. Lease or Wilson Blvd. Landlord unless and until there is a further order of the Court with respect to the Wilson Blvd. Cure Objection.  If the Debtor proceeds with the Closing before a resolution or adjudication of the Wilson Blvd. Cure Objection and determines to assume and assign the Wilson Blvd. Lease to Caffe Nero at that time, then the disputed portion of the Cure Amount with respect to the Wilson Blvd. Lease shall be reserved until such time as the cure dispute is resolved by agreement of the parties or an order of this Court.

20.     Solely to the extent applicable, upon the Closing, the Debtor shall pay the Cure Amounts for the Assigned Contracts, as set forth in the applicable Cure Notice or as otherwise agreed between the Debtor and the relevant Assigned Contract counterparty or ordered by this Court, as well as all amounts due and owing from the Petition Date through the Closing Date, and upon making such payment, all defaults or other obligations of the Debtor under the Assigned Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration

clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy

Code), whether monetary or non-monetary, shall be deemed cured pursuant to section 365 of the

Bankruptcy Code.  The Debtor shall have no further monetary obligation under the Assigned

Contracts other than payment of the amounts set forth in this paragraph.  For the avoidance of

doubt and notwithstanding anything to the contrary in this Order, Caffe Nero shall be responsible

for the payment, when billed in accordance with the terms of the Assigned Contracts, of accrued

charges under the Assigned Contracts, including, without limitation, year-end adjustment and

reconciliation amounts for taxes, common area maintenance charges, utilities, insurance, and other

charges, including quarterly utility payments, that accrued prior the Closing Date but are not yet

due or subject to further adjustment or reconciliation as of the Closing Date, subject to the right of

Caffe Nero to challenge or audit such obligations.


21.    The transfers contemplated by the APA and this Sale Order will generate proceeds

for the benefit of the Debtor's estate and which may be distributed to creditors pursuant to a chapter

11 plan.  Therefore, the execution, delivery, and/or recordation of any and all documents or

instruments necessary or desirable to consummate the Asset Sale, are exempt from any and all

document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real

estate transfer tax, mortgage recording tax, Uniform Commercial Code filing, or recording fee,

regulatory filing or fee, or other similar tax, fee, or governmental assessment incurred or assessed

by any federal, state, local, or foreign taxing authority (including interest and penalties, if any) to

the maximum extent permitted by law.

22.    The terms and provisions of this Sale Order and the terms and provisions of the

APA and any actions taken pursuant hereto or thereto as of the date of the entry of this Sale Order

shall survive the entry of any order that may be entered, including, without limitation, converting

this Chapter 11 Case from Chapter 11 to Chapter 7 or dismissing the Chapter 11 Case, and the

terms and provisions of the APA as well as the rights and interests granted pursuant to this Sale

Order and the APA shall continue in these or any superseding cases and shall be binding

23.    No bulk transfer law or similar law of any state or other jurisdiction shall apply in

any way to  Caffe Nero and/or the transactions with the Debtor that are approved by this Sale

Order, including, without limitation, the APA and the Sale.

24.    No governmental unit (as defined in section 101(27) of the Bankruptcy Code) or

any representative thereof may deny, revoke, suspend, or refuse to renew any permit, license, or

similar grant relating to the operation of the Purchased Assets on account of the filing or pendency

of this Chapter 11 Case or the consummation of the Sale to the extent that any such action by a

governmental unit or any representative thereof would violate section 525 of the Bankruptcy Code.

25.    To the greatest extent available under applicable law, Caffe Nero (or any permitted

assignee) shall be authorized, as of the Closing Date, to operate under any Assumed Permit, and

all such Assumed Permits are deemed to have been transferred by the Debtor to Caffe Nero as of

the Closing Date.

26.    The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

27.    The failure specifically to include any particular provisions of the APA in this Sale

Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the

Court that the APA be authorized and approved in its entirety; provided, however, that this Sale

Order shall govern if there is any inconsistency between the APA (including all ancillary

documents executed in connection therewith) and this Sale Order; provided that, to the extent that

Caffe Nero and any counterparty to an unexpired lease enter into a separate written agreement with

19

respect to the foregoing, such agreement shall govern with respect to the rights and obligations of Caffe Nero and such counterparty.

28.     In accordance with the Bidding Procedures, the Debtor has designated Next Gen Coffee Enterprises, LLC ("*Next Gen*"), whose Bid included a proposed cash payment of $4,750,000, as the Back-Up Bidder, and such Back-Up Bidder shall, subject to the terms and conditions set forth in that certain Asset Purchase Agreement, dated as of February 12, 2026, submitted by NextGen with its Bid, keep its Bid open and irrevocable until the earlier to occur of (i) thirty (30) days after the Sale Hearing, and (ii) the Closing on the Successful Bid with Caffe Nero.  If Caffe Nero, as the Successful Bidder, fails to consummate the Asset Sale, Next Gen, as the Back-Up Bidder, will be deemed to be the new Successful Bidder, the Debtor shall be authorized to consummate the Sale with Next Gen without further order of the Court, and all findings and conclusions set forth in this Sale Order applicable to Caffe Nero as Successful Bidder and the Sale of the Purchased Assets to Caffe Nero shall apply with equal force to Next Gen as the new Successful Bidder and the Sale of assets to Next Gen.  Notwithstanding the foregoing, to the extent that the Debtor fails to close the Sale with Caffe Nero, for any reason, and the Debtor determines instead to pursue the sale to Next Gen, as the Back-Up Bidder, then the Debtor shall file a notice on the docket stating that the Sale did not close and that the Debtor will pursue a closing with Next Gen pursuant to their Asset Purchase Agreement, and all counterparties to any assigned contracts pursuant to that Asset Purchase Agreement shall have seven (7) days from the date of the filing of such notice to object solely on the basis of adequate assurance of future performance with respect to Next Gen.  Already filed objections to the adequate assurance of future performance of Next Gen shall be deemed timely filed and those objecting parties shall have no

