**HUNTON ANDREWS KURTH LLP**
Tyler P. Brown (admitted *pro hac vice*)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (admitted *pro hac vice*)
951 E. Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200

*Counsel for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **Compass Coffee, LLC,** | |
| **Debtor.** | **Case No. 26-00005 (ELG)** |

**NOTICE OF FILING FORM ASSET PURCHASE AGREEMENT
FOR THE REMAINING ASSETS AND NOTICE OF DISCLOSURES
RELATED TO INTERESTED PURCHASER OF THE REMAINING ASSETS**

**PLEASE TAKE NOTICE** that on March 12, 2026, the above-captioned debtor and debtor-in-possession (the "***Debtor***") filed the *Debtor's Motion for Entry of an Order Authorizing the Debtor to Sell the Simple Syrup Business Line Assets and the Remaining IP Assets Free and Clear of All Liens, Claims, and Encumbrances* [Docket No. 264] (the "***Sale Motion***").[1]

**PLEASE TAKE FURTHER NOTICE** that the Debtor, with the assistance of its advisors, has prepared the form Asset Purchase Agreement attached hereto as Exhibit A to aid any interested purchasers in formulating a "bid" for the Remaining Assets that are the subject of the Sale Motion.

**PLEASE TAKE FURTHER NOTICE** that the Debtor requests that any party interested in purchasing the Remaining Assets complete and submit to counsel for the Debtor the form Asset Purchase Agreement, including the Purchase Price and the Acquired Assets to be sold.

---

[1] Capitalized terms used but not defined herein shall have the meaning set forth in the Sale Motion.

**PLEASE TAKE FURTHER NOTICE** that, as set forth in the Sale Motion, the Debtor

has received an offer to purchase the Remaining Assets from Union Kitchen, LLC ("*Union*

*Kitchen*").   Pursuant to Local Rule 6004(a)(4), the Debtor hereby discloses the following

relationships between Union Kitchen, the Debtor, and other parties in interest:

- The Debtor owns a 1.5% equity interest in Union Kitchen
- Michael Haft owns a 0.52% equity interest in Union Kitchen and previously served on the board of Union Kitchen (resigned in 2024)
- Family members of Michael Haft are investors in entities, including Octa LLC, that also own minority equity interests in Union Kitchen.

**PLEASE TAKE FURTHER NOTICE** that the Debtor intends to seek approval of the

Sale Motion and the sale of the Remaining Assets to one or more purchasers at a hearing scheduled

before the Court on March 26, 2026, at 11:00 a.m. (ET).


Dated: March 19, 2026
Richmond, Virginia

Respectfully submitted,

/s/ *Jennifer E. Wuebker*

Tyler P. Brown (admitted *pro hac vice*)
Jennifer E. Wuebker (D.C. Bar No. 1035039)
Nicholas S. Monico (admitted *pro hac vice*)
**HUNTON ANDREWS KURTH LLP**
951 E. Byrd Street
Richmond, Virginia 23219
Telephone:    (804) 788-8200
Facsimile:    (804) 788-8218
Email:        tpbrown@hunton.com
              jwuebker@hunton.com
              nmonico@hunton.com

*Counsel for the Debtor and Debtor in Possession*

2

## <u>Exhibit A</u>

**Form Asset Purchase Agreement**

**Draft – Subject to Change**

---

**ASSET PURCHASE AGREEMENT**

**by and between**

**COMPASS COFFEE, LLC,**

**as Seller,**

**and**

**[_____],**

**as Buyer,**

**March [__], 2026**

---

**Table of Contents**

**Page(s)**

ARTICLE I DEFINITIONS .................................................................................................................1

ARTICLE II PURCHASE AND SALE.................................................................................................3

    Section 2.1.    Purchase and Sale of Acquired Assets ................................................ 3
    Section 2.2.    Purchase Price................................................................................. 4
    Section 2.3.    Closing ........................................................................................... 4
    Section 2.4.    Deliveries at Closing....................................................................... 4

ARTICLE III SELLER'S REPRESENTATIONS AND WARRANTIES..................................................4

    Section 3.1.    Organization of Seller; Good Standing.............................................. 4
    Section 3.2.    Authorization of Transaction ........................................................... 4
    Section 3.3.    Title to Acquired Assets .................................................................. 4

ARTICLE IV BUYER'S REPRESENTATIONS AND WARRANTIES...................................................5

    Section 4.1.    Organization of Buyer..................................................................... 5
    Section 4.2.    Authorization of Transaction ........................................................... 5
    Section 4.3.    Good Faith Purchaser...................................................................... 5
    Section 4.4.    Financial Capacity .......................................................................... 5
    Section 4.5.    Condition of Assets ......................................................................... 5

ARTICLE V OTHER COVENANTS. .................................................................................................5

    Section 5.1.    Cooperation.................................................................................... 5
    Section 5.2.    Further Assurances ......................................................................... 5

ARTICLE VI CONDITIONS TO CLOSING ........................................................................................5

    Section 6.1.    Conditions to Buyer's Obligations.................................................... 5
    Section 6.2.    Conditions to Seller's Obligations ................................................... 6
    Section 6.3.    Investigation .................................................................................. 6

ARTICLE VII TERMINATION .........................................................................................................6

    Section 7.1.    Termination of Agreement ............................................................... 6
    Section 7.2.    Procedure Upon Termination........................................................... 7
    Section 7.3.    Effect of Termination. ..................................................................... 7

ARTICLE VIII MISCELLANEOUS....................................................................................................7

    Section 8.1.    Expenses ........................................................................................ 7
    Section 8.2.    Entire Agreement ........................................................................... 7
    Section 8.3.    Incorporation of Schedules, Exhibits and Disclosure Schedule ........... 7
    Section 8.4.    Notices .......................................................................................... 7
    Section 8.5.    Governing Law; Jurisdiction ........................................................... 8
    Section 8.6.    WAIVER OF JURY TRIAL ............................................................. 8

i

Section 8.7.    Severability ........................................................................................................ 8
Section 8.8.    No Third Party Beneficiaries .................................................................................. 8
Section 8.9.    Mutual Drafting ................................................................................................... 9
Section 8.10.   Headings; Table of Contents .................................................................................. 9
Section 8.11.   Counterparts; Facsimile and Email Signatures ....................................................... 9
Section 8.12.   Solicitation of Competitive Bids ............................................................................. 9

ii

**ASSET PURCHASE AGREEMENT**

This ASSET PURCHASE AGREEMENT (this "Agreement") is entered into as of March [___], 2026 (the "Execution Date"), by and between Compass Coffee, LLC, a Delaware limited liability company ("Seller") and [_____] a [_____] ("Buyer"). Buyer and Seller may be referred to herein each as a "Party" or collectively as the "Parties".

