Jeffrey Tarkenton (D.C. Bar No. 376493)
WOMBLE BOND DICKINSON (US) LLP
2001 K. Street, NW
Suite 400 South
Washington, DC 20006
Telephone: (202) 467-6900

Matthew P. Ward (admitted pro hac vice)
WOMBLE BOND DICKINSON (US) LLP
1313 N. Market Street
Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320

*Counsel for the Official Committee of Unsecured Creditors*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **Compass Coffee, LLC,** | **Case No. 26-00005 (ELG)** |
| **Debtor.** | **Related No. 333** |

**COMBINED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S MOTION FOR ORDER APPROVING STRUCTURED DISMISSAL OF CASE AND MOTION FOR ENTRY OF AN ORDER CONVERTING THE DEBTOR'S CHAPTER 11 CASE TO A CASE PURSUANT TO 11 U.S.C. § 1112(b)**

The Official Committee of Unsecured Creditors (the "Committee") of Compass Coffee, LLC, the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, hereby submits this combined objection to the Debtor's Motion for Order Approving Structured Dismissal filed at Dkt. No. 333[1] and motion (the "Objection") requesting entry of an order converting the above-captioned case (this "Case") to a case under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"). In support thereof, the Committee respectfully states as follows:

[1] Unless otherwise specified, all references to "Dkt. No. __" refer to documents filed in this Case with the corresponding electronic case management number assigned thereto.

## PRELIMINARY STATEMENT

1. The Committee respectfully submits that dismissal of this Case would foreclose any meaningful investigation into potential causes of action that may serve as a source of distributions to unsecured creditors. Rather, conversion is the only way to ensure that an independent fiduciary has the opportunity to investigate and pursue all available avenues of recovery for creditors.

2. The Committee believes potentially valuable estate claims may exist, including claims arising from the Debtor's prepetition management and dealings with certain insiders. For this reason, conversion followed by a thorough investigation by a chapter 7 trustee is the only option that will objectively evaluate those potential claims and determine whether additional recoveries may be available for creditors.

3. In light of the Debtor's administrative insolvency, the continuing diminution of the estate, and the absence of any proposed mechanism to actually fund all the unpaid administrative expenses, conversion—not structured dismissal—is the only option that may preserve what remaining value exists and facilitate a thorough examination of all potential sources of recovery and give all creditors their best chance of receiving any distribution on their claims.

## JURISDICTION, VENUE & STATUTORY PREDICATE

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested in this Motion is section 1112(b) of the Bankruptcy Code, as supplemented by Rules 1017 and 1019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

5. Prior to the initiation of this Case, the Debtor, its principal, and certain other parties, were defendants in certain litigation alleging RICO violations, fraud, breach of contract, and various other breaches of fiduciary duties. *See Suarez v. Compass Coffee LLC, et al.*, Civ. No. 25-00089 (D.D.C. Jan. 13, 2025), Complaint (Dkt. No. 1) (the "Suarez Complaint"). The Suarez Complaint remains pending in the United States District Court for the District of Columbia.

6. On January 6, 2026 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court. Since the Petition Date, the Debtors have been authorized to continue to operate their business and manage their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. On January 23, 2026, the Office of the United States Trustee for Region 4 appointed a three-person Committee consisting of: (i) AP DC Tomato's LLC; (ii) Brookfield Retail Properties Inc.; and (iii) William P. Gelberg, Inc. *See* Dkt. No. 91.

8. On January 23, 2026, the Court entered the *Order (I) Approving Bidding Procedures; (II) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; (III) Approving Stalking Horse Protections; (IV) Scheduling Bid Deadline, Auction Date, and Sale Hearing Date; and (V) Approving Form of Notice Thereof* [Dkt. No. 90] (the "Bidding Procedures Order").

9. On January 26, 2026, the Committee selected Womble Bond Dickinson (US) LLP as legal counsel to represent the Committee, and FTI Consulting, Inc. as financial advisor to the Committee. *See* Dkt. No. 172.

10. On February 19, 2026, as noted in the *Notice of Successful Bidder and Back-Up Bidder* [Dkt. No. 190], the Debtor, in consultation with the Committee, and other parties in interest,

declared Caffe Nero as the Successful Bidder (as defined in the Bidding Procedures Order) for the sale of substantially all the Debtor's assets.

11. On February 27, 2026, the Court entered the *Order (I) Approving the Asset Purchase Agreement; (II) Authorizing the Sale of the Purchased Assets; (III) Authorizing the Debtor to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* [Dkt. No. 245], subsequently corrected at Dkt. No. 256 (the "Sale Order"). The sale to Caffe Nero (the "Sale") closed on March 6, 2026.

