# Harrison Suarez

## v.

# Compass Coffee LLC, Michael Haft, Robert Haft

## Case No. 1:25-cv-00089

# Expert Report of Jeff Anderson

Submitted to:

Theodore Randles
Venable LLP
600 Massachusetts Avenue, NW
Washington, DC 20001

Submitted by:

**CONSOR®**
**IP Experts**

7514 Girard Avenue, Suite 1500
La Jolla, CA 92037-5159
Phone: (858) 454-9091
Fax: (858) 454-7819

August 12, 2026


© 2026 CONSOR®, La Jolla, CA

## Table of Contents

**I. INTRODUCTION .... 4**

A. THE ASSIGNMENT .... 4

B. QUALIFICATIONS OF THE NAMED EXPERT .... 5

C. SUMMARY OF OPINIONS .... 6

**II. CASE BACKGROUND .... 8**

A. COMPASS COFFEE'S FORMATION, GROWTH, AND STRUGGLES .... 8

B. MR. SUAREZ'S EXIT AND ATTEMPTED BUYOUT REQUEST .... 10

C. PRIOR DEMANDS BY MR. SUAREZ FOR TENS OF MILLIONS OF DOLLARS AND MR. SUAREZ'S CURRENT COMPLAINT .... 12

D. VALUATION CONTEXT AND CONSOR'S ASSIGNMENT .... 13

**III. VALUATION METHODOLOGIES .... 13**

**IV. VALUATION ANALYSIS .... 15**

A. HISTORICAL FINANCIAL PERFORMANCE .... 15

B. BALANCE SHEET AND CAPITAL STRUCTURE .... 16

C. DISCOUNTED CASH FLOW ANALYSIS .... 17

1. Revenue Forecast .... 17
2. Profitability and Free Cash Flow .... 18
3. Discount Rate and Terminal Value .... 19
4. Discounted Cash Flow Analysis Conclusion .... 20

D. MARKET MULTIPLE ANALYSIS .... 20

1. Selection of Comparable Transactions .... 20
2. Selected Market Multiples .... 21
3. Market Multiple Analysis Conclusion .... 23

E. RECONCILIATION OF VALUATION APPROACHES .... 23

F. VALUE OF MR. SUAREZ'S MEMBERSHIP INTEREST .... 24

**V. SUBSEQUENT EVENT CONSIDERATIONS .... 24**

**VI. PLAINTIFF'S CRITIQUES OF GSG'S 2022 REPORT .... 25**


© 2026 CONSOR®, La Jolla, CA

1. GSG's Report Complied with the Operating Agreement ............................... 25
2. Plaintiff's Critiques of the GSG Report Lack Merit......................................... 26

**VII. PLAINTIFF'S VALUATION ASSERTIONS ........................................................ 28**

**VIII. PLAINTIFF'S BRAND ASSERTIONS ................................................................ 31**

1. The Purported Independent Value of Compass Coffee's Brand.................... 32
2. The Purported Ownership of the Compass Coffee Brand ............................. 33

**IX. CONCLUSION ....................................................................................... 34**

**APPENDIX A ........................................................................................... 37**

**APPENDIX B ........................................................................................... 41**

**EXHIBITS.............................................................................................46**


© 2026 CONSOR®, La Jolla, CA

# I. INTRODUCTION

## A. The Assignment

Venable LLP ("Counsel") has retained CONSOR® IP Experts ("CONSOR") on behalf of Compass Coffee LLC ("Compass Coffee" or the "Company"), Michael Haft, and Robert Haft (collectively, "Client" or "Defendant") to assess economic relief claims asserted by Harrison Suarez ("Mr. Suarez" or "Plaintiff"). Specifically, CONSOR has been asked to assess various issues relating to (i) the value of Compass Coffee and Mr. Suarez's membership interest as of the date Mr. Suarez attempted to exercise his buyout rights, and (ii) addressing contentions Mr. Suarez has made about the value of Compass Coffee, its brand, and ownership of that brand. The matter referenced is case number 1:25-cv-00089 in the United States District Court for the District of Columbia (the "Matter"). The purpose of this Report is to assist the trier of fact in evaluating these issues in the Matter.[1]

CONSOR conducted its analysis under the "Fair Market Value" standard, consistent with Section VI.10 (entitled "Repurchase of Founder Units") of Compass Coffee's Fifth Amended and Restated Limited Liability Company Agreement, dated November 10, 2020 (the "Operating Agreement"). That Section governs the repurchase of founder units. Specifically, it provides that each of the two founders may elect to sell part or all of his interest in the Company back to the Company for a period of 120 days following the effective date of termination, for any reason, and that the repurchase price of each unit shall be the fair market value as determined by a valuation firm, accountant, or accounting firm.[2] The Section further states that "Any repurchase shall be consummated within 30 days after determination of Fair Market Value…," and that "The Company shall not have any right to repurchase Units from the Founders, unless Founders exercise their right to sell part or all of their Units back to the Company."

We understand the provision to direct that fair market value be determined, "for the Company as a whole, and without any liquidity discounts, minority discounts, or lack of marketability for a closely held entity."[3] We have conducted an enterprise valuation per Section VI.10, without the application of liquidity discounts, minority discounts, or discounts for lack of marketability.

The analysis set forth in this Report concludes the value of Compass Coffee as of December 31, 2021, a close proxy for the date on which Mr. Suarez attempted to exercise his buyout rights from Compass Coffee (the "Valuation Date").[4] Findings are presented as of August 12, 2026 (the "Report Date"). Our conclusions reflect analysis of financial information and documents produced through the Valuation Date, as well as other information and documents produced through the Report Date, including independent research. CONSOR reserves the right to amend, expand, or supplement this Report

---

[1] Doc 14 (DEFENDANTS0008841)
[2] Doc 14 (DEFENDANTS0008841)
[3] Doc 14 (DEFENDANTS0008841)
[4] Doc 1 (DEFENDANTS0067294), ¶ 9


© 2026 CONSOR®, La Jolla, CA

should additional information, data, documents, reports, and or testimony become available.

An additional purpose of this Report is to assist the trier of fact in evaluating contentions Mr. Suarez has made about the value of Compass Coffee and its brand as well as contentions that a company called HaftSuarez LLC ("HaftSuarez") acted as a branding company that owned the Compass Coffee brand.

Our engagement is limited to the determination of fair market value of Compass Coffee and Mr. Suarez's membership interest in Compass Coffee, as well as in responding to contentions about Compass Coffee's value and brand ownership made in Mr. Suarez's Complaint, including review of relevant communications by Mr. Suarez over the years. We express no opinion on the nature of Mr. Suarez's departure from Compass Coffee, whether Mr. Suarez validly exercised his repurchase option, whether Defendants breached any obligation under the Operating Agreement, or on any of the allegations of fraud, breach of fiduciary duty, or racketeering alleged in the Complaint. Those are questions for the trier of fact, and our conclusions should not be read as bearing on them.

This Report contains two appendices: (i) qualifications of the named expert, including relevant publications and prior testimony (Appendix A); and (ii) a list of documents and materials reviewed (Appendix B). This Report was prepared with the assistance of members of the CONSOR team under the supervision of the expert named. Mr. Anderson's fees are billed at $900 per hour for analysis and report preparation and $1,250 per hour for deposition, mediation, arbitration, trial, or hearing attendance, and preparation. Analyst support is billed at rates between $700 and $750 per hour. CONSOR's compensation is not contingent on the outcome of this matter or the conclusions expressed in this Report.

### B. Qualifications of the Named Expert

Jeff Anderson is the Managing Director at CONSOR, an intellectual asset consulting firm specializing in trademark, patent, copyright, and right of publicity valuation, licensing, and expert testimony. The firm is headquartered in La Jolla, California, and has offices in New York and London. Mr. Anderson earned a B.S. in Economics from Santa Clara University, and later went on to earn an MBA, with a concentration in Finance, from San Diego State University.

Mr. Anderson has a broad view of the world of valuation and intellectual property. He has lectured, spoken, and written on various economic topics. He is a contributing author to two published books, and he is author and co-author of several articles on valuation. Coupled with his analytical approach to finance and economics, he has a deep expertise in damages, valuation, and monetization of assets.

Mr. Anderson has substantial experience in matters involving business valuation and brand-related intellectual property. He has advised both clients and courts in engagements concerning the valuation and licensing of brands and trademarks, including in matters associated with globally recognized brands and celebrities. His work includes


© 2026 CONSOR®, La Jolla, CA

analyses of royalty streams, evaluation of licensing practices, and assessment of claimed license fees in both transactional and litigation contexts.

Mr. Anderson has been designated as a testifying expert in matters pertaining to trademark, patent, trade secrets, database, rights of publicity (ROP), copyright, tortious interference, associated torts and contract breaches, and website valuation and damages, and business, stock and website valuation and damages. He has testified in both domestic and international courts. Through trial testimony, deposition testimony, and numerous Rule 26 reports, Mr. Anderson's expertise has been established and reaffirmed.

Mr. Anderson has produced valuations and damages calculations for corporate litigation and business/transaction purposes. Industries worked on include food and beverage, retail, manufacturing, agriculture, government, software, banking, healthcare, entertainment, construction, and energy. He has managed projects involving valuation or damages calculations for litigation, sale/purchase valuation and negotiation, license structuring and negotiation, and valuation in expropriation of foreign markets.

Prior to joining CONSOR, Mr. Anderson was a finance manager in the technology industry and has extensive experience in the mortgage and banking industries. In those industry roles, Mr. Anderson performed comprehensive valuations of business assets, analyzed financial statements, and created and managed accounting systems.

Complete qualifications are presented at Appendix A.

### C. Summary of Opinions

After reviewing the documentation provided, performing research and analysis, and based upon our professional background, knowledge, training, education, and decades of experience, we have arrived at the following opinions:

- That Compass Coffee was a business that never made a profit during its years of operation and was kept afloat financially by loans and other investments into Compass Coffee made by Haft family entities.
- That during 2020-21 Compass Coffee actively considered filing for bankruptcy. Its books and records show that Compass Coffee was unprofitable for both of those years.
- That it was within that context that Mr. Suarez exercised his option for repurchase of his units.
- That our independent evaluation of the fair market value of Compass Coffee as of December 31, 2021 using the midpoint of the income approach and the market multiple approach is **$6,028,714**.
- That our independent evaluation of the fair market value of Mr. Suarez's membership interest in Compass Coffee as of December 31, 2021 based on the above valuation is **$0**.


© 2026 CONSOR®, La Jolla, CA

- That our independent evaluation of GSG's valuation of the fair market value of Compass Coffee and Mr. Suarez's units per the Operating Agreement shows that GSG properly completed the valuation consistent with Section VI.10. If anything, our independent valuation suggests that GSG overvalued Compass Coffee and Mr. Suarez's units. We note that Mr. Suarez and Compass Coffee agreed to the valuation firm, Compass Coffee paid for that valuation, Mr. Suarez participated in that valuation, that after the valuation was complete Mr. Suarez asked for an explanation of the valuation, that GSG's explanation to Mr. Suarez was correct, Mr. Suarez did not accept the valuation, and the Operating Agreement's deadline for repurchase expired without any right for Compass Coffee to repurchase Mr. Suarez's shares. Mr. Suarez's criticisms of GSG's analysis in the Complaint are unwarranted.

- That years later, in 2023, Mr. Suarez valued his units as worth approximately $35 million, because Mr. Suarez valued Compass Coffee as worth $320 million. About a year after making that demand, Mr. Suarez then hired new counsel, who from 2025-present have contended that, using a RICO theory, Mr. Suarez's damages are worth "north of $60 million," including because of Mr. Suarez's assignment of a brand "valued at $34 million." These valuations of Compass Coffee by Mr. Suarez are incorrect.

- That Mr. Suarez's contentions about the value of Compass Coffee and its brand, as well as his contentions about the ownership of the brand, lack supportable bases in fact, including because:

    - There is no evidence that Mr. Suarez ever owned any "brand," let alone assigned one.

    - All "brand" IP was registered to Compass Coffee.

    - Compass Coffee's internal balance sheet carried the brand assets.

    - Compass Coffee's tax returns reflected the brand assets.

    - GSG never valued the "Compass brand" at $34 million. That figure reflected GSG's illustration of Compass Coffee's "goodwill" if management projections of massive future growth were achieved, which were not achieved and can never be achieved. Goodwill is the value of an enterprise in excess of the assets, not the value of a brand.

- That Mr. Suarez's contentions implying that HaftSuarez possessed the Compass Coffee brand also lack supportable bases in fact, including because:

    - HaftSuarez was used as a vehicle to sell an e-book regarding brewing coffee at home, and was not a branding company or a retail coffee company that operated cafes where people would come to drink coffee outside their homes.


© 2026 CONSOR®, La Jolla, CA

- HaftSuarez did not have material revenue, including from the licensing of any brand assets.
- HaftSuarez was not identified as the brand owner on USPTO filings.
- HaftSuarez did not use the brand in commerce, including by licensing the brand to others.
- HaftSuarez did not carry the brand assets on its books and records.
- HaftSuarez did not report the brand assets as assets on its tax returns.
- Although HaftSuarez made one payment to a brand development company, seven of the eight payments to the brand development company were made by Compass Coffee, and the initial payment by HaftSuarez was subsequently recorded on Compass Coffee's books. Moreover, the brand development work was fundamentally for Compass Coffee's benefit.
- Robert Haft developed the Compass Coffee logo and motto independent of HaftSuarez.

These opinions are based upon the documents and information reviewed as of the Report Date, discussions with Michael Haft, Robert Haft, Chuck Dieveney, Chuck Faunce, and Allen Tibshrany, as well as our background in intellectual property analysis and valuation. We reserve the right to revisit this analysis and amend this conclusion should additional information and/or documents become available for review.

## II. CASE BACKGROUND

### A. Compass Coffee's Formation, Growth, and Struggles

Starting as a single roastery in the Shaw neighborhood of Washington, D.C. in September 2014, Compass Coffee eventually expanded into a multi-location café business with additional consumer packaged goods, ecommerce, and foodservice revenue streams. By early 2020, Compass Coffee operated twelve cafés, had invested substantially in its Ivy City production facility, hoped to be able to expand to over 50 cafés by 2023, and was actively looking into pursuing a broader consumer packaged goods strategy.[5]

The COVID-19 pandemic interrupted the Company's trajectory and harmed it in substantial and long-lasting ways. In February 2020, management had hoped for eighteen cafés and $20 million of revenue by year end. This was never achieved. By mid-March, Compass Coffee had abandoned that plan entirely and redirected its focus from café expansion toward consumer-packaged goods.[6] Café sales fell about 90% at

---

[5] Doc 25 (DEFENDANTS0001940) and Doc 26 (DEFENDANTS0011265)
[6] Doc 10 (DEFENDANTS0011762)


© 2026 CONSOR®, La Jolla, CA

their bottom, and only half of the Company's twelve cafés were open by the fall of 2020.[7] Existing café sales only recovered to about 74% of pre-pandemic revenue (they were still substantially under performing in other words).[8] The wholesale business, which heavily depended on restaurants, hotels, and other coffee shops, in the Company's own description, "all but collapsed."[9] In short, Compass Coffee was decimated in 2020.

When Mr. Suarez communicated that he wanted to exercise his buyout option in late 2021, Compass Coffee was still struggling financially. Market forces within its home market, particularly extended stay-at-home and work-from-home policies (including by the federal government and impacting the large federal workforce in downtown D.C.) continued to severely impact Compass Coffee's café locations, which were concentrated in D.C. business districts.

In addition, Compass Coffee's efforts to expand into the consumer-packaged goods ("CPG") business foundered. CPG revenue increased during 2020, reaching approximately 10% of café revenue during the peak stay-at-home period, but declined substantially thereafter. By 2023, CPG revenue represented only approximately 2% of café revenue. In sum, CPG never became a significant source of revenue.[10]

While Compass Coffee had experienced minimal top-line growth from its Covid-induced low, it also continued to report recurring losses, significant capital needs, and substantial liabilities. Compass Coffee's historical financial statements show revenue increasing from approximately $5.2 million in 2016 to approximately $14.8 million in 2019, followed by pandemic-related disruption in 2020 ($9.6 million) and a very slight recovery in 2021 ($9.8 million).[11] Most importantly, the company never made money. The company reported negative net income in each year from 2016 through 2021, relying heavily on capital contributions, including through debt financing, to support operations and limited plans of expansion.[12] Without this infusion of capital, the need for which continued, it would not have survived, particularly in 2020 and thereafter. The situation was so dire that Compass Coffee actively considered filing for bankruptcy protection in 2020-2021.[13] The Figure below charts Compass Coffee's historical revenue, net income, and debt financing.

[7] Doc 10 (DEFENDANTS0011762)
[8] Doc 10 (DEFENDANTS0011762)
[9] Doc 10 (DEFENDANTS0011762)
[10] Doc 138 (DEFENDANTS0067281)
[11] See Exhibit 7
[12] Doc 4 (DEFENDANTS0021336), and Doc 10 (DEFENDANTS0011762)
[13] See, e.g., Doc 50 (DEFENDANTS0001695), Doc 51 (DEFENDANTS0003560), and Doc 52 (DEFENDANTS0018355)


© 2026 CONSOR®, La Jolla, CA

**Figure 1.**[14]




As shown in Figure 1 above, Compass Coffee's revenue peaked in 2019 before declining sharply in 2020. Its revenue largely remained flat in 2021, relying increasingly on debt financing. Throughout this entire period, the Company remained unprofitable and relied significantly on debt financing to support its operations. Without that financing it simply could not have survived.

### B. Mr. Suarez's Exit and Attempted Buyout Request

The operative governing document of the Company as of the Valuation Date is the Operating Agreement.[15] As detailed above, Section VI.10 of the Agreement governs the repurchase of founder units, providing that each of the two founders may elect to sell part or all of their interest in the Company for a period of 120 days following their termination, for any reason, and that the repurchase price of each unit shall be the fair market value as determined by a valuation firm, accountant, or accounting firm, without the application of liquidity discounts, minority discounts, or discounts for lack of marketability.[16]

It is our understanding that Mr. Suarez's employment at Compass Coffee ended on July 19, 2021, and that he delivered a written request to exercise his rights under Section VI.10 on November 15, 2021, which he characterized as the 119th day following termination.[17] We take no position on whether, when or why he left Compass Coffee but simply assume those allegations are correct for purposes of this analysis. In that notice, Mr. Suarez proposed several existing valuation figures he indicated he would accept in

[14] Exhibit 7 and Doc 4 (DEFENDANTS0021336)
[15] Doc 1 (DEFENDANTS0067294), ¶ 101 and Doc 14 (DEFENDANTS0008841)
[16] Doc 14 (DEFENDANTS0008841)
[17] Doc 11 (DEFENDANTS0001728)


© 2026 CONSOR®, La Jolla, CA

lieu of a new valuation, and alternatively stated that he was willing to proceed with a new valuation provided the parties could agree on the method and the evaluator.[18]

We address the figures identified in that notice briefly in Section II.C below, and further in Section VII below.