obligation to file an additional objection.  To the extent that the parties cannot resolve any such objections, the Court shall retain jurisdiction to determine and resolve any such objections.

29.     The Debtor is authorized and directed to refund Next Gen's Good Faith Deposit on the date of Closing of the Sale of Purchased Assets to Caffe Nero.

30.     The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order, the APA, all amendments thereto, and any waivers and consents thereunder, and any agreement set forth on the record at the Sale Hearing or embodied in this Sale Order, and each ancillary document executed in connection with any of the foregoing to which the Debtor is a party or which has been assigned by the Debtor to Caffe Nero, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Asset Sale; provided, however, that in the event the Court abstains from exercising or declines to exercise jurisdiction or is without jurisdiction, such abstention, refusal or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

31.     Debtor's counsel is directed to serve a copy of this Sale Order on the parties which were provided notice pursuant to the Sale Motion and file a proof of service within three (3) days after entry of this Sale Order.

*[Endorsement Page Follows]*

WE ASK FOR THIS:

/s/ _____

Tyler P. Brown (admitted *pro hac vice*)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (admitted *pro hac vice*)
**HUNTON ANDREWS KURTH LLP**
951 E. Byrd Street
Richmond, Virginia 23219
Telephone:     (804) 788-8200
Facsimile:     (804) 788-8218
Email:         tpbrown@hunton.com
               jwuebker@hunton.com
               nmonico@hunton.com

*Counsel for the Debtor and Debtor in Possession*

## **Exhibit 1**

**Asset Purchase Agreement**

## Exhibit B

**Redline of Revised Proposed Sale Order to Original Proposed Sale Order**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **In re:** | **Chapter 11** |
| **Compass Coffee, LLC,** | **Case No. 26-00005 (ELG)** |
| **Debtor.** | |

### ORDER (I) APPROVING THE ASSET PURCHASE AGREEMENT; (II) AUTHORIZING THE SALE OF THE PURCHASED ASSETS; (III) AUTHORIZING THE DEBTOR TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF

THIS CASE came on for consideration upon the motion [Docket No. 76] (the "***Sale Motion***") of the Debtor for entry of an Order (this "***Sale Order***"), pursuant to sections 105, 363, and 365 of the Bankruptcy Code,[1] rules 2002, 6004, and 6006 of the Bankruptcy Rules, and rules

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Sale Motion, *Order (I) Approving Bidding Procedures; (II) Approving Procedures for the Assumption and Assignment*

**HUNTON ANDREWS KURTH LLP**
Tyler P. Brown (admitted *pro hac vice*)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (admitted *pro hac vice*)
951 E. Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200

*Counsel for Debtor and Debtor in Possession*

2002-1, 6004-1, and 6006-1 of the Local Rules, (i) authorizing the sale of the Debtor's Assets to a Successful Bidder, free and clear of all liens, claims, and encumbrances, (ii) approving the assumption and assignment of the Assigned Contracts (as defined in the asset purchase agreement (the "*APA*") for the Purchased Assets[2] attached hereto as Exhibit 1), and (iii) granting related relief; this Court, in furtherance of the Sale Motion, having entered the Bidding Procedures Order approving, among other things, (i) the Bidding Procedures attached thereto as Exhibit 1, (ii) the form of Sale Notice attached thereto as Exhibit 2, (iii) the form of Cure Notice attached thereto as Exhibit 3, and (iv) the procedures for assumption and assignment of Assigned Contracts, including determining, fixing, and providing notice and an opportunity to object to Cure Amounts to be paid in respect of the Assigned Contracts; the Debtor having received Qualified Bids by the Bid Deadline other than the Qualified Bid of the Stalking Horse Purchaser; the Auction having been held beginning on February 17, 2026, and concluding on February 19, 2026, pursuant to the Bidding Procedures, and at the conclusion of which the Debtor, in consultation with the Consultation Parties, selected Caffe Nero North America, Inc.("*Caffe Nero*") as the Successful Bidder, and its Bid as the Successful Bid, with respect to the Purchased Assets; the *Notice of Successful Bidder and Backup Bidder* [Docket No. 190] having been filed on February 19, 2026; adequate and sufficient notice of the Bidding Procedures, the Auction, the proposed Sale of the Purchased Assets, the Sale Hearing (defined below), the APA, and all transactions contemplated thereunder and in this Sale Order having been given in the manner directed by this Court in the Bidding Procedures Order; all interested parties having been

---

*of Executory Contracts and Unexpired Leases, (III) Approving Stalking Horse Protections, (IV) Scheduling Bid Deadline, Auction Date, and Sale Hearing Date, and (V) Approving Form of Notice Thereof* [Docket No. 90] (the "*Bidding Procedures Order*"), or the Bidding Procedures attached thereto as Exhibit 1.