WHEREAS, Seller is a debtor and debtor-in-possession under title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended (the "Bankruptcy Code"), proceeding under the case *In re Compass Coffee, LLC*, Case No. 26-00005 (ELG) (the "Chapter 11 Case") in the United States Bankruptcy Court for the District of Columbia  (the "Bankruptcy Court");

WHEREAS, Seller desires to sell, transfer and assign to Buyer, and Buyer wishes to purchase, acquire and assume from Seller, pursuant to Sections 105 and 363, and other applicable provisions, of the Bankruptcy Code, the Acquired Assets as of the Closing;

WHEREAS, on March 12, 2026, Seller filed its *Debtor's Motion for Entry of an Order Authorizing the Debtor to Sell the Simple Syrup Business Line Assets and Remaining IP Assets Free and Clear of all Liens, Claims, and Encumbrances* [Docket No. 264], the "Sale Motion"), which seeks authority to sell the Acquired Assets to Seller, or to another purchaser in the event Buyer receives a higher and better offer.

NOW, THEREFORE, in consideration of the mutual promises herein, and in consideration of the representations, warranties and covenants herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, the Parties agree as follows:

**ARTICLE I**
**DEFINITIONS**

"Acquired Assets" has the meaning set forth in Section 2.1.

"Agreement" has the meaning set forth in the preamble.

"Bankruptcy Code" has the meaning set forth in the recitals.

"Bankruptcy Court" has the meaning set forth in the recitals.

"Bill of Sale" has the meaning set forth in Section 2.4(a)(i).

"Business Day" means any day other than a Saturday, a Sunday and any day that is a legal holiday or a day on which banks located in New York, New York shall be authorized or required by Law or other government action to close.

"Buyer" has the meaning set forth in the preamble.

"Chapter 11 Case" has the meaning set forth in the recitals.

"Closing" has the meaning set forth in Section 2.3.

"Closing Date" has the meaning set forth in Section 2.3.

"Decree" means any legally binding judgment, decree, ruling, decision, opinion, injunction, assessment, attachment, undertaking, award, charge, writ, executive order, judicial order, administrative order or any other order of any Governmental Entity.

"Final Order" means an Order, judgment or other Decree of the Bankruptcy Court that has not been vacated, reversed, modified, amended, enjoined, set aside, annulled, suspended or stayed, and for which the time to further appeal or seek review or rehearing has expired with no appeal, review or rehearing having been filed or sought.

"GAAP" means United States generally accepted accounting principles.

"Governmental Entity" means any court, tribunal, arbitrator, authority, agency, commission, bureau, board, department, official, body or other instrumentality of the United States, any foreign country, or any domestic or foreign state, province, county, city, other political subdivision or any other similar body or organization exercising governmental or quasi- governmental power or authority.

"Indebtedness" of any Person means, without duplication, (a) the principal of, interest on, and premium (if any) in respect of (i) indebtedness of such Person for money borrowed and (ii) indebtedness evidenced by notes, debentures, bonds or other similar instruments for the payment of which such Person is responsible or liable, (b) all obligations of such Person issued or assumed as the deferred purchase price of property, all conditional sale obligations of such Person and all obligations of such Person under any title retention agreement (but excluding trade accounts payable for goods and services and other accrued current liabilities arising in the Ordinary Course of Business), (c) all obligations of such Person under leases required to be capitalized in accordance with GAAP, (d) all obligations of such Person for the reimbursement of any obligor on any letter of credit, banker's acceptance or similar credit transaction, (e) the liquidation value of all redeemable preferred stock of such Person, (f) all obligations of the type referred to in clauses (a) through (e) of any Persons for the payment of which such Person is responsible or liable, directly or indirectly, as obligor, guarantor, surety or otherwise, including guarantees of such obligations, and (g) all obligations of the type referred to in clauses (a) through (f) of other Persons secured by any lien on any property or asset of such Person (whether or not such obligation is assumed by such Person).

"Intellectual Property" means, collectively, in the United States and all countries or jurisdictions foreign thereto, (a) all Trademarks and all applications, registrations, and renewals in connection therewith, (b) all internet domain names, and (c) goodwill related to all of the foregoing.

"Intellectual Property Assignment Agreement" has the meaning set forth in Section 2.4(a)(ii).

"IRC" means the United States Internal Revenue Code of 1986, as amended.

"Law" means any federal, state, provincial, local, municipal, foreign or other law, statute, legislation, constitution, principle of common law, resolution, ordinance (including with respect to zoning or other land use matters), code, treaty, convention, rule, regulation, requirement, edict, directive, pronouncement, determination, proclamation, order or Decree of any Governmental Entity.

"Liabilities" means any Indebtedness, liabilities, demands, deferred revenue, commitments or obligations of any nature whatsoever, whether accrued or unaccrued, absolute or contingent, direct or indirect, asserted or unasserted, fixed or unfixed, known or unknown, choate or inchoate, perfected or unperfected, liquidated or unliquidated, secured or unsecured, or otherwise, whether due or to become due, whether arising out of any Contract or tort and whether or not the same would be required by GAAP to be stated in financial statements or disclosed in the notes thereto.

2

"Lien" means any mortgage, deed of trust, hypothecation, contractual restriction, pledge, lien (including but not limited to any mechanics liens, attorneys liens and construction liens), encumbrance, interest, reclamation demand or claim, charge, security interest (including but not limited to any purchase money security interest), put, call, other option, right of first refusal, right of first offer, servitude, right of way, easement, conditional sale or installment contract, finance lease involving substantially the same effect, reclamation claim, security agreement or other encumbrance or restriction on the use, transfer or ownership of any property of any type, and the meaning ascribed to the term "lien" in the Bankruptcy Code.