12. On March 12, 2026, the Debtor requested authorization to sell certain remaining assets [Dkt. No. 264] that were excluded from the Sale, which the Court granted on March 27, 2026 [Dkt. No. 287].

## RELIEF REQUESTED

13. The Committee respectfully requests the Debtor's Motion be denied and the Court to enter an order, substantially in the form attached as **Exhibit A**, converting this Case to a case under chapter 7 of the Bankruptcy Code.

## BASIS FOR RELIEF

### A. Section 1112(b) Requires Conversion or Dismissal Upon a Showing of "Cause."

14. Section 1112(b) of the Bankruptcy Code provides that, on request of a party in interest,[2] and after notice and a hearing, the Court "*shall* convert a case . . . to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, [if the movant establishes] cause." *See* 11 U.S.C. § 1112(b)(1) (emphasis added).

[2] The Committee is a party-in-interest in the Debtor's chapter 11 proceedings. *See* 11 U.S.C. § 1109(b); *In re Combustion Eng'g, Inc.,* 391 F.3d 190, 214 n.21 (3d Cir. 2004) ("The [Bankruptcy] Code defines 'party in interest' to include . . . 'a creditors' committee' . . . .').

15. Section 1112(b)(2) establishes a narrow exception to the court's obligation to convert or dismiss upon a showing of cause where:

> [T]he court finds and specifically identifies **unusual circumstances** establishing that converting or dismissing the case is not in the best interests of creditors and the estate, ***and*** the debtor or any other party in interest establishes that—
>
> > (A) . . . there is a reasonable likelihood that a **plan will be confirmed . . .** within a reasonable period of time; ***and***
> >
> > (B) the grounds for converting or dismissing the case include an **act or omission of the debtor other than under paragraph (4)(A)—**
> >
> > > (i) for which there exists a reasonable justification for the act or omission; and
> > >
> > > (ii) that will be cured within a reasonable period of time fixed by the court.

*Id.* § 1129(b)(2), (b)(2)(A) (emphasis added).[3]

16. Accordingly, section 1112(b) establishes that conversion or dismissal is *mandatory* upon a finding of cause, unless, *at a minimum,* (i) "unusual circumstances" exist ***and*** (ii) a plan is reasonably likely to be timely confirmed. *See id.;*[4] *In re Riverbend Cmty.,* 2012 WL 1030340, at *3 n.6 (Bankr. D. Del. Mar. 23, 2012) ("Congressional intent that 'shall' really does mean 'must' in the convert or dismiss provision is readily apparent. In 2005, Congress removed the word 'may' from Section 1112(b) and substituted 'shall' if a moving party establishes 'cause'. Congress clearly intended to make conversion or dismissal mandatory upon proof of 'cause.'") (internal citations omitted); *In re Rsrvs. Resort, Spa & Country Club LLC,* Nos. 12-13316(KG), 12-

---

[3] Section 1129(b)(2) establishes certain other exceptions to conversion or dismissal that are not applicable here. *See* 11 U.S.C. § 1129(b)(2).

[4] In addition, as noted, to defeat conversion upon a showing of "cause," the Court must also find that the grounds for converting the case include an act or omission of the Debtors, other than under section 1112(b)(4)(A), for which there is a reasonable justification and that will be timely cured. 11 U.S.C. 1112(b)(2)(B). The Committee submits that there is no basis for such finding here.

13317(KG), 2013 WL 3523289, at *2 (Bankr. D. Del. July 12, 2013) ("The statute thus makes conversion mandatory once a court finds, as the Court has done here, any of the elements of 'cause.'").

**B. Ample Cause Exists to Convert this Chapter 11 Case to Chapter 7.**

17. Section 1112(b)(4) of the Bankruptcy Code contains a non-exclusive list of sixteen (16) grounds that constitute "cause" for conversion or dismissal. 11 U.S.C. § 1112(b)(4). Among those bases for "cause" is the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation[.]" 11 U.S.C. § 1112(b)(4)(A).

18. The Bankruptcy Code provides for conversion or dismissal of a chapter 11 case in such circumstances to prevent the debtor-in-possession "from gambling on the enterprises at the creditors' expense when there is no hope of rehabilitation." *In re The Rsrvs. Resort, Spa & Country Club LLC,* 2013 WL 3523289, at *2 (quoting *In re Lizeric Realty Corp.,* 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995)).

19. To determine whether there is a substantial or continuing loss or diminution, "the court first looks at whether a debtor has negative cash flow or declining asset values; if so, the court considers whether the debtor will be able to 'stop the bleeding' and return to solid financial footing within a reasonable amount of time." *In re Burgess*, 2013 WL 5874616, at *7 (Bankr. N.D. W.Va. 2013) (citing 7 COLLIER ON BANKRUPTCY ¶ 1112 .04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)).

i. <u>The Estates' Administrative Expenses Create a Substantial and Continuing Loss of Value But Potential Claims Exist</u>.