It is our understanding that Mr. Suarez and Mr. Haft then agreed to engage Mr. Chuck Faunce of Gorfine, Schiller & Gardyn ("GSG") to conduct a valuation of the enterprise value of Compass Coffee and Mr. Suarez's membership interest. Mr. Suarez and Mr. Haft came to this agreement through emails exchanged over November and December of 2021.[19] On November 15, 2021, Mr. Haft wrote Mr. Suarez that he would obtain a quote from GSG to conduct the valuation.[20] Mr. Suarez responded the next day by telling Mr. Haft to "please proceed."[21] On December 1, 2021, Mr. Haft told Mr. Suarez that he had met with GSG's representative, Chuck Faunce, to discuss the scope of work and timeline for the valuation.[22] Mr. Suarez responded on December 7, 2021, again telling Mr. Haft to proceed with the valuation.[23]

Both Mr. Haft and Mr. Suarez provided GSG's Chuck Faunce with inputs on the data he should consider. On December 8, 2021, Mr. Suarez emailed Mr. Haft with information that Mr. Faunce should consider.[24] Mr. Suarez then stated that he added his comments to a shared document on Google Drive, which was designed to be sent to Mr. Faunce.[25] Over December 2021 and January 2022, Mr. Suarez repeatedly emailed Mr. Haft asking when he would send the materials for the valuation to Mr. Faunce.[26]

On April 18, 2022, Mr. Faunce provided Mr. Haft and Mr. Suarez with a report (the "2022 Report") that concluded the enterprise value of Compass Coffee was $11,712,470 and Mr. Suarez's membership interest was worth $163,433 in any scenario other than a liquidation event, or $22,569 in a liquidation event.[27]

Later in April 2022, Mr. Suarez emailed Mr. Faunce with questions about the valuation. Mr. Suarez appeared disappointed with the calculated value of his shares.[28] Mr. Faunce explained that, according to his calculations, although the Company had approximately $11.7 million in invested capital, it also owed approximately $10.2 million to lenders.[29] That resulted in an equity value of approximately $1.5 million.[30] Mr. Faunce analogized the value of the company to a homeowner's equity in a home in light of the homeowner's

[18] Doc 11 (DEFENDANTS0001728)
[19] Doc 11 (DEFENDANTS0001728)
[20] Doc 11 (DEFENDANTS0001728)
[21] Doc 11 (DEFENDANTS0001728)
[22] Doc 11 (DEFENDANTS0001728)
[23] Doc 11 (DEFENDANTS0001728)
[24] Doc 53 (DEFENDANTS0001735)
[25] Doc 53 (DEFENDANTS0001735)
[26] Doc 53 (DEFENDANTS0001735)
[27] Doc 54 (DEFENDANTS0002057)
[28] Doc 54 (DEFENDANTS0002057)
[29] Doc 54 (DEFENDANTS0002057)
[30] Doc 54 (DEFENDANTS0002057)


© 2026 CONSOR®, La Jolla, CA

mortgage balance.[31] It is our understanding that Mr. Suarez did not follow up on Mr. Faunce's explanation and did not move forward with a repurchase based on the valuation.[32] By the terms of the Operating Agreement, repurchase was required to be consummated within 30 days after determination of the fair market value of Mr. Suarez's membership interest, and that the Company had no ability to force Mr. Suarez to move forward with a repurchase.[33]

In his Complaint, Mr. Suarez criticizes and misuses Mr. Faunce's reports dated August 20, 2020 (the "2020 Report") and April 18, 2022. As detailed in Section VI below, we conclude GSG's 2022 Report complied with the requirements of the Operating Agreement and, if anything, was overly optimistic in valuing Plaintiff's membership interest. We address Mr. Suarez's contentions about the 2020 Report in Section VI.2, which, among other things, did not value Compass Coffee's "brand" to be worth $34 million.

### C. Prior Demands by Mr. Suarez for Tens of Millions of Dollars and Mr. Suarez's Current Complaint

We also reviewed correspondence after the GSG episode from 2023 in which Mr. Suarez, through counsel, demanded that Mr. Suarez's membership interest was actually worth $35 million (i.e., that Mr. Suarez's 10.96% stake in Compass Coffee was worth $35,072,000), because Compass Coffee was actually worth over $320 million.[34]

Mr. Suarez then hired new attorneys who filed the at-issue Complaint in 2025, this time on the new theory that Compass Coffee, Michael Haft, and Robert Haft are engaged in a "RICO scheme" in which they defrauded Mr. Suarez of his share of the "growing Compass business."[35] In the Complaint, Mr. Suarez and his new attorneys reiterated that Mr. Suarez's membership interest had been radically undervalued, and that his interest in Compass Coffee was worth "millions of dollars."[36]

In Mr. Suarez's demand, Mr. Suarez also claimed that he was the prior, 50% owner of HaftSuarez, LLC, which allegedly owned the Compass Coffee brand, which was later allegedly valued to be worth $34 million.[37] Mr. Suarez, through his new counsel, contended that his damages were over $60 million for his membership interest and supposed ownership of the brand. We address the contentions about the value of the Compass Coffee brand in Section VIII.

Mr. Suarez's Complaint also references various speculative indications of interest, letters of intent, and other purported investment and valuation discussions that imply that Compass Coffee was worth substantially more than the values concluded in this Report.[38] We address these items in Section VII. We note that these materials cannot be relied

[31] Doc 54 (DEFENDANTS0002057)
[32] Doc 54 (DEFENDANTS0002057)
[33] Doc 14 (DEFENDANTS0008841)
[34] Doc 55 (DEFENDANTS0001751)
[35] Doc 56 (DEFENDANTS0067102)
[36] Doc 56 (DEFENDANTS0067102)
[37] Doc 56 (DEFENDANTS0067102)
[38] See, e.g., Doc 1 (DEFENDANTS0067294), ¶ 122, and Doc 11 (DEFENDANTS0001728)


© 2026 CONSOR®, La Jolla, CA

upon when determining fair market value. They do not actually calculate the fair market value of the company, nor do they include binding offers to purchase the company for those, or any, amounts. They are instead highly speculative hopes for what might occur in the future if the company thrived. That, unfortunately, did not occur, and in fact Compass Coffee declared bankruptcy and sold substantially all of its assets in a bankruptcy sale.

### D. Valuation Context and CONSOR's Assignment

In rendering our opinion regarding the value of Compass Coffee and Mr. Suarez's membership interest, CONSOR has independently assessed the above information, including the Company's historical financial performance, financial condition, management and market-based projections, market transaction evidence, cost of capital, and expected cash flows as of December 31, 2021. Unlike the best-case-scenario value speculations cited in the Complaint, our analysis is based on the Company's actual operating results through the Valuation Date, including the fact that Compass Coffee had never generated positive operating income and was decimated by COVID, which materially harmed the company's financial picture. Nonetheless, where possible and as noted below we have adopted generous assumptions, conservatively erring toward a higher value conclusion that favors both Compass Coffee and Mr. Suarez.

## III. VALUATION METHODOLOGIES[39]

When determining the fair market value of an enterprise, we consider each of the different valuation methodologies, in light of the information available and specific circumstances, in order to determine the best method for ascertaining value. Traditional methodologies commonly used to determine value are: the income approach, the market approach, and the cost approach. Whenever possible, we find it advantageous to utilize more than one approach to determining value, as doing so provides an opportunity to test the reasonableness of the assumptions and conclusions.

Each approach measures value from a different perspective and may be more or less appropriate depending on the nature of the company being valued, the information available, and the purpose of the valuation. In this Matter, the objective is to determine the fair market value of Compass Coffee as a going concern as of December 31, 2021. Accordingly, we considered each of the traditional valuation approaches before determining which methodologies were most appropriate under the facts and circumstances of this case.

### Income Approach

The income approach finds enterprise value based on the present value of the future economic benefits expected to be generated by the business. The most common form of the income approach is the discounted cash flow (DCF) method, which converts projected

[39] See, generally, PwC on valuation approaches, techniques, and methods.


© 2026 CONSOR®, La Jolla, CA

future cash flows into present value through the application of a discount rate that reflects the risks associated with achieving those cash flows.

Regardless of the specific methodology employed, an income-based valuation generally requires three principal components:

1. A forecast of future operating performance and cash flows;
2. A discount rate that reflects the risk of the projected cash flows; and
3. An estimate of value beyond the explicit forecast period, i.e., the terminal value.

The income approach is often viewed as one of the most comprehensive methods of valuing an operating business because it directly incorporates company-specific expectations regarding growth, profitability, capital structure, and risk.

For Compass Coffee, the income approach using a DCF analysis is relevant given the Company's robust historical financial data, the availability of industry data, and details surrounding Compass Coffee's growth plans.

**Market Approach**

The market approach concludes enterprise value by reference to actual transactions involving comparable businesses or to valuation multiples observed in public markets. The underlying premise is that the value of a business can be inferred from the prices paid by market participants for similar enterprises operating in similar industries.

Common market-based metrics include enterprise value-to-revenue multiples, enterprise value-to-EBITDA multiples, enterprise value-to-EBIT multiples, and other measures derived from operating performance. The reliability of the market approach depends heavily on the availability of sufficiently comparable companies or transactions and on the analyst's ability to account for differences in size, profitability, growth potential, risk profile, and market conditions.

For Compass Coffee, the market approach is particularly relevant because there exists a meaningful body of transaction data involving coffee shops, cafés, snack and nonalcoholic beverage operators, and other food-service businesses.

**Cost Approach**

The cost approach estimates value based on the economic principle of substitution, which assumes that a rational market participant would not pay more for an asset or business interest than the amount required to obtain or create an asset of comparable utility. Under this approach, value is measured by the current cost to replace the service capacity or economic utility provided by the subject asset, adjusted for any forms of depreciation or obsolescence.

When applying the cost approach, valuation professionals generally consider the cost required to recreate or replace the subject asset using current technology, processes,


© 2026 CONSOR®, La Jolla, CA

and market conditions. Adjustments are then made to account for physical deterioration, functional or technological obsolescence, and economic obsolescence arising from external market factors. The cost approach reflects the amount that would currently be required to obtain an asset capable of providing equivalent utility.

The Cost Approach is most commonly applied to tangible assets and other assets that can be readily replaced or reproduced, such as machinery, equipment, buildings, and certain internally developed assets. While the methodology can provide a useful indication of value in circumstances where replacement costs are readily measurable, it is generally less useful for valuing operating enterprises whose value is derived primarily from future earnings. Accordingly, although the cost approach was considered for use in our analysis, it was not relied upon in determining the fair market value of Compass Coffee as a going concern.

**Methodologies Relied Upon**

For the reasons stated above, we relied on the income approach through a DCF analysis and the market approach through a market multiple analysis.

## IV. VALUATION ANALYSIS

We have adopted December 31, 2021 as the Valuation Date for the analysis set forth in this Report. That date falls within the contractual notice period, corresponds to the Company's fiscal year end, and is the closest fiscal year end to the November 15, 2021 exercise date, ensuring the analysis reflects a complete set of annual financial statements. The company likely had the same value on November 15, 2021 as it had on December 31, 2021 and there is much more information available for that date, justifying its use. If we had to use November 15, 2021, it is unlikely the valuation would materially change.

### A. Historical Financial Performance

Compass Coffee's operating history through the Valuation Date can be divided into two distinct periods. From 2016 through 2019, the Company grew rapidly, with total revenue increasing from $5,248,039 in 2016 to $14,835,705 in 2019, a compound annual growth rate of 41%.[40] Growth was driven primarily by café expansion, with café sales rising from $3,510,227 to $11,662,398 over the same period, supplemented by wholesale, ecommerce, consumer packaged goods, and foodservice channels.[41]

The second period begins with the onset of COVID-19 pandemic in approximately March 2020. Total revenue declined more than one third, 35.4%, in 2020, to $9,582,122, as café traffic collapsed.[42] Revenue remained largely flat in 2021, increasing 2.4% to $9,812,955.[43]

---

[40] Doc 4 (DEFENDANTS0021336)
[41] Doc 4 (DEFENDANTS0021336)
[42] Doc 4 (DEFENDANTS0021336)
[43] Doc 4 (DEFENDANTS0021336)


© 2026 CONSOR®, La Jolla, CA

However, more significantly, Compass Coffee failed to generate positive earnings in any year of its operating history. Earnings before interest, taxes, depreciation, and amortization (EBITDA) were negative in each year from 2016 through 2021, and the magnitude of losses widened over time, from negative $358,664 in 2016 to negative $3,054,727 in 2021.[44] The Company reported a net loss in each of those six years, aggregating approximately $15 million in cumulative net losses.[45] Compass Coffee's EBITDA from 2016 to 2021 can be seen below in Figure 3.

**Figure 3.**




As evidenced by the chart above, Compass Coffee's EBITDA only grew more negative over the past five operating years preceding the Valuation Date. Despite showing little indication that the Company would turn positive within the foreseeable future, we project EBITDA to swing nearly $4 million in one year, turning positive in 2022. This assumption is extremely favorable to the company and Mr. Suarez by crediting management projections of a prompt turnaround in Compass Coffee's business that are inconsistent with the company's historical financial data and trajectory. If projections consistent with Compass Coffee's historical performance were used, it would result in a materially lower valuation.

### B. Balance Sheet and Capital Structure

As of December 31, 2021, Compass Coffee reported total assets of approximately $15.7 million and total liabilities of approximately $19.9 million, resulting in negative book equity of approximately $4.2 million.[46]

The Company's balance sheet was concentrated in fixed assets, primarily leasehold improvements, roasting and packaging equipment, café equipment, and furniture and

---

[44] Doc 4 (DEFENDANTS0021336)
[45] Doc 4 (DEFENDANTS0021336)
[46] Doc 4 (DEFENDANTS0021336)


© 2026 CONSOR®, La Jolla, CA

fixtures, which carried a book value of approximately $10.3 million.[47] Current assets totaled approximately $5.2 million, and long-term assets totaled approximately $140,000.[48] Notably, the Company's cash position at the Valuation Date was substantially attributable to pandemic relief proceeds rather than to cash generated by operations, a point reinforced by the fact that operating results were negative throughout the period.[49]

As of December 31, 2021, the Company's liabilities included approximately $2.9 million of current liabilities and approximately $17.0 million of long-term liabilities. Taken together, these balances indicate that Compass Coffee was materially leveraged at the Valuation Date and operated with negative book equity.

### C. Discounted Cash Flow Analysis

#### 1. Revenue Forecast

The revenue forecast underlying our DCF analysis begins with management's own projections. For 2022 and 2023, we adopted projected total revenues of $17,058,266 and $24,194,917.[50] These figures imply revenue growth of 73.8% in 2022 and 41.8% in 2023. While we used these projections, we note they are extremely aggressive. And, as noted in Section V, Compass Coffee's financial results never reached these levels.

In context, the growth rates used in our analysis are very generous. A 73.8% single-year increase exceeds any growth rate Compass Coffee achieved since at least 2016 through the Valuation Date, including the 55.2% increase recorded in 2017, which came off a smaller revenue base.[51] The projections also assume that Compass Coffee would surpass its 2019 pre-pandemic revenue peak of $14.8 million within a single year, notwithstanding that 2021 revenue had recovered only 2.4% from the pandemic dip and the market forces responsible for that dip, including Covid-related work-from-home policies, particularly among the federal workforce, had not abated.[52] When measured against the industry, the contrast is stark. IBISWorld projects that revenue for the Coffee and Snack Shops industry as a whole would grow at an annualized rate of 1.9% from 2021 through 2026.[53] Management's forecast therefore assumes that Compass Coffee would materially outperform its industry, and its own history, in the two years immediately following the Valuation Date. These growth rate assumptions are extremely favorable to the company and Mr. Suarez, as use of industry-standard revenue growth rates would result in a materially lower valuation.

---

[47] Doc 4 (DEFENDANTS0021336)
[48] Doc 4 (DEFENDANTS0021336)
[49] Doc 4 (DEFENDANTS0021336)
[50] Exhibit 6
[51] Exhibit 7
[52] Exhibit 6
[53] Founded in 1971, IBISWorld provides trusted industry research on thousands of industries worldwide. [Its] in-house analysts leverage economic, demographic and market data, then add analytical and forward-looking insight, to help organizations of all types make better business decisions," (see here and Doc 5 (DEFENDANTS0067581)).


© 2026 CONSOR®, La Jolla, CA

We extended the forecast period through 2026 by linearly tapering revenue growth from management's projected rates to a long-term terminal growth rate of 2.3% by 2026.[54] The selected 2.3% terminal growth rate exceeds both IBISWorld's 1.9% projected industry growth rate and the 1.9% 30-year treasury yield as of December 31, 2021, and therefore represents an optimistic assumption.[55] The resulting forecast produces total revenue of $31,130,915 in 2024, $35,955,407 in 2025, and $36,792,338 in 2026. By the final year of the forecast period, Compass Coffee is assumed to generate nearly four times its 2021 revenue and approximately two and a half times its 2019 pre-pandemic peak.[56] Historical and projected revenues and corresponding growth rates for Compass Coffee from 2016 through 2026 can be seen in the Figure below.

**Figure 4.**[57]




We note that management's projections were made during a period in which Compass Coffee was actively seeking capital.[58] We have accepted those projections for the two years in which they were available, and have adopted a growth trajectory thereafter that remains well above industry expectations for the balance of the forecast period. Each of these assumptions operates in the direction of a higher indication of value.

### 2. Profitability and Free Cash Flow

We held gross margin constant at 69.6% of revenue throughout the forecast period. This is consistent with management's projections for 2022 and 2023 and in line with the 69.8% and 68.5% margins the Company actually achieved in 2021 and 2020. It is also meaningfully above the 66.0% median gross profit margin observed across comparable transactions in the industry, including being more than 50% higher than the industry gross

[54] Exhibit 6
[55] Doc 5 (DEFENDANTS0067581) and Doc 16 (DEFENDANTS0067409)
[56] Exhibit 6
[57] Exhibit 6 and Exhibit 7
[58] See, e.g., Doc 27 (DEFENDANTS0001916).


© 2026 CONSOR®, La Jolla, CA

profit margins reported by IBISWorld.[59] The forecast therefore assumes that Compass Coffee sustains a best-in-class gross margin while simultaneously quadrupling revenue.

Management's projections further indicate a rapid recovery of the Company's operating losses. EBITDA is projected to swing from negative $3,054,727 in 2021 to positive $3,555,690 in 2023, an improvement of approximately $6.6 million over two years.[60] For the years beyond management's forecast, we held the EBITDA margin at 9.7%, exceeding peer companies identified through both BVR and IBISWorld.[61] At the operating profit level, we normalized the EBIT margin to 4.5% from 2024 forward, consistent with industry profit margin expectations reported by IBISWorld from 2021 to 2026.[62]

We applied an effective tax rate of 27.52% to projected operating profit, comprising the 21% federal corporate rate and the 8.25% District of Columbia franchise tax rate applicable to the Company's operations.[63]

We projected net working capital using Compass Coffee's historical and two-year projected net working capital.[64] For 2022 and 2023, projected net working was $1.5 million and $1.75 million, respectively, resulting in changes in net working capital of negative $824,875 in 2022 and $250,000 in 2023.[65] Beginning in 2024, we applied historical average and two-year projected net working capital of 2.9% of revenue, resulting in projected net working capital of $895,798 in 2024, $1,034,624 in 2025, and $1,058,707 in 2026. The corresponding changes in net working capital are negative $854,202 in 2024, positive $138,826 in 2025, and positive $24,083 in 2026.[66]

For each year in the projection period, including 2022 and 2023, we conservatively normalized capital expenditures (CapEx) to a maintenance CapEx by assuming no net change in property, plant, and equipment and calculating CapEx as depreciation plus amortization.[67]

### 3. Discount Rate and Terminal Value

We discounted projected free cash flows at a weighted average cost of capital of 19.4%, in accordance with Kroll's Cost of Capital Navigator industry benchmarking dataset for Global Industry Classification System (GICS) 25301040.[68] The selected discount rate is as of December 31, 2021 and reflects the median CAPM plus size premium cost of capital indication for companies in the High-Financial-Risk group of companies, which we

---

[59] Doc 5 (DEFENDANTS0067581) and Doc 7 (DEFENDANTS0067629)
[60] Exhibit 7
[61] Doc 5 (DEFENDANTS0067581), Doc 7 (DEFENDANTS0067629), and Doc 9 (DEFENDANTS0067914)
[62] Doc 5 (DEFENDANTS0067581)
[63] See Exhibit 2
[64] Exhibit 8
[65] Exhibit 6
[66] Exhibit 6
[67] Exhibit 6
[68] GICS 25301040 represents restaurants in the U.S. (Doc 6 (DEFENDANTS0067628)).