[2]  For purposes of this Sale Order, the Purchased Assets means the Acquired Assets as defined in the APA.

afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto; this Court having (i) reviewed and considered (a) the Sale Motion and all relief related thereto, and (b) any objections thereto, and (ii) heard arguments of counsel and evidence presented in support of the relief requested by the Debtor in the Sale Motion at a hearing convened on February 26, 2026 (the "***Sale Hearing***"); this Court having jurisdiction over this matter; and the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establishing just cause for the relief granted herein; and after due deliberation thereon; good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

A.      The Court has jurisdiction to hear and determine the Sale Motion and to grant the relief requested therein pursuant to 28 U.S.C. § 157 and 1334.  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

B.      The statutory and legal predicates for the relief requested in the Sale Motion are sections 105, 363, and 365 of the Bankruptcy Code, rules 2002, 6004, and 6006 of the Bankruptcy Rules, and rules 2002-1, 6004-1, and 6006-1 of the Local Rules.

C.      The Debtor is selling the Purchased Assets, as more fully described in the APA (the "***Asset Sale***").  As demonstrated by the Sale Motion, the Bidding Procedures Order, the testimony and other evidence proffered or adduced in support of the Sale Motion, and the representations of counsel made on the record, the Debtor and its advisors sufficiently marketed the Assets, including the Purchased Assets, and conducted the marketing and sale process, including the Auction, as set forth in and in accordance with the Sale Motion, the Bidding Procedures, and the Bidding Procedures Order.  Based upon the record of these proceedings, all lien holders, creditors and other parties in interest and all prospective purchasers have been

afforded appropriate notice and a reasonable and fair opportunity to bid for the Purchased Assets and to object to the Asset Sale.

D.    The Debtor is the sole and lawful owner of the Purchased Assets and holds good, sufficient, and marketable title to the Purchased Assets, subject to any and all claims, interests, liens, and encumbrances as may otherwise exist.  Pursuant to applicable bankruptcy and non-bankruptcy law, the Debtor has the ability to transfer title to the Purchased Assets to Caffe Nero, as the Successful Bidder.

E.    Pursuant to the terms of the APA, the Debtor will receive $4,550,000 cash (the "*Cash Consideration*") paid by Caffe Nero on the Closing Date.[3]  Additionally, Caffe Nero obtained the agreement of the landlord for the Debtor's leased premises at 1401 Okie Street, N.E., Washington, DC 20002 (the "**Roastery Location**"), to waive the payment of any rent for the post-petition period of January 6, 2026, through February 28, 2026, provided that Caffe Nero was the Successful Bidder and consummates the Asset Sale as contemplated by the APA.  The landlord for the Roastery Location has confirmed the post-petition rent waiver amounts to $214,988, which when combined with the Cash Consideration, results in value to the Debtor's estate of $4,764,988 (together with the Cash Consideration, the "*Consideration*").

F.    The Consideration is reasonable, fair, and constitutes adequate consideration for the Purchased Assets.  The Asset Sale is a fully negotiated arms' length transaction.

G.    The Debtor, with its professionals and in consultation with the Consultation Parties, has exercised sound and appropriate business judgment in negotiating the Asset Sale.

H.    Approval of the Asset Sale in accordance with the APA is in the best interests of the Debtor's estate and should be approved as set forth herein.

---

[3] The Cash Consideration paid by Purchaser on the Closing Date will be less the Good Faith Deposit previously paid.

I.      Due, sufficient, adequate, and appropriate notice of the Sale Motion and the terms of the Asset Sale has been provided to all necessary lien holders, creditors and parties-in-interest.

J.      Neither the Debtor nor Caffe Nero has engaged in any conduct that would cause or permit the APA to be avoided or costs or damages to be imposed under section 363(m) of the Bankruptcy Code, and Caffe Nero is entitled to the protections of section 363(m).

K.      The Debtor has demonstrated good, sufficient, and sound business purposes and justifications for consummation of the Asset Sale and all other agreements, instruments, certificates, and other documents to be entered into or delivered by any party in connection with the transactions, outside of the ordinary course of business and in accordance with the requirements of section 363(b) of the Bankruptcy Code.  Consummation of the Asset Sale pursuant to the APA (i) is justified under the circumstances, (ii) is an appropriate exercise of the Debtor's business judgment, (iii) maximizes value for the benefit of the Debtor's estate, creditors, and other parties in interest, and (iv) is in the best interests of the Debtor, its estate, and creditors.

L.      The Consideration provided by Caffe Nero pursuant to the APA (i) is fair and adequate, (ii) will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative, including liquidation, and (iii) constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) and otherwise constitutes fair consideration under the Bankruptcy Code and under applicable state law.  The APA was not entered into, and the Asset Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtor under the Bankruptcy Code

or under applicable state law.  Neither the Debtor nor Caffe Nero has entered into the APA or are consummating the Asset Sale with any fraudulent or otherwise improper purpose or intent.