"Parties" has the meaning set forth in the preamble.

"Person" means an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization or any other entity, including any Governmental Entity or any group or syndicate of any of the foregoing.

"Purchase Price" has the meaning set forth in Section 2.2.

"Sale Motion" has the meaning set forth in the recitals.

"Sale Order" means an order of the Bankruptcy Court approving the Sale Motion entered in the Chapter 11 Case approving this Agreement pursuant to 11 U.S.C. 363 and conveying all Acquired Assets free and clear of all liens, claims and encumbrances to Buyer.

"Simple Syrups Business" means Seller's prior business of manufacturing and/or bottling simple syrups and related products.

"Simple Syrups Inventory" means all of Seller's now owned and hereafter acquired raw materials, commodities and work-in-process therefor, and all of Seller's tangible property used in the operation of the Simple Syrups Business or that are otherwise included in the Acquired Assets and are permitted to be sold and transferred under applicable Law.

"Seller" has the meaning set forth in the preamble.

"Trademarks" means, in the United States and all countries and jurisdictions foreign thereto, registered trademarks, registered service marks, trademark and service mark applications, unregistered trademarks and service marks, registered trade names and unregistered trade names, corporate names, fictitious names, registered trade dress and unregistered trade dress, logos, slogans, Internet domain names, rights in telephone numbers, and other indicia of source, origin, endorsement, sponsorship or certification, together with all translations, adaptations, derivations, combinations and renewals thereof.

**ARTICLE II**
**PURCHASE AND SALE**

**Section 2.1.    Purchase and Sale of Acquired Assets**. Pursuant to sections 105 and 363 of the Bankruptcy Code, on the terms and subject to the conditions set forth in this Agreement, at the Closing, Buyer shall purchase and acquire from Seller, and Seller shall sell, transfer, assign, and convey to Buyer, all of Seller's right, title, and interest in and to the "Acquired Assets" as follows:

(a)    the items of equipment ("Equipment"), machinery, supplies, furniture and furnishings and Simple Syrups Inventory specifically set forth on Schedule 2.1(a); and

(b)      the Intellectual Property owned by Seller and all of Seller's rights to use other Intellectual Property specifically set forth on Schedule 2.1(b).

**Section 2.2.      Purchase Price**.  In consideration of the sale of the Acquired Assets to Buyer, and upon the terms and subject to the conditions set forth herein, Buyer shall pay to Seller the sum of $[_____] (the "Purchase Price") in immediately available funds on the Closing Date.

**Section 2.3.      Closing**. The closing (the "Closing") shall take place remotely by electronic exchange of counterpart signature pages commencing on the date (the "Closing Date") that is the first Business Day after the conditions to the obligations of Seller and Buyer set forth in Article VII (other than conditions with respect to actions Seller and/or Buyer will take at the Closing itself, but subject to the satisfaction or waiver of those conditions at the Closing) have been satisfied or waived, or at such other time or on such other date as shall be mutually agreed upon by Seller and Buyer prior thereto.

**Section 2.4.      Deliveries at Closing**.

(a)      At the Closing, Seller shall deliver or cause to be delivered to Buyer the following documents and other items, duly executed by Seller, as applicable:

(i)      a Bill of Sale substantially in the form   Exhibit A  attached hereto (the "Bill of Sale");

(ii)      an Intellectual Property Assignment Agreement substantially in the form of Exhibit B attached hereto (the "Intellectual Property Assignment Agreement"); and

(iii)      a copy of the Sale Order entered on the docket of the Chapter 11 Case;

(b)      At the Closing, Buyer shall deliver to Seller, the following documents, cash amounts and other items, duly executed by Buyer, as applicable:

(i)      the Purchase Price.

**ARTICLE III**
**SELLER'S REPRESENTATIONS AND WARRANTIES.**

Seller represents and warrants to Buyer as follows as of the Closing Date:

**Section 3.1.      Organization of Seller; Good Standing.**  Seller is a limited liability company duly organized, validly existing and in good standing under the Laws of the State of Delaware.

**Section 3.2.      Authorization of Transaction.** Subject to the Sale Order having been entered and still being in effect and not subject to any stay pending appeal, Seller has all requisite limited liability power and authority to execute and deliver this Agreement and to perform its obligations hereunder and thereunder; the execution, delivery and performance of this Agreement has been duly authorized by Seller and no other corporate action on the part of Seller is necessary to authorize this Agreement.

**Section 3.3.      Title to Acquired Assets.** Seller has good and valid title to the Acquired Assets, free and clear of all Liens, subject to entry of the Sale Order. At the Closing, Seller will convey good and valid title to the Acquired Assets, to the fullest extent permissible under the Bankruptcy Code.

4

## ARTICLE IV
## BUYER'S REPRESENTATIONS AND WARRANTIES

Buyer represents and warrants to Seller as follows:

**Section 4.1.    Organization of Buyer.** Buyer is a [_____] duly incorporated, validly existing and in good standing under the Laws of the State of [_____].

**Section 4.2.    Authorization of Transaction.** Seller has full corporate power and authority to execute and deliver this Agreement and to perform its obligations hereunder and thereunder.

**Section 4.3.    Good Faith Purchaser.** Buyer is a "good faith" purchaser, as such term is used in the Bankruptcy Code and the court decisions thereunder.

**Section 4.4.    Financial Capacity.** Buyer (a) has, and at all time through the Closing will have, the resources (including sufficient funds available to pay the Purchase Price and any other expenses and payments incurred by Buyer) and capabilities (financial or otherwise) to perform its obligations hereunder, and (b) will not have incurred any obligation, commitment, restriction or Liability of any kind, that would impair or adversely affect such resources and capabilities.

**Section 4.5.    Condition of Assets.** Buyer hereby acknowledges and agrees that notwithstanding anything expressed or implied herein to the contrary, Buyer will accept the Acquired Assets and assume the Assumed Liabilities at the Closing "AS IS," "WHERE IS" AND "WITH ALL FAULTS."

## ARTICLE V
## OTHER COVENANTS.

The Parties agree as follows with respect to the period from and after the Closing:

**Section 5.1.    Cooperation.** Each of the Parties shall cooperate with each other to consummate the transactions provided for in this Agreement.