20. For purposes of a liquidating chapter 11 case, a negative cash flow exists so long as the estate continues to incur chapter 11 administrative expenses. *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 515-16 (8th Cir. 2004) ("Under the interpretation of § 1112(b)(l) consistently used

in bankruptcy courts, this negative cash flow situation alone is sufficient to establish 'continuing loss to or diminution of the estate.'").

21. As noted by the Eighth Circuit, "any negative cash flow—including that resulting only from administrative expenses—effectively comes straight from the pockets of the creditors." *Loop Corp.,* 379 F.3d at 516; *accord In re FRGR Managing Member LLC,* 419 B.R. 576, 581 (Bankr. S.D.N.Y. 2009) ("As to the first prong, it is apparent [debtor's] actions are causing a diminution to the estate. FRGR continues to incur quarterly U.S. Trustee fees as well as legal fees, causing a continuing loss to the estate."); *In re Brutsche,* 476 B.R. 298, 305 (Bankr. D. N.M. 2012) ("[P]rofessional services come at a cost, obviously, which cost needs to be factored in the calculation of gains and losses for the estate. And the hard fact is that these costs are rapidly mounting expenses for the estate that help put the estate in the position of continuing substantial losses").

22. The Debtor suggests that professional fees currently exceed available estate funds and contends that a structured dismissal would "safeguard the achievements of the Sale process for many creditors." *See* Motion ¶¶ 13, 18. However, the Debtor does not explain what achievements would be jeopardized by conversion, particularly where the Sale has already closed. In practical effect, a structured dismissal would principally preserve the status quo for administrative claimants while leaving unsecured creditors without any meaningful path to recovery. Conversion, by contrast, would preserve the possibility that a chapter 7 trustee may identify and pursue additional estate assets or claims that could generate proceeds for distribution to non-administrative creditors.

ii. The Debtors Have No Likelihood of Rehabilitation.

23. As for the second element of Section 1112(b)(4)(A), rehabilitation "contemplates the successful maintenance or re-establishment of the debtor's business operations." *In re Quail Farm, LLC,* 2010 WL 1849867, at *4 (Bankr. N.D.W. Va. 2010) (*quoting Canpartners Realty Holding Co. IV, L.L.C. v. Vallambrosa Holdings, L.L.C*. (*In re Vallambrosa Holdings, L.L.C*.), 419 B.R. 81, 88 (Bankr. S.D. Ga. 2009), *adhered to on denial of reconsideration*, 419 B.R. 92 (Bankr. S.D. Ga. 2009)).

24. Rehabilitation and reorganization are related but distinct concepts. Rehabilitation in the context of Section 1112(b)(4)(A) "contemplates the successful maintenance or re-establishment of the debtor's business operations. . . ." *Vallambrosa Holdings*, 419 B.R. at 88 (internal quotation marks omitted).

25. Thus, rehabilitation in a chapter 11 case begins with a confirmable plan and then requires, at minimum, the prospect of re-establishing a business. *See In re Quail Farm*, 2010 WL 1849867 at *4; *In re Vallambrosa Holdings*, 419 B.R. at 88-9; *Loop Corp.,* 379 F.3d at 518; *In re Landmark Atl. Hess Farm, LLC,* 448 B.R. 707, 714-15 (Bankr. D. Md. 2011) (stating determination is whether a debtor has "sufficient business prospects").

26. Here, the Debtors clearly have no business to reestablish as the majority of their assets have been transferred through the Sale. *See Loop Corp.,* 379 F.3d at 516 (liquidation of assets provides no reasonable likelihood of rehabilitation). Accordingly, there is no prospect of re-establishing the Debtor's business.

**C. The Debtor's Administrative Insolvency is a Separate and Independent Cause to Convert.**

27. Because the examples of cause set forth in Section 1112(b)(4) of the Bankruptcy Code are illustrative and not exhaustive, courts have also found that the administrative insolvency

of a debtor's estate constitutes separate and ***independent cause*** to convert a chapter 11 case to a case under chapter 7. *See In re Emerald Grande*, 2018 WL 2703071, at *3 (Bankr. N.D.W. Va. 2018) ("[A] debtor's administrative insolvency can demonstrate cause under § 1112(b)(4)(A) or serve as ***independent cause for conversion***, although not explicitly listed in the statute.") (emphasis added); *In re BH S & B Holdings, LLC*, 439 B.R. 342, 349 (Bankr. S.D.N.Y. 2010) ("The Court further concludes that the Debtors administrative insolvency constitutes cause to convert these cases."); *In re Bartmann*, 310 B.R. 663 (B.A.P. 10th Cir. 2004) (affirming bankruptcy court's conversion order based, in part, on administrative insolvency of the debtor); In re Desmond, 331 B.R. 42, 44 (Bankr. D.N.H. 2005) (same).