© 2026 CONSOR®, La Jolla, CA

concluded as reasonable given the Company's unprofitability issues and highly leveraged balance sheet historically faced by the Company.[69]

We calculated the terminal value by applying a terminal growth rate of 2.3%, which reflects the historical long-term rate of inflation through 2021. That rate exceeds the 1.9% annualized revenue growth projected by IBISWorld for the Coffee and Snack Shops industry through 2026 and the 1.9% 30-year treasury yield reported as of December 31, 2021.[70] We are therefore assuming that Compass Coffee would grow in perpetuity at a rate above the expected long-run growth of the industry and the economy.

Cash flows were discounted using a mid-year convention. The resulting terminal value of $7,048,552 has a present value of $3,173,807.

### 4. Discounted Cash Flow Analysis Conclusion

Applying the foregoing assumptions, projected unlevered free cash flow starts at negative $127,033 in 2022, and concludes at $1,175,977 in 2026. The present value of the forecast period cash flows is $3,343,349, and the present value of the terminal value is $3,173,807, indicating an enterprise value for Compass Coffee of:[71]

| Discounted Cash Flow Analysis Summary | |
|---|---|
| **Compass Coffee Value Conclusion** | |
| PV of Free Cash Flows | $3,343,349 |
| PV of Terminal Value | $3,173,807 |
| **Fair Market Value of Compass Coffee** | **$6,517,156** |

This valuation reflects full credit for management's projected recovery and growth. It assumes that a company that has never generated positive EBITDA and that lost approximately $15 million cumulatively over six years, would achieve positive EBITDA within twelve months of the Valuation Date, reach industry-median profitability by 2024, and sustain that performance indefinitely thereafter. Again, each of those assumptions is favorable to a higher valuation conclusion and each did not in fact occur.

## D. Market Multiple Analysis

### 1. Selection of Comparable Transactions

To develop our market approach value assessment, we searched Business Valuation Resources' (BVR) DealStats database for transactions involving comparable

[69] Kroll classifies companies as high-financial-risk if they are "losing money, have high leverage, or are in bankruptcy," (Doc 17 (DEFENDANTS0067411)).
[70] Doc 5 (DEFENDANTS0067581) and Doc 16 (DEFENDANTS0067409)
[71] Exhibit 3


© 2026 CONSOR®, La Jolla, CA

businesses.[72] We utilized the following search criteria to identify comparable business transactions:

- NAICS Code: 722515, encompassing Snack and Nonalcoholic Beverage Bars;
- Sale Date: Prior to December 31, 2021;
- Latest Fiscal Year Net Income: Less than $0.

These criteria produced a set of 145 transactions.[73] Because Compass Coffee had not generated positive net income in any year of its operating history, we restricted the comparable transaction set to businesses that were similarly unprofitable at the time of sale. Buyers pricing an unprofitable business apply materially different multiples than those applied to profitable operators, and the resulting dataset ensures that the valuation multiples reflect the risk profile and financial condition of a business in Compass Coffee's circumstances.

### 2. Selected Market Multiples

We considered valuation multiples from three observation periods: the trailing one-year period, the trailing five-year period, and the full historical transaction dataset. For each period, we reviewed both average and median revenue and gross profit multiples. Typically, the median is viewed as the more robust measure because it reduces the influence of outliers that may not be representative of the broader population. When comparing the average and median values from each period, the presence of outliers becomes apparent, particularly within the shorter observation periods.

Summary statistics for the trailing one-year period, comprised of 12 transactions, are presented below:[74]

**Figure 5.**

| Summary Statistics - 1-Yr (where disclosed) | | |
|---|---|---|
| **Multiple Basis:** | **Revenue** | **Gross Profit** |
| First Quartile | 0.31 | 0.45 |
| Average | 0.76 | 1.42 |
| **Median** | **0.39** | **0.64** |
| Third Quartile | 0.68 | 1.96 |

[72] "BVR's flagship product, DealStats (formerly Pratt's Stats), is the largest database of complete, auditable private and public company financial statements and deal terms in the world. [Its] data and methodologies are also the basis for countless partnership agreements, buy-out terms, fairness opinion, and other business agreements where interested parties must come to terms on the value of privately-owned business assets," (see https://www.bvresources.com/about).
[73] Exhibit 5
[74] Doc 7 (DEFENDANTS0067629)


© 2026 CONSOR®, La Jolla, CA

Summary statistics for the trailing five-year period, comprised of 45 transactions, are presented below:[75]

**Figure 6.**

| Summary Statistics - 5-Yr (where disclosed) | | |
|---|---|---|
| **Multiple Basis:** | **Revenue** | **Gross Profit** |
| First Quartile | 0.18 | 0.38 |
| Average | 0.45 | 0.88 |
| **Median** | **0.32** | **0.57** |
| Third Quartile | 0.49 | 0.98 |

Despite the preference of utilizing the median observation, we elected to rely on the average multiples derived from the full historical dataset. The full-period dataset contains the largest number of observations and therefore reflects the broadest range of market transactions available for the analysis. While expanding the dataset generally increases the diversity of underlying transactions, it also reduces the influence of any single transaction on the overall result.

We recognize that reliance on average multiples instead of median multiples generally results in a higher indication of value, as the averages remain influenced by the upper end of the transaction distribution, which increases the average multiple. Nonetheless, we conservatively relied on the full-period averages because they account for the largest dataset and therefore incorporate the greatest amount of observable market evidence. We utilized market multiples of 0.47 times net sales and 0.94 times gross profit.[76] Summary statistics for the full BVR transaction set can be seen below, in Figure 7.

**Figure 7.**

| Summary Statistics - All-Time (where disclosed) | | |
|---|---|---|
| **Multiple Basis:** | **Revenue** | **Gross Profit** |
| First Quartile | 0.27 | 0.47 |
| **Average** | **0.47** | **0.94** |
| Median | 0.40 | 0.68 |
| Third Quartile | 0.59 | 1.05 |

We considered but did not apply the enterprise value multiples reported by Kroll's Cost of Capital Navigator for publicly traded restaurant companies, which reflected a median enterprise value to sales multiple of 1.7 times on a five-year average basis.[77] As those multiples reflect the pricing of large, liquid, profitable public companies, we concluded that they are not an appropriate measure of value for a privately held, loss-generating enterprise of Compass Coffee's size.

---

[75] Doc 7 (DEFENDANTS0067629)
[76] Exhibit 5
[77] Doc 6 (DEFENDANTS0067628)


© 2026 CONSOR®, La Jolla, CA

Because Compass Coffee generated negative EBIT and negative EBITDA in 2021, earnings-based multiples were not applicable. In an effort to be conservative, we relied on revenue and gross profit as the basis for these valuation multiples, giving equal weighting to each multiple base.

The use of both revenue and gross profit multiples provides a useful reasonableness check on value. While revenue measures the Company's scale of operations, gross profit accounts for differences in gross margin performance and operating efficiency. Considering both metrics reduces the risk that the valuation is unnecessarily influenced by any single measure and supports a more balanced indication of value.

### 3. Market Multiple Analysis Conclusion

Applying the selected multiples to Compass Coffee's 2021 results produces two indications of enterprise value. Applying the 0.47 times net sales multiple to 2021 revenue of $9,812,955 yields an implied enterprise value of $4,613,239. Applying the 0.94 times gross profit multiple to 2021 gross profit of $6,845,622 yields an implied enterprise value of $6,467,303.[78]

Applying equal weight to the revenue and gross profit multiples, we concluded at their midpoint, resulting in an enterprise value conclusion of:[79]

| **Market Multiple Analysis Summary - Value of Compass Coffee** | |
|---|---|
| *Based on Revenue Multiples* | |
| Compass Coffee Revenue (2021) | $9,812,955 |
| x Revenue Multiple | 0.47 |
| **Value of Compass Coffee** | **$4,613,239** |
| *Based on Gross Profit Multiples* | |
| Compass Coffee Gross Profit (2021) | $6,845,622 |
| x Gross Profit Multiple | 0.94 |
| **Value of Compass Coffee** | **$6,467,303** |
| **Midpoint - Fair Market Value of Compass Coffee** | **$5,540,271** |

## E. Reconciliation of Valuation Approaches

The discounted cash flow analysis and market multiple analysis produced value indications of $6,517,156 and $5,540,271, respectively. These two approaches produced a difference of only $976,885, despite being methodologically independent.

[78] Exhibit 5
[79] Exhibit 5


© 2026 CONSOR®, La Jolla, CA

We find it most reasonable to give equal weighting to the two approaches, concluding at the midpoint of $6,028,714. We determined that equal weighting was appropriate because of the unique strengths and limitations of each approach. Namely, the income approach captures the Company's specific expansion plans, risk profile, and capital structure, but depends heavily on management projections prepared during a capital-raising period. Conversely, the market approach is based on observed arm's-length pricing from a large population of comparable snack and beverage operators, though comparable transactions vary widely in size and include a number of broker-reported transactions with limited disclosure. For these reasons, we conclude that neither approach independently warrants exclusive reliance and the most reasonable indication of value is therefore the midpoint.

### F. Value of Mr. Suarez's Membership Interest

Our conclusion of the value of Mr. Suarez's membership interest of 114,305 Common Units in Compass Coffee is straightforward. Because Compass Coffee's debt load at the time of the valuation ($10,220,760)[80] exceeds our conclusion of the fair market enterprise value of Compass Coffee, we conclude that equity interests like Mr. Suarez's had no value as of the Valuation Date.

## V. SUBSEQUENT EVENT CONSIDERATIONS

CONSOR's conclusion is corroborated by several qualitative considerations. As a threshold matter, we note that under the fair market value standard, value is determined based on facts and information known or reasonably knowable as of the Valuation Date.[81] The matters discussed in this Section (several of which post-date December 31, 2021) are therefore not determinative of the value we have concluded, and we have not relied upon them in reaching our opinion. We discuss them because they are directionally corroborative of our opinion and because they bear on the unreasonableness of the competing valuation figures previously presented by Plaintiff, which we address in Section VII.

First, Compass Coffee never achieved profitability. The Company generated negative EBITDA in every year of its operating history from 2016 through the Valuation Date, and it never produced positive operating income. Compass Coffee was unable to operate without infusions of capital, we understand largely from Robert Haft and his family's personal financial support,[82] and would not have been viable as a going concern without those infusions of capital given Compass Coffee's lack of success in attracting outside capital. A going-concern value materially beyond the values concluded above would require the market to pay a substantial premium for a business that had never, in any year, demonstrated the ability to convert its revenue into profit. Compass Coffee's most profitable year was 2022, when it still lost approximately $100,000. The Company went on to lose about $3.2 million in 2023, $2.8 million in 2024, and $4.4 million in 2025.[83] Even

---

[80] Doc 28 (DEFENDANTS0002023), Exhibit 1
[81] See, e.g., Doc 2 (DEFENDANTS0067423)
[82] See, e.g., Doc 57 (DEFENDANTS0063844) through Doc 136 (DEFENDANTS0063830)
[83] Doc 49 (DEFENDANTS0063818) and Doc 165 (DEFENDANTS0025526)


© 2026 CONSOR®, La Jolla, CA

beyond the Valuation Date, the Company's best-case outcome for a given year was simply losing less than several million dollars, a clear indicator of a failing business.

Second, Compass Coffee's subsequent history is consistent with an even more modest valuation as of the Valuation Date. It is our understanding that Compass Coffee was forced to file for bankruptcy protection by January 2026 and ceased operation as an independent going concern while its assets were acquired by Caffé Nero in February 2026 for approximately $4.55 million.[84] That figure is well below the enterprise value we have concluded as of December 31, 2021, and is consistent with a company that never established durable profitability.

Taken together, these considerations corroborate the conclusion that Compass Coffee, as of the Valuation Date, is an unprofitable, capital-constrained enterprise whose fair market value lies in the single-digit millions rather than tens of millions of dollars, or even the hundreds of millions of dollars that Mr. Suarez has contended. The fact that Compass Coffee's equity holders will receive nothing in Compass Coffee's bankruptcy[85] likewise corroborates our conclusion about the value of Mr. Suarez's membership interest as of the Valuation Date.

## VI. PLAINTIFF'S CRITIQUES OF GSG'S 2022 REPORT

We understand that Plaintiff takes issue with GSG's 2022 Report that valued Mr. Suarez's membership units. We have independently reviewed GSG's report, as well as Plaintiff's critiques of it, and find that the report complies with the requirements of Compass Coffee's Operating Agreement, and that Mr. Suarez's critiques lack merit.

### 1. GSG's Report Complied with the Operating Agreement

After reviewing Mr. Faunce's credentials, he is qualified to conduct the valuation reflected in the 2022 Report.[86] He is an Accredited Senior Appraiser with the American Society of Appraisers and a Certified Valuation Analyst with the National Association of Certified Valuation Analysts.[87] His education, background, and experience are consistent with those credentials. Most importantly, Mr. Faunce and GSG satisfied the sole criteria stated in the Operating Agreement: that the valuation be conducted by a valuation firm (or accountant, or accounting firm) selected by the Founders.[88]

Mr. Faunce also conducted the valuation called for by the Operating Agreement, a determination of the Fair Market Value of the Units held by Plaintiff (for the Company as a whole, and without any liquidity discounts, minority discounts, or lack of marketability for a closely held entity). Our independent review of Mr. Faunce's report confirms he performed his calculations consistent with these requirements. Specifically, Mr. Faunce

---

[84] Doc 18 (DEFENDANTS0067104), Section 2.5(a) (cash consideration for all Compass assets listed as $4,550,000).
[85] Doc 48 (DEFENDANTS0067250), ¶ 10
[86] Doc 137 (DEFENDANTS0067273)
[87] Doc 137 (DEFENDANTS0067273)
[88] Doc 11 (DEFENDANTS0001728) and Doc 14 (DEFENDANTS0008841), Section VI.10


© 2026 CONSOR®, La Jolla, CA

expressly conducted his analysis in accordance with the fair market value standard; his valuation was conducted at the enterprise level, where enterprise value was determined utilizing multiple accepted valuation approaches; it considered the Company's capital structure and liquidation waterfall contained in the Operating Agreement;[89] and the $163,433 ascribed to Mr. Suarez's Company units is done without discounts.[90] Indeed, if we were to fault Mr. Faunce's report in any way, it would be that it is overly favorable to Compass Coffee and Mr. Suarez due to its overly aggressive revenue growth and long term growth rate.

In sum, we believe GSG complied with the Operating Agreement's requirements in rendering the statements of value reflected in its report.

### 2. Plaintiff's Critiques of the GSG Report Lack Merit

We have reviewed Plaintiff's and his attorneys' critiques of Mr. Faunce's report and find they do not have merit.

Mr. Suarez faults Mr. Faunce's report on a number of grounds, none of which is a reasonable basis to conclude Mr. Faunce erred, including:

- Claiming without explanation that Mr. Faunce valued the wrong interest when in fact Mr. Faunce valued Mr. Suarez's 114,305 common units as reflected in the Operating Agreement.[91]

- Claiming the 2022 Report utilized discounts for lack of marketability and control, when it did not. To the contrary, review of the 2022 Report makes clear Mr. Faunce did not apply those discounts to Mr. Suarez's membership interest.[92]

- Claiming GSG omitted adjustment for equity held in Union Kitchen, when in fact the book value of that investment is reflected as a nonoperating asset on Compass Coffee's balance sheet[93] and, due to management's representations about Union Kitchen at the time,[94] we understand any adjustment would have resulted in the book value of that investment going to zero, meaning if anything this purported error is in favor of Compass Coffee and Mr. Suarez.

- Seeking to fault GSG for using "assets in an asset sale" as a basis for the valuation when that method is not inconsistent with anything in the Operating Agreement[95] and in fact favors Mr. Suarez by maximizing the value of any equity interest.

- Claiming GSG used inconsistent valuation methods when Mr. Faunce performed calculations under the discounted cash flow, guideline public company, and

[89] Doc 14 (DEFENDANTS0008841), Section VII.2
[90] Doc 28 (DEFENDANTS0002023)
[91] Doc 14 (DEFENDANTS0008841), p. 48
[92] Doc 28 (DEFENDANTS0002023), Exhibit 1 (*see* "Founders" column at "Level of value adjustment")
[93] Doc 28 (DEFENDANTS0002023), Exhibit 5.1
[94] Doc 161 (DEFENDANTS0019576) at 2, question 3b
[95] Doc 14 (DEFENDANTS0008841), Section VI.10


© 2026 CONSOR®, La Jolla, CA

comparable company transactions methods and then solely used discounted cash flow result without weighting.[96] This is in favor of Mr. Suarez and is not inconsistent with anything in the Operating Agreement.[97]

- Seeking to fault GSG for using a put option for lack of marketability when that measure was not used on Mr. Suarez's membership interest. [98]

- Seeking to fault GSG for using growth rates and terminal growth rates that reflect market data rather than Compass Coffee's optimistic investor projections when the use of market data rather than growth projections shared with external investors is the norm used in such valuations. Moreover, Mr. Faunce used revenues[99] that in fact were taken from Compass Coffee projections and the actual growth rates used reflected those projections, which was in Compass Coffee's and Mr. Suarez's favor.

- Seeking to fault Mr. Faunce for using incorrect public company market multiples rather than a representative sample of comparable companies when Mr. Faunce's use of that metric is consistent with normal procedure and is not contrary to the terms in the Operating Agreement. We see nothing incorrect or objectionable in the criteria Mr. Faunce used to select guideline public companies or his adjustments to those metrics[100] and we see nothing improper about those criteria or Mr. Faunce's adjustments.[101]

- Seeking to fault Mr. Faunce for not disclosing the actual companies used for comparison when the guideline public companies are clearly disclosed[102] and the criteria for private companies is clearly identified. [103] The DealStats database frequently redacts the name of such companies and it is not a valid ground for critique.

- Seeking to fault Mr. Faunce for not listing goodwill as an asset. This fundamentally misapprehends what goodwill is. Goodwill is the residual value that reconciles the book value of a company with the market value. To the extent Compass Coffee had any goodwill, it would be accounted for in Mr. Faunce's measure of market value. It does not make sense to say leaving out goodwill artificially deflated the book value of the company when the purpose of Mr. Faunce's report was to establish the market value of Compass Coffee, which was calculated independent of its book value.

---

[96] Doc 28 (DEFENDANTS0002023)
[97] Doc 14 (DEFENDANTS0008841), Section VI.10
[98] Doc 28 (DEFENDANTS0002023), Exhibit 2
[99] Doc 28 (DEFENDANTS0002023), Exhibit 2
[100] Doc 28 (DEFENDANTS0002023), Exhibit 3.1 note a
[101] Doc 28 (DEFENDANTS0002023), Exhibit 3.1 note b
[102] Doc 28 (DEFENDANTS0002023), Exhibit 3.1
[103] Doc 28 (DEFENDANTS0002023), Exhibit 4.1 note a


© 2026 CONSOR®, La Jolla, CA

- Seeking to fault Mr. Faunce for using actual revenue data rather than prospective statements made in interviews and investor presentations. In relying on the actual earnings, rather than puffery, Mr. Faunce acted consistently with professional practice.

- Seeking to fault Mr. Faunce for not adjusting for miscellaneous incomes or losses for non-recurring items when making adjustments for Compass Coffee's significant past losses would not have been relevant to Mr. Faunce's calculation, since he based his conclusions about value on management projections that had the company making a profit.

- Claiming Mr. Suarez was not consulted about the inputs provided to GSG when, in reality, Mr. Suarez actively participated in the process and provided documents for Mr. Faunce to consider.[104]

Plaintiff's Complaint, signed by his newest attorneys, faults Mr. Faunce's report for projecting increased capital expenditures, a stagnant profit margin, and an immediate "terminal growth rate" that is equivalent to the macro economy.[105] They claim none of these metrics is appropriate for Compass Coffee based on its track record.[106] But consideration of Compass Coffee's track record, given its negative growth rate, could only have resulted in negative impacts on these measures.