M.      Caffe Nero is a Delaware corporation.  The Debtor has no affiliation or common ownership with Caffe Nero.  Caffe Nero is not a continuation of the Debtor or its estate, and there is no continuity of enterprise between Caffe Nero and the Debtor.  Caffe Nero is not a successor to the Debtor or its estate and the Asset Sale does not amount to a consolidation, merger, or de facto merger of Caffe Nero and the Debtor.  Caffe Nero will not have any successor or transferee liability or liabilities, whether known or unknown and whether asserted or unasserted as of the closing, of the Debtor or any affiliates of the Debtor (whether under federal or state law or otherwise) as a result of the Asset Sale, except as expressly set forth in the APA.

N.      The Debtor did not have a policy in effect on the Petition Date that prohibits the transfer of personally identifiable information and, as a result, consummation of the Sale does not implicate or violate section 363(b) of the Bankruptcy Code.

O.      Good and sufficient reasons for approval of the APA and the transactions to be consummated in connection therewith have been articulated, and the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest. The Debtor has demonstrated compelling circumstances and good, sufficient, and sound business purposes and justifications for the Sale outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, before, and outside of a plan of reorganization, in that, among other things, the immediate consummation of the Sale with Caffe Nero is necessary and appropriate to maximize the value of the Debtor's estate, and the Sale will provide the means for the Debtor to maximize distributions to creditors.

P.      The Sale does not constitute a sub rosa or de facto plan of reorganization or liquidation as it does not propose to (i) impair or restructure existing debt of, or equity interests in, the Debtor, (ii) impair or circumvent voting rights with respect to any plan that may be proposed by the Debtor, (iii) circumvent Chapter 11 safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code, or (iv) classify claims or equity interests or extend debt maturities. Accordingly, the Sale neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating Chapter 11 plan for the Debtor.

Q.      The assumption and assignment of the Assigned Contracts, as set forth in the APA, is integral to the Asset Sale and in the best interest of the Debtor, its estate, creditors, and other parties in interest, and represents the Debtor's reasonable exercise of sound business judgment.  The Cure Amounts set forth in the Cure Notices, or as otherwise ordered by this Court or agreed to by the Debtor and the relevant counterparty, in addition to amounts due for the period from the Petition Date to the Closing Date, are the amounts necessary to cure all monetary defaults and to pay all actual pecuniary losses under the Assigned Contracts under sections 365(b)(1)(A), (B) and 365(f)(2)(A) of the Bankruptcy Code.  No other or further amounts are due or required to be paid in connection with the assumption and assignment of the Assigned Contracts.

R.      Each provision of the Assigned Contracts to be assigned to Caffe Nero that purports to prohibit, restrict or condition, or could be construed as prohibiting, restricting or conditioning, assignment of any Assigned Contracts to be assigned to Caffe Nero or its assignee, or any applicable non-bankruptcy law that purports to prohibit, restrict or condition, or could be construed as prohibiting, restricting or conditioning, assignment of any Assigned Contracts to be

assigned to Caffe Nero or its assignee, has been satisfied or is otherwise unenforceable under Bankruptcy Code section 365 **solely as it relates to the assignment of the Assigned Contracts to Caffe Nero**.

S.      Caffe Nero has demonstrated adequate assurance of future performance with respect to the Assigned Contracts pursuant to section 365(b)(1)(C) of the Bankruptcy Code.

T.      The consummation of the Asset Sale and the assumption and assignment of the Assigned Contracts is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 363(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Asset Sale.  In particular, the Debtor may sell the Purchased Assets free and clear of all liens, claims, encumbrances, interests and defenses (including rights of setoff and recoupment) of any kind or nature whatsoever (except as otherwise expressly provided herein or in the APA) in, on, or related to the Purchased Assets or the Debtor, including, but not limited to, in respect of the following: (i) all Claims as such term is defined in section 101(5) of the Bankruptcy Code; (ii) all mortgages, deeds of trust, and security interests of whatever kind or nature, conditional sales or title retention agreements, security agreements, pledges, hypothecations, mechanics', attorneys', construction and ~~materialmans'~~**materialman's** liens, assignments, contractual restriction, reclamation demands or claims, preferences, debts, easements, charges, suits, licenses, options in favor of third parties, guaranties, warranties, rights of recovery, rights and claims to refunds, redemption claims for non-assigned gift cards and branded loyalty promotional programs, contract claims for reimbursement, judgments, orders and decrees of any court or foreign or domestic governmental entity, tax claims (including, without limitation, claims on account of income taxes, sales and