**Section 5.2.    Further Assurances.** In case at any time from and after the Closing any further action is necessary or reasonably required to carry out the purposes of this Agreement, subject to the terms and conditions of this Agreement and the terms and conditions of the Sale Order, at any Party's request and sole cost and expense, each Party shall take such further action (including the execution and delivery to any other Party of such other reasonable instruments of sale, transfer, conveyance, assignment, assumption and confirmation and providing materials and information) as another Party may reasonably request as shall be necessary to transfer, convey and assign to Buyer all of the Acquired Assets.

## ARTICLE VI
## CONDITIONS TO CLOSING

**Section 6.1.    Conditions to Buyer's Obligations**. Subject to Section 7.3, Buyer's obligation to close is subject to satisfaction or express written waiver by Buyer of each of the following conditions:

(a)    each of the representations or warranties of Seller set forth in Article III shall be true and correct in all material respects;

(b)    at the Closing, Seller shall have caused the documents and instruments required by Section 2.8(a) (Deliveries at Closing) to be delivered to Buyer (or tendered subject only to Closing);

5

(c)  no Governmental Entity of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any Decree that is in effect and that has the effect of making the Closing illegal or otherwise prohibiting the consummation of the Closing; and

(d)  the Sale Order, in a manner acceptable to Buyer, shall have become a Final Order (unless this condition has been waived in writing by Buyer).

**Section 6.2.**  **Conditions to Seller's Obligations**. Subject to Section 7.3, Seller's obligation to close is subject to satisfaction or waiver by Seller of the following conditions:

(a)  each of the representations or warranties of Buyer set forth in Article III shall be true and correct in all material respects;

(b)  Buyer shall have caused the documents, instruments and payments required by Section 2.8(b) to be delivered to Seller (or tendered subject only to Closing);

(c)  no Governmental Entity of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any Decree that is in effect and that has the effect of making the Closing illegal or otherwise prohibiting the consummation of the Closing; and

(d)  the Sale Order shall have become a Final Order (unless waived by Buyer)

**Section 6.3.**  **Investigation**. Buyer shall not be entitled to rely on the failure of any representation or warranty to be true and correct as of the Closing as a basis to refuse to consummate the Closing or to claim the failure of any closing condition to the extent such failure was disclosed to Buyer or otherwise known to Buyer prior to the Closing.

## ARTICLE VII
## TERMINATION

**Section 7.1.**  **Termination of Agreement.** This Agreement may be terminated:

(a)  by the mutual written consent of Buyer and Seller;

(b)  by Buyer by giving written notice to Seller at any time prior to Closing (i) in the event Seller has breached any material covenant, or misstated any representation or warranty  or (ii) in the event that any condition set forth in Section 7.1 shall become incapable of being satisfied by the Closing, unless such failure shall be due to the failure of Buyer to perform or comply with any of the covenants hereof to be performed or complied with by it prior to or at the Closing, and such condition is not waived by Buyer;

(c)  by Seller by giving written notice to Buyer at any time prior to Closing (i) in the event Buyer has breached any material covenant, or misstated any representation or warranty or (ii) in the event that any condition set forth in Section 7.2 shall become incapable of being satisfied by the Closing, unless such failure shall be due to the failure of Seller to perform or comply with any of the covenants hereof to be performed or complied with by them prior to or at the Closing, and such condition is not waived by Seller;

(d)  automatically and without any action or notice by Seller to Buyer, or Buyer to Seller, immediately upon the issuance of a final and non-appealable order, Decree, or ruling by a Governmental Entity to permanently restrain, enjoins or otherwise prohibits the Closing;

6

(e)     by Seller, notwithstanding anything to the contrary in this Agreement, if Seller reasonably determines in good faith, after consultation with counsel, that continuing to pursue or consummate the Contemplated Transactions would be inconsistent with applicable Law or Seller's fiduciary duties thereunder; provided, however, that Seller shall promptly provide Buyer with written notice of any such determination (collectively, the "Fiduciary Out").

**Section 7.2.     Procedure Upon Termination**. In the event of termination and abandonment by Buyer, on the one hand, or Seller, on the other hand, or both, pursuant to Section 7.1, written notice thereof shall forthwith be given to the other Party or Parties, and this Agreement shall terminate.

**Section 7.3.     Effect of Termination.**

(a)     If any Party terminates this Agreement pursuant to Section 7.1, then all rights and obligations of the Parties hereunder shall terminate upon such termination and shall become null and void and no Party shall have any Liability to any other Party with respect to the transactions contemplated herein, as applicable, except as otherwise expressly set forth in this Agreement.

(b)     Except as otherwise expressly set forth in this Agreement, nothing herein shall relieve any Party from Liability for any breach of covenant occurring prior to any termination of this Agreement.

(c)     This Section 7.3 and the rights and obligations created hereunder, shall survive termination of this Agreement.

## ARTICLE VIII
## MISCELLANEOUS

**Section 8.1.     Expenses**. Except as otherwise provided in this Agreement, Seller and Buyer shall bear their own expenses, including attorneys' fees, incurred in connection with the negotiation and execution of this Agreement and each other document or instrument contemplated by this Agreement.

**Section 8.2.     Entire Agreement**. This Agreement constitutes the entire agreement among the Parties and supersedes any prior understandings, agreements or representations (whether written or oral) by or among the Parties, written or oral, with respect to the subject matter hereof.

**Section 8.3.     Incorporation of Schedules, Exhibits and Disclosure Schedule**. The schedules, appendices and exhibits to this Agreement are incorporated herein by reference and made a part hereof.

**Section 8.4.     Notices**. All notices, requests, demands, claims and other communications hereunder shall be in writing except as expressly provided herein. Any notice, request, demand, claim or other communication hereunder shall be deemed duly given (i) when delivered personally to the recipient; (ii) one (1) Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid); (iii) when sent by email (with written confirmation of transmission); or (iv) three (3) Business Days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

If to Seller, then to:

Compass Coffee, LLC
[_____]
Washington, D.C. 20001
Attention: Michael Haft
Email: michael@compasscoffee.com

with a copy to:

Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Attention: Tyler P. Brown
Email: tpbrown@hunton.com

If to Buyer, then to:

with a copy to:

Either Party may change the mailing address or email address to which notices, requests, demands, claims and other communications hereunder are to be delivered by giving the other Party notice.