28. Moreover, a bankruptcy debtor must not avail itself to the protections of the Bankruptcy Code without paying the freight of such protections, and "the freight is not necessarily a tip to the unsecureds, but the freight is certainly an administratively solvent estate." *See* Transcript of Hearing at 100:17-20*, In re: NEC Holdings Corp., et al.,* No. 10-11890 (PJW) (Bankr. D. Del. July 13, 2010) (transcript of hearing before Hon. Christopher S. Sontchi)[5]; *see also*, Hearing Transcript at 23:14-24:22, *In re Townsends, Inc., et al.*, No. 10-14092 (CSS) (Bankr. D. Del. Jan. 21, 2011)[6] (in response to the statement of debtors' counsel that section 503(b)(9) claims would not be paid in full, the Court stated: "Well, we've got a problem. Not going to run an administratively insolvent estate").

29. Thus, administrative insolvency alone should not favor structured dismissal over conversion. Otherwise, a debtor could use administrative insolvency as a basis to terminate the

---

[5] Attached hereto as Exhibit "B".

[6] Attached hereto as Exhibit "C".

case while avoiding independent scrutiny of potential estate causes of action, including claims against insiders.

**D. Conversion Best Serves the Interests of all Creditors.**

30. Once cause is established, the Court must determine whether conversion or dismissal is in the best interests of creditors. *See In re Superior Siding & Window, Inc.,* 14 F.3d 240, 242 (4th Cir. 1994). In evaluating whether conversion or dismissal is in the best interests of creditors, the Bankruptcy Court must consider the interests of all creditors. *Id.* at 243.

31. Courts have found conversion best served the interests of all creditors when conversion was expected to reduce administrative expenses and the chapter 7 trustee would be in a better position to exercise independent judgment concerning the debtor's claims. *In re Nelco Ltd*., 210 B.R. 707, 709–10 (Bankr. E.D. Va. 1997). Courts have also converted cases when maintaining the case in chapter 11 would only result in further diminution of the estate. *In re Bartmann*, 310 B.R. at 663 (B.A.P. 10th Cir. 2004).

32. The debtor may not enjoy the protection of chapter 11 as a means of protecting a principal who allegedly engaged in wrongdoing that may give rise to valuable estate causes of action. "[I]t is not the purpose of Chapter 11 to allow a debtor a permanent cloak of protection while the estate's assets continue to diminish and the operational coherence unravels." *In re Galvin*, 49 B.R. 665, 669 (Bankr. D.N.D. 1985). "The function of Chapter 11 is rehabilitation—not disintegration." *Id.*

33. Here, the Committee requested documents from the Debtor regarding, among other items, the Debtor's use of and disposition of $10.5 million of Covid funds including the use of the funds to pay insider debt, the disposition of the Debtor's investment in Bitcoin, and

the Debtor's investment in Union Kitchen. The Debtor has not produced the requested documents.

34. In other words, conversion is the only avenue for the exploration of potentially valuable estate causes of action.

## RESERVATION OF RIGHTS

35. The Committee reserves all rights, remedies and obligations to, among other things, supplement, augment, and/or modify this Motion., and to conduct any and all discovery as may be required or deemed necessary, and to assert such other grounds for relief as may become apparent.

## NOTICE AND PRIOR REQUEST

36. Notice of this Motion will be given to: (a) the U.S. Trustee for the District of Columbia; (b) the Debtors; (c) counsel to the Debtors; (d) the secured lenders; and (e) all parties who have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Committee submits that no other or further notice of hearing is required.

37. No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Committee respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit A,** denying the Motion and converting this Case from chapter 11 to chapter 7 of the Bankruptcy Code and granting such further relief as the Court deems just and proper.

[*Signature Page Follows*]

Dated: August 17, 2026
Washington, D.C.

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Jeffrey Tarkenton*
Jeffrey Tarkenton (D.C. Bar No. 376493)
2001 K. Street, NW
Suite 400 South
Washington, DC 20006
Telephone: (202) 467-6900
Email: jeffrey.tarkenton@wbd-us.com

-and-

Matthew P. Ward (admitted *pro hac vice*)
1313 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320
Email: matthew.ward@wbd-us.com

*Counsel for the Official Committee of Unsecured Creditors*