Plaintiff's Complaint also faults Mr. Faunce's cost of capital assumptions and future equity-to-debt assumptions made in the report.[107] We see nothing improper in Mr. Faunce's calculation of Compass Coffee's cost of debt[108] or his weighting of equity and debt.[109] Again, if anything, Mr. Faunce's assumptions are generous to Compass Coffee, particularly given the Company's past performance and difficulty in securing loan financing from anyone but related parties.

In sum, none of Plaintiff's critiques of the GSG report are merited, and they do not change our opinion that GSG complied with the Operating Agreement.

## VII. PLAINTIFF'S VALUATION ASSERTIONS

We understand that Plaintiff contends Compass Coffee to be worth substantially more than the value concluded herein, pointing to valuations on the order of $75 million or more at the enterprise level.[110] Plaintiff further cites to figures drawn from a series of non-binding indications of interest and letters of intent, such as the GSG figures of $45.3 million and $43.3 million, the Series A price per unit, and unrealistic estimates advanced by third parties such as Caldera River Holdings and Juggernaut Capital Partners.[111] Upon

[104] Doc 11 (DEFENDANTS0001728) and Doc 53 (DEFENDANTS0001735)
[105] Doc 1 (DEFENDANTS0067294), ¶ 117
[106] Doc 1 (DEFENDANTS0067294), ¶ 117
[107] Doc 1 (DEFENDANTS0067294), ¶ 119
[108] Doc 28 (DEFENDANTS0002023), Exhibit 2.1 note b
[109] Doc 28 (DEFENDANTS0002023), Exhibit 2.1 note d
[110] Doc 1 (DEFENDANTS0067294), ¶ 59
[111] See, e.g., Doc 11 (DEFENDANTS0001728), Doc 19 and Doc 20.


© 2026 CONSOR®, La Jolla, CA

review of these documents, we find no evidence supporting a fair market value remotely approaching those figures, for several reasons.

Mr. Suarez points to GSG's 2020 Report as a basis to conclude Compass Coffee was worth more than GSG found in 2022. But that mistakes what GSG's 2020 Report was attempting to do. GSG's 2020 Report was devised for investor communications and based on Compass Coffee's internal projections.[112] In essence, it was a "best foot forward" calculation that gave the benefit of the doubt to management's aggressive hopes for the future of the business, without accounting for past performance or whether market conditions justified those hopes. The purpose of the 2020 Report was to calculate what Compass Coffee might possibly be worth if those projections and growth plans were realized.[113] Comparing GSG's 2020 Report to its 2022 Report is a mistake for this reason—it is comparing a management calculation for use in investor communications with a fair market valuation to determine the value of Mr. Suarez's shares consistent with the Operating Agreement.

The indications of interest and letters of intent Mr. Suarez relies on are also not a basis for determining actual value of the Compass Coffee enterprise. Each of these figures is drawn from non-binding, forward-looking negotiation documents rather than consummated transactions. The Juggernaut Capital Partners proposal (February 2020) references a $75.2 million enterprise value;[114] the Caldera River indication of interest (June 2021) references a $35 million pre-money enterprise value;[115] later, Caldera River speculated that a combined platform "could be valued at over $200 million" (January 2024);[116] the Aurify letter of intent (April 2024) references a $21 million target price;[117] and the Bluestone Lane indication of interest (January 2025) references a $20 to $30 million range.[118] Every one of these documents is expressly non-binding, subject to due diligence and financing, and none resulted in a closed transaction at the stated value.

In fact, Juggernaut itself later reinforced this sentiment, commenting that its February 2020 proposal was no indication of fair market value and was made well-before Compass Coffee had shared its financials.[119] Juggernaut also represented that had it seen that the Company was operating at a negative profit, Juggernaut would have ended all discussions immediately.[120] Juggernaut further noted that out of all the proposals that it issues, like the proposal it issued to the Company, only about 15% of proposals proceed to the final stages of due diligence, and only about 3% of proposals close.[121] The rare deals that proceed to closing often do so at a fraction of the amount Juggernaut initially proposes.[122] The $75 million figure in Juggernaut's proposal to Compass Coffee was an

---

[112] Doc 27 (DEFENDANTS0001916), p. 2 and Exhibit 2, Note (a)
[113] Doc 27 (DEFENDANTS0001916), p. 2 and Exhibit 2, Note (a)
[114] Doc 19 (DEFENDANTS0001911)
[115] Doc 20 (DEFENDANTS0010042)
[116] Doc 21 (DEFENDANTS0010813)
[117] Doc 22 (DEFENDANTS0010275)
[118] Doc 23 (DEFENDANTS0010899)
[119] Per August 5, 2026 discussion with Chuck Dieveney, General Partner, Juggernaut Capital Partners.
[120] Per August 5, 2026 discussion with Chuck Dieveney, General Partner, Juggernaut Capital Partners.
[121] Per August 5, 2026 discussion with Chuck Dieveney, General Partner, Juggernaut Capital Partners.
[122] Per August 5, 2026 discussion with Chuck Dieveney, General Partner, Juggernaut Capital Partners.


© 2026 CONSOR®, La Jolla, CA

initial framing point only, and Juggernaut never reviewed any of the Company's financials.[123, 124]

Allen Tibshrany, Managing Partner at Calder River Holdings, similarly stated that indications, letters, and proposals of this nature do not constitute fair market value.[125] When asked whether he considered Caldera River's January 2024 letter of intent to present the fair market value of Compass Coffee, Mr. Tibshrany warranted that he would "not ever use the term 'Fair Market Value' for any of [Caldera River's] LOIs."[126] Interest documents of these kinds reflect aspirational negotiating positions, not the price at which a business actually changes hands, and they are not reliable evidence of fair market value.

Moreover, these figures rest on assumptions that never materialized. The Caldera River combined platform materials, for example, are premised on Compass Coffee rapidly expanding to well over one hundred café locations and generating $110 million or more in revenue, and on a "roll up" platform achieving $15 to $18 million of EBITDA.[127]

Mr. Suarez went further than any of these prospective documents and contended Compass Coffee's enterprise value was $320 million.[128] This figure is unjustifiable based on any objective criteria, and Mr. Suarez's methodology for getting to this inflated figure does not follow any recognized methodology for valuing an enterprise. Instead, Mr. Suarez pulled an inflated per-café estimate from investor presentations ($8.33 million) and then multiplied that number by the number of cafes Compass Coffee hoped to open through 2024.[129] Mr. Suarez then added another $60-120 million in value for Compass Coffee's consumer package goods,[130] a business segment Compass Coffee explored but abandoned because it found it to be unprofitable due to lack of sales.[131] Contrary to Mr. Suarez's contentions, a fair market valuation of a business enterprise is not derived from cherry-picked information from hopeful investor communications and presentations. A fair market valuation is a measure of the value of an enterprise based on what reasonable, willing buyers and sellers would transact for in the marketplace. In our experience, and in accordance with valuation principles, this is typically achieved through the use of widely accepted methodologies that incorporate relevant market data from reasonably comparable companies, not "back of the envelope" calculations using best-in-class figures.

In addition Mr. Suarez contended that his membership interest was worth the outrageous sum of $35,072,000. Mr. Suarez claimed this figure was derived by multiplying $16 million against 20 cafes and then adding the value of Compass Coffee's prospective consumer

---

[123] Per August 5, 2026 discussion with Chuck Dieveney, General Partner, Juggernaut Capital Partners.
[124] We have reached out to representatives of the additional firms and are awaiting return calls.
[125] Per August 7, 2026 discussion with Allen Tibshrany, Managing Partner, Caldera River Holdings.
[126] Per August 7, 2026 discussion with Allen Tibshrany, Managing Partner, Caldera River Holdings.
[127] Doc 21 (DEFENDANTS0010813)
[128] Doc 55 (DEFENDANTS0001751)
[129] Doc 55 (DEFENDANTS0001751)
[130] Doc 55 (DEFENDANTS0001751)
[131] Doc 138 (DEFENDANTS0067281)


© 2026 CONSOR®, La Jolla, CA

packaged good business which Kobre Kim valued at $60-$120 million.[132] We do not find this to be a reliable or widely accepted methodology for valuing a business.

Nothing in these nonbinding expressions of interest or Mr. Suarez's contentions about valuation change our conclusions about the value of Compass Coffee stated above.

## VIII. PLAINTIFF'S BRAND ASSERTIONS

We understand that, as part of this Matter, Plaintiff has also made assertions about the value and ownership of the Compass Coffee brand.[133] In general, a brand reflects the reputation, recognition, and associations that consumers attribute to a business, product, or service, which can influence purchasing behavior.

Our understanding is that the Compass Coffee brand was comprised of intellectual property, including copyrights and trademarks.

The value of a brand is usually some subset of the value of the enterprise owning it or making use of it in commerce. In fact, two of the most recognized methodologies for valuing brands include the relief from royalty approach and the purchase price allocation approach, which effectively allocate some portion of the subject enterprise's value to its brand. We are unaware of any valuation of Compass Coffee's brand conducted consistently with these methodologies, and we have not ourselves undertaken such a valuation to date.

It is commonplace for businesses to own the intellectual property composing their brands, which our review of the record indicates is the case here. However, it is also possible for the intellectual property to be owned by a company that licenses the brand to another company for use in its business. Common examples of such licenses include Disney licensing its Star Wars franchise intellectual property to the LEGO Group for use with the buildable toy blocks, or Warner Bros. licensing out its rights to the *Harry Potter* franchise to Universal Destinations & Experiences for use at The Wizarding World of Harry Potter at Universal Studios. Generally, in our experience, in situations in which a company uses intellectual property composing a brand owned by a third-party, there will be indications of such a brand licensing arrangement, including but not limited to:

- A royalty agreement granting the company permission to use the intellectual property and charging some royalty for the use;
- The company owning the intellectual property will report the property as an asset on its tax returns and books and records;
- The company making use of the intellectual property will *not* report the property as an asset on its tax returns and books and records;

---

[132] Doc 55 (DEFENDANTS0001751)
[133] *See, e.g.*, Doc 1 (DEFENDANTS0067294), ¶¶ 6, 16, 59, 115


© 2026 CONSOR®, La Jolla, CA

- The company owning the intellectual property will be listed as the owner of the property in USPTO and other government filings;

- The companies will report the arrangement in disclosures to potential investors.

### 1. The Purported Independent Value of Compass Coffee's Brand

As for the value of the Compass Coffee brand, we understand that Plaintiff contends it was worth as much as $34 million in 2020.[134] The arithmetic of Mr. Suarez's position is untenable. A company's brand is a component of the enterprise's value, not a multiple of it. Because Compass Coffee's financials are much less than that number, and because our analysis indicates a total enterprise value for Compass Coffee of approximately $6 million as of December 31, 2021 (a conclusion corroborated by the Company's sale of its entire business for approximately $4.76 million in bankruptcy),[135] it is not possible for the Compass Coffee brand to be worth $34 million or any similar figure. Intangible assets cannot be worth several times the value of the entire business of which they form a part.

The conclusion that Compass Coffee brand had little independent value is underscored by the value ascribed to it in the Caffé Nero transaction. We understand that Caffé Nero ascribed the Compass Coffee brand a value of only $50,000 in that sale.[136] We also understand that the acquirer stated that it is transitioning away from the Compass Coffee brand altogether by using the transitional branding "Compass by Nero" as a step toward full transition to Café Nero's own branding.[137] Thus, it is our understanding that Compass Coffee will discontinue operations under that name.[138] While this transaction post-dates the Valuation Date and is not a determinant of value as of December 31, 2021, it is directly relevant to the unreasonableness of Plaintiff's assertion that the brand alone was worth tens of millions of dollars, as discussed below.

Mr. Suarez points to GSG's 2020 figure as a brand valuation, but that is an incorrect characterization of GSG's report. As noted above, GSG's 2020 Report was not a brand valuation, but rather a value calculation based on Compass Coffee's internal projections.[139] GSG did not conduct a brand valuation, which would involve substantially more due diligence, research, and analysis. Plaintiff's citation to the "goodwill" value[140] found in the 2020 Report as reflecting the value of the Compass Coffee brand is likewise mistaken. That figure reflected GSG's calculation of Compass Coffee's "goodwill" assuming management projections of massive future growth were achieved, which in reality were not achieved. Goodwill is the value of an enterprise in excess of the assets, not the value of a brand.

---

[134] Doc 1 (DEFENDANTS0067294), ¶ 59
[135] Doc 18 (DEFENDANTS0067104), Schedule 2.9
[136] Doc 18 (DEFENDANTS0067104), Schedule 2.9
[137] https://www.bizjournals.com/washington/news/2026/03/25/compass-coffee-caffe-nero-dc-area.html and Doc 159 (DEFENDANTS0067248); *see also* Doc 164 (DEFENDANTS0067278)
[138] We have reached out to representatives of the Caffé Nero and are awaiting a return call.
[139] Doc 27 (DEFENDANTS0001916), p. 2 and Exhibit 2, Note (a)
[140] Doc 1 (DEFENDANTS0067294), ¶ 115


© 2026 CONSOR®, La Jolla, CA

## 2. The Purported Ownership of the Compass Coffee Brand

We understand the Compass Coffee brand consisted primarily of trademarks related to Compass Coffee and its proprietary coffee blends.[141]

We understand that Mr. Suarez contends the intellectual property comprising Compass Coffee's brand was not owned by Compass Coffee until August 2, 2018, when Michael Haft and Mr. Suarez's predecessor company HaftSuarez, LLC ("HaftSuarez") executed an assignment to Compass Coffee. Mr. Suarez contends in his Complaint that the assigned property included the intellectual property comprising Compass Coffee's brand.[142]

Based on our review, we find this contention lacks a credible basis in fact.

We understand HaftSuarez LLC was created by Michael Haft and Mr. Suarez to publish an e-book about brewing flavorful coffee at home.[143] We have seen no communications or other documents indicating they intended the company to operate as a branding company, a coffee shop, or operated HaftSuarez as such. Without such plans, HaftSuarez would have had no interest in developing a retail coffee brand it would not deploy. The facts show that HaftSuarez did not develop a retail coffee brand. The company also had no material revenue, including from the licensing of any brand assets. We only see minor revenue generated from the e-book.

We understand that Michael Haft and Mr. Suarez later created Compass Coffee LLC to operate as a coffee shop and wholesaler. Our review of the record is consistent with Compass Coffee owning its brand outright, rather than licensing it from a third-party such as HaftSuarez. Facts that support this conclusion include:

- There is no record of any licensing agreement between HaftSuarez and Compass Coffee indicating HaftSuarez charged Compass Coffee a royalty for use of the Compass Coffee intellectual property, which would be expected if Compass Coffee was making use of intellectual property owned by HaftSuarez.
- There is no record that disclosure was made to investors that HaftSuarez owned the intellectual property composing the Compass Coffee brand prior to October 2018, which would be a material fact we would expect to see disclosed in such circumstances.
- Compass Coffee, rather than HaftSuarez, at all times carried the intellectual property relating to the Compass Coffee brand on its books.[144]

---

[141] Doc 18 (DEFENDANTS0067104), Schedule 2.1(j)
[142] Doc 1 (DEFENDANTS0067294), ¶ 59
[143] Doc 139 (DEFENDANTS0007972) and Doc 140 (DEFENDANTS0022704)
[144] See, e.g., Doc 141 (DEFENDANTS0006358) through Doc 152 (DEFENDANTS0016297)


© 2026 CONSOR®, La Jolla, CA

- Compass Coffee, rather than HaftSuarez, at all times accounted for the intellectual property relating to the Compass Coffee brand on its tax returns.[145]

- Trademark filings with the USPTO list Compass Coffee, not HaftSuarez, as the owner of the Compass Coffee trademarks.[146] Mr. Suarez was the signatory on these records going as far back as November 25, 2013,[147] a time when he now contends HaftSuarez owned the brand.

- Even if HaftSuarez had been named the owner of the Compass Coffee trademarks in the USPTO trademark filings, there is no evidence that HaftSuarez ever used the trademarks in commerce, which is a prerequisite to obtaining trademark rights in the United States.

- While the initial contract with Story Ark, a company that assisted with development of the Compass Coffee brand, was contracted with HaftSuarez,[148] seven of the eight payments to StoryArk were made by Compass Coffee,[149] and the initial payment to StoryArk by HaftSuarez was subsequently booked on Compass Coffee's books.[150] Moreover, StoryArk's brand development work was fundamentally for Compass Coffee's benefit.

As discussed above, these facts are inconsistent with a scenario in which a branding company owns intellectual property used in another's business, and is inconsistent with Mr. Suarez's contention that HaftSuarez, rather than Compass Coffee, owned the intellectual property comprising the Compass Coffee brand.

Further undermining any claim that HaftSuarez owns the Compass Coffee brand is the fact that Robert Haft appears to have contributed to creative efforts to develop the Compass Coffee brand in September 2013 independently of both StoryArk and HaftSuarez.[151]

## IX. CONCLUSION

After reviewing the documentation provided, performing research and analysis, and based upon our professional background, knowledge, training, education, and decades

[145] See, e.g., Doc 141 (DEFENDANTS0006358) through Doc 152 (DEFENDANTS0016297)
[146] Doc 153 (DEFENDANTS0059318), Doc 154 (DEFENDANTS0059307), and Doc 155 (DEFENDANTS0059324)
[147] Doc 153 (DEFENDANTS0059318), Doc 154 (DEFENDANTS0059307), Doc 155 (DEFENDANTS0059324), Doc 162 (DEFENDANTS0059295)
[148] Doc 160 (DEFENDANTS0059290)
[149] Doc 142 at Depreciation and Amortization Report (Asset No. 105), Doc 163 (DEFENDANTS0006357)
[150] Doc 142 at Depreciation and Amortization Report (Asset No. 105)
[151] Per an August 10, 2026 discussion with Mr. Robert Haft, we further understand that Mr. Haft has a masters degree from the Graduate School of Design at Harvard University, has previously developed names and logos of other businesses—including Crown Books, a chain of 250 book stores—and received inspiration for the Compass name and logo from a floor design in his family home, a design which he subsequently sent to Mr. Suarez and Mr. Michael Haft prior to the retaining of any marketing company and before the formation of Compass Coffee (See Doc 156 (DEFENDANTS22694), Doc 157 (DEFENDANTS7237), and Doc 158 (DEFENDANTS22699)).


© 2026 CONSOR®, La Jolla, CA

of experience in intellectual property valuation and analysis, we have arrived at the following opinion:

- That Compass Coffee was a business that never made a profit during its years of operation and was kept afloat financially by loans made by the Haft family entities.

- That during 2020-21 Compass Coffee actively considered filing for bankruptcy. Its books and records show that Compass Coffee was unprofitable for both of those years.

- That it was within that context that Mr. Suarez exercised his option for repurchase of his units.

- Our independent evaluation of the fair market value of Compass Coffee as of December 31, 2021 using the midpoint of the income approach and the market multiple approach is **$6,028,714**.

- That our independent evaluation of the fair market value of Mr. Suarez's membership interest in Compass Coffee as of December 31, 2021 based on the above valuation is **$0**.

- That GSG properly completed the valuation of the fair market value of Compass Coffee and Mr. Suarez's units per the Operating Agreement. If anything, our independent valuation suggests that GSG overvalued Mr. Suarez's units.

- That in demands to Compass Coffee by Mr. Suarez's prior and current counsel, Mr. Suarez has previously valued his units at $35,072,000 and the Compass Coffee brand at $34 million, which are incorrect. His criticisms of GSG's analysis in the Complaint are unwarranted.

- That Mr. Suarez's contentions about the value of Compass Coffee and its brand, as well as his contentions about the ownership of the brand, made in the Complaint lack supportable bases in fact.

- That Mr. Suarez's arguments implying that HaftSuarez, LLC possessed a brand also lack supportable bases in fact.