8

use taxes, property taxes, excise taxes, payroll taxes, consumption taxes, Medicare taxes, employment taxes, or any other tax or impost of any kind, including foreign, state, and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, subleases, rights of way, easements, servitudes, conditional sale or installment contracts, finance leases, off-sets, options, causes of action, collective bargaining agreements, escheat obligations, contract rights and claims, claims for contribution, indemnity, exoneration, infringement, products liability, derivative and vicarious liability, alter-ego, environmental rights and claims, labor rights and claims, employment rights and claims, pension rights and claims, regulatory violations by any governmental entity, or any other claims of any kind or nature against the Debtor or the Purchased Assets, whether arising prior to or subsequent to the commencement of the Chapter 11 Case through Closing, and whether imposed by agreement, understanding, law, equity, or otherwise, known or unknown, contingent or matured, liquidated or unliquidated; (iii) all rights and remedies with respect thereto, including those that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, any restriction of use, charges of interests of any kind or nature, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of any of the Debtor's or Caffe Nero's interests in the Purchased Assets; (iv) any similar rights of any kind or nature in, on, or related to the Debtor or the Purchased Assets, known or unknown, whether prepetition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable, including any and all such liabilities, causes of action, contract rights, and claims arising out of the Debtor's continued operations through the Closing

9

Date; (v) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtor; (vi) any other employee, worker's compensation, occupational disease, unemployment, or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the WARN Act, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (1) any other state or federal benefits or claims relating to any employment with the Debtor or any of their predecessors; (vii) any bulk sales or similar law to the maximum extent permitted by Law; (viii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (ix) any environmental laws, including any Environmental, Health and Safety Requirement(s); and (x) any theories of successor or transferee liability (collectively (i)-(x) the "*Interests*") because in each case, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Any party in interest who did not object, or who withdrew its objection, to the Asset Sale or the Sale Motion is deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Any party with an Interest in the Purchased Assets who did object falls within one or more of the other subsections of section 363(f) of the Bankruptcy Code and is adequately protected by having its Interests, if any, attach to the net cash proceeds of the Asset Sale ultimately attributable to the property with the same validity, enforceability, priority, and

force and effect as it had against the Purchased Assets or applicable Purchased Asset, or proceeds therefrom, as of the Petition Date.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Sale Motion is GRANTED as set forth herein.

2.      The Sale contemplated by the APA is hereby approved as set forth herein.

3.      All Post-Auction Objections, Sale Objections, Adequate Assurance Objections, and Contract Objections, and all other objections to the Sale Motion, that have not been withdrawn, waived, or settled are hereby OVERRULED on the merits, with prejudice, subject to the conditions and protections to certain creditors as expressly provided herein or in the APA.

4.      Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Debtor is immediately authorized and empowered to sell and transfer all of the Debtor's right, title and interest in and to the Purchased Assets to Caffe Nero in accordance with the APA (including any ancillary documents), and such sale and transfer shall (i) constitute a legal, valid, binding, and effective transfer of the Purchased Assets, (ii) subject to any terms of the APA, including any applicable conditions precedent, upon the Debtor's receipt of the Cash Consideration, vest Caffe Nero (or any permitted assignee) with all right, title and interest of the Debtor to the Purchased Assets free and clear of all Interests in, on and related to the Purchased Assets pursuant to section 363(f) of the Bankruptcy Code (except as otherwise provided herein or in the APA), and (iii) constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and applicable state law.

5.      The Debtor is authorized and empowered to execute the APA and any documents contemplated thereby and to effectuate the transactions and transfers contemplated thereunder subject to the terms thereof (as modified by this Sale Order).

6.     The consummation of Asset Sale in accordance with the APA (the "***Closing***") shall occur subject to, and following, the entry of this Sale Order and the satisfaction of any conditions precedent as set forth in the APA.  Upon Closing, Caffe Nero ~~(or any permitted assignee)~~ shall hold title to the Purchased Assets free and clear of all Interests existing immediately prior thereto (except as otherwise provided herein or in the APA) without the need for any release of lien or termination of any UCC financing statement, and this Sale Order alone shall be sufficient to evidence the same.  A copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder of any state, county, or local authority to act to cancel any of the Interests of record.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

7.     Except as ~~otherwise provided~~**expressly set forth herein or** in the APA, on and after the Closing, all persons or entities, including but not limited to, all debt security holders, equity security holders, lien holders, governmental agencies, taxing entities, regulatory authorities, lenders, tort claimants, litigants, trade creditors, warehousemen, laborers, construction claimants, attorneys, materialmen, municipalities, and other creditors holding Interests of any kind and nature whatsoever against the Debtor or the Purchased Assets shall be and hereby are forever barred, estopped, and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing in any manner any action, claim, or other proceeding of any kind, directly or indirectly, against Caffe Nero, its permitted successors or assigns, or the Purchased Assets, including any action, claim, or other proceeding seeking to prevent or interfere with the consummation of the Asset Sale, with the retrieval by Caffe Nero or

12

the delivery to Caffe Nero of possession of the Purchased Assets, or with any access to or any use, benefit, or enjoyment of the Purchased Assets by Caffe Nero (or any permitted assignee).

8.      Except as expressly set forth herein or in the APA, following the Closing, no holder of an Interest in or against the Debtor or the Purchased Assets shall interfere with Caffe Nero's title to or use and enjoyment of the Purchased Assets based on or related to such Interest.