Section 8.5.    **Governing Law; Jurisdiction**. This Agreement shall in all aspects be governed by and construed in accordance with the internal Laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Delaware, and the obligations, rights and remedies of the Parties shall be determined in accordance with such Laws. The Parties agree that any Litigation one Party commences against any other Party pursuant to this Agreement shall be brought exclusively in the Bankruptcy Court; *provided that* if the Bankruptcy Court is unwilling or unable to hear any such Litigation, then the courts of the state and federal courts located in the State of Delaware shall have exclusive jurisdiction over such Litigation.

Section 8.6.    **WAIVER OF JURY TRIAL.** BOTH PARTIES IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE RELATED AGREEMENTS OR THE CONTEMPLATED TRANSACTIONS OR THEREBY.

Section 8.7.    **Severability.** The provisions of this Agreement shall be deemed severable, and the invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement. If any provision of this Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable, (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision, and (b) the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability in any one jurisdiction affect the validity or enforceability of such provision, or the application thereof, in any other jurisdiction.

Section 8.8.    **No Third Party Beneficiaries**. This Agreement shall not confer any rights or remedies upon any Person other than the Parties and their respective successors and permitted assigns.

8

**Section 8.9.** **Mutual Drafting**. Each of the Parties has participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of this Agreement.

**Section 8.10.** **Headings; Table of Contents**. The section headings and the table of contents contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

**Section 8.11.** **Counterparts; Facsimile and Email Signatures**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. This Agreement or any counterpart may be executed and delivered by facsimile or email with scan attachment copies, each of which shall be deemed an original.

**Section 8.12.** **Solicitation of Competitive Bids**. Buyer acknowledges that Seller will solicit competitive bids to purchase the Acquired Assets, and that Seller may terminate this Agreement if Seller receives a higher or better offer for the Acquired Assets or in an exercise of its Fiduciary Out.

**[SIGNATURE PAGES FOLLOW]**

**SIGNATURE PAGE TO**
**ASSET PURCHASE AGREEMENT**

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first above written.

SELLER:

COMPASS COFFEE, LLC

By _____

    Name:  Michael Haft
    Title:  CEO / President

BUYER:

[_____]

By _____

    Name:
    Title:

**EXHIBIT A**

**Bill of Sale**

This Bill of Sale (this "Bill of Sale") is entered into as of [March] [___], 2026, by Compass Coffee, LLC, a Delaware limited liability company ("Seller") in favor of [_____], a [_____] ("Buyer"). This Bill of Sale is made pursuant to that certain Asset Purchase Agreement, dated as of [March] [___], 2026, by and between Buyer and Seller (the "Agreement"). Capitalized term used but not defined herein shall have the meaning set forth in the Agreement.

1.      **Conveyance**. For good and valuable consideration as described more fully in the Agreement, the receipt and adequacy of which Seller hereby acknowledges, Seller hereby irrevocably sells, assigns, transfers, conveys, grants, bargains, and delivers to Buyer, all of its right, title, and interest in and to Acquired Assets free and clear of all liens, claims, and encumbrances.

2.      **Further Assurances**. Seller hereby covenants and agrees that, at any time and from time to time on Buyer's written request, Seller will do, execute, acknowledge, and deliver or cause to be done, executed, acknowledged, and delivered, all such further acts, deeds, assignments, transfers, conveyances, powers of attorney, and assurances as may be reasonably required by Buyer in order to carry out the provisions hereof and give effect to the transactions contemplated hereby.

3.      **Agreement Controls**. This Bill of Sale is made pursuant to and subject to the terms and conditions of the Agreement. In the event of any inconsistency between this Bill of Sale and the Agreement, the Agreement shall control.

4.      **Governing Law**. This Bill of Sale is governed by, and shall be construed in accordance with, the laws of the State of Delaware, without regard to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of Delaware.

[Signature Page Follows]

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be duly executed as of the date first written above by its authorized person thereunto duly authorized.

**COMPASS COFFEE, LLC**

By: _____

    Name: Michael Haft

    Title: CEO / President

**EXHIBIT B**

**<u>Intellectual Property Assignment</u>**

This Intellectual Property Assignment (this "<u>Assignment</u>") is made and entered into as of [March] [__], 2026 (the "<u>Effective Date</u>"), by Compass Coffee, LLC a Delaware limited liability company (the "<u>Assignor</u>") in favor of [_____], a [_____] (the "<u>Assignee</u>"). All capitalized terms used in this Assignment (including in the recitals) but not otherwise defined herein shall have the meaning ascribed to such terms in the Purchase Agreement (as defined below).

**RECITALS**

WHEREAS, pursuant to that certain Asset Purchase Agreement, dated as of [March] [__], 2026, by and among Assignor and Assignee (hereinafter, the "<u>Purchase Agreement</u>"), Assignor agreed to convey, transfer and assign to Assignee all of Assignor's right, title, and interest in and to certain Intellectual Property as set forth on <u>Exhibit A</u> (collectively, the "<u>Assigned Intellectual Property</u>"); and

WHEREAS, Assignor wishes to assign any and all right, title and interest it may have in and to the Assigned Intellectual Property to Assignee, and Assignee desires to acquire same.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor agrees as follows:

1.     <u>Assignment</u>. Assignor hereby irrevocably, absolutely, perpetually, unconditionally and throughout the world assigns, conveys, delivers and transfers to Assignee (i) all of Assignor's right, title, and interest in and to the Assigned Intellectual Property, together with all goodwill associated therewith, in each case to be held and enjoyed by Assignee, and (ii) all of Assignor's rights to benefits, priority rights, privileges, causes of action, common law rights, and remedies relating thereto throughout the world, including, without limitation, all rights to: (a) apply for and maintain all applications, registrations, renewals and extensions thereof, and claim priority based on such Assigned Intellectual Property under the laws of any jurisdiction, as well as prosecute, register, and defend such Assigned Intellectual Property before the United States Patent and Trademark Office and any other relevant public or private agencies, authorities, or registrars within or outside the United States, (b) sue, claim and recover damages and obtain other equitable relief for past, present and future infringement, misappropriation, dilution or other violations of any Assigned Intellectual Property, and (c) commercialize, exploit, or grant licenses or other interests thereto.