This opinion is based upon the documents and information reviewed as of the Report Date, as well as our background in intellectual property analysis and valuation. We reserve the right to revisit this analysis and amend this conclusion should additional information and/or documents become available for review.


© 2026 CONSOR®, La Jolla, CA

Sincerely,



**Jeff Anderson**
Managing Director


© 2026 CONSOR®, La Jolla, CA

# APPENDIX A
# QUALIFICATIONS OF THE NAMED EXPERT

## Jeff Anderson, MBA, CLP, CVA
## Managing Director

Jeff Anderson is the Managing Director at CONSOR®, an intellectual asset consulting firm specializing in trademark, patent, copyright and right of publicity valuation, licensing, and expert testimony. The firm is headquartered in La Jolla, California, and has offices in New York and London. Mr. Anderson first earned a B.S. in Economics from Santa Clara University, and later went on to earn an MBA, with a concentration in Finance, from San Diego State University.

Mr. Anderson has a broad view of the world of intellectual property and intangible assets. He has lectured, spoken, and written on the topic of IP valuation, as well as the licensing of various intellectual property rights. He is a contributing author to two books, and he is author and co-author of several articles on intellectual property valuation. Coupled with his analytical approach to finance and economics, he has a unique view and expertise in intellectual property and intangible asset valuation and monetization.

Mr. Anderson has been designated as the testifying expert in matters pertaining to trademark, patent, trade secret, database, rights of publicity (ROP), copyright, and website valuation and damages – he has testified in both domestic and international courts. Through trial testimony, deposition testimony, and numerous Rule 26 reports, Mr. Anderson's expertise has been established and reaffirmed.

Mr. Anderson has performed valuations of intangible assets and intellectual properties for corporate litigation and business/transaction purposes. His project work spans the full spectrum of the intellectual property realm. Industries worked on include: restaurants, food service, food distribution, government, software, banking, healthcare, entertainment, construction, retail, energy, manufacturing, and others. He has managed projects involving: valuation for litigation; sale/purchase valuation and negotiation; license structuring and negotiation; estate valuation; and valuation in expropriation and foreign markets.

Prior to joining CONSOR, Mr. Anderson was a finance manager in the technology industry, and has had extensive experience in the mortgage and banking industries. In those industry roles, Mr. Anderson performed comprehensive valuations of business assets, analyzed financial statements, and created and managed accounting systems.

### Memberships, Speeches and Publications

#### Offices, Memberships

Certified Licensing Professional (CLP)
Certified Valuation Analyst (CVA)
Member, National Association of Certified Valuators and Analysts (NACVA)
Member, Licensing Executives Society
Member, Licensing International (formerly LIMA)
Member, International Trademark Association (INTA)
Certificate of Licensing Studies (CLS)

#### Seminars, Speeches and Presentations (Previous 10 Years)

2019 Hunton Andrews Kurth - Ethics and Experts in IP Valuation and Litigation Cases
2018 ABA - Expert Witnesses, Valuation, and Damages: The Expert's Point of View
2016 BVR – Litigation Dynamics and the Expert's Role: Valuation & Damages
2016 King and Spalding – Ethics and Experts in International Business, IP Valuation
2016 Hogan Lovells – Ethics and Experts in International Business, IP Valuation
2016 Internal Revenue Service – Intellectual Property Valuation
2015 BVR – Alternative Intellectual Property Valuation Approaches


© 2026 CONSOR®, La Jolla, CA

2015 Clear Law Institute – Intellectual Property Valuation: Techniques to Maximize Accuracy
2014 Clear Law Institute – Valuation of Intellectual Property
2013 The Brand Establishment Conference - Maximizing Brand Value

**Books (Previous 10 Years)**

Secured Lending in Intellectual Property, 2nd Edition, LexisNexis Canada: Contributing author with Weston Anson to Kiriakoula Hatzikiriakos, September 2017

Rights of Publicity: Analysis, Valuation, and the Law, American Bar Association. Contributing author to Weston Anson, April 2015

**Published Articles (Previous 10 Years)**

June 2015 – "Alternate Intellectual Property Valuation Approaches" with Weston Anson and Joshua Cawthorn, les Nouvelles

June 2014 – "What is your client really worth? Valuing the licensing potential of celebrities, characters and athletes", co-authored with Weston Anson and Jemma Samala, The Licensing Book

**Expert Experience and Litigation Support (Previous 4 Years)**

1. IYO, Inc. v. IO Products, Inc. and OpenAI, Inc., et al.
   United States District Court for the Northern District of California
   Case No. 3:25-cv-04861
   Designated Expert, July 2026

2. Andra Cheri Moreland, et al. v. Kladeck, Inc. dba King of Diamonds
   United States District Court for the District of Minnesota, St. Paul Division
   Case No. 0:21-cv-01975
   Expert Report, April 2026

3. Matthew Larosiere v. Cody Rutledge Wilson, et al.
   United States District Court for the Middle District of Florida
   Case No. 6:24-cv-01629
   Expert Report, April 2026

4. Isaac Hayes Enterprises, LLC and the Estate of Isaac Hayes v. Donald J. Trump, et al.
   United States District Court for the Northern District of Georgia
   Case No. 1:24-cv-03639-TWT
   Expert Report, Mediation, February 2026

5. Keith C. Valentine v. Orthofix Medical Inc.
   JAMS, San Diego
   JAMS Case No. 5240002089
   Arbitration Testimony, October 2025, Expert Report, July 2025

6. GOLO, LLC v. Amazon.com, Inc. and Amazon.com Services LLC
   United States District Court for the District of Delaware
   Case No. 1:23-cv-01200
   Expert Report, June 2025

7. Baker Creek Heirloom Seed Co. LLC v. Buy Rare Seeds Inc.
   United States District Court for the Western District of Missouri Southern Division
   Case No. 23-cv-3105
   Expert Report, September 2024


© 2026 CONSOR®, La Jolla, CA

8. Investment Group Inc. v. City of Hamtramck Building Official Bruce Eck, The City of Hamtramck
   United States District Court for the Eastern District of Michigan Southern Division
   Case No. 21-cv-12451
   Expert Report, August 2024

9. Subaru of America, Inc. v. Space Exploration Technologies Corp.
   United States Patent and Trademark Office before the Trademark Trial and Appeal Board
   Opposition No. 91274688
   Expert Report, August 2024

10. A&E Television Networks LLC v. Big Fish Entertainment, LLC, Half Moon Pictures, LLC, and REELZChannel, LLC
    United States District Court for the Southern District of New York
    Case No. 1:22-cv-07411-KPF
    Deposition Testimony, July 2024

11. Nafta Traders, Inc. v. Adidas America, Inc.
    United States District Court for the Northern District of Texas Dallas Division
    Case No. 3:19-cv-00915-N
    Expert Report, November 2023

12. Uhlig LLC v. CoreLogic, Inc.
    United States District Court for the District of Kansas
    Case No. 2:21-cv-02543-DDC-GEB
    Expert Report, October 2023

13. GOATPIX LLC v. The Upper Deck Company
    United States District Court for the Southern District of California
    Case No. 3:21-cv-01815-TWR-JLB
    Expert Report, September 2023

14. Brooke Johnson, Denise Trlica, Jaime Middleton, Jessica Rockwell, Joanna Krupa, Lucy Pinder, Rosie Wicks, and Tiffany Toth Gray v. J.P. Parking, Inc. dba Beach Girls
    United States District Court for the Southern District of Iowa Central Division
    Case No. 4:22-cv-00146-SMR-HCA
    Expert Report, September 2023

15. Security Bank & Trust Company v. Cook Inc. and Cook Medical LLC
    United States District Court District of Minnesota
    Case No. 21-cv-02572-PJS-JFD
    Deposition Testimony, June 2023

16. IsoNova Technologies LLC v. David L. Rettig and OvaInnovations, LLC
    United States District Court for the Northern District of Iowa
    Case No. 1:20-cv-00071
    Expert Report, March 2023

17. Stitch Editing Ltd. v. Tik Tok
    United States District Court Southern District of California
    Case No. 3:21-cv-626-CAB-BGS
    Trial Testimony, Deposition Testimony, March 2023

18. World Axe Throwing League, Inc., and Lincoln Chicago Holdings, Inc. v. Cold Steel, Inc., and GSM LLC d/b/a GSM Outdoors
    United States District Court for the Central District of California Western Division
    Case No. 2:20-cv-11407-JAK-E
    Trial Testimony, Deposition Testimony, February 2023


© 2026 CONSOR®, La Jolla, CA

19. Derek Jaeschke v. Bella + Canvas, LLC
    Superior Court of the State of California County of Los Angeles, West District
    Case No. 19SMCV01008
    Designated Testifying Expert, February 2023

20. Jackpocket, Inc. v. Lottomatrix NY LLC, Lottomatrix Corporation, Lottomatrix Operations Limited d/b/a Jackpocket.com, Lottomatrix Malta Limited, and 99Dynamics Limited
    United Sates Districts for the Southern District of New York
    Case No. 1:22-cv-05772-LJL
    Expert Report, November 2022


© 2026 CONSOR®, La Jolla, CA

# APPENDIX B
# DOCUMENTS REVIEWED

| Doc # | Description | Beginning Bates # |
|---|---|---|
| 1 | 2025-01-13 (ECF 1) Complaint | DEFENDANTS0067294 |
| 2 | International Valuation Standards – IVSC | DEFENDANTS0067423 |
| 3 | FMV | DEFENDANTS0067575 |
| 4 | Projected Financials | DEFENDANTS0021336 |
| 5 | IBIS World Report 72221B | DEFENDANTS0067581 |
| 6 | kroll-industry-benchmarking | DEFENDANTS0067628 |
| 7 | Dealstats _ Business Valuation Resources | DEFENDANTS0067629 |
| 8 | 2021 Private Capital Markets Report Pepperdine University | DEFENDANTS0067775 |
| 9 | Quick Search - Business Valuation Resources | DEFENDANTS0067914 |
| 10 | 2020-10-15 Compass Deck | DEFENDANTS0011762 |
| 11 | 2021-11-15 Compass Coffee Mail - transition | DEFENDANTS0001728 |
| 12 | 2021_D-20_Booklet_0 | DEFENDANTS0067337 |
| 13 | Expected Capital Expenditures | DEFENDANTS0010047 |
| 14 | 2020-11-20 Fifth Amended Operating Agreement | DEFENDANTS0008841 |
| 15 | 2020-08-14 Consumer Packaged Goods Deck | DEFENDANTS0010060 |
| 16 | U.S. 10-year Treasury yield finishes 2021 above 1.5% | DEFENDANTS0067409 |
| 17 | high-financial-risk | DEFENDANTS0067411 |
| 18 | 2026-03-03 Order Approving Asset Purchase Agreement | DEFENDANTS0067104 |
| 19 | 2020-02-07 Juggernaut Proposal | DEFENDANTS0001911 |
| 20 | 2021-05 Compass - CRH IOI – vF | DEFENDANTS0010042 |
| 21 | 2024-01-26 CRH Compass Platform Discussion | DEFENDANTS0010813 |
| 22 | 2024-04-25 Compass Coffee to Aurify LOI | DEFENDANTS0010275 |
| 23 | 2025-01-31 IOI_Project Real Good Coffee Mates | DEFENDANTS0010899 |
| 24 | 2020-08-11 Consumer Packaged Goods Business Plan | DEFENDANTS0011656 |
| 25 | 2020-02-02 Compass Overview | DEFENDANTS0001940 |
| 26 | 2020-04-06 Compass Overview | DEFENDANTS0011265 |
| 27 | 2020-08-20 Xact Value Calculation | DEFENDANTS0001916 |
| 28 | 2022-04-18 Compass Coffee Xact BV Calc Rpt signed (as of 12-31-21) | DEFENDANTS0002023 |
| 29 | 2015-05-18 Compass Coffee Business Plan | DEFENDANTS0059248 |
| 30 | 2017-12-20 Presentation | DEFENDANTS0010902 |
| 31 | 2018-02-01 Compass Presentation | DEFENDANTS0010928 |
| 32 | 2019-10-28 Compass Overview | DEFENDANTS0010955 |


© 2026 CONSOR®, La Jolla, CA

| | | |
|---|---|---|
| **33** | 2019-11-06 Compass Overview | DEFENDANTS0010989 |
| **34** | 2019-11-11 Compass Overview | DEFENDANTS0011017 |
| **35** | 2019-11-12 Compass Overview | DEFENDANTS0017046 |
| **36** | 2019-11-12-2 Compass Overview | DEFENDANTS0011047 |
| **37** | 2020-01-20 Compass Overview | DEFENDANTS0011108 |
| **38** | 2020-01-21 Compass Overview | DEFENDANTS0011145 |
| **39** | 2020-03-11 Compass Overview | DEFENDANTS0011224 |
| **40** | 2020-04-06-1 Compass Overview | DEFENDANTS0011311 |
| **41** | 2020-05-29 Compass Overview | DEFENDANTS0011357 |
| **42** | 2020-07-17 Consumer Packaged Goods Business Plan | DEFENDANTS0011406 |
| **43** | 2020-07-20 Consumer Packaged Goods Business Plan | DEFENDANTS0011460 |
| **44** | 2020-07-23 Consumer Packaged Goods Business Plan | DEFENDANTS0011522 |
| **45** | 2020-07-24 Consumer Packaged Goods Business Plan | DEFENDANTS0011588 |
| **46** | 2021-04-09 Lyric Singed UPA | DEFENDANTS0010190 |
| **47** | 2020-11-21 Compass Investment | DEFENDANTS0059369 |
| **48** | Compass - DI 333 - Motion for Order Approving Structured Dismissal of Case with Notice-c | DEFENDANTS0067250 |
| **49** | 2022 - 2025 Income Statement | DEFENDANTS0063818 |
| **50** | 20200316 Project Phoenix | DEFENDANTS0001695 |
| **51** | Impact of COVID-19 | DEFENDANTS0003560 |
| **52** | Compass Coffee, LLC - Issued 12.31.2020 Financial Statements | DEFENDANTS0018355 |
| **53** | 2021-12-08 Compass Coffee Mail - Fair Market Valuation | DEFENDANTS0001735 |
| **54** | 2022-04-18 Draft valuation report | DEFENDANTS0002057 |
| **55** | 2023-04-14 Final Demand Letter to Compass Coffee | DEFENDANTS0001751 |
| **56** | 2025-01-08 Suarez Demand Letter | DEFENDANTS0067102 |
| **57** | 2014-07-21 Receipt of Wire Transfer | DEFENDANTS0063844 |
| **58** | 2014-07-31 $250,000 Note | DEFENDANTS0063845 |
| **59** | 2014-07-31 $250,000 Pledge Signed | DEFENDANTS0063850 |
| **60** | 2015-05-07 Compass Coffee Mail - Compass Funding | DEFENDANTS0063856 |
| **61** | 2015-05-11 $500,000 Hexad | DEFENDANTS0063857 |
| **62** | 2015-05-11 $500,000 Note Signed | DEFENDANTS0059787 |
| **63** | 2015-05-11 $500,000 Pledge Signed | DEFENDANTS0063873 |
| **64** | 2015-05-13 Receipt of Wire Transfer | DEFENDANTS0063878 |
| **65** | 2015-08-15 $500,000 Note Signed | DEFENDANTS0063879 |
| **66** | 2015-08-15 $500,000 Pledge Signed | DEFENDANTS0063885 |
| **67** | 2015-10-10 $1,400,000 Note Signed | DEFENDANTS0063891 |


© 2026 CONSOR®, La Jolla, CA

| | | |
|---|---|---|
| **68** | 2015-10-10 $1,400,000 Pledge Signed | DEFENDANTS0063898 |
| **69** | 2015-10-19 Receipt of Wire Transfer Signed | DEFENDANTS0063904 |
| **70** | 2016-02-22 $1,100,000 Note Signed | DEFENDANTS0063905 |
| **71** | 2016-02-22 $1,100,000 Pledge Signed | DEFENDANTS0063911 |
| **72** | 2016-06-21 $850,000 Hexad | DEFENDANTS0063916 |
| **73** | 2016-06-21 $850,000 Note Signed | DEFENDANTS0063928 |
| **74** | 2016-06-21 $850,000 Pledge Signed | DEFENDANTS0063934 |
| **75** | 2016-09-12 $950,000 Hexad | DEFENDANTS0063939 |
| **76** | 2016-09-12 $950,000 Note Signed | DEFENDANTS0063951 |
| **77** | 2016-09-12 $950,000 Pledge Signed | DEFENDANTS0063957 |
| **78** | 2017-03-01 $1,300,000 Note Signed | DEFENDANTS0063962 |
| **79** | 2017-03-01 $1,300,000 Pledge Signed | DEFENDANTS0063968 |
| **80** | 2017-07-25 $700,000 Note Signed | DEFENDANTS0063973 |
| **81** | 2017-07-25 $700,000 Pledge Signed | DEFENDANTS0063978 |
| **82** | 2017-07-25 $750,000 Note Signed | DEFENDANTS0063984 |
| **83** | 2017-07-25 $750,000 Pledge Signed | DEFENDANTS0063990 |
| **84** | 2017-07-25 750,000 Four Properties | DEFENDANTS0063996 |
| **85** | 2017-07-25 Compass Acknowedge Four Signed | DEFENDANTS0064009 |
| **86** | 2017-12-11 $250,000 Hexad | DEFENDANTS0064010 |
| **87** | 2017-12-11 $250,000 Note Signed | DEFENDANTS0064021 |
| **88** | 2017-12-11 $250,000 Pledge Signed | DEFENDANTS0064027 |
| **89** | 2018-01-09 $750,000 Hexad | DEFENDANTS0064032 |
| **90** | 2018-01-09 $750,000 Note Signed | DEFENDANTS0064045 |
| **91** | 2018-01-09 $750,000 Pledge Signed | DEFENDANTS0064051 |
| **92** | 2018-03-15 $750,000 Hexad | DEFENDANTS0064057 |
| **93** | 2018-03-15 $750,000 Note Signed | DEFENDANTS0064070 |
| **94** | 2018-03-15 $750,000 Pledge Signed | DEFENDANTS0064076 |
| **95** | 2018-06-18 $1,100,000 Note Signed | DEFENDANTS0064082 |
| **96** | 2018-06-18 $1,100,000 Pledge Signed | DEFENDANTS0064088 |
| **97** | 2018-06-18 $1,100,000 Hexad | DEFENDANTS0064094 |
| **98** | 2018-10-26 $300,000 Four Properties | DEFENDANTS0064107 |
| **99** | 2018-10-26 $300,000 Note Signed | DEFENDANTS0059791 |
| **100** | 2018-10-26 $300,000 Pledge Signed | DEFENDANTS0064126 |
| **101** | 2018-10-31 Colby Bartlett Contribution Agreement | DEFENDANTS0064132 |
| **102** | 2018-10-31 Colby Bartlett Joinder | DEFENDANTS0064136 |