9.      Except as expressly set forth herein or in the APA, Caffe Nero shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Purchased Assets, and in no event shall Caffe Nero have any liability or responsibility for any liabilities of the Debtor.  Without limiting the effect or scope of the foregoing, the transfer of the Purchased Assets from the Debtor to Caffe Nero does not and will not subject either Caffe Nero or its affiliates, successors or assigns to any liability for Interests in or claims (as that term is defined in section 101(5) of the Bankruptcy Code) against the Debtor or the Purchased Assets by reason of such transfer under the laws of the United States or any state, territory or possession thereof applicable to such transactions.  Neither Caffe Nero nor its affiliates, successors, or assigns shall be deemed, as a result of actions taken in connection with the purchase of the Purchased Assets: (a) to be a successor to the Debtor or (b) to be a continuation or substantial continuation of the Debtor or any enterprise of the Debtor under any theory of successor liability or similar liability theory.  By virtue of the consummation of the transactions contemplated under the APA, (i) Caffe Nero is not a continuation of the Debtor or its estate, there is not substantial continuity between Caffe Nero and the Debtor, and there is no continuity of enterprise between the Debtor and Caffe Nero; (ii) Caffe Nero is not holding itself out to the public as a continuation of the Debtor or its estate; (iii) the transactions do not amount to a consolidation, merger, or de facto merger of Caffe Nero and the Debtor and/or the Debtor's

estate; and (iv) Caffe Nero is not a successor or assignee of the Debtor or its estate for any

purpose, including, without limitation, under any federal, state, or local statute or common law,

or revenue, pension, ERISA, tax, labor, employment, environmental, escheat, or unclaimed

property laws, or other law, rule, or regulation (including, without limitation, filing requirements

under any such law, rule, or regulation), or under any products liability law or doctrine with

respect to the Debtor's liability under such law, rule, regulation, doctrine, or common law, or

under any product warranty liability law or doctrine with respect to the Debtor's liability under

such law, rule, regulation, or doctrine, and Caffe Nero shall have no liability or obligation under

the Workers Adjustment and Retraining Act (the "WARN Act"), 929 U.S.C. §§ 210 et seq., or

the Comprehensive Environmental Response Compensation and Liability Act and shall not be

deemed to be a "successor employer" for purposes of the Internal Revenue Code of 1986, Title

VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act,

the Americans with Disability Act, the Family Medical Leave Act, the National Labor Relations

Act, the Labor Management Relations Act, the Older Workers Benefit Protection Act, the Equal

Pay Act, the Civil Rights Act of 1866 (42 U.S.C. 1981), the Employee Retirement Income

Security Act, the Multiemployer Pension Protection Act, the Pension Protection Act, and/or the

Fair Labor Standards Act. Accordingly, Caffe Nero is not and shall not be deemed a successor to

the Debtor or its estate as a result of the consummation of the Sale pursuant to the APA and this

Sale Order. Except for the Assumed Liabilities, (i) the transfer of the Purchased Assets to Caffe

Nero and (ii) the assumption and assignment to Caffe Nero of the Assigned Contracts does not

and will not subject Caffe Nero to any liability whatsoever with respect to the operation of the

Debtor's business before the Closing Date or by reason of such transfer under the laws of the

United States, any state, territory, or possession thereof, or the District of Columbia, based on, in

14

whole or in part, directly or indirectly, any theory of law or equity, including, without limitation, any theory of antitrust or successor or transferee liability.

10.     Upon Closing, any and all Interests in the Purchased Assets existing immediately prior to the transfer thereof, shall attach to the proceeds of the Sale with the same validity, extent, enforceability, priority, and force and effect as they had against the Purchased Assets or their proceeds as of the Petition Date, subject to any rights, claims and defenses the Debtor or any other party in interest may possess with respect thereto.  All holders of Interests in or on the Purchased Assets are adequately protected by having their Interests attach to the proceeds of the Sale.

11.     The reversal or modification of the authorization provided herein to consummate the Asset Sale shall not affect the validity of the Asset Sale.  Caffe Nero has entered into the APA in good faith and is a purchaser in good faith of the Purchased Assets as that term is used in section 363(m) of the Bankruptcy Code, and, upon the occurrence of the Closing, Caffe Nero shall have all of the protections afforded by section 363(m) of the Bankruptcy Code, provided that all Interests in the Purchased Assets existing immediately prior to the transfer thereof, shall attach to the proceeds of the Sale as stated in the preceding paragraph.

12.     The Debtor and its officers, directors, employees, managers, members, and agents are authorized to execute and deliver and are empowered to perform under, consummate, and implement the transactions contemplated by the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the transactions contemplated by the APA, and to take all further actions as may be reasonably requested by Caffe Nero or otherwise required under the APA without further order of this Court.

13.    The terms of this Sale Order shall be binding in all respects upon the Debtor, its estate, all creditors of, and holders of equity interests in the Debtor, any holders of encumbrances or other Interests in, against, or on any portion of the Purchased Assets or the Debtor (whether known or unknown), Caffe Nero, and any trustees, receivers or examiners, if any, that are subsequently appointed in this Chapter 11 case or upon a conversion of this Chapter 11 case to Chapter 7 under the Bankruptcy Code and any successors and assigns of such parties**.** This Sale Order and the APA shall inure to the benefit of the Debtor and its estate, Caffe Nero, and, all creditors, the Committee, and all other parties in interest, and any successors and assigns of such parties including, but not limited to, any trustee or examiner appointed in this Chapter 11 case or upon the conversion of this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code. Subject in all respects to the Debtor's rights under the APA, neither the APA nor its affiliated documents shall be subject to rejection, avoidance or unwinding by the Debtor, its estate, its creditors, equity holders, or any trustees, examiners, or receivers.