2.     <u>Ownership; No Challenge</u>. Assignor hereby acknowledges and agrees that Assignee shall be the exclusive owner of the Assigned Intellectual Property. Assignor agrees that it will not at any time, directly or indirectly, challenge or assist any person or entity in challenging in any jurisdiction (a) Assignee's rights, title, and interests in and to the Assigned Intellectual Property or (b) Assignee's right to use and control the Assigned Intellectual Property.

3.     <u>Authorization and Recordation</u>. Assignor hereby authorizes and requests the United States Patent and Trademark Office and any other similar or empowered agency in any jurisdiction to record Assignee as the owner of the Assigned Intellectual Property in accordance with the terms of this Assignment, and to issue all such registration, certificate, or documentation in such jurisdiction in the name and for the benefit of Assignee. Assignor further hereby authorizes the current registrar of the domain names in the Assigned Intellectual Property to transfer the ownership and control of such domain names to Assignee.

4.     <u>Further Assurances</u>. Assignor agrees that from time to time, at the reasonable request of Assignee and for no additional consideration and at Assignee's sole expense, Assignor shall execute and deliver such other lawful documents (including confirmatory assignment documents) as are legally or

1

administratively necessary to effectuate Assignor's assignment, transfer, and conveyance of the Assigned Intellectual Property and the transactions contemplated by this Assignment. Assignor acknowledges and agrees that Assignee may perfect and record this Assignment or such other lawful documentation in any jurisdiction throughout the world, and that Assignor shall reasonably cooperate with Assignee's reasonable requests related thereto, including without limitation arranging for any domain names to be unlocked by Assignor's registrar in preparation for the transfer to Assignee and providing Assignee with the authorization codes that Assignee may need to initiate the transfer for the domain names to Assignee, to enable Assignee to register any domain names in the name of Assignee with the domain name registry of Assignee's choosing. Assignor hereby appoints Assignee as Assignor's true and lawful attorney-in-fact, with the power to endorse Assignor's name on all applications, documents, papers and instruments solely as necessary to perfect legal title in and to the Assigned Intellectual Property (as applicable) in Assignee's name with any intellectual property governmental offices in any jurisdiction throughout the world. This power of attorney is coupled with an interest and shall be irrevocable.

5.      Headings. The article and section headings of this Assignment are for convenience of reference only and shall not be deemed to limit or affect any of the provisions hereof.

6.      Governing Law. This Assignment, and all Claims or causes of action based upon, arising out of, or related to this Assignment or the transactions contemplated herein, shall be governed by, and construed in accordance with, the Laws of the State of Delaware, without giving effect to principles or rules of conflict of Laws to the extent such principles or rules would require or permit the application of Laws of another jurisdiction.

[Signature Page Follows]

IN WITNESS WHEREOF, the Assignor has caused this Assignment to be duly executed by its authorized representatives as of the Effective Date.

**Assignor:**

**COMPASS COFFEE, LLC**

By:_____
Name: Michael Haft
Title: CEO / President

*Signature Page to Intellectual Property Assignment*

**Exhibit A**

Assigned Intellectual Property

Schedule 1(a)

The following constitutes the entirety of the Equipment and Simple Syrup Inventory Seller is offering for sale:

| Asset | Asset Type | Manufacturer | MPN | Serial Number | Acquisition Dat | In-Service Date |
|---|---|---|---|---|---|---|
| Water Heater | Cafe Equipment | Stiebel Eltron | 480v - 27KW | 17187 | 2022/11/01 | 2022/11/01 |
| Simple Syrups Equipment - Tilt Skillet | Production Equipment | Cleveland | SGL-40-T1 | WT9083-04L-01 | 2020/09/23 | 2020/09/23 |
| Simple Syrups Equipment - Tank - 550 gal | Production Equipment | Custom Metalcraft | 516118 | 81810-7 | 2020/04/14 | 2020/04/14 |
| Simple Syrups Equipment - Tank - 150 gal | Production Equipment | Stout | | N/a | 2017/04/13 | 2017/04/13 |
| Simple Syrups Equipment - Tank - 100 gal | Production Equipment | Stout | | N/a | 2017/04/17 | 2017/04/17 |
| Simple Syrups Equipment - Shear Mixer - Inline | Production Equipment | Alfa Laval | HPM - 15M | 50190 | 2020/04/15 | 2020/04/15 |
| Simple Syrups Equipment - Shear Mixer - Benchtop | R&D / QA Equipment | Silverson | L5E | 37954 | 2020/04/14 | 2020/04/14 |
| Simple Syrups Equipment - Pump - 110v - 1 1/2 Tri-clamp | Production Equipment | CPE | C+114MD | | 2017/05/01 | 2017/05/01 |
| Simple Syrups Equipment - Pump - 110v - 1 1/2 Tri-clamp | Production Equipment | CPE | C+114MD | | 2017/11/03 | 2017/11/03 |
| Simple Syrups Equipment - Heat Exchanger - 2 Tri-clamp | Production Equipment | Alleghany Bradford Corporation | USP Water Heater | 4839-2-1 | 2019/05/16 | 2019/05/16 |
| Simple Syrups Brewing Equipment | Production Equipment | | | | 2020/04/01 | 2020/04/01 |
| Refrigerator - Reach-in | Cafe Equipment | TRUE | T-19G-LD | 8840573 | 2023/03/01 | 2023/03/01 |
| Packaging Equipment - Labeler - Dual Sided | Packaging Equipment | Accutek | | A-17205433 | 2020/04/13 | 2020/04/13 |
| Packaging Equipment - Industrial Printer - Continuous Inkjet | Packaging Equipment | Keyence | MK-G1000 | 129G100746011A3A | 2023/02/24 | 2023/02/24 |
| Packaging Equipment - Conveyor - 4.5 Width - 7' | Packaging Equipment | Accutek | | A-17L07-3629 | 2020/04/09 | 2020/04/09 |
| Packaging Equipment - Conveyor - 4.5 Width - 15' | Packaging Equipment | Accutek | | A-17L07-3893 | 2020/04/09 | 2020/04/09 |
| Packaging Equipment - Conveyor - 4.5 Width - 10' | Packaging Equipment | Accutek | | A-17L07-3891 | 2020/04/09 | 2020/04/09 |
| Packaging Equipment - Conveyor - 4.5 Width - 10' | Packaging Equipment | Accutek | | A-17L07-3647 | 2020/04/09 | 2020/04/09 |
| Packaging Equipment - Bottle Uprighter | Packaging Equipment | Accutek | 50-B0A-000 | A-17205425 | 2020/04/09 | 2020/04/09 |
| Packaging Equipment - Bottle Rinser | Packaging Equipment | Accutek | 50-BR1-L02 | A-17206281 | 2020/04/09 | 2020/04/09 |
| Packaging Equipment - Bottle Filler - 4 Head | Packaging Equipment | Accutek | 02-508-000 | A-17206280 | 2020/02/27 | 2020/02/27 |
| Packaging Equipment - Bottle Capper - Spindle | Packaging Equipment | Accutek | 22-5000-000 | A-17205424 | 2020/04/09 | 2020/04/09 |
| Packaging Equipment - Accumulation Table - 4' | Packaging Equipment | Accutek | | A-17L07-3622 | 2020/04/09 | 2020/04/09 |
| Dishwasher | Cafe Equipment | ADS | ET-AF-M | 25620 | 2022/10/01 | 2022/10/01 |
| Bottling Line | Packaging Equipment | Accutek | | | 2020/08/01 | 2020/08/01 |