© 2026 CONSOR®, La Jolla, CA

| | | |
|---|---|---|
| **103** | 2018-10-31 Consent of Series A Holders | DEFENDANTS0064137 |
| **104** | 2018-10-31 Hexad Contribution Agreement | DEFENDANTS0064141 |
| **105** | 2018-10-31 Hexad Joinder | DEFENDANTS0064145 |
| **106** | 2018-10-31 Octa Contribution Agreement | DEFENDANTS0064146 |
| **107** | 2018-10-31 Waiver | DEFENDANTS0064150 |
| **108** | 2019-04-10 Harrison $100,000 Note | DEFENDANTS0064153 |
| **109** | 2019-04-10 Michael $100,000 Note | DEFENDANTS0064158 |
| **110** | 2019-12-18 $450,000 Note Signed | DEFENDANTS0064163 |
| **111** | 2019-12-18 $450,000 Pledge Signed | DEFENDANTS0064168 |
| **112** | 2019-12-18 Conversion | DEFENDANTS0059797 |
| **113** | 2019-12-26 Deferred Compensation | DEFENDANTS0059803 |
| **114** | 2020-02-05 Promissory Note | DEFENDANTS0059804 |
| **115** | 2020-02-05 Security Agreement | DEFENDANTS0064188 |
| **116** | 2020-04-24 Unit Purchase Agreement | DEFENDANTS0064196 |
| **117** | 2020-06-13 Unit Purchase Agreement | DEFENDANTS0064208 |
| **118** | 2020-10-01 Assignment Agreement Compass Coffee | DEFENDANTS0059812 |
| **119** | 2020-09-27 Written Consent Manager Octa LLC | DEFENDANTS0001700 |
| **120** | 2020-10-21 Hexad Conversion | DEFENDANTS0059815 |
| **121** | 2020-10-21 Stock Grant | DEFENDANTS0064230 |
| **122** | 2020-10-21 Unit Purchase Agreement | DEFENDANTS0064231 |
| **123** | 2020-11-23 MDP Note Executed | DEFENDANTS0059822 |
| **124** | 2023-01-01 Hexad to Colby Bartlet Assignment Agreement Compass Coffee LLC Shares | DEFENDANTS0059849 |
| **125** | 2023-01-01 Hexad to Michael Assignment Agreement Compass Coffee LLC Shares | DEFENDANTS0059852 |
| **126** | 2023-07-31 Convertible Note and Security Pledge Template (Hexad LLC) | DEFENDANTS0064420 |
| **127** | 2023-07-31 Convertible Note and Security Pledge Template (Octa LLC) | DEFENDANTS0064431 |
| **128** | 2023-07-31 Convertible_20Note_20and_20Security_20Pledge_20Template_20 (Octa_20LLC) | DEFENDANTS0064442 |
| **129** | 2023-10-04 Convertible_20Note_20and_20Security_20Pledge_20Template_20 (Michael_20Haft) | DEFENDANTS0064453 |
| **130** | 2024-01-01 Collateral Fee | DEFENDANTS0059855 |
| **131** | 2025-01-01 Collateral Fee | DEFENDANTS0059858 |
| **132** | 2025-02-26 Convertible Note and Security Pledge Template (Octa LLC) | DEFENDANTS0064470 |
| **133** | 2025-08-21 Convertible Note and Security Pledge Template (National Investment Group LLC) | DEFENDANTS0059956 |
| **134** | 2025-08-21 Convertible Note | DEFENDANTS0064492 |


© 2026 CONSOR®, La Jolla, CA

| | | |
|---|---|---|
| **135** | 2022-08-11 Convertible Note and Security Pledge Template (National Investment Group LLC) | DEFENDANTS0063819 |
| **136** | 2022-09-22 Convertible Note and Security Pledge Template (National Investment Group LLC) | DEFENDANTS0063830 |
| **137** | Faunce-Chuck-CV-2019-12 | DEFENDANTS0067273 |
| **138** | Sales Rosetta Stone | DEFENDANTS0067281 |
| **139** | 2013 Haft Suarez, LLC | DEFENDANTS0007972 |
| **140** | 2013-09-22 Kindle Version Perfect Coffee at Home | DEFENDANTS0022704 |
| **141** | 2013 Compass Coffee LLC Tax Return | DEFENDANTS0006358 |
| **142** | 2014 Compass Coffee LLC Tax Return | DEFENDANTS0006393 |
| **143** | 2015 Compass Coffee LLC Tax Return | DEFENDANTS0006477 |
| **144** | 2016 Compass Coffee LLC Tax Return | DEFENDANTS0006579 |
| **145** | 2017 Compass Coffee LLC Tax Return | DEFENDANTS0006641 |
| **146** | 2018 Compass Coffee LLC Tax Return | DEFENDANTS0006758 |
| **147** | 2019 Federal Tax Return - Compass Coffee | DEFENDANTS0005216 |
| **148** | 2020 Compass Coffee LLC Tax Return | DEFENDANTS0000158 |
| **149** | 2021 Compass Coffee LLC Tax Return | DEFENDANTS0000541 |
| **150** | 2022 Compass Coffee LLC Tax Return | DEFENDANTS0000948 |
| **151** | 2023 Compass Coffee LLC - Tax Return | DEFENDANTS0015745 |
| **152** | 2024 Compass Coffee LLC - 2024 Tax Return | DEFENDANTS0016297 |
| **153** | February 7, 2018 SOU Signed by Harrison Suarez - US Reg. No. 5,444,946 - CROWN TEA & Design (137194-420892) | DEFENDANTS0059318 |
| **154** | 88641673 Jan 12, 2020 | DEFENDANTS0059307 |
| **155** | July 27, 2020 RTOA Signed by Harrison Suarez - US Reg. No. 6,198,700 - EAST ASIA AMERICAS...(137194-517416) | DEFENDANTS0059324 |
| **156** | 2013 Brand Email | DEFENDANTS0022694 |
| **157** | CC by RH Design 2013 | DEFENDANTS0007237 |
| **158** | Compass on Floor 2013 | DEFENDANTS0022699 |
| **159** | Caffè Nero plans for Compass Coffee transition following sale - Washington Business Journal | DEFENDANTS0067248 |
| **160** | Story_Ark_Contract | DEFENDANTS0059290 |
| **161** | Compass Coffee 2021 Xact BV 2022-03-25 q and a | DEFENDANTS0019576 |
| **162** | 86128114 signed November 25, 2013 | DEFENDANTS0059295 |
| **163** | Story Ark Statement Xero | DEFENDANTS0006357 |
| **164** | Receipt from Compass Coffee By Caffè Nero #JYKU_Redacted | DEFENDANTS0067278 |
| **165** | Compass Coffee LL_YE 2025 Department Income Statement | DEFENDANTS0025526 |


© 2026 CONSOR®, La Jolla, CA

# Exhibit 1

| Summary of Conclusions | | |
|---|---|---|
| **Enterprise Value of Compass Coffee** | | *Source* |
| **Discounted Cash Flow Analysis** | **6,517,156** | *Exhibit 3* |
| **Market Multiple Analysis** | **5,540,271** | *Exhibit 4* |
| **Midpoint - Fair Market Value of Compass Coffee** | **6,028,714** | |

CONFIDENTIAL
© 2026 CONSOR®

# Exhibit 2

| Inputs and Assumptions Relied Upon | | |
|---|---|---|
| | | *Source* |
| **Valuation Date** | | |
| December 31, 2021 | | |
| **Industry and Economy Growth (2021 - 2026)** | | |
| Coffee & Snack Shops in the US (2021 - 2026) | *1.9%* | *Doc 5 (DEFENDANTS0067581)* |
| 30-Year Treasury Yield | *1.9%* | *Doc 16 (DEFENDANTS0067409)* |
| 30-Year Historical Rate of Inflation | *2.3%* | *US Inflation Calculator* |
| **Tax Rate** | | |
| Washington, D.C. Franchise Tax Rate | *8.25%* | *Doc 12 (DEFENDANTS0067337) (A)* |
| Federal Corporate Rate | *21.00%* | *Corporate Tax Rate (B)* |
| Effective Tax Rate | *27.52%* | *(C) = 1 - (1 - A) x (1 - B)* |
| **Net Working Capital** | | |
| Change in Net Working Capital as % of Revenue (2024 - 2026) | *2.9%* | *Exhibit 8* |
| **Weighted Average Cost of Capital** | | |
| Kroll Cost of Capital | | *Doc 6 (DEFENDANTS0067628)* |
| CAPM + Size Premium - WACC | *19.4%* | |
| 3-Stage DCF | *14.2%* | |
| Pepperdine University Private Capital Markets Required Rates of Return | | |
| Venture Capital (Expansion) - Median | *25.0%* | *Doc 8 (DEFENDANTS0067775)* |
| **Industry Profit Margin** | | |
| Coffee & Snack Shops in the US (2021 - 2026) EBIT Margin | *4.5%* | *Doc 5 (DEFENDANTS0067581)* |
| **Valuation Multiples** | | |
| Kroll Cost of Capital | | |
| Median - 5-Year Average EV/Revenue | 1.70 | *Doc 6 (DEFENDANTS0067628)* |
| BVR DealStats | | |
| Quick Search Average EV/Revenue | 0.38 | *Doc 9 (DEFENDANTS0067914)* |
| Quick Search Average EV/Gross Profit | 0.67 | *Doc 9 (DEFENDANTS0067914)* |
| Targeted Search Average EV/Revenue | 0.47 | *Exhibit 5* |
| Targeted Search Average EV/Gross Profit | 0.94 | *Exhibit 5* |

CONFIDENTIAL
© 2026 CONSOR®

# Exhibit 3

| Discounted Cash Flow Analysis - Value of Compass Coffee | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| *Value as of December 31, 2021* | *Source* | **2021** | **2022** | **2023** | **2024** | **2025** | **2026** |
| Compass Coffee Revenue | *Exhibit 6* | $9,812,955 | $17,058,266 | $24,194,917 | $31,130,915 | $35,955,407 | $36,792,338 |
| *Growth (%)* | | *2.4%* | *73.8%* | *41.8%* | *28.7%* | *15.5%* | *2.3%* |
| Free Cash Flow | *Exhibit 6* | -$6,336,881 | $127,033 | $1,228,418 | $1,869,603 | $1,033,936 | $1,175,977 |
| *FCF Margin (%)* | | *-64.6%* | *0.7%* | *5.1%* | *6.0%* | *2.9%* | *3.2%* |
| Discount Period (midpoint) | | | 0.5 | 1.5 | 2.5 | 3.5 | 4.5 |
| Discount Factor @ *19.4%* | *Exhibit 2* | | 0.92 | 0.77 | 0.64 | 0.54 | 0.45 |
| **PV of Free Cash Flow** | | | **$116,256** | **$941,542** | **$1,200,158** | **$555,877** | **$529,517** |
| **Net PV of Free Cash Flows** | | **$3,343,349** | | | | | |

| **Terminal Value Calculation** | |
|---|---|
| Terminal Period Cash Flow | $1,175,977 |
| Discount Rate | 19.4% |
| Terminal Growth Rate | 2.3% |
| Terminal Value | $7,048,552 |
| Discount Factor | 0.45 |
| **PV of Terminal Value** | **$3,173,807** |

| **Compass Coffee Value Conclusion** | |
|---|---|
| PV of Free Cash Flows | $3,343,349 |
| PV of Terminal Value | $3,173,807 |
| **Fair Market Value of Compass Coffee** | **$6,517,156** |


© 2026 CONSOR®

# Exhibit 4

| Market Multiple Analysis - Value of Compass Coffee | | |
|---|---|---|
| *Value as of December 31, 2021* | *Source* | **2021** |
| Compass Coffee Revenue | *Exhibit 6* | $9,812,955 |
| x Revenue Multiple | *Exhibit 2* | 0.47 |
| **Value of Compass Coffee - Revenue Multiple** | | **$4,613,239** |
| Compass Coffee Gross Profit | *Exhibit 6* | $6,845,622 |
| x Gross Profit Multiple | *Exhibit 2* | 0.94 |
| **Value of Compass Coffee - Gross Profit Multiple** | | **$6,467,303** |
| **Midpoint - Fair Market Value of Compass Coffee** | | **$5,540,271** |


© 2026 CONSOR®

## Exhibit 5

**BVR DealStats Valuation Multiples Study**

| No. | Target Name | Acquirer Name | Sale Date | Primary SIC Code/Description | Latest FY Net Sales | Latest FY Gross Profit | Latest FY EBITDA | Latest FY EBIT | Latest FY Net Income | MVIC Price | MVIC/Revenue Multiple | MVIC/Gross Profit Multiple |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Confidential - Cafe with Liquor License, Cocktails, Coffee Drinks, Entrees, and Baked Goods | N/A | 12/10/2021 | 5812 - Eating and Drinking Places | $98,143 | $76,359 | ($14,486) | ($14,486) | ($14,486) | $80,000 | 0.82 | 1.05 |
| 2 | Confidential - Ice Cream Store Franchise | N/A | 11/16/2021 | 5812 - Eating and Drinking Places | $721,614 | $515,301 | ($25,283) | ($25,283) | ($25,283) | $975,000 | 1.35 | 1.89 |
| 3 | Confidential - Franchise Quick Service Restaurant Selling Acai Bowls, Smoothies, Wraps, and Salads | N/A | 09/29/2021 | 5812 - Eating and Drinking Places | $233,363 | $23,269 | ($162,788) | ($162,788) | ($162,788) | $90,000 | 0.39 | 3.87 |
| 4 | Confidential - Independent Frozen Yogurt Shop | N/A | 08/11/2021 | 5812 - Eating and Drinking Places | $148,627 | $108,460 | ($7,127) | ($17,182) | ($18,381) | $60,000 | 0.40 | 0.55 |
| 5 | Confidential - Ice Cream Store | N/A | 08/05/2021 | 5812 - Eating and Drinking Places | $271,221 | $140,686 | ($18,015) | ($18,015) | ($18,015) | $20,000 | 0.07 | 0.14 |
| 6 | Confidential - Coffee Shop | N/A | 08/02/2021 | 5812 - Eating and Drinking Places | $173,002 | $50,943 | ($22,260) | ($27,147) | ($27,661) | $110,000 | 0.64 | 2.16 |
| 7 | GFG Holding Inc. | FAT Brands Inc. | 07/22/2021 | 5812 - Eating and Drinking Places | $114,336,000 | $91,237,000 | ($11,628,000) | ($15,702,000) | ($28,332,000) | $444,487,000 | 3.89 | 4.87 |
| 8 | Confidential - Coffee Shop | N/A | 05/17/2021 | 5812 - Eating and Drinking Places | $219,414 | $120,017 | ($10,784) | ($15,357) | ($18,496) | $75,000 | 0.34 | 0.62 |
| 9 | Confidential - Ice Cream Shop | N/A | 03/22/2021 | 5812 - Eating and Drinking Places | $258,007 | $176,800 | $11,351 | ($8,649) | ($14,649) | $115,000 | 0.45 | 0.65 |
| 10 | Confidential - Yogurt, Ice Cream, and Hotdog Retail | N/A | 03/21/2021 | 5812 - Eating and Drinking Places | $114,621 | $76,192 | N/A | ($24,353) | ($24,353) | $25,000 | 0.22 | 0.33 |
| 11 | Confidential - Retail Nitrogen Ice Cream | N/A | 03/02/2021 | 5812 - Eating and Drinking Places | $362,006 | $252,530 | ($2,946) | ($23,946) | ($31,708) | $102,000 | 0.28 | 0.40 |
| 12 | Confidential - Nitrogen Ice Cream Store | N/A | 03/02/2021 | 5812 - Eating and Drinking Places | $315,342 | $216,089 | $2,541 | ($17,459) | ($23,459) | $102,000 | 0.32 | 0.47 |
| 13 | Corporation | N/A | 12/15/2020 | 5812 - Eating and Drinking Places | $184,657 | N/A | N/A | ($5,567) | ($5,567) | $20,100 | 0.11 | N/A |
| 14 | Corporation | N/A | 12/15/2020 | 5812 - Eating and Drinking Places | $184,657 | N/A | N/A | ($5,567) | ($5,567) | $20,100 | 0.11 | N/A |
| 15 | Confidential - Ice Cream Store | N/A | 10/23/2020 | 5812 - Eating and Drinking Places | $233,384 | $161,278 | $16,842 | ($1,762) | ($3,166) | $33,000 | 0.14 | 0.20 |
| 16 | Corporation | N/A | 10/02/2020 | 5812 - Eating and Drinking Places | $248,404 | N/A | N/A | ($17,194) | ($17,194) | $30,000 | 0.12 | N/A |
| 17 | Confidential - Premium Juice and Smoothie Bar | N/A | 07/07/2020 | 5812 - Eating and Drinking Places | $378,704 | $270,541 | $6,793 | ($23,678) | ($23,447) | $140,000 | 0.37 | 0.52 |
| 18 | Philly Pretzel Factory Corporation | N/A | 07/03/2020 | 5461 - Retail Bakeries | $190,745 | N/A | N/A | ($12,733) | ($12,733) | $48,000 | 0.25 | N/A |
| 19 | Confidential - Juice Bar | N/A | 04/15/2020 | 5812 - Eating and Drinking Places | $441,743 | $247,933 | N/A | ($2,125) | ($6,702) | $175,000 | 0.40 | 0.71 |
| 20 | Philly Pretzel Factory Corporation | N/A | 09/30/2019 | 5812 - Eating and Drinking Places | $126,581 | N/A | N/A | ($7,378) | ($7,378) | $35,000 | 0.28 | N/A |
| 21 | Confidential - Self Serve Frozen Yogurt Shop | N/A | 06/04/2019 | 5812 - Eating and Drinking Places | $170,342 | $118,439 | ($21,075) | ($26,561) | ($26,561) | $30,000 | 0.18 | 0.25 |
| 22 | Confidential - Coffee Shop | N/A | 04/01/2019 | 5812 - Eating and Drinking Places | $301,053 | $210,737 | ($18,636) | ($75,968) | ($81,940) | $185,000 | 0.61 | 0.88 |
| 23 | Confidential - Frozen Yogurt Shop and Ice Cream Parlor | N/A | 12/21/2018 | 5812 - Eating and Drinking Places | $184,657 | $131,360 | N/A | ($10,408) | ($10,408) | $125,000 | 0.68 | 0.95 |
| 24 | Confidential - Full Service Coffee Shop | N/A | 12/20/2018 | 5812 - Eating and Drinking Places | $117,978 | $66,774 | ($6,792) | ($6,979) | ($6,979) | $45,000 | 0.38 | 0.67 |
| 25 | Confidential - Smoothie, Drink, and Snack Shop | N/A | 08/20/2018 | 5812 - Eating and Drinking Places | $379,015 | $152,617 | ($424) | ($424) | ($424) | $90,000 | 0.24 | 0.59 |
| 26 | Confidential - Café Serving Hot and Cold Beverages | N/A | 06/25/2018 | 5812 - Eating and Drinking Places | $725,836 | $262,493 | $12,277 | ($9,320) | ($9,320) | $390,000 | 0.54 | 1.49 |
| 27 | Confidential - Frozen Yogurt Store | N/A | 05/30/2018 | 5812 - Eating and Drinking Places | $147,917 | $115,376 | ($13,124) | ($24,624) | ($24,624) | $10,000 | 0.07 | 0.09 |
| 28 | Di'lishi Concepts, LLC Corporation | N/A | 04/30/2018 | 5812 - Eating and Drinking Places | $294,833 | N/A | N/A | ($24,458) | ($24,458) | $200,400 | 0.68 | N/A |
| 29 | Tucker's Super Cream Ice Cream | N/A | 04/15/2018 | 5812 - Eating and Drinking Places | $1,022,584 | $790,437 | $53,131 | ($161,423) | ($161,423) | $996,000 | 0.97 | 1.26 |
| 30 | Confidential - Dessert Restaurant | N/A | 04/13/2018 | 5812 - Eating and Drinking Places | $1,348,755 | $444,769 | $811 | ($13,647) | ($13,647) | $170,000 | 0.13 | 0.38 |
| 31 | Corporation | N/A | 04/09/2018 | 5461 - Retail Bakeries | $129,075 | N/A | N/A | ($36,961) | ($36,961) | $35,000 | 0.27 | N/A |
| 32 | Confidential - Coffee Shop Serving Coffee Beverages, Pastries, and Limited Food Items | N/A | 03/26/2018 | 5812 - Eating and Drinking Places | $416,859 | $132,345 | ($18,114) | ($20,759) | ($23,759) | $160,000 | 0.38 | 1.21 |
| 33 | Confidential - Franchised Smoothie Shop and Café | N/A | 03/13/2018 | 5812 - Eating and Drinking Places | $682,674 | $483,489 | $55,827 | ($26,928) | ($39,467) | $405,000 | 0.59 | 0.84 |
| 34 | Confidential - Cafe Type Eatery | N/A | 03/13/2018 | 5812 - Eating and Drinking Places | $429,624 | $246,948 | N/A | ($12,944) | ($12,944) | $110,000 | 0.26 | 0.45 |
| 35 | Creamistry | N/A | 03/01/2018 | 5812 - Eating and Drinking Places | $579,096 | $579,096 | ($206,690) | ($206,690) | ($206,690) | $20,000 | 0.03 | 0.03 |
| 36 | Confidential - Soft Serve Ice Cream Franchise | N/A | 02/28/2018 | 5812 - Eating and Drinking Places | $388,076 | $251,944 | ($43,956) | ($48,002) | ($49,336) | $60,000 | 0.15 | 0.24 |
| 37 | Confidential - Smoothie and Drink Shop Serving Smoothies, Bubble Teas, Cold Pressed Juices, and Heath Snacks | N/A | 12/26/2017 | 5812 - Eating and Drinking Places | $345,158 | $176,616 | ($12,583) | ($35,604) | ($35,604) | $65,000 | 0.19 | 0.37 |
| 38 | Confidential - Frozen Yogurt Shop | N/A | 10/20/2017 | 5812 - Eating and Drinking Places | $508,750 | $222,923 | ($13,228) | ($30,295) | ($30,545) | $105,000 | 0.21 | 0.47 |
| 39 | Confidential - Frozen Yogurt Shop | N/A | 09/29/2017 | 5812 - Eating and Drinking Places | $206,265 | $161,160 | N/A | ($6,717) | ($6,717) | $130,000 | 0.63 | 0.81 |
| 40 | Confidential - Smoothie Shop | N/A | 08/17/2017 | 5812 - Eating and Drinking Places | $254,488 | $103,017 | $4,586 | ($2,349) | ($2,349) | $125,000 | 0.49 | 1.21 |
| 41 | Confidential - Ice Cream Parlor | N/A | 07/31/2017 | 5812 - Eating and Drinking Places | $488,218 | $378,170 | $24,362 | ($13,801) | ($13,801) | $205,000 | 0.42 | 0.54 |
| 42 | Corporation | N/A | 05/22/2017 | 5812 - Eating and Drinking Places | $155,774 | N/A | N/A | ($22,418) | ($22,418) | $25,000 | 0.16 | N/A |
| 43 | Corporation | N/A | 04/28/2017 | 5812 - Eating and Drinking Places | $1,063,927 | N/A | N/A | ($22,662) | ($22,662) | $285,000 | 0.27 | N/A |
| 44 | Confidential - Bakery Specializing in Cupcakes | N/A | 03/01/2017 | 5812 - Eating and Drinking Places | $133,344 | $104,279 | $1,278 | $880 | ($1,129) | $21,500 | 0.16 | 0.21 |
| 45 | Confidential - Small Retail Bakery | N/A | 02/28/2017 | 5461 - Retail Bakeries | $320,826 | $320,826 | $17,732 | $5,564 | ($11,920) | $140,000 | 0.44 | 0.44 |
| 46 | Confidential - Franchised Smoothie Retailer | N/A | 10/24/2016 | 5812 - Eating and Drinking Places | $237,550 | $151,288 | ($19,733) | ($19,733) | ($27,464) | $27,500 | 0.12 | 0.18 |
| 47 | Confidential - Deli and Cafe | N/A | 10/18/2016 | 5812 - Eating and Drinking Places | $153,726 | $117,865 | ($19,933) | ($21,043) | ($21,043) | $42,000 | 0.27 | 0.36 |
| 48 | Confidential - Coffee Shop | N/A | 09/29/2016 | 5812 - Eating and Drinking Places | $956,000 | $553,000 | ($14,000) | ($61,000) | ($45,000) | $540,000 | 0.56 | 0.98 |
| 49 | Confidential - Yogurt Franchise | N/A | 09/22/2016 | 5812 - Eating and Drinking Places | $332,139 | $144,531 | $39,642 | ($4,865) | ($8,263) | $150,000 | 0.45 | 1.04 |
| 50 | Confidential - Franchised Cafe | N/A | 07/07/2016 | 5812 - Eating and Drinking Places | $263,828 | $178,543 | ($10,366) | ($25,601) | ($25,601) | $185,000 | 0.70 | 1.04 |
| 51 | Confidential - Cafe with Sandwiches, Smoothies, and Ice Cream | N/A | 03/01/2016 | 5812 - Eating and Drinking Places | $130,860 | $81,284 | ($38,651) | ($38,651) | ($39,088) | $55,000 | 0.42 | 0.68 |
| 52 | Confidential - Limited Service Coffee Shop | N/A | 10/26/2015 | 5812 - Eating and Drinking Places | $384,320 | $214,305 | ($13,344) | ($13,344) | ($26,512) | $115,000 | 0.30 | 0.54 |
| 53 | Confidential - Ice Cream Store | N/A | 08/03/2015 | 5812 - Eating and Drinking Places | $148,132 | $89,331 | ($4,921) | ($4,921) | ($4,921) | $130,000 | 0.88 | 1.46 |
| 54 | Confidential - Smoothie Business | N/A | 06/29/2015 | 5812 - Eating and Drinking Places | $153,571 | $101,784 | $14,831 | $14,831 | ($7,169) | $40,000 | 0.26 | 0.39 |
| 55 | Confidential - European Café & Bakery | N/A | 04/08/2015 | 5812 - Eating and Drinking Places | $509,808 | $348,050 | N/A | ($14,463) | ($14,463) | $60,000 | 0.12 | 0.17 |
| 56 | Confidential - Yogurt Store | N/A | 04/03/2015 | 5812 - Eating and Drinking Places | $302,618 | $231,198 | ($5,764) | ($5,764) | ($5,764) | $100,000 | 0.33 | 0.43 |
| 57 | Confidential - Smoothie Business | N/A | 01/30/2015 | 5812 - Eating and Drinking Places | $242,276 | $169,241 | $830 | ($7,076) | ($7,076) | $103,250 | 0.43 | 0.61 |
| 58 | Confidential - Ice Cream Store | N/A | 01/28/2015 | 5812 - Eating and Drinking Places | $199,569 | $139,734 | $5,173 | ($4,526) | ($15,799) | $148,000 | 0.74 | 1.06 |
| 59 | Confidential - Dairy Queen/Orange Julius Franchise | N/A | 01/14/2015 | 5812 - Eating and Drinking Places | $258,545 | $182,620 | ($3,918) | ($3,918) | ($15,015) | $35,000 | 0.14 | 0.19 |
| 60 | Corporation | N/A | 11/10/2014 | 5812 - Eating and Drinking Places | $372,941 | N/A | N/A | ($12,144) | ($12,144) | $125,000 | 0.34 | N/A |
| 61 | Confidential - Smoothie Business | N/A | 11/10/2014 | 5812 - Eating and Drinking Places | $374,556 | $242,629 | $10,672 | $10,672 | ($15,173) | $125,000 | 0.33 | 0.52 |
| 62 | Confidential - Yogurt Store | N/A | 10/31/2014 | 5812 - Eating and Drinking Places | $312,163 | $236,647 | $1,634 | $1,634 | ($1,154) | $250,000 | 0.80 | 1.06 |
| 63 | Confidential - Ice Cream Store | N/A | 10/03/2014 | 5812 - Eating and Drinking Places | $26,549 | $18,038 | ($17,946) | ($17,946) | ($18,171) | $34,500 | 1.30 | 1.91 |
| 64 | Confidential - Coffee Shop | N/A | 09/30/2014 | 5812 - Eating and Drinking Places | $175,826 | $103,673 | ($4,624) | ($8,783) | ($26,547) | $73,000 | 0.42 | 0.70 |
| 65 | Confidential - Ice Cream & Yogurt | N/A | 09/09/2014 | 5812 - Eating and Drinking Places | $352,139 | $239,065 | $56,415 | $24,791 | ($23,209) | $160,000 | 0.45 | 0.67 |
| 66 | Corporation | N/A | 05/30/2014 | 5812 - Eating and Drinking Places | $316,480 | N/A | N/A | ($42,630) | ($42,630) | $50,000 | 0.16 | N/A |
| 67 | Corporation | N/A | 05/30/2014 | 5812 - Eating and Drinking Places | $322,338 | N/A | N/A | ($73,824) | ($73,824) | $50,000 | 0.16 | N/A |