**14.    Prior to or in connection with Closing, the Debtor shall timely pay all Lease obligations in full to the applicable landlord pursuant to section 365(d)(3) of the Bankruptcy Code.**

**15.**    ~~14.~~Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing **and payment of the Cure Amounts to the applicable counterparty to an Assigned Contract**, the Debtor's assumption and assignment to Caffe Nero (or any permitted assignee), and Caffe Nero's assumption on the terms set forth in the APA, of the Assigned Contracts is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied. Upon the Closing and the assignment of the Assigned Contracts, the Debtor shall be fully and finally released from (i) any

claim, cause of action, or other liability under the Assigned Contracts, and (ii) all obligations arising under the Assigned Contracts.

**16.**    ~~15.~~ The Debtor is hereby authorized and empowered in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to Caffe Nero (or any permitted assignee), effective upon the Closing, the Assigned Contracts, and (b) execute and deliver to Caffe Nero (or any permitted assignee) such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts.

**17.**    ~~16.~~ The Assigned Contracts shall be assigned and transferred to, and remain in full force and effect for the benefit of, Caffe Nero (or any permitted assignee) in accordance with their respective terms, notwithstanding any provision in any such contract that prohibits, restricts, or conditions such assignment or transfer pursuant to section 365 of the Bankruptcy Code.

**18.**    **For the avoidance of doubt and notwithstanding anything to the contrary in this Sale Order or the APA, (i) the Debtor shall remain bound by applicable indemnification provisions in the Assigned Contracts for claims arising prior to the Closing Date, and (ii) Caffe Nero shall be bound by such applicable indemnification provisions in the Assigned Contracts from the Closing Date forward.  In addition, for the avoidance of doubt, all post-petition obligations (monetary and nonmonetary) arising under each Assigned Contract that is a nonresidential real property lease shall be performed timely and in full by Caffe Nero.**

**19.**    **Notwithstanding anything to the contrary contained herein, with respect to the non-residential real property lease (the "*Wilson Blvd. Lease*") between the Debtor and CoStar Central Place HQ, LLC (the "*Wilson Blvd. Landlord*") for the premises located at**

**1201 Wilson Blvd., Arlington, VA (the "*Wilson Blvd. Location*"), the hearing with respect to the Wilson Blvd. Landlord's objection to the Debtor's proposed Cure Amount [Docket No. 161] (the "*Wilson Blvd. Cure Objection*") has been adjourned to March 5, 2026, at 9:00 a.m. (ET).  The findings of fact and conclusions of law contained herein with respect to cure of the Assigned Contracts shall not be applicable to the Wilson Blvd. Lease or Wilson Blvd. Landlord unless and until there is a further order of the Court with respect to the Wilson Blvd. Cure Objection.  If the Debtor proceeds with the Closing before a resolution or adjudication of the Wilson Blvd. Cure Objection and determines to assume and assign the Wilson Blvd. Lease to Caffe Nero at that time, then the disputed portion of the Cure Amount with respect to the Wilson Blvd. Lease shall be reserved until such time as the cure dispute is resolved by agreement of the parties or an order of this Court.**

20.    ~~17.~~Solely to the extent applicable, upon the Closing, the Debtor shall pay the Cure Amounts for the Assigned Contracts, as set forth in the applicable Cure Notice or as otherwise agreed between the Debtor and the relevant Assigned Contract counterparty or ordered by this Court, as well as all amounts due and owing from the Petition Date through the Closing Date, and upon making such payment, all defaults or other obligations of the Debtor under the Assigned Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code), whether monetary or non-monetary, shall be deemed cured pursuant to section 365 of the Bankruptcy Code.  The Debtor shall have no further monetary obligation under the Assigned Contracts other than payment of the amounts set forth in this paragraph.  **For the avoidance of doubt and notwithstanding anything to the contrary in this Order, Caffe Nero shall be responsible for the payment, when billed in accordance with the terms of the**

18

**Assigned Contracts, of accrued charges under the Assigned Contracts, including, without limitation, year-end adjustment and reconciliation amounts for taxes, common area maintenance charges, utilities, insurance, and other charges, including quarterly utility payments, that accrued prior the Closing Date but are not yet due or subject to further adjustment or reconciliation as of the Closing Date, subject to the right of Caffe Nero to challenge or audit such obligations.**

21. ~~18.~~ The transfers contemplated by the APA and this Sale Order will generate proceeds for the benefit of the Debtor's estate and which may be distributed to creditors pursuant to a chapter 11 plan. Therefore, the execution, delivery, and/or recordation of any and all documents or instruments necessary or desirable to consummate the Asset Sale, are exempt from any and all document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing, or recording fee, regulatory filing or fee, or other similar tax, fee, or governmental assessment incurred or assessed by any federal, state, local, or foreign taxing authority (including interest and penalties, if any) to the maximum extent permitted by law.