Any remaining Simple Syrup Inventory and raw materials

Schedule (b)

The following constitutes the entirety of the Intellectual Property Seller is offering for sale:

| | | | | Compass Coffee, LLC - Trademarks | | | |
|---|---|---|---|---|---|---|---|
| Case Ref. | Owner | Mark | Image | Country | Registration No. | Registration Date | International Classes |
| 137194-589770.WO | Compass Coffee, LLC | BITCOIN BLEND | | Madrid Protocol (TM) | 1776723 | Feb-22-2024 | 30 |
| 137194-581361.WO | Compass Coffee, LLC | REAL GOOD COFFEE (Stylized) | | Madrid Protocol (TM) | 1742084 | Jun-23-2023 | 21, 30, 43 |
| 137194-589770.MX | Compass Coffee, LLC | BITCOIN BLEND (IR 1776723) | | Mexico | 2848261 | Apr-09-2025 | 30 |
| 137194-589770.KR | Compass Coffee, LLC | BITCOIN BLEND (IR 1776723) | | Republic of Korea | 1776723 | Apr-14-2025 | 30 |
| 137194-589770.GB | Compass Coffee, LLC | BITCOIN BLEND (IR 1776723) | | United Kingdom | WO0000001776723 | Jul-16-2024 | 30 |
| 137194-583187 | Compass Coffee, LLC | BITCOIN BLEND | | United States of America | 7782153 | May-06-2025 | 30 |
| 137194-589770.EU | Compass Coffee, LLC | BITCOIN BLEND (IR 1776723) | | European Community | W01776723 | Feb-22-2024 | 30 |
| 137194-420892 | Compass Coffee, LLC | CROWN TEA and Design | | United States of America | 5444946 | Apr-10-2018 | 30 |
| 137194-517416 | Compass Coffee, LLC | EAST ASIA AMERICAS AFRICA EARTHY & HERBAL CHOCOLATEY & NUTTY VIBRANT & FRUITY LIGHT EASTING STRAWBERRY, SMOOTH, CREAMY, 7TH STREET, VANILLA, CARAMEL, ALMONDS, HORIZON, BRIGHT, BERRY-LIKE, SWEET (and other words) and Design | | United States of America | 6198700 | Nov-17-2020 | 30 |
| 137194-561855 | Compass Coffee, LLC | REAL GOOD COFFEE | | United States of America | 3568755 | Jan-27-2009 | 21, 30 |
| 137194-573751 | Compass Coffee, LLC | REAL GOOD COFFEE (Stylized) | | United States of America | 7218762 | Nov-14-2023 | 21, 30, 43 |
| 137194-521058 | Compass Coffee, LLC | SIMPLE SANITIZER | | United States of America | 7674538 | Feb-04-2025 | 05 |
| 137194-420896 | Compass Coffee, LLC | SIMPLE SYRUPS and Design | | United States of America | 5346418 | Nov-28-2017 | 30 |
| 137194-549712 | Compass Coffee, LLC | WAYPOINT | | United States of America | 6971241 | Feb-07-2023 | 30 |

| | | | | Compass Coffee, LLC - Domain Names | | | |
|---|---|---|---|---|---|---|---|
| Domain Name | TLD | Create Date | Ownership Date | Expiration Date | Status | Nameservers | Privacy |
| 7THSTREETBAKERY.COM | .COM | 4/8/2014 | 4/9/2014 | 4/8/2026 | Active | ns29.domaincontrol.com ns30.domaincontrol.com | On |
| 7THSTREETBAKING.COM | .COM | 4/8/2014 | 4/9/2014 | 4/8/2026 | Active | NS1.BLUEHOST.COM NS2.BLUEHOST.COM | On |
| allthesnax.com | .COM | 5/21/2018 | 5/21/2018 | 5/21/2026 | Active | ns59.domaincontrol.com ns60.domaincontrol.com | On |
| americadeservesbettercoffee.com | .COM | 9/24/2015 | 9/24/2015 | 9/24/1930 | Active | ns21.domaincontrol.com ns22.domaincontrol.com | On |
| andypizza.com | .COM | 2/11/2017 | 2/11/2017 | 2/11/2027 | Active | ns45.domaincontrol.com ns46.domaincontrol.com | On |
| bitcoincoffee.com | .COM | 10/4/2012 | 4/7/2022 | 10/4/2026 | Active | ns03.domaincontrol.com ns04.domaincontrol.com | On |
| BUILDYOURCITY.ORG | .ORG | 2/13/2015 | 2/13/2015 | 2/13/1930 | Active | ns13.domaincontrol.com ns14.domaincontrol.com | On |
| coffee.university | .UNIVERSITY | 2/4/2016 | 2/4/2016 | 2/4/2026 | Active | ns53.domaincontrol.com ns54.domaincontrol.com | On |
| cpghaven.com | .COM | 5/30/2016 | 5/30/2016 | 5/30/2026 | Active | ns29.domaincontrol.com ns30.domaincontrol.com | On |
| cpginabox.com | .COM | 5/30/2016 | 5/30/2016 | 5/30/2026 | Active | ns29.domaincontrol.com ns30.domaincontrol.com | On |
| crowntea.com | .COM | 4/26/2006 | 10/20/2016 | 4/26/2026 | Active | ns11.domaincontrol.com ns12.domaincontrol.com | On |
| districtcertified.us | .US | 11/25/2015 | 11/25/2015 | 11/24/1930 | Active | ns29.domaincontrol.com ns30.domaincontrol.com | - |
| districtcrafted.com | .COM | 11/25/2015 | 11/25/2015 | 11/25/1930 | Active | ns29.domaincontrol.com ns30.domaincontrol.com | On |
| DISTRICTCRAFTED.ORG | .ORG | 10/12/2014 | 10/12/2014 | 10/12/2029 | Active | ns01.domaincontrol.com ns02.domaincontrol.com | On |
| districtcrafted.us | .US | 11/25/2015 | 11/25/2015 | 11/24/1930 | Active | ns29.domaincontrol.com ns30.domaincontrol.com | - |
| hirschvaldez.com | .COM | 3/26/2018 | 3/26/2018 | 3/26/2026 | Active | ns49.domaincontrol.com ns50.domaincontrol.com | On |