CONFIDENTIAL
© 2026 CONSOR®

**Exhibit 5**

BVR DealStats Valuation Multiples Study

| No. | Target Name | Acquirer Name | Sale Date | Primary SIC Code/Description | Latest FY Net Sales | Latest FY Gross Profit | Latest FY EBITDA | Latest FY EBIT | Latest FY Net Income | MVIC Price | MVIC/Revenue Multiple | MVIC/Gross Profit Multiple |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 68 | Corporation | N/A | 01/15/2014 | 5812 - Eating and Drinking Places | $143,869 | N/A | N/A | ($28,798) | ($28,798) | $28,750 | 0.20 | N/A |
| 69 | Corporation | N/A | 12/05/2013 | 5812 - Eating and Drinking Places | $149,305 | N/A | N/A | ($20,553) | ($20,553) | $50,000 | 0.33 | N/A |
| 70 | Confidential - Frozen Yogurt Company Franchise | N/A | 08/02/2013 | 5812 - Eating and Drinking Places | $229,943 | $126,222 | $28,148 | ($77,474) | ($77,474) | $135,000 | 0.59 | 1.07 |
| 71 | Confidential - Yogurt Shop - Franchise | N/A | 08/30/2012 | 5812 - Eating and Drinking Places | $102,643 | $64,456 | ($29,705) | ($29,705) | ($29,705) | $95,000 | 0.93 | 1.47 |
| 72 | Corporation | N/A | 02/28/2012 | 5812 - Eating and Drinking Places | $350,000 | N/A | N/A | ($18,122) | ($18,122) | $155,000 | 0.44 | N/A |
| 73 | Confidential - Coffee, Wine and Bar | N/A | 02/27/2012 | 5461 - Retail Bakeries | $325,461 | $223,070 | N/A | $6,603 | ($67) | $145,000 | 0.45 | 0.65 |
| 74 | Inc. | N/A | 01/10/2012 | 5812 - Eating and Drinking Places | $215,789 | $144,567 | ($10,971) | ($27,409) | ($27,409) | $90,000 | 0.42 | 0.62 |
| 75 | Corporation | N/A | 09/30/2011 | 5812 - Eating and Drinking Places | $46,705 | N/A | N/A | ($5,405) | ($5,405) | $47,000 | 1.01 | N/A |
| 76 | Confidential - Italian Ice Cream/Custard - Franchise | N/A | 02/28/2011 | 5812 - Eating and Drinking Places | $324,000 | $236,000 | $9,000 | ($13,000) | ($13,000) | $380,000 | 1.17 | 1.61 |
| 77 | Haagen Dazs - Franchise | N/A | 12/23/2010 | 5812 - Eating and Drinking Places | $321,451 | $244,140 | ($36,014) | ($36,768) | ($36,668) | $67,000 | 0.21 | 0.27 |
| 78 | Marble Slab | N/A | 09/21/2010 | 5812 - Eating and Drinking Places | $172,678 | $138,790 | ($3,329) | ($16,209) | ($27,858) | $75,000 | 0.43 | 0.54 |
| 79 | Antonio | N/A | 11/16/2009 | 5812 - Eating and Drinking Places | $333,209 | $202,265 | $21,599 | $1,456 | ($769) | $122,000 | 0.37 | 0.60 |
| 80 | Frozo's | N/A | 10/30/2009 | 5812 - Eating and Drinking Places | $103,195 | $68,107 | ($7,324) | ($13,190) | ($13,190) | $50,000 | 0.48 | 0.73 |
| 81 | Confidential - Ice Cream Store - Franchise | N/A | 09/02/2009 | 5812 - Eating and Drinking Places | $419,934 | $282,572 | $29,241 | $12,075 | ($4,170) | $220,000 | 0.52 | 0.78 |
| 82 | Confidential - Ice Cream Store | N/A | 03/31/2009 | 5812 - Eating and Drinking Places | $496,409 | $329,090 | ($50,768) | ($50,768) | ($59,831) | $135,000 | 0.27 | 0.41 |
| 83 | Corporation | N/A | 12/29/2008 | 5812 - Eating and Drinking Places | $88,805 | N/A | N/A | ($21,937) | ($21,937) | $60,000 | 0.68 | N/A |
| 84 | Confidential - Ice Cream, Yogurt and Smoothies | N/A | 10/01/2008 | 5812 - Eating and Drinking Places | $231,816 | $152,099 | ($18,282) | ($28,525) | ($30,044) | $68,000 | 0.29 | 0.45 |
| 85 | Gib's New York Bagels, LLC Brokers | N/A | 08/06/2008 | 5461 - Retail Bakeries | $1,836,128 | $1,276,438 | $10,784 | $6,136 | ($12,240) | $925,000 | 0.50 | 0.72 |
| 86 | Marble Slab Creamery | N/A | 07/25/2008 | 5812 - Eating and Drinking Places | $225,093 | $173,274 | ($7,467) | ($16,688) | ($25,828) | $110,000 | 0.49 | 0.63 |
| 87 | Confidential - Café and Ice Cream Shop | N/A | 06/30/2008 | 5812 - Eating and Drinking Places | $152,427 | $66,562 | $10,156 | $763 | ($3,275) | $178,000 | 1.17 | 2.67 |
| 88 | Corporation | N/A | 06/20/2008 | 5812 - Eating and Drinking Places | $228,443 | N/A | N/A | ($52,172) | ($52,172) | $110,000 | 0.48 | N/A |
| 89 | Bad Ass Coffee Company Corporation | N/A | 06/16/2008 | 5812 - Eating and Drinking Places | $172,242 | N/A | N/A | ($43,845) | ($43,845) | $99,447 | 0.58 | N/A |
| 90 | Cold Stone Creamery | N/A | 05/01/2008 | 5812 - Eating and Drinking Places | $456,251 | $352,181 | $37,346 | $16,762 | ($23,323) | $210,000 | 0.46 | 0.60 |
| 91 | Advisors | N/A | 03/21/2008 | 5812 - Eating and Drinking Places | $169,331 | $117,774 | N/A | ($31,274) | ($51,950) | $110,000 | 0.65 | 0.93 |
| 92 | Advisors | N/A | 03/20/2008 | 5812 - Eating and Drinking Places | $268,152 | $129,002 | $24,090 | $690 | ($22,537) | $55,000 | 0.21 | 0.43 |
| 93 | Confidential - Coffee and Tea House | N/A | 03/17/2008 | 5812 - Eating and Drinking Places | $1,058,250 | $590,334 | ($16,636) | ($51,630) | ($101,000) | $140,000 | 0.13 | 0.24 |
| 94 | Confidential - Coffee Shop | N/A | 12/20/2007 | 5812 - Eating and Drinking Places | $218,194 | $130,941 | $20,197 | $29 | ($2,256) | $130,000 | 0.60 | 0.99 |
| 95 | Confidential - Donut and Coffee Shop - Franchise | N/A | 12/17/2007 | 5461 - Retail Bakeries | $387,957 | $276,722 | ($25,150) | ($55,919) | ($69,159) | $79,000 | 0.20 | 0.29 |
| 96 | Antonio | N/A | 10/09/2007 | 5812 - Eating and Drinking Places | $217,917 | $162,954 | $35,244 | $21,405 | ($7,228) | $165,000 | 0.76 | 1.01 |
| 97 | Antonio | N/A | 09/04/2007 | 5812 - Eating and Drinking Places | $277,185 | $26,079 | ($99,008) | ($158,457) | ($165,658) | $45,000 | 0.16 | 1.73 |
| 98 | Confidential - Donut and Coffee Shop - Franchise | N/A | 08/01/2007 | 5461 - Retail Bakeries | $583,653 | $429,454 | ($48,779) | ($68,939) | ($74,013) | $150,000 | 0.26 | 0.35 |
| 99 | Kodiak Coffee | N/A | 02/09/2007 | 5812 - Eating and Drinking Places | $381,035 | $210,393 | ($4,798) | ($4,798) | ($8,958) | $230,000 | 0.60 | 1.09 |
| 100 | Confidential - Coffee Shop | N/A | 01/31/2007 | 5812 - Eating and Drinking Places | $99,914 | $23,335 | N/A | ($37,486) | ($37,486) | $35,000 | 0.35 | 1.50 |
| 101 | Confidential - Coffee Shop and Roasting | N/A | 01/10/2007 | 5812 - Eating and Drinking Places | $302,667 | $177,101 | ($18,095) | ($18,755) | ($26,606) | $68,500 | 0.23 | 0.39 |
| 102 | Cold Stone Creamery | N/A | 10/04/2006 | 5812 - Eating and Drinking Places | $775,771 | $557,863 | $28,550 | ($28,454) | ($51,840) | $325,000 | 0.42 | 0.58 |
| 103 | Aroma Café | N/A | 09/11/2006 | 5812 - Eating and Drinking Places | $76,581 | $42,910 | ($97,320) | ($97,320) | ($100,547) | $25,000 | 0.33 | 0.58 |
| 104 | Confidential - Coffee Shop | N/A | 06/14/2006 | 5812 - Eating and Drinking Places | $180,351 | $132,906 | ($25,146) | ($38,495) | ($38,495) | $75,000 | 0.42 | 0.56 |
| 105 | Village Blend | N/A | 05/15/2006 | 5812 - Eating and Drinking Places | $101,727 | $70,597 | ($1,717) | ($1,717) | ($1,717) | $60,000 | 0.59 | 0.85 |
| 106 | Confidential - Coffee Shop - Franchise | N/A | 05/01/2006 | 5812 - Eating and Drinking Places | $114,281 | $69,471 | ($1,000) | ($8,000) | ($10,000) | $60,000 | 0.53 | 0.86 |
| 107 | Dairy Queen | N/A | 12/01/2005 | 5812 - Eating and Drinking Places | $470,000 | $328,000 | ($13,000) | ($13,000) | ($32,000) | $160,000 | 0.34 | 0.49 |
| 108 | Baskin-Robbins | N/A | 10/26/2005 | 5812 - Eating and Drinking Places | $348,421 | $231,420 | ($18,046) | ($39,599) | ($39,599) | $122,000 | 0.35 | 0.53 |
| 109 | Investments | N/A | 07/06/2005 | 5812 - Eating and Drinking Places | $172,375 | $95,922 | ($24,283) | ($29,505) | ($35,195) | $55,000 | 0.32 | 0.57 |
| 110 | Cold Stone Creamery | N/A | 06/09/2005 | 5812 - Eating and Drinking Places | $814,034 | $606,114 | ($10,567) | ($117,141) | ($117,141) | $217,500 | 0.27 | 0.36 |
| 111 | Chuckles Java Junction | N/A | 04/11/2005 | 5812 - Eating and Drinking Places | $113,004 | $64,556 | N/A | ($23,167) | ($23,167) | $85,000 | 0.75 | 1.32 |
| 112 | Cold Stone Creamery | N/A | 04/06/2005 | 5812 - Eating and Drinking Places | $831,175 | $408,742 | $40,989 | ($84,784) | ($108,135) | $284,800 | 0.34 | 0.70 |
| 113 | Confidential - Ice Cream, Yogurt and Smoothie Shop | N/A | 02/23/2005 | 5812 - Eating and Drinking Places | $179,136 | $48,812 | $6,613 | $1,757 | ($2,767) | $51,000 | 0.28 | 1.04 |
| 114 | Confidential - Ice Cream, Yogurt and Smoothie Shop | N/A | 07/15/2004 | 5812 - Eating and Drinking Places | $179,136 | $48,812 | $6,613 | $1,757 | ($2,767) | $40,000 | 0.22 | 0.82 |
| 115 | Wired Bean Coffee Shop Brokers | N/A | 12/19/2003 | 5812 - Eating and Drinking Places | $179,873 | $179,873 | ($1,145) | ($14,105) | ($14,105) | $100,000 | 0.56 | 0.56 |
| 116 | Bucky's Bagels | N/A | 12/15/2003 | 5461 - Retail Bakeries | $566,245 | $412,649 | $20,892 | ($10,100) | ($17,257) | $195,000 | 0.34 | 0.47 |
| 117 | Cup-O-Coffee | N/A | 12/02/2002 | 5812 - Eating and Drinking Places | $224,323 | $125,171 | ($8,712) | ($31,006) | ($30,873) | $74,999 | 0.33 | 0.60 |
| 118 | Raleigh Hills Coffee Club, Inc. | N/A | 10/25/2002 | 5812 - Eating and Drinking Places | $116,318 | $73,099 | ($5,936) | ($6,735) | ($6,735) | $53,000 | 0.46 | 0.73 |
| 119 | Morning Star Espresso | N/A | 10/11/2002 | 5812 - Eating and Drinking Places | $216,554 | $82,263 | ($11,989) | ($13,700) | ($13,700) | $90,100 | 0.42 | 1.10 |
| 120 | Prufrock's | N/A | 09/27/2002 | 5812 - Eating and Drinking Places | $268,960 | $128,597 | $5,576 | $1,304 | ($6,350) | $137,546 | 0.51 | 1.07 |
| 121 | Abruzzi Café | N/A | 05/03/2002 | 5812 - Eating and Drinking Places | $77,504 | $41,731 | N/A | ($4,983) | ($5,035) | $24,000 | 0.31 | 0.58 |
| 122 | Filter In | N/A | 12/15/2001 | 5812 - Eating and Drinking Places | $211,186 | $126,712 | $11,140 | $0 | ($1,856) | $68,000 | 0.32 | 0.54 |
| 123 | Confidential - Coffee Shop | N/A | 10/31/2001 | 5812 - Eating and Drinking Places | $23,413 | $10,634 | ($13,795) | ($17,059) | ($17,059) | $20,000 | 0.85 | 1.88 |
| 124 | Opportunities, Inc. | N/A | 08/20/2001 | 5812 - Eating and Drinking Places | $227,600 | $157,000 | N/A | ($200) | ($7,200) | $126,500 | 0.56 | 0.81 |
| 125 | Marotta's Coffee Times | N/A | 07/02/2001 | 5812 - Eating and Drinking Places | $25,036 | $1,531 | N/A | ($32,391) | ($32,391) | $17,500 | 0.70 | 11.43 |
| 126 | Java Brothers | N/A | 03/27/2001 | 5812 - Eating and Drinking Places | $207,581 | $139,586 | N/A | ($36,379) | ($36,348) | $88,000 | 0.42 | 0.63 |
| 127 | Gladco Enterprises, Inc. | CREATIVE HOST SERVICES INC | 10/09/2000 | 5812 - Eating and Drinking Places | $9,512,661 | $7,201,348 | $1,271,407 | $304,215 | ($246,492) | $7,000,000 | 0.74 | 0.97 |
| 128 | Double Rainbow | N/A | 09/29/2000 | 5812 - Eating and Drinking Places | $301,119 | $177,047 | N/A | ($79,127) | ($91,378) | $215,000 | 0.71 | 1.21 |
| 129 | Bagelmakers, Inc. Brokers | N/A | 02/15/2000 | 5461 - Retail Bakeries | $346,198 | $228,608 | $13,431 | ($3,751) | ($13,124) | $140,000 | 0.40 | 0.61 |
| 130 | Confidential - Yogurt, Shake and Ice Cream - Franchise | N/A | 07/06/1999 | 5812 - Eating and Drinking Places | $424,748 | $298,395 | $74,734 | ($20,888) | ($53,373) | $300,000 | 0.71 | 1.01 |
| 131 | Deb's Place | N/A | 05/05/1999 | 5812 - Eating and Drinking Places | $252,096 | $117,568 | $2,535 | $1,099 | ($4,414) | $135,000 | 0.54 | 1.15 |
| 132 | Manhattan Bagel Company, Inc. | NEW WORLD COFFEE & BAGELS INC / | 11/24/1998 | 5461 - Retail Bakeries | $39,571,000 | $16,766,000 | ($3,186,000) | ($5,134,000) | ($25,770,000) | $22,250,000 | 0.56 | 1.33 |
| 133 | Pretzelmaker, Inc. | FIELDS MRS ORIGINAL COOKIES INC | 11/19/1998 | 5461 - Retail Bakeries | $6,065,413 | N/A | $153,668 | ($249,025) | ($473,561) | $5,739,000 | 0.95 | N/A |
| 134 | Karp Entities | FIELDS MRS ORIGINAL COOKIES INC | 09/09/1998 | 5461 - Retail Bakeries | $2,500,000 | $1,817,000 | ($56,000) | ($177,000) | ($210,000) | $1,750,000 | 0.70 | 0.96 |
| 135 | Cookies, USA, Inc. | FIELDS MRS ORIGINAL COOKIES INC | 08/24/1998 | 5461 - Retail Bakeries | $37,347,000 | $20,291,000 | $7,690,000 | $6,214,000 | ($202,000) | $18,400,000 | 0.49 | 0.91 |
| 136 | Confidential - Ice Cream Shop - Franchise | N/A | 08/07/1998 | 5812 - Eating and Drinking Places | $121,334 | $92,630 | N/A | ($1,272) | ($6,970) | $95,000 | 0.78 | 1.03 |
| 137 | Red Rock Coffee Company | N/A | 06/24/1998 | 5812 - Eating and Drinking Places | $457,974 | $132,060 | $663 | ($6,484) | ($6,484) | $24,000 | 0.05 | 0.18 |
| 138 | LFD Holding Corporation | BROUGHTON FOODS CO | 05/12/1998 | 5812 - Eating and Drinking Places | $56,078,939 | $12,097,583 | $3,081,027 | $1,756,583 | ($369,613) | $20,000,000 | 0.36 | 1.65 |