22. ~~19.~~ The terms and provisions of this Sale Order and the terms and provisions of the APA and any actions taken pursuant hereto or thereto as of the date of the entry of this Sale Order shall survive the entry of any order that may be entered, including, without limitation, converting this Chapter 11 Case from Chapter 11 to Chapter 7 or dismissing the Chapter 11 Case, and the terms and provisions of the APA as well as the rights and interests granted pursuant to this Sale Order and the APA shall continue in these or any superseding cases and shall be binding

23.   20. No bulk transfer law or similar law of any state or other jurisdiction shall apply in any way to Caffe Nero and/or the transactions with the Debtor that are approved by this Sale Order, including, without limitation, the APA and the Sale.

24.   21. No governmental unit (as defined in section 101(27) of the Bankruptcy Code) or any representative thereof may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Purchased Assets on account of the filing or pendency of this Chapter 11 Case or the consummation of the Sale to the extent that any such action by a governmental unit or any representative thereof would violate section 525 of the Bankruptcy Code.

25.   22. To the greatest extent available under applicable law, Caffe Nero (or any permitted assignee) shall be authorized, as of the Closing Date, to operate under any Assumed Permit, and all such Assumed Permits are deemed to have been transferred by the Debtor to Caffe Nero as of the Closing Date.

26.   23. The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

27.   24. The failure specifically to include any particular provisions of the APA in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA be authorized and approved in its entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the APA (including all ancillary documents executed in connection therewith) and this Sale Order.; provided that, to the extent that Caffe Nero and any counterparty to an unexpired lease enter into a separate written agreement with respect to the foregoing, such agreement shall govern with respect to the rights and obligations of Caffe Nero and such counterparty.

**28.**  ~~25.~~ In accordance with the Bidding Procedures, the Debtor has designated Next Gen Coffee Enterprises, LLC ("***Next Gen***"), whose Bid included a proposed cash payment of $4,750,000, as the Back-Up Bidder, and such Back-Up Bidder shall, subject to the terms and conditions set forth in that certain Asset Purchase Agreement, dated as of February 12, 2026, submitted by NextGen with its Bid, keep its Bid open and irrevocable until the earlier to occur of (i) thirty (30) days after the Sale Hearing, and (ii) the Closing on the Successful Bid with Caffe Nero.  If Caffe Nero, as the Successful Bidder, fails to consummate the Asset Sale, Next Gen, as the Back-Up Bidder, will be deemed to be the new Successful Bidder, the Debtor shall be authorized to consummate the Sale with Next Gen without further order of the Court, and all findings and conclusions set forth in this Sale Order applicable to Caffe Nero as Successful Bidder and the Sale of the Purchased Assets to Caffe Nero shall apply with equal force to Next Gen as the new Successful Bidder and the Sale of assets to Next Gen.  Notwithstanding the foregoing, to the extent that the Debtor fails to close the Sale with Caffe Nero, for any reason, and the Debtor determines instead to pursue the sale to Next Gen, as the Back-Up Bidder, then the Debtor shall file a notice on the docket stating that the Sale did not close and that the Debtor will pursue a closing with Next Gen pursuant to their Asset Purchase Agreement, and all counterparties to any assigned contracts pursuant to that Asset Purchase Agreement shall have seven (7) days from the date of the filing of such notice to object solely on the basis of adequate assurance of future performance with respect to Next Gen.  **Already filed objections to the adequate assurance of future performance of Next Gen shall be deemed timely filed and those objecting parties shall have no obligation to file an additional objection.**  To the extent that the parties cannot resolve any such objections, the Court shall retain jurisdiction to determine and resolve any such objections.

**29.** ~~26.~~ The Debtor is authorized and directed to refund Next Gen's Good Faith Deposit on the date of Closing of the Sale of Purchased Assets to Caffe Nero.

**30.** ~~27.~~ The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order, the APA, all amendments thereto, and any waivers and consents thereunder, and any agreement set forth on the record at the Sale Hearing or embodied in this Sale Order, and each ancillary document executed in connection with any of the foregoing to which the Debtor is a party or which has been assigned by the Debtor to Caffe Nero, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Asset Sale; provided, however, that in the event the Court abstains from exercising or declines to exercise jurisdiction or is without jurisdiction, such abstention, refusal or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

**31.** ~~28.~~ Debtor's counsel is directed to serve a copy of this Sale Order on the parties which were provided notice pursuant to the Sale Motion and file a proof of service within three (3) days after entry of this Sale Order.

*[Endorsement Page Follows]*

WE ASK FOR THIS:

/s/
_____

Tyler P. Brown (admitted *pro hac vice*)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (admitted *pro hac vice*)
**HUNTON ANDREWS KURTH LLP**
951 E. Byrd Street
Richmond, Virginia 23219
Telephone:      (804) 788-8200
Facsimile:      (804) 788-8218
Email:          tpbrown@hunton.com
                jwuebker@hunton.com
                nmonico@hunton.com

*Counsel for the Debtor and Debtor in Possession*

23

## Exhibit 1

**Asset Purchase Agreement**