| insistonsnacks.com | .COM | 3/31/2018 | 3/31/2018 | 3/31/2026 | Active | ns71.domaincontrol.com ns72.domaincontrol.com | On |
|---|---|---|---|---|---|---|---|
| insistonsnax.com | .COM | 3/31/2018 | 3/31/2018 | 3/31/2026 | Active | ns71.domaincontrol.com ns72.domaincontrol.com | On |
| jenisandcry.com | .COM | 4/11/2018 | 4/11/2018 | 4/11/2026 | Active | ns59.domaincontrol.com ns60.domaincontrol.com | On |
| jprachmaninoff.com | .COM | 11/9/2023 | 11/9/2023 | 11/9/2026 | Active | ns45.domaincontrol.com ns46.domaincontrol.com | On |
| justmyles.com | .COM | 3/18/2018 | 3/18/2018 | 3/18/2026 | Active | ns59.domaincontrol.com ns60.domaincontrol.com | On |
| makeamericanosgreatagain.com | .COM | 7/19/2023 | 7/19/2023 | 7/19/2028 | Active | ns11.domaincontrol.com ns12.domaincontrol.com | On |
| makeamericanosgreatagain.org | .ORG | 7/19/2023 | 7/19/2023 | 7/19/2028 | Active | ns75.domaincontrol.com ns76.domaincontrol.com | On |
| moresnack.com | .COM | 7/20/2017 | 7/21/2017 | 7/20/2027 | Active | ns37.domaincontrol.com ns38.domaincontrol.com | On |
| moresnak.com | .COM | 7/20/2017 | 7/21/2017 | 7/20/2027 | Active | ns37.domaincontrol.com ns38.domaincontrol.com | On |
| morsnak.com | .COM | 7/20/2017 | 7/21/2017 | 7/20/2027 | Active | ns37.domaincontrol.com ns38.domaincontrol.com | On |
| paleoblend.com | .COM | 4/12/2012 | 4/11/2016 | 4/12/2026 | Active | NS1.DREAMHOST.COM NS2.DREAMHOST.COM NS3.DREAMHOST.COM | On |
| perfectcoffeeathome.com | .COM | 3/11/2013 | 7/19/2023 | 7/25/1933 | Active | ns71.domaincontrol.com ns72.domaincontrol.com | On |
| PERFECTCUPATHOME.COM | .COM | 10/6/2013 | 10/6/2013 | 10/6/2026 | Active | ns65.domaincontrol.com ns66.domaincontrol.com | On |
| phenomenalsauces.com | .COM | 10/2/2015 | 10/2/2015 | 10/2/1930 | Active | ns01.domaincontrol.com ns02.domaincontrol.com | On |
| phenomenalsyrups.com | .COM | 10/2/2015 | 10/2/2015 | 10/2/1930 | Active | ns01.domaincontrol.com ns02.domaincontrol.com | On |
| REALGOODCOFFEE.COM | .COM | 11/15/2012 | 10/22/2014 | 11/15/1933 | Active | NS73.DOMAINCONTROL.COM NS74.DOMAINCONTROL.COM | On |
| realgoodflavors.com | .COM | 8/27/2016 | 8/27/2016 | 8/27/2026 | Active | ns77.domaincontrol.com ns78.domaincontrol.com | On |
| realgoodsauces.com | .COM | 10/2/2015 | 10/2/2015 | 10/2/1930 | Active | ns01.domaincontrol.com ns02.domaincontrol.com | On |
| realgoodsyrups.com | .COM | 10/2/2015 | 10/2/2015 | 10/2/1930 | Active | ns01.domaincontrol.com ns02.domaincontrol.com | On |
| rockcreekwater.com | .COM | 3/18/2018 | 3/18/2018 | 3/18/2026 | Active | ns59.domaincontrol.com ns60.domaincontrol.com | On |
| simplesyrups.com | .COM | 4/13/2008 | 10/20/2016 | 4/13/2026 | Active | ns05.domaincontrol.com ns06.domaincontrol.com | On |
| THEMERMAIDLIES.COM | .COM | 1/5/2015 | 1/5/2015 | 1/5/2028 | Active | ns51.domaincontrol.com ns52.domaincontrol.com | On |
| thewholeline.com | .COM | 3/23/2018 | 3/23/2018 | 3/23/2026 | Active | ns59.domaincontrol.com ns60.domaincontrol.com | On |
| WYDOWNCOFFEE.COM | .COM | 6/3/2015 | 6/3/2015 | 6/3/1930 | Active | ns07.domaincontrol.com ns08.domaincontrol.com | On |
| WYDOWNCOFFEEROASTERS.COM | .COM | 6/3/2015 | 6/3/2015 | 6/3/1930 | Active | ns07.domaincontrol.com ns08.domaincontrol.com | On |