CONFIDENTIAL
© 2026 CONSOR®

**Exhibit 5**

**BVR DealStats Valuation Multiples Study**

| No. | Target Name | Acquirer Name | Sale Date | Primary SIC Code/Description | Latest FY Net Sales | Latest FY Gross Profit | Latest FY EBITDA | Latest FY EBIT | Latest FY Net Income | MVIC Price | MVIC/Revenue Multiple | MVIC/Gross Profit Multiple |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 139 | Confidential - Ice Cream - Franchise | N/A | 10/24/1997 | 5812 - Eating and Drinking Places | $255,115 | $139,470 | $19,377 | $13,884 | ($1,116) | $100,000 | 0.39 | 0.72 |
| 140 | Willoughby's Inc. | NEW WORLD COFFEE INC | 10/25/1996 | 5812 - Eating and Drinking Places | $2,696,550 | $1,230,153 | N/A | ($14,658) | ($57,231) | $3,800,000 | 1.41 | 3.09 |
| 141 | Confidential - Frozen Yogurt, Ice Cream and Coffee (inside shopping center) - Franchise | N/A | 09/18/1996 | 5812 - Eating and Drinking Places | $193,696 | $99,685 | ($31,793) | ($40,573) | ($48,496) | $70,000 | 0.36 | 0.70 |
| 142 | Bagels Unlimited, Inc. | BAB HOLDINGS INC | 05/01/1996 | 5461 - Retail Bakeries | $2,746,415 | $407,874 | N/A | ($109,377) | ($155,391) | $743,000 | 0.27 | 1.82 |
| 143 | Espresso Yourself Coffee | N/A | 03/15/1996 | 5812 - Eating and Drinking Places | $191,406 | $96,886 | ($6,357) | ($13,836) | ($13,887) | $64,000 | 0.33 | 0.66 |
| 144 | Confidential - Ice Cream and Yogurt Shop - Franchise | N/A | 02/23/1996 | 5812 - Eating and Drinking Places | $76,940 | $41,551 | ($5,460) | ($8,760) | ($8,760) | $48,500 | 0.63 | 1.17 |
| 145 | Confidential - Yogurt and Ice Cream Shop | N/A | 11/17/1994 | 5812 - Eating and Drinking Places | $70,347 | $49,447 | $9,145 | ($5,881) | ($7,859) | $35,000 | 0.50 | 0.71 |

**Summary Statistics - All-Time (where disclosed)**

| Multiple Basis: | Revenue | Gross Profit |
|---|---|---|
| First Quartile | 0.27 | 0.47 |
| **Average** | **0.47** | **0.94** |
| Median | 0.40 | 0.68 |
| Third Quartile | 0.59 | 1.05 |

***Notes:***

1. Search criteria utilized to identify these transactions included:
   NAICS: 722515
   Sale Date Less Than: 12/31/2021
   Latest FY Net Income Less Than: $0
   *Source: Doc 7 (DEFENDANTS0067629).*
2. N/A indicates the transaction record did not disclose that value in the source DealStats report (Doc 7 (DEFENDANTS0067629)).


© 2026 CONSOR®

# Exhibit 6

| Cash Flow Projections - Compass Coffee | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | *Historical* | *Projected* | | | | | |
| *(For the period ended December 31)* | *Source* | **2021** | **2022E** | **2023E** | **2024E** | **2025E** | **2026E** |
| Revenue | *Exhibit 7* | | | | | | |
| Total Cafés | | $7,719,027 | $13,913,579 | $20,304,648 | $25,335,143 | $29,261,440 | $29,942,556 |
| Total Ecommerce | | $560,383 | $1,183,006 | $1,319,603 | $1,878,209 | $2,169,283 | $2,219,777 |
| Total CPG | | $556,715 | $924,603 | $1,042,840 | $1,598,436 | $1,846,153 | $1,889,126 |
| Total Foodservice | | $976,830 | $1,037,078 | $1,527,826 | $2,319,126 | $2,678,531 | $2,740,879 |
| Other Revenue | | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total Revenue** | | **$9,812,955** | **$17,058,266** | **$24,194,917** | **$31,130,915** | **$35,955,407** | **$36,792,338** |
| *Growth (%)* | | *2.4%* | *73.8%* | *41.8%* | *28.7%* | *15.5%* | *2.3%* |
| | | | | | | | |
| Cost of Goods Sold | *Exhibit 7* | $2,967,333 | $5,117,480 | $7,258,475 | $9,471,191 | $10,938,983 | $11,193,608 |
| **Total Cost of Goods Sold** | | **$2,967,333** | **$5,117,480** | **$7,258,475** | **$9,471,191** | **$10,938,983** | **$11,193,608** |
| | | | | | | | |
| **Gross Profit** | | **$6,845,622** | **$11,940,786** | **$16,936,442** | **$21,659,724** | **$25,016,424** | **$25,598,730** |
| *Gross Margin (%)* | | | *70.0%* | *70.0%* | *69.6%* | *69.6%* | *69.6%* |
| | | | | | | | |
| Operating Expenses | *Exhibit 7* | | | | | | |
| Rent | | $2,991,502 | $2,796,000 | $2,940,000 | $5,528,016 | $6,384,716 | $6,533,333 |
| Salaries | | $3,245,854 | $4,264,566 | $4,838,983 | $6,547,623 | $7,562,336 | $7,738,364 |
| General and Administrative | | $3,662,993 | $4,063,062 | $5,601,769 | $6,550,935 | $7,566,162 | $7,742,279 |
| **Total Operating Expenses** | | **$9,900,349** | **$11,123,628** | **$13,380,752** | **$18,626,574** | **$21,513,215** | **$22,013,976** |
| | | | | | | | |
| **EBITDA** | | **-$3,054,727** | **$817,158** | **$3,555,690** | **$3,033,149** | **$3,503,210** | **$3,584,754** |
| *EBITDA Margin (%)* | | *-31.1%* | *4.8%* | *14.7%* | *9.7%* | *9.7%* | *9.7%* |
| | | | | | | | |
| Amoritzation | | $14,646 | $15,000 | $16,000 | $204,952 | $236,715 | $242,225 |
| Interest | | $263,112 | $500,000 | $500,000 | $500,000 | $500,000 | $500,000 |
| Depreciation | | $1,735,069 | $1,500,000 | $1,500,000 | $1,427,306 | $1,648,502 | $1,686,874 |
| Other Income | | $3,048,833 | $0 | $0 | $0 | $0 | $0 |
| | | | | | | | |
| **EBIT** | | **-$4,804,442** | **-$697,842** | **$2,039,690** | **$1,400,891** | **$1,617,993** | **$1,655,655** |
| *EBIT Margin (%)* | | *-49.0%* | *-4.1%* | *8.4%* | *4.5%* | *4.5%* | *4.5%* |
| | | | | | | | |
| Free Cash Flow Calculation | | | | | | | |
| Tax Rate | *Exhibit 2* | *27.5%* | *27.5%* | *27.5%* | *27.5%* | *27.5%* | *27.5%* |
| **EBIAT** | | **-$4,804,442** | **-$697,842** | **$1,478,418** | **$1,015,401** | **$1,172,762** | **$1,200,060** |
| Add back: | | | | | | | |
| Depreciation | | $1,735,069 | $1,500,000 | $1,500,000 | $1,427,306 | $1,648,502 | $1,686,874 |
| Amortization | | $14,646 | $15,000 | $16,000 | $204,952 | $236,715 | $242,225 |
| Subtract: | | | | | | | |
| CapEx | *Note 1* | $597,548 | $1,515,000 | $1,516,000 | $1,632,258 | $1,885,216 | $1,929,098 |
| Net Working Capital | *Doc 4 (DEFENDANTS0021336) and Exhibit 8* | $2,324,875 | $1,500,000 | $1,750,000 | $895,798 | $1,034,624 | $1,058,707 |
| NWC as % of Revenue | *Exhibit 8* | *23.7%* | *8.8%* | *7.2%* | *2.9%* | *2.9%* | *2.9%* |
| Change in Net Working Capital | *Doc 4 (DEFENDANTS0021336)* | $2,684,607 | -$824,875 | $250,000 | -$854,202 | $138,826 | $24,083 |
| | | | | | | | |
| **Unlevered Free Cash Flow** | | **-$6,336,881** | **$127,033** | **$1,228,418** | **$1,869,603** | **$1,033,936** | **$1,175,977** |
| | | | | | | | |
| **Profit / Loss** | | **-$2,018,721** | **-$1,197,842** | **$1,539,690** | **$900,891** | **$1,117,993** | **$1,155,655** |

***Notes:***

*1* We conservatively assumed no change in net property, plant, and equipment ("PP&E") during the forecast period. Accordingly, forecast capital expenditures were estimated as depreciation plus amortization. This approach assumes replacement PP&E can be acquired at historical cost levels and does not incorporate inflation in future PP&E costs.


© 2026 CONSOR®

# Exhibit 7

| Income Statement - Compass Coffee[1] | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| *(For the period ended December 31)* | **2016** | **2017** | **2018** | **2019** | **2020** | **2021** | **2022E** | **2023E** |
| | | | | *Note 2* | | | | |
| Revenue | | | | | | | | |
| Total Cafés | $3,510,227 | $5,994,627 | $8,625,862 | $11,662,398 | $6,884,293 | $7,719,027 | $13,913,579 | $20,304,648 |
| Total Ecommerce | $115,167 | $116,058 | $133,594 | $150,679 | $911,146 | $560,383 | $1,183,006 | $1,319,603 |
| Total CPG | $241,555 | $315,482 | $347,551 | $363,866 | $707,851 | $556,715 | $924,603 | $1,042,840 |
| Total Foodservice | $824,327 | $1,224,055 | $1,610,602 | $1,870,103 | $769,007 | $976,830 | $1,037,078 | $1,527,826 |
| Other Revenue[3] | $556,763 | $496,606 | $461,157 | $788,660 | $309,825 | $0 | $0 | $0 |
| **Total Revenue** | **$5,248,039** | **$8,146,828** | **$11,178,765** | **$14,835,705** | **$9,582,122** | **$9,812,955** | **$17,058,266** | **$24,194,917** |
| *Growth (%)* | | *55.2%* | *37.2%* | *32.7%* | *-35.4%* | *2.4%* | *73.8%* | *41.8%* |
| | | | | | | | | |
| Cost of Goods Sold | $2,171,471 | $3,069,180 | $4,061,925 | $5,109,479 | $3,014,158 | $2,967,333 | $5,117,480 | $7,258,475 |
| **Total Cost of Goods Sold** | **$2,171,471** | **$3,069,180** | **$4,061,925** | **$5,109,479** | **$3,014,158** | **$2,967,333** | **$5,117,480** | **$7,258,475** |
| | | | | | | | | |
| **Gross Profit** | **$3,076,568** | **$5,077,648** | **$7,116,840** | **$9,726,226** | **$6,567,964** | **$6,845,622** | **$11,940,786** | **$16,936,442** |
| | | | | | | | | |
| Operating Expenses | | | | | | | | |
| Rent | $492,079 | $880,517 | $1,814,625 | $3,600,087 | $3,919,860 | $2,991,502 | $2,796,000 | $2,940,000 |
| Salaries | $2,173,843 | $3,664,083 | $4,610,202 | $5,947,139 | $3,155,802 | $3,245,854 | $4,264,566 | $4,838,983 |
| General and Administrative | $769,310 | $1,092,305 | $1,943,759 | $2,701,460 | $2,395,164 | $3,662,993 | $4,063,062 | $5,601,769 |
| **Total Operating Expenses** | **$3,435,232** | **$5,636,905** | **$8,368,586** | **$12,248,686** | **$9,470,826** | **$9,900,349** | **$11,123,628** | **$13,380,752** |
| | | | | | | | | |
| **EBITDA** | **-$358,664** | **-$559,257** | **-$1,251,746** | **-$2,522,460** | **-$2,902,862** | **-$3,054,727** | **$817,158** | **$3,555,690** |
| *EBITDA Margin (%)* | *-6.8%* | *-6.9%* | *-11.2%* | *-17.0%* | *-30.3%* | *-31.1%* | *4.8%* | *14.7%* |
| | | | | | | | | |
| Amortization | $0 | $0 | $1,814 | $24,568 | $27,354 | $14,646 | $15,000 | $16,000 |
| Interest | $78,814 | $187,288 | $321,340 | $426,631 | $470,667 | $263,112 | $500,000 | $500,000 |
| Depreciation | $659,022 | $804,198 | $1,188,250 | $1,241,649 | $1,501,286 | $1,735,069 | $1,500,000 | $1,500,000 |
| Other Income | $65,989 | $52,585 | $4,691 | $0 | $1,394,471 | $3,048,833 | $0 | $0 |
| | | | | | | | | |
| **Profit / Loss** | **-$1,030,511** | **-$1,498,158** | **-$2,758,459** | **-$4,215,308** | **-$3,507,698** | **-$2,018,721** | **-$1,197,842** | **$1,539,690** |

***Notes:***

**1** *Source: Doc 4 (DEFENDANTS0021336)*

**2** Reflected Profit / Loss appears off by $1 when compared to the source document due to rounding.

**3** The Other Revenue line was added to reconcile the reported Total Revenue figures presented in the source document.


© 2026 CONSOR®

# Exhibit 8

| Historical and Projected Net Working Capital as a Percentage of Revenue | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | *Source* | **2016** | **2017** | **2018** | **2019** | **2020** | **2021** | **2022** | **2023** |
| Total Revenue | *Exhibit 7* | $5,248,039 | $8,146,828 | $11,178,765 | $14,835,705 | $9,582,122 | $9,812,955 | $17,058,266 | $24,194,917 |
| Net Working Capital | *Doc 4 (DEFENDANTS0021336)* | -$314,596 | -$464,912 | -$387,756 | $330,251 | -$359,732 | $2,324,875 | $1,500,000 | $1,750,000 |
| *Net Working Capital as a % of Revenue* | | *-6.0%* | *-5.7%* | *-3.5%* | *2.2%* | *-3.8%* | *23.7%* | *8.8%* | *7.2%* |

| | |
|---|---|
| ***Average NWC as % of Revenue (2016 - 2023)*** | ***2.9%*** |

CONFIDENTIAL
© 2026 CONSOR®